*AP-76768*

# CLERK'S RECORD

*Volume 10 of 12*

*Trial Cause No* F45059

*In the* 413TH JUDICIAL DISTRICT *Court*

*of* JOHNSON *County, Texas.*

*Honorable* WILLIAM C. BOSWORTH, JR., *Judge Presiding*

THE STATE OF TEXAS, Plaintiff(s)
*vs.*
MARK ANTHONY SOLIZ, Defendant(s)

*Appealed to the*

COURT OF CRIMINAL APPEALS, PO BOX 12308-CAPITAL STATION, AUSTIN, TX 78711

*Attorney for appellant(s):*

*Name:* HONORABLE MIKE HEISKELL

*Address:* 5601 BRIDGE ST., SUITE 220, FT WORTH, TEXAS 76112

FILED IN
COURT OF CRIMINAL APPEALS

*Telephone No:* (817) 457-2999

JUL 24 2012

*Fax No:* ( ) -

*SBOT No:* 09383700

Louise Pearson, Clerk

*Attorney for:* _____, *Appellant(s)*

*Delivered to the*

COURT OF CRIMINAL APPEALS, PO BOX 12308-CAPITAL STATION, AUSTIN, TX 78711

*Signature of Clerk:* _____

*Name of Clerk:* DAVID R. LLOYD

*Title:* JOHNSON COUNTY DISTRICT CLERK

*Appellate Court Cause No:* _____

*Filed in the*

*this* _____ *day of* _____, _____.

_____ *Clerk*

*By* _____ *Deputy*

CAUSE NO
F45059

THE STATE OF TEXAS        IN THE DISTRICT COURT

V        413TH JUDICIAL DISTRICT

MARK ANTHONY SOLIZ        JOHNSON COUNTY, TEXAS

**V.1**                      **INDEX**

CAPTION ................................................................................................................1

DOCKET BOOK REPORT ..........................................................................................2

CAPIAS/INDICTMENT(FILED 12-28-2010) ...............................................................38

ORDER APPOINTING DEFENSE EXPERT WITNESS(FILED 01-20-2011).........................................................................................................44

STATE'S WRITTEN NOTICE OF ITS INTENT TO SEEK THE DEATH PENALTY(FILED 01-19-2011)..............................................................45

ORDER APPOINTING DEFENSE EXPERT WITNESS(FILED 01-20-2011).........................................................................................................47

THE STATE OF TEXAS OATH OF OFFICE-CHRISTINA JACK(FILED 01-24-2011)..............................................................................49

LETTER FROM JUDGE BOSWORTH TO COUNSEL(FILED 02-22-2011)............................................................................................................50

ORDER ALLOWING DEFENSE AND MITIGATION SPECIALIST TO INTERVIEW DEFENDANT(FILED 03-03-2011) ...............................................51

LETTER RESETTING HEARING (FILED 03-22-2011) .......................................................52

STATE'S MOTION FOR DISCLOSURE OF EXPERTS(FILED 03-31-2011).........................................................................................................53

STATE'S NOTICE OF INTENT TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS(FILED 03-31-2011) ...................................................55

INDEX
F45059
PAGE 2
CON'T.

STATE'S WITNESS LIST(FILED 03-31-2011) ........................................................59

STATEMENT OF ELECTED/APPOINTED OFFICER(FILED 04-01-2011)............................................................................................................75

DEPUTATION OF SPECIAL ASSISTANT DISTRICT ATTORNEY(FILED 04-01-2011) ...........................................................76

OATH OF OFFICE (FILED 04-01-2011) .................................................78

ORDER ALLOWING DEFENSE EXPERT TO INTERVIEW DEFENDANT(FILED 04-01-2011) ..........................................................79

AMENDED ORDER ALLOWING DEFENSE EXPERT TO INTERVIEW DEFENDANT(FILED 04-07-2011) ..................................80

ORDER ALLOWING ATTORNEY GREG WESTFALL TO TAKE A PHOTOGRAPH OF DEFENDANT(FILED 04-07-2011)......................81

SCHEDULING ORDER(FILED 04-07-2011)...........................................82

DEFENDANT'S EX-PARTE MOTION FOR APPOINTMENT OF EXPERT(FILED UNDER SEAL) (FILED 04-14-2011) ...........................83

AGREED AMENDED SCHEDULING ORDER(FILED 04-18-2011)...................................87

ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT(FILED 04-28-2011)............................................................................................88

SECOND AGREED AMENDED SCHEDULING ORDER(FILED 05-10-2011)............................................................................................90

ORDER ALLOWING DEFENSE EXPERT TO INTERVIEW DEFENDANT(FILED 06-20-2011) ..........................................................91

STATE'S FIRST AMENDED WITNESS LIST(FILED 06-24-2011)....................................92

ORDER APPOINTING DEFENSE EXPERT WITNESS-DR N. BROWN(FILED 07-07-2011) .......................................................109

INDEX
F45059
PAGE 3
CON'T.

ORDER APPOINTING DEFENSE EXPERT WITNESS-DR. R. ADLER(FILED 07-07-2011) ...................................................................110

ORDER ALLOWING DEFENSE EXPERT TO INTERVIEW DEFENDANT-DR. N. BROWN(FILED 07-25-2011).............................111

ORDER APPOINTING DEFENSE EXPERT WITNESS-DR. R. SINGER(FILED 07-28-2011)...............................................................112

ORDER ALLOWING DEFENSE EXPERT TO INTERVIEW DEFENDANT-DR. N. BROWN(FILED 08-10-2011).............................113

ORDER ALLOWING DEFENSE EXPERT TO INTERVIEW DEFENDANT-DR. R. ADLER(FILED 09-20-2011) .............................114

STATE'S MOTION TO HAVE DEFENDANT EXAMINED BY MENTAL HEALTH EXPERTS(FILED 09-21-2011)...........................115

NOTICE OF BUSINESS RECORD FILING-SECURITY THREAT....(FILED 09-21-2011) ...................................................118

AFFIDAVIT-SIGIFREDO SANCHEZ(FILED 09-21-2011)...............................119

AMENDED ORDER ALLOWING DEFENSE EXPERT TO INTERVIEW DEFENDANT(FILED 09-23-2011) .............................140

MOTION FOR APPOINTMENT OF DEFENSE EXPERT(FILED 10-05-2011).......................................................................................142

ORDER APPOINTING DEFENSE EXPERT WITNESS(FILED 10-5-2011).......................................................................................145

MOTION FOR APPOINTMENT OF DEFENSE EXPERT(FILED 10-25-2011).......................................................................................147

ORDER FOR DEFENSE EXPERT(FILED 10-25-2011) .....................149

STATE'S SECOND AMENDED WITNESS LIST(FILED 10-26-2011)..............................156

INDEX
F45059
PAGE 4
CON'T.

STATE'S AMENDED MOTION FOR DISCLOSURE OF
EXPERTS(FILED 10-28-2011) ...................................................180

MOTION TO HOLD UNCONSTITUTIONAL TEX.CODE CRIM.
PROC. ART. 37.071 SEC 2(E) AND (F)-BURDEN OF
PROOF(FILED 11-01-2011)..........................................................182

MOTION FOR PRECLUSION OF EXTRANEOUS OFFENSES OR
IN THE ALTERNATIVE FOR A PRE-TRIAL HEARING AS TO
THE ADMISSIBILITY OF EACH AND APPROPRIATE JURY
INSTRUCTIONS(FILED 11-01-2011)..........................................187

MOTION TO DECLARE ARTICLE 37.071 2(E) AND (F) OF THE
TEXAS CODE OF CRIMINAL PROCEDURE
UNCONSTITUTIONAL ON ITS FACE(FILED 11-01-2011) ...............193

MOTION TO FIND THAT TEX CODE CRIMINAL PROC. ART.
37.071 SEC 2 (2)(B)(1) IS UNCONSTITUTIONAL("FUTURE
DANGER" ISSUE)(FILED 11-01-2011) ........................................201

MOTION FOR DISCLOSURE OF FACTS OR DATA
UNDERLYING EXPERT OPINION(FILED 11-01-2011).....................215

MOTION FOR DISCLOSURE OF IMPEACHING INFORMATION
(FILED 11-01-2011).......................................................................219

MOTION FOR PRODUCTION OF WITNESS'
STATEMENTS(FILED 11-01-2011)...............................................224

V.2
DEFENDANT'S MOTION TO REQUIRE THE ENDORSEMENT
OF NAMES OF WITNESSES UPON WHOSE TESTIMONY THE
INDICTMENT WAS FOUND(FILED 11-12-2011) .............................228

REQUEST FOR NOTICE OF INTENT TO USE EVIDENCE OF A
CONVICTION(RULE 609)(F) TEXAS RULES EVIDENCE)(FILED
11-01-2011)....................................................................................232

DEFENDANT'S REQUEST FOR NOTICE UNDER RULE 404(B)
OF THE TEXAS RULES OF EVIDENCE ARTICLE 37.07 AND
ARTICLE 38.37 OF THE TEXAS CODE OF CRIMINAL
PROCEDURE(FILED 11-01-2011)................................................234

INDEX
F45059
PAGE 5
CON'T.

MOTION FOR DISCOVERY AND LIMITING INSTRUCTIONS
TO THE JURY(FILED 11-01-2011) ........................................................236

MOTION TO PRECLUDE UNIFORMED POLICE OFFICERS
FROM ATTENDING THE PROCEEDINGS AGAINST MR. SOLIZ
AND LIMIT THE SHOW OF FORCE IN THE
COURTROOM(FILED 11-01-2011)...........................................................241

MOTION TO ALLOW THE DEFENSE TO CLOSE ARGUMENTS
ON MITIGATION(FILED 11-01-2011) .....................................................246

MOTION TO IMPANEL SEPARATE JURY FOR
GUILT/INNOCENCE AND PENALTY PHASE OF CAPITAL
TRIAL(FILED 11-01-2011) ........................................................................251

MOTION PRECLUDE THE OFFER OF EVIDENCE OF
EXTRANEOUS OFFENSES(RING V. ARIZONA)(FILED 11-01-
2011) ..........................................................................................................256

MOTION FOR HEARING ON ADMISSIBILITY OF ANY
STATEMENT BY DEFENDANT WHETHER WRITTEN OR ORAL
OR EVIDENCE RESULTING FROM SAME/MOTION TO
SUPPRESS(FILED 11-01-2011)................................................................264

MOTION TO PRECLUDE THE DEATH PENALTY AS A
SENTENCING OPTION AND DECLARE ARTICLE 37.071
UNCONSTITUTIONAL UNDER(JONES V U.S.;APPRENDI V.
NEW JERSEY AND RING V ARIZONA), AND ALTERNATIVELY
QUASH THE INDICTMENT, AND ALTERNATIVELY MOTION
TO INSTRUCT THE JURY THAT THE SENTENCING BURDEN
OF PROOF ON THE MITIGATION SPECIAL ISSUE LIES WITH
THE STATE(FILED 11-01-2011) ...............................................................269

MOTION TO EXCLUDE VICTIM IMPACT/CHARACTER
EVIDENCE IN ABSENCE OF SPECIFIC LEGISLATIVE
AUTHORITY AND TO EXCLUDE SUCH EVIDENCE AS
IRRELEVANT TO TX PUNISHMENT SPECIAL ISSUES AND
REQUESTS TO VOIR DIRE AND FOR REQUESTED
INSTRUCTIONS AND MOTIONS IN LIMINE, RELATED TO
CLAIMS IN THIS MOTION(FILED 11-01-2011)....................................276

INDEX
F45059
PAGE 6
CON'T.

MOTION TO PRECLUDE THE DEATH PENALTY AS A
SENTENCING OPTION(SELECTION OF DEATH PENALTY
CASES) (FILED 11-01-2011)....................................................................302

MOTION TO PRECLUDE DEATH PENALTY AS A SENTENCING
OPTION DUE TO EQUAL PROTECTION VIOLATIONS(FILED
11-01-2011)...............................................................................................308

MOTION TO PRECLUDE THE DEATH PENALTY AS A
SENTENCING OPTION(FILED 11-01-2011)..........................................332

MOTION TO PRECLUDE PROSECUTION FROM SEEKING THE
DEATH PENALTY(FILED 11-01-2011)...................................................338

MOTION TO RESTRICT THE PRESS FROM FILMING THE
JURY(FILED 11-01-2011) ........................................................................351

MOTION TO REQUIRE THE PROSECUTION TO RESPOND IN
WRITING TO EVERY WRITTEN MOTION FILED BY THE
DEFENSE(FILED 11-01-2011) .................................................................354

MOTION FOR THE PRODUCTION OF WITNESS INTERVIEW
NOTES(FILED 11-01-2011) .....................................................................359

MOTION FOR APPOINTMENT OF APPELLATE
COUNSEL(FILED 11-01-2011)................................................................363

MOTION FOR EQUAL ACCESS TO BACKGROUND
INFORMATION ON PROSPECTIVE JURORS(FILED 11-01-2011)................367

MOTION TO PREVENT JURORS FROM DISCUSSING OR
RESEARCHING TRIAL ISSUES VIA THE INTERNET OR
ELECTRONIC DEVICE(FILED 11-01-2011) ........................................371

MOTION TO ALLOW DEFENDANT TO APPEAR AT PRETRIAL
HEARINGS AND TRIAL IN CIVILIAN CLOTHES AND FUNDS
FOR SUCH SUITABLE COURTROOM ATTIRE(FILED 11-01-
2011) .........................................................................................................383

INDEX
F45059
PAG E 7
CON'T.

MOTION TO PRECLUDE THE DEATH PENALTY DUE TO THE
GRAND JURY'S FAILURE TO ALLEGE IN THE INDICTMENT
ALL ELEMENTS NECESSARY TO MAKE THE DEFENDANT
DEATH-ELIGIBLE(FILED 11-01-2011).................................................................388

MOTION FOR LIMITED DAILY TRANSCRIPTS(FILED 11-01-
2011) ..................................................................................................................393

MOTION TO PRESERVE RIGHT TO FILE ADDITIONAL
MOTIONS(FILED 11-01-2011)...........................................................................397

MOTION FOR PRODUCTION OF DOCUMENTS RELEVANT TO
UNDER REPRESENTATION OF COGNISEABLE GROUPS IN
THE GRAND JURY IN JOHNSON COUNTY(FILED 11-01-2011) ....................400

MOTION TO DECLARE THE CAPITAL SENTENCES STATUTE
UNCONSTITUTIONAL BECAUSE IT ALLOWS JURIES TO
DECIDE FUTURE DANGEROUSNESS BASED SOLELY ON THE
FACTORS OF THE CASE(FILED 11-01-2011) .....................................................408

MOTION TO PRECLUDE THE DEATH PENALTY AS A
SENTENCING        OPTION(LACK       OF       FUTURE
DANGEROUSNESS(FILED 11-01-2011) ...............................................................415

V.3
MOTION TO FIND THAT THE DEATH PENALTY IN THE
STATE OF TEXAS IS UNCONSTITUTIONAL ON THE GROUND
THAT ITS CAPITAL SENTENCING PROCEDURE FAILS TO
MEET MINIMUM REQUIREMENTS SET FORTH IN FURMAN V.
GEORGIA AND ITS PROGENY, AS EVINCED BY THE
FINDINGS OF THE CAPITAL JURY PROJECT AND OTHER
RESEARCH(FILED 11-01-2011)...........................................................................427

MOTION   TO   DECLARE   THE   DEATH   PENALTY
UNCONSTITUTIONAL   BASED   ON   TEXAS'   LETHAL
INJECTION PROTOCOL(FILED 11-01-2012).......................................................496

MOTION   IN   LIMINE(DECEDENT   AS   CANCER
SURVIVOR)(FILED 11-01-2011) ..........................................................................555

INDEX
F45059
PAGE 8
CON'T.

DEFENDANT'S OBJECTIONS TO NOTICE OF BUSINESS
RECORDS FILING(FILED 11-01-2011) ...................................................................559

MOTION TO HOLD UNCONSTITUTIONAL TEX. CODE CRIM.
PROC. ART. 37.071 SEC 2(E) AND (F)-FAILURE TO REQUIRE
MITIGATION BE CONSIDERED(FILED 11-01-2011) ........................................562

MOTION TO SEQUESTER JURY(FILED 11-01-2011) .......................................566

MOTION TO DECLARE ARTICLE 37.071 2(B)(1)OF THE TEXAS
CODE OF CRIMINAL PROCEDURE UNCONSTITUTIONAL ON
ITS FACE(FILED 11-01-2011)...................................................................................569

MOTION TO LIST EXPERT WITNESSES(ART. 39.14 CODE OF
CRIMINAL PROCEDURE)(FILED 11-01-2011) ...................................................579

DEFENDANT'S MOTION FOR DISCOVERY(FILED 11-01-2011) ...................582

DEFENDANT'S SUPPLEMENTAL MOTION FOR
DISCOVERY(FILED 11-01-2011)...........................................................................589

MOTION PRECLUDE THE DEATH PENALTY AS A
SENTENCING OPTION AND DECLARE ART. 37.071
UNCONSTITIONAL(FILED 11-01-2011) ...............................................................601

MOTION TO PRECLUDE THE DEATH PENALTY AS A
SENTENCING OPTION OR IN THE ALTERNATIVE TO QUASH
THE INDICTMENT.....AND REQUESTS TO VOIR
DIRE/REQUESTED INSTRUCTIONS/MOTIONS IN LIMINE,
RELATED TO CLAIMS IN THIS MOTION(FILED 11-01-2011).......................608

STATE'S MOTION FOR DEFENDANT TO DISPLAY TATOOS
FOR PHOTOGRAPHS(FILED 11-02-2011) .............................................................632

V.4
NOTICE OF INTENT TO USE DEFENDANT'S RECORDED
STATEMENT(FILED 11-02-2011)............................................................................634

MOTION IN LIMINE NUMBER ONE(FILED 11-02-2011)...............................639

STATE'S MOTION IN LIMINE NUMBER TWO(FILED 11-02-
2011) ................................................................................................................................643

INDEX
F45059
PAGE 9
CON'T.

MOTION IN LIMINE NUMBER THREE(FILED 11-02-2011) .........................................646

MOTION ORDER FOR APPOINTMENT OF DEFENSE
EXPERT(FILED 11-03-2011).........................................................................................648

MOTION TO PRECLUDE TESTIMONY ABOUT VIOLENT ACTS
BY THIRD PARTIES IN TDCJ(FILED 11-14-2011) ..............................................651

MOTION TO PRECLUDE THE DEATH PENALTY AS A
SENTENCING OPTION(FILED 11-14-2011).............................................................662

ORDER ALLOWING DEFENSE EXPERT TO INTERVIEW
DEFENDANT(FILED 11-18-2011) ...............................................................................676

ORDER APPOINTING DAVID M. PATIN, JR. ATTORNEY AT
LAW(FILED 11-21-2011) ...............................................................................................677

STATE'S FIRST AMENDED NOTICE OF INTENT TO
INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS(FILED
11-28 2011).......................................................................................................................678

STATE'S THIRD AMENDED WITNESS LIST(FILED 11-20-2011) ...............................702

STATE'S NOTICE OF RECORDED ORAL AND WRITTEN
STATEMENTS(FILED 12-02-2011).............................................................................717

MOTION TO COMPENSATE DEFENSE EXPERT(FILED 12-02-
2011) ..................................................................................................................................719

ORDER ALLOWING DEFENSE EXPERT TO INTERVIEW
DEFENDANT(FILED 12-02-2011) ...............................................................................722

MOT FOR TITLES AND DATES OF SEMINARS ON SECURING
STATEMENTS FROM SUSPECTS ATTENDED BY DETECTIVES
INVOLVED IN TAKING DEFENDANT'S STATEMENT(FILED 12-
06-2011)..............................................................................................................................723

V.5
CASE LAW REGARDING DEFENSE CONSTITUTIONAL
MOTIONS(FILED 12-09-2011).....................................................................................728

INDEX
F45059
PAGE 10
CON'T.

V.6
CASE LAW RUSSEAU V STATE,171 S.W. 3RD 871(FILED 12-09-2011) ........................................................................982

CASE LAW RAYFORD V STATE 125 S.W. 3RD 521(FILED 12-09-2011) ........................................................................996

CASE LAW RENTERIA V STATE 206 S.W. 3RD 689(FILED 12-09-2011) ........................................................................1008

CASE LAW SONNIER V STATE 913 S.W.2ND 511(FILED 12-09-2011) ........................................................................1029

WESTLAW S.W. 3RD 2010(FILED 09-12-2011) ........................................1042

CASE LAW RESENDIZ V STATE 112 S.W. 3RD 541(FILED 12-09-2011) ........................................................................1049

CASE LAW TAB #43 (FILED 12-09-2011) ........................................1062

CASE LAW TAB #42(FILED 12-09-2011) ........................................1072

V.7
WESTLAW 74 S.E. 3D 868 (FILED 12-09-2011) ........................................1194

CASE LAW TAB #27 (FILED 12-09-2011) ........................................1203

CASE LAW TAB #28 (FILED 12-09-2011) ........................................1278

CASE LAW TAB #31 (FILED 12-09-2011) ........................................1328

V.8
CASE LAW TAB #40 (FILED 12-09-2011) ........................................1375

CASE LAW TAB #41 (FILED 12-09-2011) ........................................1506

V.9
STATE'S SECOND AMENDED NOTICE OF INTENT TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS(FILED 12-19-2011).................................................................................1582

INDEX
F45059
PAGE 11
CON'T.

STATE'S FOURTH AMENDED WITNESS LIST(FILED 12-19-2011) ................................................................................1607

SUPPLEMENTAL MOTION FOR PRODUCTION OF DOCUMENTS RELEVANT TO UNDER-REPRESENTATION OF COGNIZABLE GROUPS IN THE GRAND JURY IN JOHNSON COUNTY(FILED 12-21-2011)...............................................1623

DEFENDANT'S PRELIMINARY LIST OF EXPERTS(FILED 12-27-2011) ................................................................................1628

AFFIDAVIT OF MEDICAL RECORDS(FILED 12-28-2011) ............................................1634

LETTER TO ATTORNEYS FROM MARTIN STRAHAN(FILED 12-28-2011).......................................................................................1637

NOTICE OF BUSINESS RECORD FILING(FILING 12-28-2011)....................1639

NOTICE OF BUSINESS RECORD FILING(12-29-2011).................................1640

LETTERS TO MR HEISKELL/GREG WESTFALL FROM LARRY CHAMBLISS(FILED 12-29-2011) .........................................................1646

STATE'S FIFTH AMENDED WITNESS LIST(FILED `12-30-2011)................................1648

LETTER TO MR. HEISKELL FROM LARRY CHAMBLISS(FILED 12-30-2011) ........................................................1665

LETTER TO MR. WESTFALL FROM LARRY CHAMBLISS(FILED 12-30-2011) ........................................................1666

STATE'S THIRD AMENDED NOTICE OF INTENT TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS(FILED 01-04-2012)........................................................................................1667

STATE'S FIRST AMENDED EXPERT WITNESS LIST(FILED 01-04-2012).......................................................................................1694

STATE'S SIXTH AMENDED WITNESS LIST (FILED 01-04-2012)...............................1702

INDEX
F45059
PAGE 12
CON'T.

ORDER MOTION TO HOLD UNCONSTITUTIONAL TEX CODE CRIMINAL PROC ACT 37.071 SEC 2(E) AND FOR FAILURE (TAB 3)...(FILED 01-05-2012) ................................................1720

ORDER ON MOTION TO DECLARE ART. 37.071 SS 2(B) (1) OF THE CODE OF CRIMINAL PROCEDURE UNCONSTITUTIONAL(TAB 4) (FILED 01-05-2012).......................1721

ORDER ON MOTION PRECLUDE THE DEATH PENALTY AS A SENTENCING OPTION AND DECLARE ARTICLE 37.071 UNCONSTITUTIONAL(TAB 10)...(FILED 01-05-2012).......................1722

ORDER ON MOTION TO HOLD UNCONSTITUTIONAL TEX. CODE CRIM. PROC ART 37.071 SEC 2(E) AND F-BURDEN OF PROOF(TAB 11)(FILED 01-05-2012) ......................................1723

ORDER ON MOTION TO ALLOW ART 37.071 SS 2(E) AND (F) OF THE CODE OF CRIMINAL PROCEDURE UNCONSTITUTIONAL(FUTURE DANGER ISSUE) (TAB 13)(FILED 01-05-2012)..............................................................1724

ORDER ON MOTION TO ALLOW THE DEFENSE TO CLOSE ARGUMENTS ON MITIGATION(TAB 23) (FILED 01-05-2012) ...................1726

ORDER ON MOTION TO IMPANEL SEPARATE JURY FOR GUILT/INNOCENCE AND PENALTY PHASE OF CAPITAL TRIAL(FILED (TAB 24)(FILED 01-05-2012)........................................1727

ORDER ON MOTION TO PRECLUDE THE OFFER OF EVIDENSE OF EXTRANEOUS OFFENCES(RING VS. ARIZONA)(FILED 01-05-2012)..............................................1728

ORDER TO PRECLUDE THE DEATH PENALTY AS A SENTENCING OPTION AND DECLARE ART 37.071 UNCONSTITUTIONAL ALTERNATIVELY QUASH INDICTMENT AND ALTERNATIVELY INSTRUCT JURY..(TAB 27)(FILED 01-05-2012)..............................................................1729

ORDER ON DEF'S MOTION TO EXCLUDE VICTIM IMPACT/CHARACTER EVIDENCE IN ABSENCE OF SPECIFIC LEGISLATIVE AUTHORITY AND PROCEDURES..(TAB 28)(FILED 01-05-2012) ..............................................1730

INDEX
F45059
PAGE 13
CON'T.

ORDER ON MOTION TO PRECLUDE THE DEATH PENALTY
AS A SENTENCING OPTION(SELECTION OF DEATH PENALTY
CASES) (TAB 29) (FILED 01-05-2012)..................................................1731

ORDER ON MOTION TO PRECLUDE THE DEATH PENALTY
AS A SENTENCING OPTION(TAB 30)(FILED 01-05-2012)............................1732

MOTION TO PRECLUDE THE DEATH PENALTY AS A
SENTENCING OPTION(TAB 31)(FILED 01-05-2012)........................1733

ORDER ON MOTION TO PRECLUDE PROSECUTION FROM
SEEKING THE DEALTH PENALTY(TAB 32)(FILED 01-05-2012) ...............1734

ORDER ON MOTION TO FIND THE DEATH PENALTY IN THE
STATE OF TEXAS IS UNCONSTITUTIONAL...(TAB 34)(FILED
01-05-2012)...................................................................................1735

ORDER ON MOTION TO DECLARE THE DEATH PENALTY
UNCONSTITUTIONAL BASED ON TEXAS LETHAL INJECTION
PROTOCOL...(TAB 35)(FILED 01-05-2012) ........................................1736

ORDER ON MOTION FOR APPOINTMENT REQUIRE(FILED 01-
05-2012)........................................................................................1737

ORDER ON MOTION FOR EQUAL ACCESS TO BACKGROUND
INFORMATION ON PROSPECTIVE JURORS(FILED 01-05-2012).............1738

ORDER ON MOTION TO PRECLUDE THE DEATH PENALTY
DUE TO THE GRAND JURY'S FAILURE TO ALLEGE IN THE
INDICTMENT(TAB 41)(FILED 01-05-2012).........................................1739

MOTION TO ALLOW DEFENDANT TO APPEAR AT JURY
SELECTION TRIAL IN CIVILIAN CLOTHES AND FUNDS
FOR SUCH SUITABLE CTROOM ATTIRE (FILED: 01-05-
2012) ............................................................................................1740

MOTION TO REQUIRE THE PROSECUTION TO RESPOND IN
WRITING TO EVERY WRITTEN MOTION FILED BY
THE DEFENSE (FILED: 01-05-2012)...........................................1741

ORDER ON MOTION TO PRESERVE FILING OF ADDITIONAL
MOTIONS (FILED: 01-05-2012) ................................................1742

INDEX
F45059
PAGE 14
CON'T

ORDER ON MOTION FOR LIMITED DAILY TRANSCRIPTS (FILED: 01-05-2012)................................................................................1743

ORDER ON MOTION TO DECLARE THE CAPITAL SENTENCING STATUTE UNCONSTITUTIONAL (FILED: 01-05-2012) ........................1744

ORDER ON MOTION TO PRECLUDE THE DEATH PENALTY AS A SENTENCING OPTION (FILED: 01-05-2012) ...........................................1745

FINDINGS OF FACT AND CONCLUSIONS OF LAW ON AN ELECTRONICALLY RECORDED ORAL STATEMENT AND ORDER DENYING MOTION TO SUPPRESS (FILED: 01-09-2012)...............................................................................................1746

FINDINGS OF FACT AND CONCLUSIONS OF LAW ON WRITTEN STATEMENTS AND ORDER DENYING  MOTION TO SUPPRESS (FILED: 01-09-2012)....................................................1749

STATE'S SEVENTH AMENDED WITNESS LIST (FILED: 01-10-2012).......................1751

STATE'S FOURTH AMENDED NOTICE OF INTENT TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS (FILED: 01-10-2012) .........................................................................................................1769

STATE'S MOTION FOR JURY SHUFFLE (FILED: 01-10-2012)....................................1796

V.10
ORDER APPOINTING DEFENSE JURY CONSULTANT EXPERT (FILED: 01-12-2012).........................................................................1797

DEPUTY REPORTER STATEMENT (FILED: 01-25-2012)............................................1798

STATE'S EIGHTH AMENDED WITNESS LIST (FILED: 01-25-2012)...........................1799

STATE'S FIFTH AMENDED NOTICE OF INTENT TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS (FILED: 01-25-2012) .........................................................................................................1818

LETTER FROM MARTIN STRAHAN TO MR. GREG WESTFALL CONCERNING BUSINESS RECORDS (FILED: 02-02-2012).................1846

INDEX
F45059
PAGE 15
CON'T.
LETTER FROM MARTIN STRAHAN TO MR MIKE HEISKELL
        CONCERNING BUSINESS RECORDS (FILED: 02-02-2012) .................1847

STATE'S SECOND AMENDED EXPERT WITNESS LIST (FILED: 02-06-
        2012) .............................................................................................1848

STATE'S NINTH AMENDED WITNESS LIST (FILED: 02-06-2012) ............................1853

STATE'S SIXTH AMENDED NOTICE OF INTENT TO INTRODUCE
        EVIDENCE OF EXTRANEOUS MATTERS (FILED: 02-06-
        2012) .............................................................................................1872

STATE'S THIRD AMENDED EXPERT WITNESS LIST (FILED: 02-07-
        2012) .............................................................................................1900

STATE'S TENTH AMENDED WITNESS LIST (FILED: 02-07-2012) ...........................1905

STATE'S ELEVENTH AMENDED WITNESS LIST (FILED: 02-15-2012) ...................1924

STATE'S TWELVE AMENDED WITNESS LIST (FILED: 02-22-2012).........................1943

STATE'S SEVENTH AMENDED NOTICE OF INTENT TO INTRODUCE
        EVIDENCE OF EXTRANEOUS MATTERS (FILED: 02-22-
        2012) .............................................................................................1962

DEFENDANT'S MOTION FOR A ONE MONTH CONTINUANCE OF
        TRIAL (FILED: 02-23-2012).......................................................1990

DEFENDANT'S MOTION TO CAUSE THE STATE TO PROVIDE AN
        ITEMIZED LIST OF ALL RESOURCES EXPENDED IN
        PROSECUTING THIS DEATH PENALTY CASE (FILED:
        02-24-2012).....................................................................................1994

STATE'S THIRTEENTH AMENDED WITNESS LIST (FILED: 02-24-
        2012) .............................................................................................2027

STATE'S MOTION IN LIMINE (FILED: 02-27-2012).......................................................2046

V.11
AGREED INSTRUCTION TO THE JURY (FILED: 02-29-2012) ...................................2049

CHARGE OF THE COURT-1ST DRAFT (FILED: 03-08-2012) .......................................2050

INDEX
F45059
PAGE 16
CON'T.

CHARGE OF THE COURT-GUILTY/INNOCENCE (FILED: 03-08-2012) ..................................................................................................................2059

STATE'S SUPPLEMENTAL WITNESS LIST (FILED: 03-08-2012) ................................2070

STATE'S SUPPLEMENTAL 37.071 NOTICE (FILED: 03-08-2012) ................................2072

NOTE FROM THE JURY MARKED SAME DAY (FILED: 03-09-2012) ........................2074

CHARGE OF THE COURT-GUILT/INNOCENCE (FILED: 03-09-2012) ....................2075

ORDER ALLOWING EXAMINATION OF DEFENDANAT (FILED: 03-09-2012

NOTE FROM THE JURY MARKED SAME DAY (FILED: 03-09-2012) ........................2087

ORDER ALLOWING DR. NATALIE NOVICK BROWN TO INTERVIEW DEFENDANT MARK ANTHONY SOLIZ (FILED: 03-16-2012) ..................................................................................................................2091

DEPUTY REPORTER STATEMENT (FILED: 03-19-2012) .............................................2092

DEPUTY REPORTER STATEMENT (FILED: 03-19-2012) .............................................2093

DEFENDANT'S REQUESTED SPECIAL JURY INSTRUCTION IN PUNISHMENT(MITIGATION) (FILED: 03-22-2012) ................................2094

DEFENDANT'S REQUESTED SPECIAL JURY INSTRUCTION IN PUNISHMENT(SUFFICIENT) (FILED: 03-22-2012) ................................2096

DEFENDANT'S REQUESTED SPECIAL JURY INSTRUCTION IN PUNISHMENT(DUTY TO CONSULT AND NEED FOR UNANIMITY (FILED: 03-22-2012) ................................................................2098

DEFENDANT'S REQUESTED SPECIAL JURY INSTRUCTION IN PUNISHMENT(WARRANT) (FILED: 03-22-2012) ....................................2101

DEFENDANT'S REQUESTED SPECIAL JURY INSTRUCTION IN PUNISHMENT(CIRCUMSTANCES) (FILED: 03-22-2012) ....................2103
INDEX

F45059
PAGE 17
CON'T.

DEFENDANT'S REQUESTED SPECIAL JURY INSTRUCTION IN
      PUNISHMENT(MORAL) (FILED: 03-22-2012)..........................................2105

DEFENDANT'S REQUESTED SPECIAL JURY INSTRUCTION IN
      PUNISHMENT(PERSONAL) (FILED: 03-22-2012) ...................................2107

DEFENDANT'S REQUESTED SPECIAL JURY INSTRUCTION IN
      PUNISHMENT(CHARACTER) (FILED: 03-22-2012) ...............................2109

DEFENDANT'S REQUESTED SPECIAL JURY INSTRUCTION IN
      PUNISHMENT(BACKGROUND) (FILED: 03-22-2012)............................2111

DEFENDANT'S REQUESTED SPECIAL JURY INSTRUCTION IN
      PUNISHMENT(SOCIETY) (FILED: 03-28-2012).......................................2113

DEFENDANT'S REQUESTED SPECIAL JURY INSTRUCTION IN
      PUNISHMENT(SOCIETY) (FILED: 03-22-2012).......................................2115

DEFENDANT'S REQUESTED SPECIAL JURY INSTRUCTION IN
      PUNISHMENT(VIOLENCE) (FILED: 03-22-2012)....................................2117

DEFENDANT'S REQUESTED SPECIAL JURY INSTRUCTION IN
      PUNISHMENT(CRIMINAL ACTS) (FILED: 03-22-2012) ........................2119

DEFENDANT'S REQUESTED SPECIAL JURY INSTRUCTION IN
      PUNISHMENT(PROBABILTY) (FILED: 03-22-2012) ..............................2121

DEFENDANT'S REQUESTED SPECIAL JURY INSTRUCTION IN
      PUNISHMENT(FUTURE DANGEROUSNESS) (FILED: 03-
      22-2012)......................................................................................................2123

CHARGE TO PUNISHMENT (FILED: 03-22-2012) .........................................2125

JUROR NOTES (FILED: 03-23-2012) ..............................................................2133

INTERVIEW-FT WORTH POLICE DEPARTMENT (FILED: 03-23-2012)..................2135

INFO TO JAILER (FILED: 03-23-2012) ...........................................................2193

INDEX
F45059
PAGE 18
CON'T.

TRIAL COURT CERTIFICATION OF DEFENDANT'S RIGHT TO
      APPEAL (FILED: 03-23-2012)..........................................................2194

JUDGMENT (FILED: 03-26-2012)..............................................................2195

COMMITMENT (FILED: 03-23-2012).........................................................2200

ORDER AND NOTICE (FILED: 03-23-2012)...............................................2201

V.12
EVIDENCE INVENTORY FORM (FILED: 03-29-2012).................................2206

AFFIDAVIT-MICHAEL P. HEISKELL (FILED: 03-30-2012) ........................2213

INFORMATION TO JAILER (FILED: 04-04-2012) .......................................2216

CLERKS EXHIBIT LIST FOLDER FOR STATE AND DEFENSE (FILED:
      04-04-2012)..............................................................................2217

CRIMINAL DOCKET SHEET (FILED: 04-04-2012)....................................2250

ORDER APPOINTING COUNSEL FOR THE APPEAL AND ORDER FOR
      COURT REPORTER TO PREPARE REPORTER'S
      RECORD (FILED: 04-09-2012) ................................................2308

NOTICE FROM CT. OF CRIMINAL APPEALS-APPOINTMENT OF
      BRAD LEVERSON (FILED: 04-11-2012) ...................................2310

LETTER FROM CT OF CRIMINAL APPEALS-PROHIBITS
      DISCLOSURE OF PERSONAL INFORMATION
      CONTAINED IN JUROR QUESTIONAIRE (FILED: 04-11-
      2012) ......................................................................................2311

MOTION FOR NEW TRIAL (FILED: 04-12-2012)..........................................2312

REQUEST FOR CLERK'S RECORD (FILED: 04-12-2012) .............................2318

REQUEST FOR HEARING ON MOTION FOR NEW TRIAL (FILED: 04-
      12-2012)..................................................................................2319

REQUEST FOR COURT REPORTER RECORD (FILED: 04-20-2012) ........................2320

INDEX
F45059
PAGE 19
CON'T.

REQUEST FOR CLERK'S RECORD-AMENDED (FILED: 04-20-2012) .......................2321

MOTION FOR SUBSTITUTION AND TRANSFER OF EVIDENCE
(FILED: 04-24-2012).......................................................................................2322

ORDER (FILED: 04-21-2012) ..............................................................................2326

LETTER RECEIVED FROM J. R. KIRKPATRICK TO JUDGE
BOSWORTH (FILED: 05-02-2012)..............................................................2328

REVISED DOCKET BOOK REPORT (FILED:          ) ......................................2330

CD DOCUMENT INDEX WITH CD ATTACHED (FILED:          ) ..................................2382

CLERK'S CERTIFICATE (FILED:          )........................................................................2383

CAUSE NO.  F-45059

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 413th JUDICIAL |
| | § | |
| VS. | § | DISTRICT COURT OF |
| | § | |
| MARK ANTHONY SOLIZ | § | JOHNSON COUNTY, TEXAS |

## ORDER APPOINTING DEFENSE JURY CONSULTANT EXPERT
### (UNDER SEAL)

On this ___/2___ day of January 2012, came to be considered request of Defense Counsel, Michael P. Heiskell, to appoint a jury consultant expert to assist in the defense of this Capital Murder prosecution by reviewing the jury questionnaires in this case for the benefit of defense counsel.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED, that Bret Dillingham be appointed as the expert witness in this cause. The court is authorizing a budget for Mr. Dillingham's services to be $2,500.00.

IT IS FURTHER ORDERED that this Order be SEALED.

SO ORDERED this the __12__ day of January 2012.

_____
Judge Presiding

FILED
2012 JAN 12  AM 8: 54
DAVID R. LLOYD
DISTRICT CLERK
BY_____

1797

F45059
CAUSE NO. ~~P44798~~

STATE OF TEXAS                  ) IN THE DISTRICT COURT
                                )
                                )
v.                              ) JOHNSON COUNTY, TEXAS
                                )
                                )
MARK ANTHONY SOLIZ              ) 413TH DISTRICT COURT

### *DEPUTY REPORTER STATEMENT*

Pursuant to Rule 13.5 of the *Texas Rules of Appellate Procedure*, Appointing Deputy Reporter, I hereby certify the following:

A. The judge of the above-named trial court designated the undersigned as a deputy reporter in the above cause.

B. I, the undersigned deputy reporter, worked the following date in the above court on the above case.

SIGNED on this the 23rd day of January, 2012.


Jonna Greenwood, CSR
2628 Jewett Rd.
Burleson, TX 76028
(817) 800-1625
CSR #8300   Expires: 12/31/2013



FILED
A.M. _1:45_ P.M.

JAN 2 5 2012

DAVID R. LLOYD
District Clerk, Johnson County, Texas
BY CATHERINE LASATER DEPUTY

1798

CAUSE NO. F45059

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 413ᵗʰ DISTRICT COURT |
| | § | |
| VS. | § | OF |
| | § | |
| MARK ANTHONY SOLIZ | § | JOHNSON COUNTY, TEXAS |

## STATE'S EIGHTH AMENDED WITNESS LIST

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW** the State of Texas represented by her Criminal District Attorney of Tarrant County, Texas, and files this **STATE'S SEVENTH AMENDED WITNESS LIST.** All address and phone numbers not specifically listed below are contained in the State's file that is been made available to the attorney of record for the Defendant.

A. **FORT WORTH POLICE DEPARTMENT**
350 W. BELKNAP ST.
FORT WORTH, TEXAS 76102

1.   OFF. J ABRAMS
2.   OFF. J ALANIZ
3.   OFF. A ALLCON
4.   OFF. ALLEN
5.   OFF ANDREWS
6.   OFF. L AVERY
7.   OFF. R BALLARD
8.   SGT. R. BATES
9.   DET. T BOETCHER
10.  OFF. JG BRADFORD
11.  OFF. D BRUCE
12.  OFF. B BRUMLEY
13.  OFF. BUNNY BUTH
14.  OFF BLUNK
15.  OFF. A CARDWELL
16.  OFF. CAVETT
17.  DET. J CEDILLO
18.  OFF. ERIC CHARLES
19.  OFF. ROBERT COSTA

STATE'S EIGHTH AMENDED WITNESS LIST - PAGE 1

FILED
2012 JAN 25 AM 8: 49
DAVID LLOYD
DISTRICT CLERK
JOHNSON COUNTY

20. OFF. JR COX
21. OFF TJ CRABILL
22. OFF. B DAVIS
23. SGT. DENA
24. OFF BRIANNE DIBLEY
25. OFF. F DISSINGER
26. OFF TC DUNN
27. THOMAS EKIS
28. SGT. ELGIN
29. OFF. MANUEL ELIZARRARAZ
30. OFF JA FARAH
31. OFF. W FIGUEROA
32. OFF JC FRIAS
33. DET. HL GIBBS
34. OFF. J GIPSON
35. OFF. RD GILFOUR
36. OFF. GD GILLIAM
37. OFF. G. GUTIERREZ
38. OFF. D. HALMAGEAN
39. OFF RUSSELL HAYDEN
40. OFF. EV HERNANDEZ
41. OFF. M. HERNANDEZ
42. OFF JG HOLMAN
43. OFF. J HOPPER
44. OFF. S HOWZE
45. OFF. HYDEN
46. OFF. P HYDER
47. OFF SA IKER
48. SGT. B JAMISON
49. OFF. AM JAY
50. OFF.J JOHNSON
51. OFF. C JONES
52. OFF. K JUDD
53. OFF KEADLE
54. OFF SARAH KEENAN
55. OFF. KERRY KIMBALL
56. OFF. LARRY LANCE
57. OFF. G LARA
58. DET. T LAWRENCE
59. OFF JL LAWSON
60. OFF. T LEE
61. SUNDAYE LOPEZ
62. OFF. G MEDRANO
63. OFF. MORRISON

STATE'S EIGHTH AMENDED WITNESS LIST - PAGE 2

64.    JENNIFER NOLLKAMPER
65.    DET.OCHOA
66.    DET. D PAINE
67.    OFF. E PATE
68.    DET. S PHILLIPS
69.    OFF. RJ PRESNEY
70.    OFF. A PRICE
71.    OFF. M RAMIREZ
72.    DET. B RANDOLPH
73.    DET. EB RAYNSFORD
74.    SGT REYNOLDS
75.    DET. JT RHODEN
76.    OFF DK RHONE
77.    OFF. M RIDDLE
78.    OFF. K ROBERTSON
79.    OFF WT ROBINSON
80.    OFF. D LEWIS
81.    H. GONZALEZ-PINEDA- 911 OPERATOR
82.    MANDY RIDDLE-FW POLICE COMMUNICATIONS
83.    OFF. LE ELGIN
84.    OFF. RG BROTHERTON
85.    OFF. EVERETT
86.    OFF. DORSEY
87.    J. SALAZAR
88.    OFF. W. SHOW
89.    OFF JM SIMMS
90.    CAPT. SKIDMORE
91.    OFF. A STAGGS
92.    DET JD STANFORD
93.    DET. JG STEELE
94.    OFF. D SULLIVAN
95.    OFF JD TATE
96.    OFF JC TAPIA
97.    OFF. R THOMPSON
98.    OFF. J THORNTON
99.    OFF. R TOWNS
100.   DET. L TRACY
101.   OFF. D UKLE
102.   DET. J VARNON
103.   OFF. T VOA
104.   OFF. D WASHINGTON
105.   OFF. WEBB
106.   OFF. CHRIS WELLS
107.   OFF. JG WILSON

STATE'S EIGHTH AMENDED WITNESS LIST - PAGE 3

1801

108.   DET CE WISE
109.   OFF. DARRYL W.WOODY
110.   OFF. K MCMURTREY
111.   OFF. SHEERAN
112.   OFF. GOSSETT
113.   OFF. OWINGS
114.   OFF. TIGRETT
115.   OFF. LA SCHERERN
116.   DET. K. SULLIVAN
117.   OFF WT WATKINS
118.   CAMI WIMBERLEY
119.   OFF. TYLER
120.   STEPHANIE POTTER
121.   LAURA MARTINEZ
122.   CAROLINE FRALIA

## B. CIVILIANS

1.   SAMEER ABDEL-JABER
     FORT WORTH, TEXAS
2.   SAMMY ABU-LUGHOD
     FORT WORTH, TEXAS
3.   RON ALLEY
     FORT WORTH, TEXAS
4.   NARCISO AMADOR
     FORT WORTH, TEXAS
5.   JAMES EDWARD ANDREWS
     FORT WORTH, TEXAS
6.   JESSICA BALDERAS
     GODLEY, TEXAS
7.   JESUS BELTRAN
     FORT WORTH, TEXAS
8    BRIAN BROWN
     BURLESON, TEXAS
9.   DR. NATALIE BROWN
     FORT WORTH, TEXAS
10.   RODNEY BROWN
     FORT WORTH, TEXAS
11.   MAXIMINO CHAVEZ-SOTO
     FORT WORTH, TEXAS
12.   V. CIRCELLI
     FORT WORTH,TEXAS
13.   CHELSEA CIRCELLI
     FORT WORTH, TEXAS
14.   BRENDA COFER

1802

GODLEY, TEXAS

15. FELIPE CONTRERAS
    FORT WORTH, TEXAS
16. SAMUEL COX
    FORT WORTH, TEXAS
17. CHRISTOPHER DAVILA
    GRANBURY, TEXAS
18. BEN DAVIS
    GODLEY, TEXAS
19. KILA DAVIS
    GODLEY, TEXAS
20. CLAYTON DAVIS
    GODLEY, TEXAS
21. BARRY DICKEY
    MANSFIELD, TEXAS
22. KENNY DODGIN
    WATAUGA, TEXAS
23. ARNOLDO DOMINGUEZ
    FORT WORTH, TEXAS
24. FERNANDO DOMINGUEZ
    FORT WORTH, TEXAS
25. MIGUEL DOMINGUEZ
    FORT WORTH, TEXAS
26. EDDIE DURAN
    FORT WORTH, TEXAS
27. ELIZABETH ESTRADA
    TARRANT COUNTY JAIL
28. A. EVANS
    FORT WORTH, TEXAS
29. CHADLEY FOSTER
    FORT WORTH, TEXAS
30. MARCY GIRTON
    1300 ROSEWOOD DRIVE
    COLUMBIA, SOUTH CAROLINA
31. ARTURO GONZALES
    TARRANT COUNTY JAIL
32. JOSE GONZALES
    FORT WORTH, TEXAS
33. STEPHANIE GRAY
    BENBROOK, TEXAS
34. VIVIANA GONZALES
    FORT WORTH, TEXAS
36. NABIL HILO
    FORT WORTH, TEXAS

STATE'S EIGHTH AMENDED WITNESS LIST - PAGE 5

37. DONATELLO HINKLE
    FORT WORTH, TEXAS
38. JOHN HINKLE
    FORT WORTH, TEXAS
39. JL HINOJOSA
    FORT WORTH, TEXAS
40. BARNEY B HOLLAND
    FORT WORTH, TEXAS
41. LACY HUNSUCKLE
    FORT WORTH, TEXAS
42. JEFFEREY T. KNOESEL
    FORT WORTH, TEXAS
43. RYAN LAMB
    FORT WORTH, TEXAS
44. NH LASEMAN
    CLEBURNE, TEXAS
45. LISA LEWIS
    FORT WORTH, TEXAS
46. WHITNEY LEWIS
    FORT WORTH, TEXAS
47. JAIMES LUCIANO
    FORT WORTH, TEXAS
48. JESUS LUNA
    FORT WORTH, TEXAS
49. LUIS LUNA
    FORT WORTH, TEXAS
50. THERESA MACHADO
    FORT WORTH, TEXAS
51. M. MAHARAZAN
    FORT WORTH, TEXAS
52. RICKY MALONE
    FORT WORTH, TEXAS
53. JERRY MARTIN
    BENBROOK, TEXAS
54. DIEGO MARTINEZ
    FORT WORTH, TEXAS
55. L. MARTINEZ
    FORT WORTH, TEXAS
56. YOLANDA MARTINEZ
    FORT WORTH, TEXAS
57. DOUGLAS MATA
    FORT WORTH, TEXAS
58. ROSIE MEDINA
    TARRANT COUNTY JAIL

STATE'S EIGHTH AMENDED WITNESS LIST - PAGE 6

59. RAMON MORALES
    FORT WORTH, TEXAS
60. JUSTIN MORRIS
    FORT WORTH, TEXAS
61. OLGA NAREZ
    FORT WORTH, TEXAS
62. ANDREAS NAVA
    FORT WORTH, TEXAS
63. MATHEW NAVARRO
    FORT WORTH
64. WALEED OBAID
    FORT WORTH, TEXAS
65. ERICA LEE ODONNELL
    FORT WORTH, TEXAS
66. DANIEL ORDONEZ
    FORT WORTH, TEXAS
67. MIRIAM OLIVAREZ
    DURANT, OK
68. PATRICIA PARSONS
    FORT WORTH, TEXAS
69. ROXANE PEREZ
    FORT WORTH, TEXAS
70. JUAN RAMIREZ
    FORT WORTH, TEXAS
71. MARIA RAMIREZ
    FORT WORTH, TEXAS
72. BRIANNA RAMIREZ
    FORT WORTH, TEXAS
73. MICHAEL RAMIREZ
    FORT WORTH, TEXAS
74. JAQUALINE RAMIREZ
    FORT WORTH, TEXAS
75. VERONICA RAMIREZ
    FORT WORTH, TEXAS
76. JOSE RAMOS
    TARRANT COUNTY JAIL
77. VINCE RANGEL
    FORT WORTH, TEXAS
78. MIRTHA REYES
    DALLAS, TEXAS
79. CATHY RICHARDSON
    TARRANT COUNTY JAIL
80. MARIA RIVERA
    FORT WORTH, TEXAS

STATE'S EIGHTH AMENDED WITNESS LIST - PAGE 7

81.  RICK RODEN
     GODLEY, TEXAS
82.  TARA RODEN
     GODLEY, TEXAS
83.  JUANA SALAS
     FORT WORTH, TEXAS
84.  ENRIQUE SAMANIEGO
     FORT WORTH, TEXAS
85.  JESSE SANCHEZ
     FORT WORTH, TEXAS
86.  ELVIA SILVA
     FORT WORTH, TEXAS
87.  JOSHUA SOLIS
     FORT WORTH, TEXAS
88.  JORGE TAMAYO
     FORT WORTH, TEXAS
89.  JOAN TREW
     FORT WORTH, TEXAS
90.  JAMIE VESSELL
     FORT WORTH, TEXAS
91.  LETICIA VILLEGAS
     FORT WORTH, TEXAS
92.  DARLENE WATSON
     BENBROOK, TEXAS
93.  WALTER LUTHER WATSON
     BENBROOK, TEXAS
94.  GLORIA SERRANO
     FORT WORTH, TEXAS
95.  MIKE ORTEGA
     FORT WORTH, TEXAS
96.  SANTOS RANGEL
     FORT WORTH, TEXAS
97.  SAMANTHA ESTRADA
     FORT WORTH, TEXAS
98.  PAUL CONTRERAS
     FORT WORTH, TEXAS
99.  EDDIE CONTRERAS
     FORT WORTH, TEXAS
100. DONNA SUE SOLIZ
     FORT WORTH, TEXAS
101. ARNOLD ZAMORA
     FORT WORTH, TEXAS
102. JUAN RAMIREZ
     FORT WORTH, TEXAS

103.  VERONICA GARCIA
      FORT WORTH, TEXAS
104.  BRIANNA RAMIREZ
      FORT WORTH, TEXAS
105.  MICHAEL RAMIREZ
      FORT WORTH, TEXAS
106.  MIRTHA REYES
      FORT WORTH, TEXAS
107.  TAMMY RAMOS
      FORT WORTH, TEXAS
108.  MONICA RAMOS
      FORT WORTH, TEXAS
109.  TERESA RAMOS
      FORT WORTH, TEXAS
110.  CLAYTON SMITH
      GODLEY, TEXAS
101.  MARY SMITH
      GODLEY, TEXAS
102.  SHARON SOLIZ-RANGEL
      FORT WORTH, TEXAS
103.  BRIAN MATTHEW BROWN
      FORT WORTH, TEXAS
104.  RILEY HAMPTON DAVIS
      GODLEY, TEXAS
105.  RHETT HARRISON DAVIS
      GODLEY, TEXAS
106.  ELLGIO CONTRERRAS
      KEENE, TEXAS
107.  MARY GALUS
      FORT WORTH, TEXAS
108.  RUBEN CISNEROS
      FORT WORTH, TEXAS
109.  KAREN MCMURTREY
      FORT WORTH, TEXAS
110.  HOWARD MCMURTREY
      FORT WORTH, TEXAS
111.  GENE TURNEY
      FORT WORTH, TEXAS
112.  RAUL SAENZ
      FORT WORTH, TEXAS
113.  MIKE ORTEGA
      FORT WORTH, TEXAS
114.  CATHERINE POLOMA
      FORT WORTH, TEXAS

STATE'S EIGHTH AMENDED WITNESS LIST - PAGE 9

1807

| | | |
|---|---|---|
| 115. | ANIL BHANTANA | |
| | FORT WORTH, TEXAS | |
| 116. | DANIEL ORDONEZ | |
| | FORT WORTH, TEXAS | |
| 117. | ROBERT VARGAS | |
| | FORT WORTH, TEXAS | |
| 118. | MR. MEEHAN | |
| | FORT WORTH, TEXAS | |
| 119. | BEATRIZ MEEHAN | |
| | FORT WORTH, TEXAS | |
| 120. | SYDNEY NAVARRO | |
| | FORT WORTH, TEXAS | |
| 121. | MARK PORTER | |
| | FORT WORTH, TEXAS | |

C. **JOHNSON COUNTY LAW ENFORCEMENT CENTER**
CLEBURNE, TEXAS

1. JOSE ARRIOLA
2. LT. DAVID BOGGESS
3. LT. BOUTWELL
4. ALLEN CARDENA
5. ARNOLD GRIFFIN
6. MICHAEL GOOD
7. SGT. LAURIE GUNTER
8. SHAWN HERNANDEZ
9. EUGENE HINDS
10. WARDEN JANICEK
11. CHIEF JOHNSON
12. TRAVIS JONES
13. MAJ. J. KELSEY
14. CHASE KINMAN
15. DANA KINNARD
16. RONNIE MCCOWAN
17. SGT. J. MEEKS
18. SGT. MOLINA
19. STEVEN PARRISH
20. CHRISTIAN PASCHAL
21. SHELLY PRESTON
22. GINGER PROCTOR
23. JASON PUGH
24. TIMOTHY PUTMAN
25. CORRECTIONS OFF. JUSTIN RALEIGH
26. JAMES RENFRO
27. RENEE SAMPLE
28. DAVID TURNER

STATE'S EIGHTH AMENDED WITNESS LIST - PAGE 10

1808

29.   JESSE TURNER
30.   WILSON WIMBERLY
31.   OFFICER PIERCE

D. **JOHNSON COUNTY SHERIFF'S OFFICE**
1102 E. KILPATRICK
CLEBURNE, TEXAS 76031
1.   SGT R BATES
2.   DET. BENNETT
3.   DET. D. BLANKENSHIP
4.   DEP. L CORWIN
5.   DET.T DALTON
6.   DEP. FORD
7.   CPT. T. FULLER
8.   LT. MIKE GAUDET
9.   DET. A GILREATH
10.  TINA HODNETT
11.  DEP. HOGAN
12.  LT. T JONES
13.  DEP. W. KETCHUM
14.   DET. J KNIFFEN
15.  DEP.K LINK
16.  DEP. M POOLE
17.  DEP. M POWELL
18.  PAULA REID
19.  LAURIE STOVALL
20.  DEP.TRUITT
21.  JW WALDRAN
22.  DET. K WRENN
23.  DET. L YOCHAM
24.  SHERIFF BOB ALFORD

E. **TARRANT COUNTY MEDICAL EXAMINER'S OFFICE**
200 FELIKS GWOZDZ PL.
FORT WORTH, TEXAS 76104
1.   DR. S. BAO
2.   KELLY BELCHER
3.   P. ELRASHID
4.   DR. MARC KROUSE
5.   MICHAEL MAYER
6.   DR. N. PEERWANI
7.   M. POLLARD
8.   ESTHER GUTIERREZ

STATE'S EIGHTH AMENDED WITNESS LIST - PAGE 11

1809

9.   DR. GARY SISLER
10.   T. SWAN
11.   MARK THOMPSON
12.   CAROLYN VAN WINKLE
13.   BILL WALKER
14.   DR. LLOYD WHITE
15.   ESTHER GUTIERREZ
16.   PAT EDDINGS
17.   DUSTY PYLE

F. **MANSFIELD POLICE DEPARTMENT**
1200 E. BROAD ST.
MANSFIELD, TEXAS 76063
1.   DET. BLANSIT
2.   MAX COURTNEY
3.   R. DENNING
4.   R. HASH
5.   M. MALCOLM
6.   B. MOORE

G. **BENBROOK POLICE DEPARTMENT**
1.   OFF. D BYRD
2.   DET. LEE
3.   DET. J LEWELLEN
4.   LT. D MARTIN
5.   OFF. T MILLER
6.   C. MONTGOMERY
7.   DET. C ROSS
8.   OFF. D WALLACE

H. **UNT**
UNT CENTER FOR HUMAN IDENTIFICATION
3500 CAMP BOWIE BLVD.
FORT WORTH, TEXAS 76107
1    CHRISTINA CAPT
2.   FARAH PLOPPER
3.   JENNIFER URBINA
4.   RUTH R DUNAHOO
5.   ANNETTA MILLER
6.   KELLY NELSON

STATE'S EIGHTH AMENDED WITNESS LIST - PAGE 12

I. **INTEGRATED FORENSIC LABS**
901 CLINIC DRIVE, STE. D110
EULESS, TEXAS 76039
    1.    LANNY EMMANUEL
    2.    PAUL SLOCUM


J. **DPS CRIME LABORATORY**
GARLAND, TEXAS
    1.    ALLISON HEARD
    2.    TRISHA KACER
    3.    AMBER MOSS

K. **TARRANT COUNTY COMMUNITY SUPERVISION**
    1.    PAT HUSTON
    2.    LEANNA JUDD
    3.    R. SALINAS
    4.    DAVIS CHANDLER

L. **MENTAL HEALTH PROFESSIONALS**
    1.    JOHN LASETER, PHD
        11625 CUSTER ROAD #110-242
        FRISCO, TEXAS 76102
    2.    DR. J RANDALL PRICE
        PRICE, PROCTOR & ASSOCIATES
        11882 GREENVILLE AVE, SUITE 107
        DALLAS, TEXAS 75243
    3    DR.TIMOTHY PROCTOR
        PRICE, PROCTOR & ASSOCIATES
        11882 GREENVILLE AVE, SUITE 107
        DALLAS, TEXAS 75243
    4.    DR. ROGER BURNS
        FORT WORTH, TEXAS
    5.    DR. PREMA MANJUMATH
        FORT WORTH, TEXAS
    6.    DR. DONNA ABBOT
        DALLAS, TEXAS
    7.    PENELOPE ROSEN- BUCKNER
    8.    DAVID CHANDLER- BUCKNER
    9.    DR. CHRISTINA REED-
        PRICE, PROCTOR & ASSOCIATES
        11882 GREENVILLE AVE, SUITE 107
        DALLAS, TEXAS 75243
    10.    DR. DAVID SELF


STATE'S EIGHTH AMENDED WITNESS LIST - PAGE 13

1811

FLINT, TEXAS

M. **TEXAS DEPARTMENT OF CORRECTIONS**
1. A.P. MERILLAT
2. BRAD LIVINGSTON
3. VANESSA JONES
4. OFF. L QUICK
5. OFF. JAMES JOHNSON
6. OFF. W.D. JOCK
7. OFF. D. KIDD
8. OFF. M. WILLARD
9. OFF. HOLMAN
10. RACHEL E WILLIAMS
11. OFF. C. SHIRAH
12. OFF. H. YARBROUGH
13. OFF. KAREN HENRY
14. OFF. HAROLD JOHNSON
15. OFF. A. HOLMAN
16. E. GARZA
17. R. GRANT
17. OFF. PETERS
18. OFF. L. WOFFORD
19. OFF. JERRY ROGERS
20. OFF. WINSTON YOUNG
21. OFF. E. CLEMMONS
22. SGT F. GUITIERREZ S.T.G.O.
23. OFF. BILLY CORNELL
24. OFF. I. BONNOR
25. OFF. JUDY HUGHES
26. OFF. W. CLIFFORD
27. OFF. B. THOMPSON
28. OFF. DT CREASON
29. OFF. M. BARNETT
30. OFF. C. WILLET
31. OFF. A GOBER
32. OFF. CATHERTON
33. STEVEN ROGERS
34. OFF. STERLIDO EDWARDS
35. OFF. G COUCH
36. OFF. D HOUSE
37. OFF. M BENNETT
38. INMATE EROS BROWN
39. INMATE JOHN O'DELL

40. INMATE WILLIE JENKINS
41. INMATE STEVEN MUSKOWITZ
42. EMIL GARZA
43. ROBERT GRANT
44. SGT. F. GUTIERREZ
45. SHARON DEFFERENT
46. B. SCROGGINS
47. J. WELDON
48. OFF. GIPSON

N. **RECORDS CUSTODIANS**
1. HAWK SECURITY
   BENBROOK, TEXAS
2. RENEE CANTON
   CASH AMERICA PAWN SHOPS
   2900 N. MAIN STREET
   FORT WORTH, TEXAS
2. ANDREA COTTRELL
   CASH AMERICA PAWN SHOPS
   FORT WORTH, TEXAS
4. JOHN TILLEY
   NORTHSIDE PAWN SHOP
   2609 N. MAIN STREET
   FORT WORTH, TEXAS
5. RECORDS CUSTODIAN
   A-I PAWN & JEWELRY
   4201 HEMPHILL ST. 1420 W BERRY
   FORT WORTH, TEXAS
6. RECORDS CUSTODIAN
   MOTEL 6
   3271 I-35W
   FORT WORTH, TEXAS 76106
7. RECORDS CUSTODIAN
   FORT WORTH FIRE DEPARTMENT
   FORT WORTH, TEXAS
8. RECORDS CUSTODIAN
   MEDSTAR
   FORT WORTH, TEXAS

O. **TEXAS RANGERS**
1. SGT. DON STONER
2. LT. CRAYTON MCGEE

P. **JOHN PETER SMITH**
1. DR. W. CRAWFORD

STATE'S EIGHTH AMENDED WITNESS LIST - PAGE 15

2.   LISA TEMPLE, RN.
3.   JUDY THOMAS
4.   DR. RAJESH RAMESH GANDHI
5.   DR.M RICHARDSON
6.   DR. POWELL KINNEY
7.   DR. SHERRY RUTH KONDZIELA
8.   DR. RJ WEDDEN
9.   AMANDA TICE, RN
10.  JANA PALMER, RN
11.  DR. JOSHUA PRATT
12.  DR. VERONICA WILLSON
13.  DR. CHARLOTTE WILLIAMS
14.  DR. DANIEL ZIEGLER
15.  DEBRA STUART, RN
16.  ALISA BILBREY, CST
17.  ERIC THOMPSON, RN
18.  S. GRIS WELL, RN

Q. **METRO PCS**
1.   RANDALL THOMPSON

R. **COLLEYVILLE POLICE DEPARTMENT**
1.   DET. KEVIN WALLING

S. **TDC PAROLE**
1.   CHRISTINA PROPES
2.   TIM LANGFORD
3.   MICHELLE KREGER
4.   BOB PURCELL
     DALLAS, TEXAS

T. **MAGISTRATES/JUDGES**
1.   THE HONORABLE SCOTT WISCH
     JUDGE, 372ND DISTRICT COURT
     TARRANT COUNTY, TEXAS
2.   THE HONORABLE EVERETT YOUNG
     JUDGE, 297TH DISTRICT COURT
     TARRANT COUNTY, TEXAS

U. **TARRANT COUNTY JAIL**
1.   STACI TURNER- RECORDS CUSTODIAN
2.   SGT. BLACK
3.   DEP. YANDELL
4.   DEP. RG ALMENDAREZ

STATE'S EIGHTH AMENDED WITNESS LIST - PAGE 16

5.  SGT. DUNHAM
6.  DEP. J PAULEY
7.  DEP. LAMBETH
8.  DEP. C BREWER
9.  SGT. R REYES
10. DEP. POTTS
11. OFF. R CURTIS
12. OFF. SIFUENTES
13. SGT. T BROWNING
14. DEP. R HART
15. DEP.J LHELM
16. DEP. PIERSON
17.  DEP. G PARRAMORE
18. LT. J RUCKER
19. JAMES BLASZAK
20. M. COX
21. E. BOWMAN
22. T. NOEL
23. E. GARZA
24. D. SCOTT
25. R. WARD
26. E. GRACIA
27. R. CASAREN
28. MR CUDE
29. E. HERRIAGE
30. P. BURKETT
31. C. WILLIAMS
32. CPL. RENDER
33. DEP MUHAMMAD
34. B. POCHE
35. DEP DAVIS
36. DEP SALAS
37. W. TAYLOR
38. B. NASH
39. SGT PILKINGTON
40. OFF C MERCHANT
41. DEP I A LOPEZ
42. DEP MJ TAYLOR
43. DEP ESTRADA

## V. **JUVENILE PROBATION**
1.  PO SALINAS

STATE'S EIGHTH AMENDED WITNESS LIST - PAGE 17

2. PO WHEAT
3. PO CASTOREN
4. PO B HAMPTON
5. PO CHARLES VERMERSCH
6. PO PAUL BROCK WAY
7. PO GUSTAFSON
8. PO LEANNA JUDD

W. **CHILD PROTECTIVE SERVICES**
1. HEIDI SCHMIDT
2. PENELOPE ROSEN
3. ROBIN WELCH
4. JACKIE CUANZZO

X. **TEXAS HEALTH SOUTH**
1. DR. STEVEN RUSH

Y. **NEUROLOGIST**
1. DR. JORGE ROMERO

Respectfully submitted,

MARTIN M. STRAHAN
ASSISTANT DISTRICT ATTORNEY
JOHNSON COUNTY, TEXAS
PHONE (817) 556-6800
FAX (817) 556-6814
204 S. BUFFALO AVE., SUITE 209
CLEBURNE, TEXAS 76031
STATE BAR NO. 00797765

STATE'S EIGHTH AMENDED WITNESS LIST - PAGE 18

1816

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been sent by hand delivery to Michael Heiskell, Johnson, Vaughn & Heiskell, 5601 Bridge Street, Suite 220, Fort Worth, Texas 76102, fax (817)496-1102 and to Greg Westfall, Attorney at Law, 1400 W. Abram Street, Arlington, Texas 76013, fax (817) 274-9724 on this the 25th day of January, 2012.

MARTIN M. STRAHAN
ASSISTANT DISTRICT

STATE'S EIGHTH AMENDED WITNESS LIST - PAGE 19

CAUSE NO. F45059

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 413TH DISTRICT COURT |
| VS. | § | OF |
| MARK ANTHONY SOLIZ | § | JOHNSON COUNTY, TEXAS |

### STATE'S FIFTH AMENDED NOTICE OF INTENT TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the State of Texas, in the above numbered and styled cause and under TEX.

CODE CRIM. PRO. art. 37.071, 37.07(3)(g), CRIM. EVID. 404(B) and 609, presents this notice of

the State's intent to introduce evidence of extraneous matters.

### I.  Prior Juvenile Convictions

1.      On or about September 23, 1992, the Defendant committed the offense of Burglary of a Habitation in Tarrant County, Texas.  Said offense was filed in Cause Number 50608-J in the 323rd District Court of Tarrant County, Texas and later plead to the lesser included offense of Theft.

2.      On or about November 17, 1992, the Defendant was adjudicated and found to have engaged in the delinquent conduct of Theft in the 323rd District Court of Tarrant County, Texas in Cause Number 50608-J.

3.      On or about August 9, 1993 the Defendant's probation in Cause Number 50608-J in the 323rd District Court of Tarrant County, Texas was extended for one year until November 25, 1994.  Two other pending cases were dismissed in agreement for Defendant agreeing to have is probation extend for one year.

4.      On or about August 18, 1997, the Defendant Mark Anthony Soliz was placed on probation for the offense of Theft $1500-$20,000 in County Court at Law Number Three in Cause No. 321-70298-97 in Smith County, Texas.

### II.  Unadjudicated Juvenile Criminal Offenses

1.      On or about February 22, 1992, the Defendant committed the offense of Burglary of a

STATE'S FIFTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 1

1818

Coin-Operated Machine in Tarrant County, Texas.

2.      On or about July 16, 1992, the Defendant committed the offense of Attempted Burglary of a Motor Vehicle in Tarrant County, Texas.

3.      On or about October 20, 1992, the Defendant committed the offense of Burglary of a Habitation in Tarrant County, Texas. Restitution for the stolen property for the burglary was $4,388.72 with the victims being Karen and Howard McMurtrey. Items stolen in the burglary included a TV, VCR, jewelry and firearms. The firearms included a handgun, rifle and shotgun.

4.      On or about July 30, 1993, the Defendant committed the offense of Criminal Mischief $200 to $750 in Tarrant County, Texas.

5.      On or about July 31, 1993, the Defendant committed the offense of Criminal Mischief $20 to $200 in Tarrant County, Texas.

6.      On or about January 31, 1994, the Defendant committed the offense of Burglary of a Building in Tarrant County, Texas.

7.      On or about January 1, 1996, the Defendant committed the felony offense of aggravated assault with a deadly weapon by pulling a knife on his parole officer in Collin County, Texas.

### III. Prior Juvenile Bad Acts

1.      On or about 1987 to 1990, in Tarrant County, Texas, the Defendant set multiple fires including, grass, trash, garbage cans and the upstairs of his aunt's home, Sharon Rangel, between the ages of 5 and 8.

2.      On or about 1991, in Tarrant County, Texas, the Defendant used cocaine, marijuana, alcohol and sniffed paint at the age of 9.

3.      On or about 1991, in Tarrant County, Texas, the Defendant possessed a loaded firearm in the waistband of his pants while drinking a bottle of Seagram's whiskey at the age of 9.

4.      On or about August 31, 1992, the Defendant was admitted voluntarily by his mother, Donna Soliz and treated at Tarrant County Psychiatric Center Children's Unit and Trinity Springs Pavilion in John Peter Smith Hospital for stealing cars, dealing and selling drugs, fighting, drinking heavily, sniffing paint, smoking marijuana, and carrying guns in Tarrant County, Texas.

5.      On or about November 18, 1992, while at the Tarrant County Juvenile Detention Center, the Defendant was put in isolation for hitting a peer in the face with a towel in Tarrant County, Texas.

6.      On or about August 2, 1993, in Tarrant County, Texas, the Defendant stole cigarettes from

multiple convenience stores.

7.    On or about August 2, 1993, in Tarrant County, Texas, the Defendant was ordered detained in the Juvenile Court of Tarrant County, Texas for engaging in delinquent conduct/conduct indicating a need for supervision.

8.    On or about August 4, 1993, in the Tarrant County Juvenile Detention Center, the Defendant was observed using profanity and pushing a table during breakfast in Tarrant County, Texas.

9.    On or about August 9, 1993, in Tarrant County, Texas, the Defendant was ordered detained in Cause No. 50608-J in the Juvenile Court of Tarrant County, Texas for engaging in delinquent conduct/conduct indicating a need for supervision.

10.    Prior to August 10, 1993, the Defendant was truant from school on multiple occasions in Tarrant County, Texas.

11.    On or about August 10, 1993, in Tarrant County, Texas, as part of his Tarrant County Juvenile Probation intake, the Defendant was given a psychological/psychiatric exam with a DSM III diagnosis of: Axis I Conduct Disorder, Cultural Familial Delinquency, Substance Abuse by History, Attention Deficit Disorder, Residual, Axis II mixed developmental disabilities, reading, spelling, and arithmetic.  These findings were determined to be chronic and severe.  Defendant was prescribed Ritalin.

12.    On or about August 10, 1993, in Tarrant County, Texas, as part of his Tarrant County Juvenile Probation intake, the Defendant stated that he hated his aunt, Sharon Rangel, and his principal because they confront his negative behavior.

13.    On or about August 10, 1993, in Tarrant County, Texas, as part of his Tarrant County Juvenile Probation intake, the Defendant admitted that he had committed the offense of Burglary of a Habitation and stealing a TV, VCR, jewelry and guns.

14.    On or about August 10, 1993, in Tarrant County, Texas, as part of his Tarrant County Juvenile Probation intake, the Defendant admitted that he had committed the offense of Criminal Mischief by shooting a bb gun at passing cars and a building.  Defendant stated he committed this offense because he was bored.

15.    On or about August 10, 1993, in Tarrant County, Texas, as part of his Tarrant County Juvenile Probation intake, the Defendant admitted that he committed the offense of Burglary of a Building by breaking into classrooms as school and ransacking the rooms and stealing walkie-talkies and personal items from the teacher.

16.    On or about August 10, 1993, in Tarrant County, Texas, as part of his Tarrant County Juvenile Probation intake, the Defendant admitted that he was a member of the street gangs 4 X 3

STATE'S FIFTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 3

Crips and the Latin Kings.

17.     On or about October 1993, in Tarrant County, Texas, the Defendant was seen at the Santa Fe Counseling Day Program for behavioral problems but did not follow directions or attend groups resulting in a failure of treatment.

18.     On or about November 17, 1993, in Tarrant County, Texas, the Defendant was ordered detained in Cause No. 50608-J in the Juvenile Court of Tarrant County, Texas for engaging in delinquent conduct/conduct indicating a need for supervision.

19.     On or about January 31, 1994, at the Tarrant County Juvenile Detention Center, Officer B. Harper observed an "S" tattoo on Defendant's left thumb in Tarrant County, Texas.

20.     On or about February 2, 1994, the Defendant was put in isolation at the Tarrant County Juvenile Detention Center for putting a piece of paper in his door lock in Tarrant County, Texas.

21.     On or about February 9, 1994, in Tarrant County, Texas, the Defendant was court ordered to placement at Buckner's Children's Home in Dallas, Texas for counseling and treatment for his delinquent behaviors and drug abuse education.

22.     On or about March 16, 1994, in Dallas County, Texas, the Defendant made gang signs while at church and pretended to sell crack cocaine while at school. The Defendant admitted that he was selling road salt and saying it was crack cocaine.

23.     On or about March 19, 1994, the Defendant admitted to David Chandler to acting out sexually with other male students at Buckner's Children's Home in Dallas County, Texas.

24.     On or about April 4, 1994, the Defendant broke a window out of anger at Buckner's Children's Home in Dallas County, Texas.

25.     On or about April 4, 1994, the Defendant stole $10 from his teacher's purse at Edna Rowe Elementary School in Dallas County, Texas.

26.     On or about May 25, 1994, the Defendant was observed making gang signs at a meal at Buckner's Children's Home in Dallas County, Texas.

27.     On June 24, 1994, in Dallas County, Texas, the Defendant was put on shut-down and most of his privileges were taken away for constantly fighting authority at Buckner Children's Home.

28.     On or about August 29, 1994, in Dallas County, Texas, the Defendant committed the offense of Aggravated Sexual Assault of a Child by penetrating the anus and mouth of two boys while at Buckner's Children's Home. Defendant admitted to these offenses to David Chandler.

STATE'S FIFTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 4

29.     On or about September 15, 1994, in Dallas County, Texas, the Defendant ran away from Buckner Children's Home because he was told by the staff to do chores.

30.     On or about September 19, 1994, the Defendant was given five days of detention at the Edna Rowe Elementary School for fighting and defying the Principle in Dallas County, Texas.

31.     On or about October 17, 1994, the Defendant assault a peer at Buckner's Children's Home in Dallas County, Texas by pushing the peer to the floor causing him to hit his head.

32.     On or about October 17, 1995, the Defendant admitted to Phillip Brunkmeyer at Buckner's Children's Home in Dallas County, Texas that he had lied on October 16, 1995 when he said he was suicidal.

33.     On or about November 26, 1994, the Defendant admitted to smoking marijuana while on Thanksgiving pass from the Buckner's Children's home in Dallas County, Texas.

34.     On or about November 26, 1994, the Defendant was known to associate with a school gang in Dallas County, Texas known as "The Crew" at Edna Rowe Elementary School.

35.     On or about December 6, 1994, the Defendant's poor grades while attending Edna Rowe Elementary School in Dallas County, Texas were attributed by the teacher to his failure to pay attention, sleeping in class and refusal to do his work.

36.     On or about December 7, 1994, the Defendant was involved in a fight while attending Edna Rowe Elementary School in Dallas County, Texas and was suspended from school for two days.

37.     On or about December 12, 1994, the Defendant was involved in a fight while attending Edna Rowe Elementary School in Dallas County, Texas.

38.     On or about December, 1994, the Defendant's report card was withheld from him while attending Edna Rowe Elementary School in Dallas County, Texas for owing money ofr a school-sponsored selling of Christmas candy. The child care staff at Buckner's Children's Home collected money from Defendant's weekly allowance to pay the money back.

39.     On or about January 7, 1995, the Defendant was physically restrained by a staff member at Buckner's Children's Home for physical aggression in Dallas County, Texas.

40.     On or about January 7, 1995, the Defendant assaulted a peer at Buckner's Children's Home in Dallas County, Texas by hitting the peer in the head with Defendant's shoe.

41.     On or about January 7, 1995, the Defendant assaulted a staff member, Dwight Hayes, at Buckner's Children's Home in Dallas County, Texas by hitting Dwight Hayes in the head with Defendant's shoe. Defendant had to be physically restrained.

STATE'S FIFTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 5

42.     On or about January 26, 1995, in Dallas County, Texas, the Defendant admitted to stealing a jar of coins while living at Buckner Children's Home.

43.     On or about February 28, 1995, the Defendant committed the offense of Indecency with a Child by grabbing a female student's crotch while attending Edna Rowe Elementary School in Dallas County, Texas. Defendant also grabbed the female student's rear end. This was witnessed by a teacher. Defendant claimed the teacher was lying about the incident.

44.     On or about March 6, 1995, the Defendant assaulted a peer at Buckner's Children's Home in Dallas County, Texas by hitting the peer in the head with Defendant's fists.

45.     On or about March 23, 1995, the Defendant assaulted staff member Cedric Darden at Buckner's Children's Home and had to be physically restrained in Dallas County, Texas.

46.     On or about March 23, 1995, the Defendant assaulted a peer at Buckner's Children's Home in Dallas County, Texas by hitting the peer in the head with Defendant's fists.

47.     On or about March 27, 1995, the Defendant had to be physically restrained while trying to run away from Buckner's Children's School in Dallas County, Texas.

48.     On or about March 27, 1995, the Defendant attempted to pierce his own ear in violation of rules at Buckner's Children's Home in Dallas County, Texas.

49.     On or about March 28, 1995, the Defendant threw a shoe in his room and broke a window at Buckner's Children's Home and had to be physically restrained in Dallas County, Texas.

50.     On or about March 30, 1995, in Dallas County, Texas, the Defendant admitted to his probation officer that he had previously lied about being suicidal and trying to commit suicide by overdosing on Prozac pills while living at Buckner's Children's Home.

51.     On or about April 18, 1995, the Defendant assaulted staff member Cedric Darden at Buckner's Children's Home and had to be physically restrained in Dallas County, Texas.

52.     On or about April 19, 1995, the Defendant assaulted staff member Sorenson at Buckner's Children's Home and had to be physically restrained in Dallas County, Texas.

53.     On or about April 20, 1995, the Defendant attempted to assault a staff member at Buckner's Children's Home in Dallas County, Texas. Defendant used profanity toward the staff member and had to be physically restrained.

54.     On or about April 20, 1995, the Defendant became physically aggressive toward Wanda Jimenez and was destroying toys and kicking plants in Dallas County, Texas. Defendant had to be

STATE'S FIFTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 6

physically restrained.

55.     On or about April 20, 1995, the Defendant was asked to leave class for not following directions and attempted to escape from staff members at Buckner's Children's School in Dallas County, Texas. Defendant had to be physically restrained.

56.     On or about April 20, 1995, the Defendant was relocated to the Buckner's Children's Home Residential Treatment Center due to his need for a more restrictive environment in Dallas County, Texas.

57.     On or about May 12, 1995, in Dallas County, Texas, the Defendant assaulted his juvenile roommate by choking him until he lost consciousness while living at Buckner Children's Home.

58.     On or about May 20, 1995, the Defendant attempted to assault a female staff member, Wanda Jimenez, at Buckner's Children's Home by trying to kick her in Dallas County, Texas. Defendant had to be physically restrained.

59.     On or about July 31, 1995, in Dallas County, Texas, the Defendant stopped up a toilet by shooting rubber bands down it while living at Buckner Children's Home.

60.     On or about August 21, 1995, in Dallas County, Texas, the Defendant committed the offense of Aggravated Sexual Assault of a Child by anally penetrating his two 10-12 year old roommates with his male sexual organ while living at Buckner Children's Home.

61.     On or about November 9, 1995, in Dallas County, Texas, the Defendant committed the offenses of Aggravated Sexual Assault of a Child, and Indecency with a Child while at Buckner Children's Home in Dallas County, Texas. The victim was approximately 8 years of age at the time of the offense.

62.     On or about January 19, 1999, in Johnson County, Texas, the Defendant brought a knife to school while attending Keene High School and was sent to the ABLE program.

### IV.  Prior Adult Convictions

1.      On or about July 30, 1999, the Defendant Mark Anthony Soliz pled guilty and was convicted of Unauthorized Use of Vehicle in Cause No. F33475, 18th District Court of Johnson County, Texas and was placed on 5 years probation.

2.      On or about February 11, 2000, the Defendant Mark Anthony Soliz was placed on deferred adjudication for the offense of Theft $1,500 to $20,000 in the 396th District Court of Tarrant County, Texas in Cause No. 0755170D.

3.     On or about May 31, 2000, the Defendant Mark Anthony Soliz was finally convicted of Theft $1500-$20000 in the 396th District Court of Tarrant County, Texas in Cause No. 0755170D after his probation was revoked for committing a new offense of Theft $1500-$20000 in Tarrant County, Texas.

4.     On or about May 31, 2000, the Defendant Mark Anthony Soliz was convicted of Theft $1500-$20000 in the 396th District Court of Tarrant County, Texas in Cause No. 0765674D.

5.     On or about September 18, 2001, the probated sentence in Cause No. F33475 in the 18th District Court of Johnson County, Texas was revoked and Mark Anthony Soliz was sentenced to 2 years state jail subject to shock for failure to report, failure to pay fees and failure to complete community service.

6.     On or about March 30, 2004, the Defendant Mark Anthony Soliz was convicted of Evading Arrest or Detention using Vehicle and sentenced to One Year in State jail In the Criminal District Court Number Two of Tarrant County, Texas in Cause No. 089411A.

7.     On or about March 30, 2004, the Defendant Mark Anthony Soliz was convicted of Theft <$1500 with Two Prior Convictions and sentenced to One Year in State Jail in the Criminal District Court Number Two of Tarrant County, Texas in Cause No. 0894107A.

8.     On or about April 1, 2004, the Defendant Mark Anthony Soliz was convicted of Burglary of a Vehicle in Cause No. 0893970 in the County Criminal Court Number Ten of Tarrant County, Texas.

9.     On or about November 19, 2004, the Defendant Mark Anthony Soliz was convicted of Theft $50-$500 in Cause No. 0955841 in the County Criminal Court Number Four of Tarrant County, Texas.

10.    On or about July 29, 2005, the Defendant Mark Anthony Soliz was convicted of Criminal Trespass in Cause No. 0976064W in 396th District Court of Tarrant County, Texas.

11.    On or about August 3, 2005, the Defendant Mark Anthony Soliz was convicted of Unlawful Restraint in Cause No. 0986121 in the County Criminal Court Number Nine of Tarrant County, Texas.

12.    On or about November 9, 2005, the Defendant Mark Anthony Soliz was convicted of Theft $1500-$20000 in Cause No. 0991801D in the Criminal District Number Four of Tarrant County, Texas.

13.    On or about March 15, 2006, the Defendant Mark Anthony Soliz was convicted of Theft $1500-$20000 in Cause No. 1012291W in the Criminal District Court Number Four of Tarrant County, Texas.

14.    On or about December 14, 2006, the Defendant Mark Anthony Soliz was convicted of Theft $1500-$20000 in Cause No. 1047319W in the 214th District Court of Tarrant County, Texas. The defendant admitted having done it "Just for the hell of it."

15.    On or about April 7, 2010, the Defendant Mark Anthony Soliz was convicted of Possession of Prohibited Weapon in Cause No. 1195009 in Tarrant County, Texas.

## V.  Unadjudicated Capital Murder

1.    On or about June 29, 2010, the Defendant Mark Anthony Soliz did commit the offense of Capital Murder by intentionally causing the death of Ruben Martinez by shooting him with a firearm in the course of committing or attempting to commit the offense of robbery.

## VI.  Unadjudicated Adult Criminal Offenses

1.    On or about June 22, 2010, the Defendant Mark Anthony Soliz did commit the offenses of Burglary of a Habitation and Theft in Tarrant County, Texas. The victim was Vincent Circelli.

2.    On or about June 24, 2010, the Defendant Mark Anthony Soliz did commit the offense of Robbery using a firearm in Tarrant County, Texas. The victim was Justin Morris. The Defendant admitted to this offense in a written and recorded statement in Tarrant County, Texas, to Det. T. Boetcher on or about June 30, 2010. The Defendant took money and a debit card from the victim.

3.    On or about June 24, 2010, the Defendant Mark Anthony Soliz did commit the offense of Aggravated Assault by shooting Luis Luna with a firearm in Tarrant County, Texas. The Defendant admitted to this offense in a written and recorded statement in Tarrant County, Texas, to Det. T. Boetcher on or about June 30, 2010.

4.    On or about June 24, 2010, the Defendant Mark Anthony Soliz did commit the offense of Robbery while using a firearm in Tarrant County, Texas. The victim was Felipe Contreras.

5.    On or about June 24, 2010, the Defendant Mark Anthony Soliz did commit the offense of Robbery while using a firearm in Tarrant County, Texas. The victim was Sammy Abu-Lughod. The Defendant took money, a cell phone and a green 2005 Dodge Stratus (Texas license plate #GB006). The Defendant admitted to this offense in a written and recorded statement in Tarrant County, Texas, to Det. T. Boetcher on or about June 30, 2010.

6.    On or about June 28, 2010, the Defendant Mark Anthony Soliz did commit the offense of robbery and did use a firearm in Tarrant County, Texas. The victims were Jorge Tamayo and Maximino Chavez-Soto. The Defendant admitted to this offense in a written and recorded statement in Tarrant County, Texas, to Det. T. Boetcher on or about June 30, 2010.

7.    On or about June 29, 2010, the Defendant Mark Anthony Soliz did possess in Tarrant County, Texas, a Hi-Point 9mm handgun with serial #P1400875 which was part of the property owned by Vincent Circelli and taken from his house on June 22, 2010.

8.    On or about June 29, 2010, the Defendant Mark Anthony Soliz did shoot a firearm at Juan Ramirez in Tarrant County, Texas.

9.    On or about June 29, 2010, the Defendant Mark Anthony Soliz did shoot a firearm and cause bodily injury to Enrique Samaniego in Tarrant County, Texas.

10.    On or about June 29, 2010, the Defendant Mark Anthony Soliz did shoot a firearm at Kenny Dodgin in Tarrant County, Texas.

11.    On or about March 21, 2010, in Tarrant County, Texas, the Defendant Mark Anthony Soliz committed the felony offense of Burglary of a Habitation or Building with the address being 11100 Hawkins Home Blvd., Benbrook, Texas.

12.    On or about June 29, 2010, in Tarrant County, Texas, the Defendant Mark Anthony Soliz committed the felony offense of Burglary of a Habitation with the address being 9944 Wandering Way, Benbrook, Texas with the victims being Walter Luther Watson and Darlene Watson.

13.    On or about June 29, 2010, in Tarrant County, Texas, the Defendant Mark Anthony Soliz committed the felony offense of Burglary of a Habitation or Building with the address being 11100 Hawkins Home Blvd., Benbrook, Texas with the victim being Marcy Girton.

14.    On or about June 29, 2010, in Tarrant County, Texas, the Defendant Mark Anthony Soliz committed the felony offense of Burglary of a Habitation with Joan Trew as the victim in Benbrook, Texas.

15.    On or about June 29, 2010, in Tarrant County, Texas, the Defendant Mark Anthony Soliz asked Arturo Gonzales if he could hide the stolen Dodge Stratus from Sammy Abu-Lughod and the stolen Toyota Tundra from Nancy Weatherly on the side of Arturo's mother's house in an effort to conceal them thereby tampering with evidence.

16.    On or about June 29, 2010, in Tarrant County, Texas, the Defendant Mark Anthony Soliz pawned/sold items taken from the home of Nancy Weatherly at multiple pawn shops in Tarrant County, Texas.

17.    On or about June 24 through June 29, 2010, in Tarrant County, Texas, the Defendant Mark Anthony Soliz sold, pawned, and traded multiple items from the unadjudicated criminal offenses listed above.

STATE'S FIFTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 10

1827

18.    On or about June 29, 2010, the Defendant Mark Anthony Soliz did evade arrest using a vehicle in Tarrant County, Texas. The Defendant was arrested after attempting to flee in a stolen 2005 Dodge Stratus (Texas license plate #GB006) belonging to Sammy Abu-Lughod. He was in possession of a stolen 9 mm firearm belonging to Vincent Circelli. The Defendant did also possess methamphetamine.

19.    On or about June 29, 2010, in Tarrant County, Texas, the Defendant Mark Anthony Soliz was placed under arrest for Evading Arrest using a vehicle, Theft $1500-$20000, Unlawfully Carrying a Weapon and Possession of a Controlled Substance.

## VII.  Unadjudicated Adult Bad Acts

1.    On or about May 1, 2010 to June 29, 2010, the Defendant Mark Anthony Soliz did possess and sniff glue in Tarrant and Johnson County, Texas on multiple occasions.

2.    On or about dates unknown, in multiple counties in Texas, the Defendant Mark Anthony Soliz gained, used, and was known by the street/gang name of "Kilo".

3.    On or about January 15, 2008 to the present, the Defendant Mark Anthony Soliz was/is associated with the prison gang known as the Texas Syndicate.

4.    On or about May 1, 2010 to June 29, 2010, the Defendant Mark Anthony Soliz did possess and use methamphetamine in Tarrant and Johnson County, Texas on multiple occasions.

5.    On or about June 29, 2010, in Tarrant County, Texas, the Defendant Mark Anthony Soliz had sexual relations with Elizabeth Estrada.

6.    On or about June 29, 2010, in Tarrant County, Texas, the Defendant Mark Anthony Soliz traded stolen merchandise from the home and vehicle of Nancy Weatherly for illicit drugs.

7.    On or about June 29, 2010, in Tarrant County, Texas, the Defendant Mark Anthony Soliz asked Arturo Gonzales for more 9mm ammunition and to take him to get more 9mm ammunition.

## VIII.  TDC Disciplinary Violations

1.    On or about May 27, 2004, in Walker County, Texas, the Defendant Mark Anthony Soliz was confirmed by the TDC Security Threat Group to be a member of security threat group/prison gang the Texas Syndicate using a gang related tattoo and prison "kites" or letters. Defendant has a "T" and an "S" tattooed onto his fingers. Defendant admitted that he was "picked up" by his uncle when he was 16. This information is contained in the business records from TDC filed and forwarded to defense counsel on September 21, 2011.

2.    That State hereby gives notice of all information and bad acts or crimes contained in the business records from TDC filed and forwarded to defense counsel on September 21, 2011.

STATE'S FIFTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 11

3.    While incarcerated in the Hutchins State Jail Facility, Defendant was classified as a confirmed member of the Texas Syndicate, which is deemed a Security Threat Group by the Texas Department of Criminal Justice.

4.    On or about March 7, 2007, while incarcerated at TDC, the Defendant was designated at the highest possible risk level under the TDC classification for inmates.

5.    On or about October 1st, 2007, while incarcerated in the Texas Department of Criminal Justice, Defendant did engage in sexual misconduct by exposing his penis with the intent to gratify his sexual desire by masturbating his penis through the shower slot. When questioned regarding these events, Defendant stated "fuck that bitch." This act was also in violation of prison rules.

6.    On or about September 29th, 2008, while incarcerated in the Texas Department of Criminal Justice, Defendant intentionally and knowingly destroyed property belonging to the State of Texas, specifically: two sheets, two jumpers and one towel. This act was also in violation of prison rules.

7.    On or about March 2nd, 2008, while incarcerated in the Texas Department of Criminal Justice, Defendant did intentionally or knowingly assault an officer without a weapon by kicking at Officer Johnson as he was attempting to close a food slot. Defendant further stated to Officer Johnson that he would take care of him with his "bitchy ass" and called him a "whore." This act was also in violation of prison rules.

8.    On or about May 26th, 2008, while incarcerated in the Texas Department of Criminal Justice, Defendant intentionally or knowingly caused bodily injury to Eric Brown, by throwing hot water in his face. When questioned regarding the events of May 26th, 2008, Defendant stated that he wanted to kill Inmate Brown. This act was also in violation of prison rules.

9.    On or about December 9th, 2008, while incarcerated in the Texas Department of Criminal Justice, Defendant engaged in sexual misconduct by exposing his penis with the intent to gratify his sexual desire and masturbated in public. This act was also in violation of prison rules.

10.    On or about December 11th, 2008, while incarcerated in the Texas Department of Criminal Justice, Defendant engaged in sexual misconduct by exposing his penis with the intent to gratify his sexual desire and masturbated in public. When ordered to stop, he continued to masturbate. In so doing, he disobeyed a direct order. This act was also in violation of prison rules.

11.    On or about January 2nd, 2009, while incarcerated in the Texas Department of Criminal Justice, Defendant caused a disruption while in the shower when he refused to return a hand restraint; He disobeyed the order of M. Willard and violated prison rules.

STATE'S FIFTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 12

12.     On or about April 28th, 2009, while incarcerated in the Texas Department of Criminal Justice, Defendant engaged in sexual misconduct when he exposed his penis to Officer Holman with the intent to gratify his sexual desire and masturbated in public. This act was also in violation of prison rules.

13.     On or about June 5th, 2009, while incarcerated in the Texas Department of Criminal Justice, Defendant engaged in sexual misconduct when he exposed his penis with the intent to gratify his sexual desire and masturbated in public. This act was also in violation of prison rules.

14.     On or about June 22, 2000, while incarcerated in the Texas Department of Criminal Justice, admitted being a member of the church of Satanism.

15.     On or about June 22, 2000, while incarcerated in the Texas Department of Criminal Justice, Defendant admitted that he engaged in ritualistic activities in the Satanism night church.

16.     On or about July 9th, 2009, while incarcerated in the Texas Department of Criminal Justice, officer Shirah was in the process of removing handcuffs from Defendant. After one cuff was removed, Defendant "jacked it from the officer saying that he wanted rank." When reinforcements arrived, Defendant had damaged the handcuffs to the point that they would no longer function properly. This act was also in violation of prison rules.

17.     On or about July 10, 2000, while incarcerated in the Texas Department of Criminal Justice, Defendant was found to be in possession of tattooing paraphernalia. This act was also in violation of prison rules.

18.     On or about July 20, 2000, while incarcerated in the Texas Department of Criminal Justice, Defendant intentionally or knowingly caused bodily injury to Steven Muskowitz by striking him with his hand. This act was also in violation of prison rules.

19.     On or about July 21st, 2000, while incarcerated in the Texas Department of Criminal Justice, Defendant was found in an unauthorized area in violation of Code 27. This act was also in violation of prison rules.

20.     On or about August 25, 2000, while incarcerated in the Texas Department of Criminal Justice, Defendant intentionally or knowingly caused bodily injury to Dan Hill by striking him with his hand. This act was also in violation of prison rules.

21.     On or about August 27, 2000, while incarcerated in the Texas Department of Criminal Justice, Defendant intentionally or knowingly caused bodily injury to an Officer/ Guard Creason by causing a gate to strike the Officer/Guard. This act was also in violation of prison rules.

22.     On or about October 3rd, 2000, while incarcerated in the Texas Department of Criminal

STATE'S FIFTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 13

Justice, Defendant was found in an unauthorized area in violation of Code 27-A. This act was also in violation of prison rules.

23. On or about October 3rd, 2000, while attending class at the Texas Department of Criminal Justice, Defendant violated school rules by sleeping in class.

24. On or about October 11th, 2000, while attending class at the Texas Department of Criminal Justice, Defendant violated school rules by sleeping in class. This act was also in violation of prison rules.

25. On or about October 12th, 2000, while attending class at the Texas Department of Criminal Justice, Defendant violated school rules by sleeping in class, arguing with the teacher and was subsequently removed from class. This act was also in violation of prison rules.

26. On or about October 22, 2000, while incarcerated in the Texas Department of Criminal Justice, Defendant did intentionally or knowingly cause bodily injury to John O'Dell by striking him with a shoe. This act was also in violation of prison rules.

27. On or about October 16th, 2000, while attending class at the Texas Department of Criminal Justice, Defendant violated school rules by sleeping in class. This act was also in violation of prison rules.

28. On or about November 21, 2000, while incarcerated in the Texas Department of Criminal Justice, Defendant did intentionally or knowingly cause bodily injury to Willie Jenkins, by striking him with his hand. This act was also in violation of prison rules.

## IX. Tarrant County Jail Disciplinary Violations

1. The Defendant has multiple tattoos – including a marijuana leaf, the word "Kilo," and multiple gang related tattoos, including but not limited to T over S to indicated membership in the prison gang the Texas Syndicate.

2. On or about 6/26/03, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted being an active member of the Texas Syndicate, a prison gang to Deputy C. Brewer, TCSO;

3. On or about 6/26/03, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted drinking a 6 pack of beer once a weekend since the age of 15 to Deputy C. Brewer, TCSO;

STATE'S FIFTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 14

4.     On or about 6/26/03, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted using drugs once a week for an undisclosed period of time to Deputy C. Brewer, TCSO;

5.     On or about 6/26/03, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to being a member of a street gang for 3 years and that his "street name" was "Kilo," to Deputy C. Brewer, TCSO;

6.     On or about 6/26/03, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted being arrested for Unauthorized Use of a Motor Vehicle to Deputy Brewer, TCSO;

7.     On or about 6/26/03, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted serving prison time from 2000-2003 for Unauthorized Use of a Motor Vehicle and Assaulting a Family Member to Deputy C. Brewer, TCSO;

8.     On or about 6/26/03, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted having been handled for burglary of a vehicle, theft 1500 with two priors, and evading arrest to Deputy C. Brewer, TCSO;

9.     On or about 7/05/03, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant refused to rack down, in violation of jail regulations;

10.     On or about 7/16/03, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant refused to rack down, in violation of jail regulations;

11.     On or about 12/04/03, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant intimidated and bullied fellow inmates, in violation of jail regulations;

12.     On or about 12/20/03, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant repeatedly stole from fellow inmates, including inmates: Cecil McBraum, Richard Grayson, Anselmo Castro, in violation of jail regulations;

13.     On or about 1/02/04, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant caused problems by threatening all of the anglo inmates housed in the same pod because of his gang affiliation with the Texas Syndicate, in violation of jail regulations;

STATE'S FIFTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 15

14.    On or about 1/03/04, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant refused to rack down, in violation of jail regulations;

15.    On or about 2/25/04, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant made veiled threats to inmate Glenn Stark, because of Soliz's gang affiliation, in violation of jail regulations;

16.    On or about 3/01/04, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant was involved in a fight with two other inmates, in violation of jail regulations;

17.    On or about 5/7/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant had to be rehoused due to causing problems with fellow Hispanic inmates due to his gang membership;

18.    On or about 5/7/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant was overheard saying that he "wanted to kill someone." He was also found to be organizing a gang fight, and was rehoused as a result;

19.    On or about 7/19/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant disobeyed an order from Deputy P. Burkett and resisted Deputy Burkett and Lt. Herriage's efforts to gain Soliz's compliance, in violation of jail regulations;

20.    On or about 6/05/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant threatened to "whip fellow Inmate Arevalo's ass." The defendant was rehoused as a result;

21.    On or about 9/2/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the Defendant admitted to Deputy Hart that he had been a member of Texas Syndicate since 1999 and that he joined while in TCSO custody;

22.    On or about 9/02/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to Deputy R. Hart that he drank a quart-quart ½ of alcohol weekly;

23.    On or about 9/02/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to Deputy R. Hart that he used cocaine and marijuana daily for an undisclosed period of time;

STATE'S FIFTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 16

24.     On or about 9/02/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to Deputy R. Hart that he was arrested out of Dallas in 1997 for Unauthorized Use of a Motor Vehicle as a juvenile;

25.     On or about 9/02/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to Deputy R. Hart that he had been incarcerated 5 times before 9/02/05;

26.     On or about 9/02/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to Deputy R. Hart that he had been incarcerated in state jail for Unauthorized Use of a Motor Vehicle;

27.     On or about 9/02/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to Deputy R. Hart that he was a member of the Texas Syndicate;

28.     On or about 5/4/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to Deputy Helm that he was a member of Texas Syndicate;

29.     On or about 5/04/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to Deputy Helm that he consumed 4-5 beers twice a week since the age of 13;

30.     On or about 5/04/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to Deputy Helm that he admitted using cocaine, marijuana, and ice for an undisclosed period of time;

31.     On or about 5/04/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to Deputy Helm that he was first arrested as a juvenile in Fort Worth in 1991;

32.     On or about 5/04/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to Deputy Helm that he had gone to the Texas Department of Criminal Justice for Burglary of a Vehicle in 2004;

33.     On or about 5/07/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant stated that he wanted to kill someone and attempted to organize a gang fight in his pod;

STATE'S FIFTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 17

34.     On or about 9/21/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant was seen hitting Inmate Luis Saldivar with his hand, in violation of jail regulations;

35.     On or about 2/24/06, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to being an active member of the Texas Syndicate;

36.     On or about 3/08/06, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant was found in possession of tattooing paraphernalia, in violation of jail regulations;

37.     On or about 3/14/06, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant refused to obey pod rules, pod officers orders and refused to rack down, in violation of jail regulations. He refused to return to his cell when ordered by Deputy MR Cude;

38.     On or about 3/19/06, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant disobeyed a directive by Deputy Muhammad when he refused to give up his bottom bunk and remove his property for a medically disabled inmate, in violation of jail regulations. He further stated in a threatening manner to the deputy and fellow inmates that "something bad was going to happen;"

39.     On or about 3/19/06, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant repeatedly refused to obey a direct order by Deputy Davis to step away from the window, provide his identification, nor would he wear his uniform, in violation of jail regulations;

40.     On or about 4/02/10, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to being a member of the Texas Syndicate, a prison gang;

41.     On or about 4/24/10, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant caused problems in the tank in which he was housed by attempting to control/run the tank, in violation of jail regulations;

42.     On or about 4/08/10, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant was involved in a fight with fellow inmate David Toney, in violation of jail regulations;

STATE'S FIFTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 18

43.    On or about 5/21/10, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant refused to obey an order when he refused to remove a blanket and towel from his face and stated "fuck that shit- I am going home tomorrow anyway. I don't give a damn about that shit," in violation of jail regulations;

44.    On or about 8/06/10, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant was found in possession of contraband, an unauthorized photo of a hand sign;

## X. Johnson County Jail Disciplinary Violations

1.    On or about April 6, 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did possess contraband, damage property, use or possess tobacco products and possess a weapon, namely, a thin piece of sharpened metal, four pills, a pouch of bugler and stuffing from his mattress in the Johnson County Law Enforcement Center. Defendant admitted his guilt at the jail and signed an admission form in the presence of Lt. David Boggess.

2.    On or about April 24, 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did create a disturbance by flooding his cell and hitting the cell door window. Defendant admitted his guilt to David Turner at the Johnson County Law Enforcement Center by writing, "I did it, man." Defendant resisted officers attempting to restrain him and cursed at them. This incident was witnessed by Ronnie McGowan and other corrections officers. This incident was captured on video which has been provided to defense counsel.

3.    On or about July 10, 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did damage property by removing parts and knocking a telephone over at the Johnson County Law Enforcement Center. Defendant said he was not guilty of doing this at the jail. On this date, Defendant also attempted to flood his cell with water by sticking an unknown object down the toilet which was witnessed by Jose Arriola and other corrections officers. Defendant did admit in writing to R. McCowan that he was guilty of flooding his cell. Photos and video were taken of the acts at the time and have been provided to defense counsel,

4.    On or about July 10, 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did assault a corrections officer, namely Officer Raleigh, by throwing hot coffee on him. On this date, Defendant called Officer Raleigh names and cursed at him. Officer Raleigh believes that the substance thrown on him may have been urine as well as coffee. Officer Raleigh believes the assault was in retaliation for Raleigh not allowing Defendant to use the telephone after hours in May of 2011 where Defendant

threatened and actually did flood his cell with water.  Defendant signed a written admission but stated he did not know the officer was below him when he threw the coffee.

5.      On or about July 22, 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did possess contraband, namely two pills in a bottle with no label in the Johnson County Law Enforcement Center. Defendant signed an admission of guilt in the presence of Sgt. Sample.  Defendant stated that it was his Ibuprofen.

6.      On or about August 23, 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did escape or attempt a felony escape by manipulating and freeing his hand from his handcuffs while in visitation.  This act was witnessed by Dr. Natalie Brown, Corporal Dana Kinnard and Warden Janicek of the Johnson County Law Enforcement Center.  Defendant signed and admission of guilt in the presence of Corporal Arriola.

7.      On or about August 23, 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did touch his own genitals and masturbate in the presence of a female meeting with him in a witness room.  Said acts were witnessed by Corporal Dana Kinnard of LaSalle Corporation.

8.      On or about multiple occasions in 2010 and 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did touch his own genitals and masturbate and expose himself in the presence of multiple female guards and inmates.

9.      On or about August 24, 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did cause a disturbance by shouting and cursing at Corporal Steven Parish and Corrections Officer Jason Pugh and flooding his cell with water.  Defendant refused to allow himself to be restrained and Lt. David Boggess administered OC Spray into Defendant's cell to get him to comply.  This incident was captured on video which has been provided to defense counsel.

10.     On or about August 29, 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did possess contraband, damage property, create a disturbance and refuse to follow orders by possessing an altered radio, breaking his cell light, making noise to incite other inmates and refusing orders while officers attempted to handcuff him at the Johnson County Law Enforcement Center.  Defendant signed an admission of guilt in the presence of Corporal Kinnard.

11.     On or about November 18, 2010, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did hit his cell door repeatedly with a cup, flooding his cell and covering the window of his cell door with cardboard.

STATE'S FIFTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 20

Defendant was given multiple warnings to comply with officers and was eventually OC sprayed by Lt. David Boggess. After Defendant finally complied with officer's orders, he was decontaminated and taken to the violent cell in the Johnson County Law Enforcement Center. This incident was captured on video which has been provided to defense counsel.

12.     On or about June 6, 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did flood his cell with water causing the water to be turned off by officers in the Johnson County Law Enforcement Center. Defendant was screaming and banging the walls of his cell.

13.     On or about October 18, 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz, on numerous occasions, did attempt to escape from mechanical restraints. Blue Box restraints were purchased by the Johnson County Law Enforcement Center specifically for use with the Defendant as he has attempted on numerous occasions to escape from his restraints.

14.     On or about October 18, 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz, attempted to pull his hands through the food port of his cell while Sgt. Laurie Gunter was attempting to secure his hands in handcuffs. Sgt. Gunter's hand was caught against the outside of the door causing her pain. Sgt. Gunter told the Defendant to stop and that he was hurting her and he just looked at her and said she was not going to tighten the cuffs anymore.

15.     On or about January 3, 2012, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did possess contraband, by possessing an a broken piece of plastic sharpened to a point, an altered battery attached to a string, and an extra blanket.

16.     On or about January 6, 2012, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did possess contraband, by possessing an a pen and an altered battery attached to a string.

17.     On or about January 19, 2012, the defendant, during jury selection in his capital murder case, in Johnson County, Texas, refused to remove his tie and belt in the holding cell at the Guinn Justice Center, a security violation. Defendant's belt and tie were taken from him by the Sheriff's Department for safety purposes. Defendant's tie was exchanged for a clip-on tie.

18.     On or about January 19, 2012, the defendant, during jury selection in his capital murder case, at the Guinn Justice Center in Johnson County, Texas, used wet toilet paper to cover the camera in his holding cell and refused to dress out for transport back to the jail. Defendant failed to comply with verbal instructions of the Sheriff's Office. When Marshall Whitlock of the Sheriff's Office told Defendant they were coming in to use force, Defendant replied "C'mon." Defendant resisted being restrained and was finally overpowered by the Sheriff's Office.

STATE'S FIFTH AMENDED NOTICE OF INTENT
<u>TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS</u> – PAGE 21

## XI. Statements and Admissions

1.     On or about June 22, 2000, while incarcerated in the Texas Department of Criminal Justice, admitted being a member of the church of Satanism.

2.     On or about June 22, 2000, while incarcerated in the Texas Department of Criminal Justice, Defendant admitted that he engaged in ritualistic activities in the Satanism night church.

3.     On or about January 23, 2007, during his intake back into TDC in Cause Number 1047319W, the Defendant, Mark Anthony Soliz claimed/admitted to have been arrested 18 times resulting in one commitment to the Dallas County Juvenile Detention Center for Unauthorized Use of a Motor Vehicle and Evading Arrest, one commitment to the Collin County Juvenile Detention Center for Aggravated Assault with a Deadly Weapon, one commitment to the Smith County Juvenile Detention Center for Theft $1,500 to $20,000, one commitment to the Harrison County Juvenile Detention Center for Burglary of a Vehicle, three days in the Tarrant County Jail for Theft $1,500 to $20,000, thirty days and one hundred days in the Tarrant County Jail for Burglary of a Vehicle, one hundred eighty days in the Tarrant County Jail for Criminal Trespass, sixty days and ninety days in the Tarrant County Jail for Unauthorized Use of a Motor Vehicle and Evading Arrest, ninety-two days in the Tarrant County Jail for Unauthorized Use of a Motor Vehicle and as a State Jail detainee for Theft $1,500 to $20,000.

4.     On or about January 23,2007, during his intake back into TDC in Cause Number 1047319W, the Defendant, Mark Anthony Soliz claimed/admitted he completed a treatment center in Fort Worth where he was confined for six months.

5.     On or about January 23,2007, during his intake back into TDC in Cause Number 1047319W, the Defendant, Mark Anthony Soliz claimed/admitted that he used the alias names Mark Anthony Saenz, Kilo Soliz, and Kilo and was confirmed as a member of the Texas Syndicate effective June 10, 2004.

6.     On or about January 23,2007, during his intake back into TDC in Cause Number 1047319W, the Defendant, Mark Anthony Soliz claimed/admitted when asked why he committed the offense in Cause No. 1047319W on December 6, 2006, Defendant said "Just mess up."

7.     On or about January 23, 2007, during his intake back into TDC in Cause Number 1047319W, the Defendant, Mark Anthony Soliz claimed/admitted he was court-ordered to attend and complete Choices Treatment Center on an inpatient basis for narcotics treatment. Defendant admitted that after 60 days, he escaped from the treatment center in 1998 without successful completion of the program.

8.     On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony

1839

Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he inhaled powder cocaine twice per month from the age of 17 to 24 in Johnson, Smith, Collin, Tarrant, Harris, Dallas and other counties in Texas.

9.     On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he smoked crack cocaine daily for one year at the age of 23 in multiple counties in Texas.

10.    On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he smoked marijuana three times per week from the age of 14 to 24 in multiple counties in Texas.

11.    On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he inhaled heroin at 18 years of age in multiple counties in Texas.

12.    On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he smoked methamphetamines on the weekends when he was 22 to 23 years of age in multiple counties in Texas.

13.    On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he used inhalants on and off from the age of 14 to 24 in multiple counties in Texas.

14.    On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he was court-ordered to participate in drug treatment at 15 years of age and left unsuccessfully after one month.

15.    On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he sold marijuana, cocaine, and methamphetamine from the age of 16 to 23 and made about $100 per day in multiple counties in Texas.

16.    On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he was under the influence of carburetor cleaner during his commission of the theft of a vehicle case in Cause No. 1047319W in the 214th District Court of Tarrant County, Texas with offense date of December 6, 2006. Defendant further admitted that he committed this offense "Just for the hell of it."

17.    On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he consumed beer daily from the ages of 16 to 23 consuming 2 quarts per day in multiple counties in Texas.

STATE'S FIFTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 23

18.     On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he consumed a fifth of whiskey a few times per year from the ages of 22 to 23 in multiple counties in Texas.

19.     On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he was an alcoholic.

20.     On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he stole routinely as a means of support in multiple counties in Texas.

21.     On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he was an active member of the Texas syndicate.

22.     On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he Defendant did not voluntarily take part in any self-help academic, vocational or character development while confined at the Texas Department of Criminal Justice, Institutional Divison.

23.     The State gives notice of written and recorded statements given by Mark Anthony Soliz to Fort Worth Detectives Boetcher and Payne in Tarrant County, Texas on or about June 30, 2010. Copies have been provided to counsel for Mark Anthony Soliz.

24.     The State gives notice of statements made by Mark Anthony Soliz to Elizabeth Estrada in Tarrant County, Texas as shown in recorded interview of Elizabeth Estrada which has been provided to counsel.

25.     The State gives notice of statements made by Mark Anthony Soliz to Rosie Medina in Tarrant County, Texas as shown in recorded interview of Rosie Medina which has been provided to counsel.

26.     On or about June 29, 2010, the Defendant Mark Anthony Soliz made statements to Arturo Gonzales in Tarrant County, Texas. He asked if he could park his car, a Dodge Stratus, behind another car in order to hide it. He asked if he could get 9mm bullets because he needed some. He asked where he could purchase marihuana.

On or about June 29, 2010, the Defendant Mark Anthony Soliz told Sgt. Dena with the Fort Worth Police Department that "He could not go back to prison" when Dena was attempting to arrest him in Fort Worth, Tarrant County, Texas.

STATE'S FIFTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 24

27.     On or about June 23, 2010, the Defendant Mark Anthony Soliz told Ramon Morales in Tarrant County, Texas, that he did not want to sell a pistol that Mark Anthony Soliz had because he had plans to use it.

28.     On or about September 24, 2010, in Tarrant County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant made multiple comments and admissions against his penal interest which were captured on video/audio by Johnson County Deputy Sheriff Jay Kniffen.  The State of Texas has previously provided a copy of said statements to the attorneys for Defendant.  The State hereby gives notice to the Defense of the entire contents of video/audio dvd capturing the statements of Defendant.

29.     On or about September 24, 2010, in Tarrant County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant made several sexual comments to passing by women including comments on women's "ass" and "titties".  The Defendant whistled at passing by women.

30.     On or about September 24, 2010, in Tarrant County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant stated that the State couldn't put him at the crime scene and that all he and Jose Ramos had to was "play dumb" to the State's "shit".

31.     On or about September 24, 2010, in Tarrant County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant stated the if anything were to happen, the boy that tried to pawn the "straps" or guns, the State would get him on a capital murder case, also.

32.     On or about September 24, 2010, in Tarrant County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant stated that "we got two (capital murder cases) because he (Ruben Martinez) died, and everything."  The Defendant also referred to capital murder victim Ruben Martinez as a "motherfucker".

33.     On or about September 24, 2010, in Tarrant County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant comments about different girls he is talking to and trying to bond himself out of jail with help from his grandmother.  Defendant also talks about helping to bond out Jose Ramos.

34.     On or about September 24, 2010, in Tarrant County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant comments about making a $600,000 bond and hiring Johnny Cochran to defendant him because he "needs a damn good attorney."

STATE'S FIFTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 25

1842

35.    On or about September 24, 2010, in Tarrant County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant stated that he was going to be watching for a snitch in his case.

36.    On or about September 24, 2010, in Tarrant County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant comments about having sex with another girl while he had a girlfriend and then commented about lying to his girlfriend about the girl he had sex with.  Defendant repeatedly referred to both girls as "bitches".

37.    On or about September 24, 2010, in Tarrant County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant comments about there being cable television and Playstation 3 in some jails.

38.    On or about September 24, 2010, in Tarrant County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant refers to Johnson County Jail Officers as "redneck mother fuckers."  Defendant stated that if you respect the guards, they will let you get away with some things.

39.    On or about September 24, 2010, in Johnson County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant stated that capital murder victim Nancy Weatherly was "probably a lesbian."

40.    On or about September 24, 2010, in Johnson County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant stated that he let Rosie Medina use the car (stolen Dodge Stratus).  Defendant stated that he was "sucking on her titties" and jumped in the shower and started "fucking the shit out of her" and "shit I fuck that pussy."  Defendant referred to Rosie Medina as a "freak" and a "bitch".

41.    On or about September 24, 2010, in Johnson County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant stated that he met this one chick named Sicila Garza who was "bad as a mother fucker" and that he licked it clean "like a mother fucker, man".

42.    On or about dates unknown, in 2010-2011, in Johnson County, Texas, the Defendant, Mark Anthony Soliz wrote a letter to Co-Defendant, Jose Ramos, that stated: "Joe! Say Homeboy, we can beat that case in Fort Worth It just that, them law was trying to tell me that you was saying I did.  I haven't even talk to them.  In they was telling me how it want down, Do you remember what we talk about, That you pull my arm & da gun want off, They got da gun but no Evidence to show that that was da murder gun, that shot him.  That case here, my attorney show me my statement, That said I shot that lady.  But I didn't say it like that.  I wasn't saying it to tell them it was me, I was saying it to get it over with, so I can go back to my holding cell.  There some stuff I don't remember saying, There going to try to hit me hard on this case here, If you do end up getting this case beat, It cause

1843

I'm trying to get this statement pull cause it say that I did it.  If I don't then Im fuck but if I do then we're good.  Get back at me!  Kilo"

43.     On or about dates unknown, in 2010-2011, in Johnson County, Texas, the Defendant, Mark Anthony Soliz wrote a letter to Co-Defendant, Jose Ramos, that stated: "(Kilo Joe) Greeting Homeboy! Check this.  Let get thing understood, I don't know why you're here, cause I took da blame on of them cases, they just got to find me (guilty)(feel me) I never said your name to them laws, if your attorney look at my statement it only say or look like I did it all by my self.  On da cool Im making my attorney fight for me, since they say he good.  I just don't want you to take da stand. Right, I do know da truth a lot of people mad at me!  My girl, family & friends.  They think these people going to make you take da stand or make you bump head with me.  I must keeping it real with you, as for calling you mother, I didn't!  On da Hood,=nor=side=  So what Kristine talking about & Samantha wrote me a 5 page letter front and back  Don't know if Kristine going to come throu with that money, ask her what happen to that money!  Get back at me!  let me know Kilo.G  what up Att: who had do Jewelry?  They want me to step back from you!?"

44.     On or about dates unknown, in 2010-2011, in Johnson County, Texas, the Defendant, Mark Anthony Soliz wrote a letter to Co-Defendant, Jose Ramos, that stated: Jose, say vato, l cut ties with you, Do your own time like you been doing, Just got word on you, You know what up.  Don't have to let you know, I been a fu da ho tyme  You good you know that, peep game, it will follow u, Im out!  K.G."

Respectfully submitted,

MARTIN M. STRAHAN
ASSISTANT DISTRICT ATTORNEY
JOHNSON COUNTY, TEXAS
PHONE:  (817) 556-6800
FAX:      (817) 556-6814
CLEBURNE, TEXAS  76031
STATE BAR NO. 00797765

1844

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been sent by hand delivery to Michael Heiskell, Johnson, Vaughn & Heiskell, 5601 Bridge Street, Suite 220, Fort Worth, Texas 76102, fax (817) 496-1102 and to Greg Westfall, Attorney at Law, 121400 W. Abram Street, Arlington, Texas 76013, fax (817) 274-9724 on this the 25th day of January, 2012.

_____
MARTIN M. STRAHAN
ASSISTANT DISTRICT ATTORNEY

STATE'S FIFTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 28



# DALE HANNA
### DISTRICT ATTORNEY

18ᵗʰ & 249ᵗʰ JUDICIAL DISTRICT
JOHNSON & SOMERVELL COUNTIES

413ᵗʰ JUDICIAL DISTRICT
JOHNSON COUNTY

February 2, 2012

Greg Westfall
1400 W. Abram Street
Arlington, TX 76013

Re: Mark Anthony Soliz     F45059

Dear Mr. Westfall,

This letter is to notify you that business records regarding the above-mentioned case pertaining to Fire Report #10-1800042, Incident Detail Report & #10-1800068 from Fort Worth Fire Department consisting of 14 pages and records from Area Metropolitan Ambulance Authority dba MedStar EMS pertaining to Response Number 100629060 consisting of 9 pages have been filed in the Johnson County District Clerks Office.

Business Records Affidavit for Fort Worth Fire Department has been signed by Gabriela Yanes, an employee of Fort Worth Fire Department. Business Records Affidavit for Area Metropolitan Ambulance Authority dba MedStar EMS has been signed by Thomas C. Carr, an employee of Area Metropolitan Ambulance Authority dba MedStar EMS.

Business record affidavits for each were attached, and copies of which are attached to this notice.

If you have any questions, please do not hesitate to call.

Sincerely,

Martin Strahan
Assistant District Attorney

1846



# DALE HANNA
## DISTRICT ATTORNEY

18ᵗʰ & 249ᵗʰ JUDICIAL DISTRICT
JOHNSON & SOMERVELL COUNTIES

413ᵗʰ JUDICIAL DISTRICT
JOHNSON COUNTY

February 2, 2012

Michael Heiskell
5601 Bridge Street, Ste. 220
Fort Worth, TX 76112

Re: Mark Anthony Soliz     F45059

Dear Mr. Heiskell:

   This letter is to notify you that business records regarding the above-mentioned case pertaining to Fire Report #10-1800042, Incident Detail Report & #10-1800068 from Fort Worth Fire Department consisting of 14 pages and records from Area Metropolitan Ambulance Authority dba MedStar EMS pertaining to Response Number 100629060 consisting of 9 pages have been filed in the Johnson County District Clerks Office.

   Business Records Affidavit for Fort Worth Fire Department has been signed by Gabriela Yanes, an employee of Fort Worth Fire Department. Business Records Affidavit for Area Metropolitan Ambulance Authority dba MedStar EMS has been signed by Thomas C. Carr, an employee of Area Metropolitan Ambulance Authority dba MedStar EMS.

   Business record affidavits for each were attached, and copies of which are attached to this notice.

   If you have any questions, please do not hesitate to call.

Sincerely,

Martin Strahan
Assistant District Attorney

204 S. Buffalo, Suite 209  Cleburne, Texas 76033  (817) 556-6802 Metro (817) 477-3645 Fax (817) 556-6816

1847

CAUSE NO. F45059

THE STATE OF TEXAS     §     IN THE 413TH DISTRICT COURT

VS.     §     OF

MARK ANTHONY SOLIZ     §     JOHNSON COUNTY, TEXAS

## STATE'S SECOND AMENDED EXPERT WITNESS LIST

1.    Dr. S. Bao
   Tarrant County Medical Examiner
   200 Feliks Gwozdz Pl.
   Fort Worth, Texas  76104

2.    Kelly Belcher
   Tarrant County Medical Examiner
   200 Feliks Gwozdz Pl.
   Fort Worth, Texas  76104

3.    Det. Blansit
   Mansfield Police Department
   1200 E. Broad St.
   Mansfield, Texas  76063

4.    Christina Capt
   UNT Center for Human Identification
   3500 Camp Bowie Blvd.
   Fort Worth, Texas  76107

5.    Max Courtney
   Mansfield Police Department
   1200 E. Broad St.
   Mansfield, Texas  76063

6.    Dr. Crawford
   John Peter Smith Hospital
   Fort Worth, Texas

7.    Thomas Ekis
   Fort Worth Police Department
   350 W. Belknap St.
   Fort Worth, Texas  76102



STATE'S SECOND AMENDED EXPERT WITNESS LIST – PAGE 1

8.   Lannie Emanuel
     Integrated Forensic Labs
     901 Clinic Drive, Ste. D110
     Euless, Texas 76039

9.   Lt. Mike Gaudet
     Johnson County Sheriff's Office
     1102 E. Kilpatrick
     Cleburne, Texas  76031

10.  Allison Heard
     DPS Crime Laboratory
     Garland, Texas

11.  Pat Huston
     Tarrant County Probation/Community Supervision
     Fort Worth, Texas

12.  Trisha Kacer
     DPS Crime Laboratory
     Garland, Texas

13.  Dr. Marc Krouse
     Tarrant County Medical Examiner
     200 Feliks Gwozdz Pl.
     Fort Worth, Texas  76104

14.  John Laseter, Ph.D.
     11625 Custer Road
     #110-242
     Frisco, Texas  75035

15.  Sundaye Lopez
     Fort Worth Police Department Crime Lab
     350 W. Belknap St.
     Fort Worth, Texas  76102

16.  Michael Mayer
     Tarrant County Medical Examiner
     200 Feliks Gwozdz Pl.
     Fort Worth, Texas  76104

17.  A.P. Merillat
     Huntsville, Texas

STATE'S SECOND AMENDED EXPERT WITNESS LIST – PAGE 2

1849

18. Amber Moss
DPS Crime Laboratory
Garland, Texas

19. Jennifer Nollkamper
Fort Worth Police Department Crime Lab
350 W. Belknap St.
Fort Worth, Texas  76102

20. Dr. N. Peerwani
Tarrant County Medical Examiner
200 Feliks Gwozdz Pl.
Fort Worth, Texas  76104

21. Farah Plopper
UNT Center for Human Identification
3500 Camp Bowie Blvd.
Fort Worth, Texas  76107

22. Dr. J. Randall Price
Price, Proctor & Associates
11882 Greenville Ave., Suite 107
Dallas, Texas  75243

23. Dr. Timothy J. Proctor
Price, Proctor & Associates
11882 Greenville Ave., Suite 107
Dallas, Texas  75243

24. Dr. Stephen Rush, M.D.
Texas Health Fort Worth
Fort Worth, Texas

25. Dr. Gary Sisler
Tarrant County Medical Examiner
200 Feliks Gwozdz Pl.
Fort Worth, Texas  76104

26. Paul Slocum
Integrated Forensic Labs
901 Clinic Drive, Ste. D110
Euless, Texas 76039

27. Randall Thompson
2250 Lakeside Blvd.

STATE'S SECOND AMENDED EXPERT WITNESS LIST – PAGE 3

Richardson, Texas 75082

28. Lisa Temple, R.N.
John Peter Smith Hospital
Fort Worth, Texas

29. Carolyn Van Winkle
Tarrant County Medical Examiner
200 Feliks Gwozdz Pl.
Fort Worth, Texas  76104

30. Bill Walker
Tarrant County Medical Examiner
200 Feliks Gwozdz Pl.
Fort Worth, Texas  76104

31. Dr. Lloyd White
Tarrant County Medical Examiner
200 Feliks Gwozdz Pl.
Fort Worth, Texas  76104

32. Off. J.G. Wilson
Fort Worth Police Department
350 W. Belknap St.
Fort Worth, Texas  76102

33. Mark Porter
Burleson, Texas

34. Ernest Van Der Leest
Fort Worth, Texas

35. E. Earl Hauss, R.N.
Fort Worth, Texas

36. Ruben Cisneros
Fort Worth, Texas

37. Cory Williamson
Fort Worth, Texas

STATE'S SECOND AMENDED EXPERT WITNESS LIST – PAGE 4

1851

Respectfully submitted,

_____
MARTIN M. STRAHAN
ASSISTANT DISTRICT ATTORNEY
JOHNSON COUNTY, TEXAS (817) 556-6800
204 S. BUFFALO AVE., SUITE 209
CLEBURNE, TEXAS  76031
STATE BAR NO. 00797765

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been sent by facsimile transmission to Michael Heiskell, Johnson, Vaughn & Heiskell, 5601 Bridge Street, Suite 220, Fort Worth, Texas 76102, fax (817) 496-1102 and to Greg Westfall, Attorney at Law, 1400 W. Abram Street, Arlington, Texas 76013, fax (817) 274-9724 on this the \_\_\_\_ day of February, 2012.

_____
MARTIN M. STRAHAN
ASSISTANT DISTRICT ATTORNEY

STATE'S SECOND AMENDED EXPERT WITNESS LIST – PAGE 5

1852

CAUSE NO. F45059

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 413th DISTRICT COURT |
| | § | |
| VS. | § | OF |
| | § | |
| MARK ANTHONY SOLIZ | § | JOHNSON COUNTY, TEXAS |

## STATE'S NINTH AMENDED WITNESS LIST

**TO THE HONORABLE JUDGE OF SAID COURT:**

   **COMES NOW** the State of Texas represented by her Criminal District Attorney of Tarrant County, Texas, and files this **STATE'S SEVENTH AMENDED WITNESS LIST**. All address and phone numbers not specifically listed below are contained in the State's file that is been made available to the attorney of record for the Defendant.



## A. **FORT WORTH POLICE DEPARTMENT**
350 W. BELKNAP ST.
FORT WORTH, TEXAS 76102

1. OFF. J ABRAMS
2. OFF. J ALANIZ
3. OFF. A ALLCON
4. OFF. ALLEN
5. OFF ANDREWS
6. OFF. L AVERY
7. OFF. R BALLARD
8. SGT. R. BATES
9. DET. T BOETCHER
10. OFF. JG BRADFORD
11. OFF. D BRUCE
12. OFF. B BRUMLEY
13. OFF. BUNNY BUTH
14. OFF BLUNK
15. OFF. A CARDWELL
16. OFF. CAVETT
17. DET. J CEDILLO
18. OFF. ERIC CHARLES
19. OFF. ROBERT COSTA

STATE'S NINTH AMENDED WITNESS LIST - PAGE 1

1853

20. OFF. JR COX
21. OFF TJ CRABILL
22. OFF. B DAVIS
23. SGT. DENA
24. OFF BRIANNE DIBLEY
25. OFF. F DISSINGER
26. OFF TC DUNN
27. THOMAS EKIS
28. SGT. ELGIN
29. OFF. MANUEL ELIZARRARAZ
30. OFF JA FARAH
31. OFF. W FIGUEROA
32. OFF JC FRIAS
33. DET. HL GIBBS
34. OFF. J GIPSON
35. OFF. RD GILFOUR
36. OFF. GD GILLIAM
37. OFF. G. GUTIERREZ
38. OFF. D. HALMAGEAN
39. OFF RUSSELL HAYDEN
40. OFF. EV HERNANDEZ
41. OFF. M. HERNANDEZ
42. OFF JG HOLMAN
43. OFF. J HOPPER
44. OFF. S HOWZE
45. OFF. HYDEN
46. OFF. P HYDER
47. OFF SA IKER
48. SGT. B JAMISON
49. OFF. AM JAY
50. OFF.J JOHNSON
51. OFF. C JONES
52. OFF. K JUDD
53. OFF KEADLE
54. OFF SARAH KEENAN
55. OFF. KERRY KIMBALL
56. OFF. LARRY LANCE
57. OFF. G LARA
58. DET. T LAWRENCE
59. OFF JL LAWSON
60. OFF. T LEE
61. SUNDAYE LOPEZ
62. OFF. G MEDRANO
63. OFF. MORRISON

<u>STATE'S NINTH AMENDED WITNESS LIST - PAGE 2</u>

1854

64.   JENNIFER NOLLKAMPER
65.   DET. OCHOA
66.   DET. D PAINE
67.   OFF. E PATE
68.   DET. S PHILLIPS
69.   OFF. RJ PRESNEY
70.   OFF. A PRICE
71.   OFF. M RAMIREZ
72.   DET. B RANDOLPH
73.   DET. EB RAYNSFORD
74.   SGT REYNOLDS
75.   DET. JT RHODEN
76.   OFF DK RHONE
77.   OFF. M RIDDLE
78.   OFF. K ROBERTSON
79.   OFF WT ROBINSON
80.   OFF. D LEWIS
81.   H. GONZALEZ-PINEDA- 911 OPERATOR
82.   MANDY RIDDLE-FW POLICE COMMUNICATIONS
83.   OFF. LE ELGIN
84.   OFF. RG BROTHERTON
85.   OFF. EVERETT
86.   OFF. DORSEY
87.   J. SALAZAR
88.   OFF. W. SHOW
89.   OFF JM SIMMS
90.   CAPT. SKIDMORE
91.   OFF. A STAGGS
92.   DET JD STANFORD
93.   DET. JG STEELE
94.   OFF. D SULLIVAN
95.   OFF JD TATE
96.   OFF JC TAPIA
97.   OFF. R THOMPSON
98.   OFF. J THORNTON
99.   OFF. R TOWNS
100.  DET. L TRACY
101.  OFF. D UKLE
102.  DET. J VARNON
103.  OFF. T VOA
104.  OFF. D WASHINGTON
105.  OFF. WEBB
106.  OFF. CHRIS WELLS
107.  OFF. JG WILSON

STATE'S NINTH AMENDED WITNESS LIST - PAGE 3

1855

108. DET CE WISE
109. OFF. DARRYL W.WOODY
110. OFF. K MCMURTREY
111. OFF. SHEERAN
112. OFF. GOSSETT
113. OFF. OWINGS
114. OFF. TIGRETT
115. OFF. LA SCHERERN
116. DET. K. SULLIVAN
117. OFF WT WATKINS
118. CAMI WIMBERLEY
119. OFF. TYLER
120. STEPHANIE POTTER
121. LAURA MARTINEZ
122. CAROLINE FRALIA

## B. CIVILIANS

1. SAMEER ABDEL-JABER
   FORT WORTH, TEXAS
2. SAMMY ABU-LUGHOD
   FORT WORTH, TEXAS
3. RON ALLEY
   FORT WORTH, TEXAS
4. NARCISO AMADOR
   FORT WORTH, TEXAS
5. JAMES EDWARD ANDREWS
   FORT WORTH, TEXAS
6. JESSICA BALDERAS
   GODLEY, TEXAS
7. JESUS BELTRAN
   FORT WORTH, TEXAS
8. BRIAN BROWN
   BURLESON, TEXAS
9. DR. NATALIE BROWN
   FORT WORTH, TEXAS
10. RODNEY BROWN
    FORT WORTH, TEXAS
11. MAXIMINO CHAVEZ-SOTO
    FORT WORTH, TEXAS
12. V. CIRCELLI
    FORT WORTH,TEXAS
13. CHELSEA CIRCELLI
    FORT WORTH, TEXAS
14. BRENDA COFER

STATE'S NINTH AMENDED WITNESS LIST - PAGE 4

1856

GODLEY, TEXAS
15. FELIPE CONTRERAS
    FORT WORTH, TEXAS
16. SAMUEL COX
    FORT WORTH, TEXAS
17. CHRISTOPHER DAVILA
    GRANBURY, TEXAS
18. BEN DAVIS
    GODLEY, TEXAS
19. KILA DAVIS
    GODLEY, TEXAS
20. CLAYTON DAVIS
    GODLEY, TEXAS
21. BARRY DICKEY
    MANSFIELD, TEXAS
22. KENNY DODGIN
    WATAUGA, TEXAS
23. ARNOLDO DOMINGUEZ
    FORT WORTH, TEXAS
24. FERNANDO DOMINGUEZ
    FORT WORTH, TEXAS
25. MIGUEL DOMINGUEZ
    FORT WORTH, TEXAS
26. EDDIE DURAN
    FORT WORTH, TEXAS
27. ELIZABETH ESTRADA
    TARRANT COUNTY JAIL
28. A. EVANS
    FORT WORTH, TEXAS
29. CHADLEY FOSTER
    FORT WORTH, TEXAS
30. MARCY GIRTON
    1300 ROSEWOOD DRIVE
    COLUMBIA, SOUTH CAROLINA
31. ARTURO GONZALES
    TARRANT COUNTY JAIL
32. JOSE GONZALES
    FORT WORTH, TEXAS
33. STEPHANIE GRAY
    BENBROOK, TEXAS
34. VIVIANA GONZALES
    FORT WORTH, TEXAS
36. NABIL HILO
    FORT WORTH, TEXAS

STATE'S NINTH AMENDED WITNESS LIST - PAGE 5

37. DONATELLO HINKLE
    FORT WORTH, TEXAS
38. JOHN HINKLE
    FORT WORTH, TEXAS
39. JL HINOJOSA
    FORT WORTH, TEXAS
40. BARNEY B HOLLAND
    FORT WORTH, TEXAS
41. LACY HUNSUCKLE
    FORT WORTH, TEXAS
42. JEFFEREY T. KNOESEL
    FORT WORTH, TEXAS
43. RYAN LAMB
    FORT WORTH, TEXAS
44. NH LASEMAN
    CLEBURNE, TEXAS
45. LISA LEWIS
    FORT WORTH, TEXAS
46. WHITNEY LEWIS
    FORT WORTH, TEXAS
47. JAIMES LUCIANO
    FORT WORTH, TEXAS
48. JESUS LUNA
    FORT WORTH, TEXAS
49. LUIS LUNA
    FORT WORTH, TEXAS
50. THERESA MACHADO
    FORT WORTH, TEXAS
51. M. MAHARAZAN
    FORT WORTH, TEXAS
52. RICKY MALONE
    FORT WORTH, TEXAS
53. JERRY MARTIN
    BENBROOK, TEXAS
54. DIEGO MARTINEZ
    FORT WORTH, TEXAS
55. L. MARTINEZ
    FORT WORTH, TEXAS
56. YOLANDA MARTINEZ
    FORT WORTH, TEXAS
57. DOUGLAS MATA
    FORT WORTH, TEXAS
58. ROSIE MEDINA
    TARRANT COUNTY JAIL

STATE'S NINTH AMENDED WITNESS LIST - PAGE 6

1858

59.  RAMON MORALES
     FORT WORTH, TEXAS
60.  JUSTIN MORRIS
     FORT WORTH, TEXAS
61.  OLGA NAREZ
     FORT WORTH, TEXAS
62.  ANDREAS NAVA
     FORT WORTH, TEXAS
63.  MATHEW NAVARRO
     FORT WORTH
64.  WALEED OBAID
     FORT WORTH, TEXAS
65.  ERICA LEE ODONNELL
     FORT WORTH, TEXAS
66.  DANIEL ORDONEZ
     FORT WORTH, TEXAS
67.  MIRIAM OLIVAREZ
     DURANT, OK
68.  PATRICIA PARSONS
     FORT WORTH, TEXAS
69.  ROXANE PEREZ
     FORT WORTH, TEXAS
70.  JUAN RAMIREZ
     FORT WORTH, TEXAS
71.  MARIA RAMIREZ
     FORT WORTH, TEXAS
72.  BRIANNA RAMIREZ
     FORT WORTH, TEXAS
73.  MICHAEL RAMIREZ
     FORT WORTH, TEXAS
74.  JAQUALINE RAMIREZ
     FORT WORTH, TEXAS
75.  VERONICA RAMIREZ
     FORT WORTH, TEXAS
76.  JOSE RAMOS
     TARRANT COUNTY JAIL
77.  VINCE RANGEL
     FORT WORTH, TEXAS
78.  MIRTHA REYES
     DALLAS, TEXAS
79.  CATHY RICHARDSON
     TARRANT COUNTY JAIL
80.  MARIA RIVERA
     FORT WORTH, TEXAS

STATE'S NINTH AMENDED WITNESS LIST - PAGE 7

1859

81. RICK RODEN
    GODLEY, TEXAS
82. TARA RODEN
    GODLEY, TEXAS
83. JUANA SALAS
    FORT WORTH, TEXAS
84. ENRIQUE SAMANIEGO
    FORT WORTH, TEXAS
85. JESSE SANCHEZ
    FORT WORTH, TEXAS
86. ELVIA SILVA
    FORT WORTH, TEXAS
87. JOSHUA SOLIS
    FORT WORTH, TEXAS
88. JORGE TAMAYO
    FORT WORTH, TEXAS
89. JOAN TREW
    FORT WORTH, TEXAS
90. JAMIE VESSELL
    FORT WORTH, TEXAS
91. LETICIA VILLEGAS
    FORT WORTH, TEXAS
92. DARLENE WATSON
    BENBROOK, TEXAS
93. WALTER LUTHER WATSON
    BENBROOK, TEXAS
94. GLORIA SERRANO
    FORT WORTH, TEXAS
95. MIKE ORTEGA
    FORT WORTH, TEXAS
96. SANTOS RANGEL
    FORT WORTH, TEXAS
97. SAMANTHA ESTRADA
    FORT WORTH, TEXAS
98. PAUL CONTRERAS
    FORT WORTH, TEXAS
99. EDDIE CONTRERAS
    FORT WORTH, TEXAS
100. DONNA SUE SOLIZ
    FORT WORTH, TEXAS
101. ARNOLD ZAMORA
    FORT WORTH, TEXAS
102. JUAN RAMIREZ
    FORT WORTH, TEXAS

STATE'S NINTH AMENDED WITNESS LIST - PAGE 8

103. VERONICA GARCIA
     FORT WORTH, TEXAS
104. BRIANNA RAMIREZ
     FORT WORTH, TEXAS
105. MICHAEL RAMIREZ
     FORT WORTH, TEXAS
106. MIRTHA REYES
     FORT WORTH, TEXAS
107. TAMMY RAMOS
     FORT WORTH, TEXAS
108. MONICA RAMOS
     FORT WORTH, TEXAS
109. TERESA RAMOS
     FORT WORTH, TEXAS
110. CLAYTON SMITH
     GODLEY,TEXAS
101. MARY SMITH
     GODLEY, TEXAS
102. SHARON SOLIZ-RANGEL
     FORT WORTH, TEXAS
103. BRIAN MATTHEW BROWN
     FORT WORTH, TEXAS
104. RILEY HAMPTON DAVIS
     GODLEY, TEXAS
105. RHETT HARRISON DAVIS
     GODLEY, TEXAS
106. ELLGIO CONTRERRAS
     KEENE, TEXAS
107. MARY GALUS
     FORT WORTH, TEXAS
108. RUBEN CISNEROS
     FORT WORTH, TEXAS
109. KAREN MCMURTREY
     FORT WORTH, TEXAS
110. HOWARD MCMURTREY
     FORT WORTH, TEXAS
111. GENE TURNEY
     FORT WORTH, TEXAS
112. RAUL SAENZ
     FORT WORTH, TEXAS
113. MIKE ORTEGA
     FORT WORTH, TEXAS
114. CATHERINE POLOMA
     FORT WORTH, TEXAS

STATE'S NINTH AMENDED WITNESS LIST - PAGE 9

115. ANIL BHANTANA
FORT WORTH, TEXAS
116. DANIEL ORDONEZ
FORT WORTH, TEXAS
117. ROBERT VARGAS
FORT WORTH, TEXAS
118. MR. MEEHAN
FORT WORTH, TEXAS
119. BEATRIZ MEEHAN
FORT WORTH, TEXAS
120. SYDNEY NAVARRO
FORT WORTH, TEXAS
121. MARK PORTER
FORT WORTH, TEXAS
122. ERNEST VAN DER LEEST
FORT WORTH, TEXAS
123. PAM WALKER BROWN
FORT WORTH, TEXAS
124. MICHAEL WOODS
FORT WORTH, TEXAS

C. **JOHNSON COUNTY LAW ENFORCEMENT CENTER**
CLEBURNE, TEXAS
1. JOSE ARRIOLA
2. LT. DAVID BOGGESS
3. LT. BOUTWELL
4. ALLEN CARDENA
5. ARNOLD GRIFFIN
6. MICHAEL GOOD
7. SGT. LAURIE GUNTER
8. SHAWN HERNANDEZ
9. EUGENE HINDS
10. WARDEN JANICEK
11. CHIEF JOHNSON
12. TRAVIS JONES
13. MAJ. J. KELSEY
14. CHASE KINMAN
15. DANA KINNARD
16. RONNIE MCCOWAN
17. SGT. J. MEEKS
18. SGT. MOLINA
19. STEVEN PARRISH
20. CHRISTIAN PASCHAL
21. SHELLY PRESTON

STATE'S NINTH AMENDED WITNESS LIST - PAGE 10

1862

22.  GINGER PROCTOR
23.  JASON PUGH
24.  TIMOTHY PUTMAN
25.  CORRECTIONS OFF. JUSTIN RALEIGH
26.  JAMES RENFRO
27.  RENEE SAMPLE
28.  DAVID TURNER
29.  JESSE TURNER
30.  WILSON WIMBERLY
31.  OFFICER PIERCE

D. **JOHNSON COUNTY SHERIFF'S OFFICE**
1102 E. KILPATRICK
CLEBURNE, TEXAS 76031
1.  SGT R BATES
2.  DET. BENNETT
3.  DET. D. BLANKENSHIP
4.  DEP. L CORWIN
5.  DET.T DALTON
6.  DEP. FORD
7.  CPT. T. FULLER
8.  LT. MIKE GAUDET
9.  DET. A GILREATH
10.  TINA HODNETT
11.  DEP. HOGAN
12.  LT. T JONES
13.  DEP. W. KETCHUM
14.  DET. J KNIFFEN
15.  DEP.K LINK
16.  DEP. M POOLE
17.  DEP. M POWELL
18.  PAULA REID
19.  LAURIE STOVALL
20.  DEP.TRUITT
21.  JW WALDRAN
22.  DET. K WRENN
23.  DET. L YOCHAM
24.  SHERIFF BOB ALFORD

E. **TARRANT COUNTY MEDICAL EXAMINER'S OFFICE**
200 FELIKS GWOZDZ PL.
FORT WORTH, TEXAS 76104
1.  DR. S. BAO

STATE'S NINTH AMENDED WITNESS LIST - PAGE 11

2. KELLY BELCHER
3. P. ELRASHID
4. DR. MARC KROUSE
5. MICHAEL MAYER
6. DR. N. PEERWANI
7. M. POLLARD
8. ESTHER GUTIERREZ
9. DR. GARY SISLER
10. T. SWAN
11. MARK THOMPSON
12. CAROLYN VAN WINKLE
13. BILL WALKER
14. DR. LLOYD WHITE
15. ESTHER GUTIERREZ
16. PAT EDDINGS
17. DUSTY PYLE

F. **MANSFIELD POLICE DEPARTMENT**
1200 E. BROAD ST.
MANSFIELD, TEXAS 76063
1. DET. BLANSIT
2. MAX COURTNEY
3. R. DENNING
4. R. HASH
5. M. MALCOLM
6. B. MOORE

G. **BENBROOK POLICE DEPARTMENT**
1. OFF. D BYRD
2. DET. LEE
3. DET. J LEWELLEN
4. LT. D MARTIN
5. OFF. T MILLER
6. C. MONTGOMERY
7. DET. C ROSS
8. OFF. D WALLACE

H. **UNT**
UNT CENTER FOR HUMAN IDENTIFICATION
3500 CAMP BOWIE BLVD.
FORT WORTH, TEXAS 76107
1 CHRISTINA CAPT
2. FARAH PLOPPER
3. JENNIFER URBINA

STATE'S NINTH AMENDED WITNESS LIST - PAGE 12

1864

    4.    RUTH R DUNAHOO

    5.    ANNETTA MILLER

    6.    KELLY NELSON

I. **INTEGRATED FORENSIC LABS**
901 CLINIC DRIVE, STE. D110
EULESS, TEXAS 76039

    1.    LANNY EMMANUEL

    2.    PAUL SLOCUM

J. **DPS CRIME LABORATORY**
GARLAND, TEXAS

    1.    ALLISON HEARD

    2.    TRISHA KACER

    3.    AMBER MOSS

K. **TARRANT COUNTY COMMUNITY SUPERVISION**

    1.    PAT HUSTON

    2.    LEANNA JUDD

    3.    R. SALINAS

    4.    DAVIS CHANDLER

L. **MENTAL HEALTH PROFESSIONALS**

    1.    JOHN LASETER, PHD
           11625 CUSTER ROAD #110-242
           FRISCO, TEXAS 76102

    2.    DR. J RANDALL PRICE
           PRICE, PROCTOR & ASSOCIATES
           11882 GREENVILLE AVE, SUITE 107
           DALLAS, TEXAS 75243

    3    DR.TIMOTHY PROCTOR
           PRICE, PROCTOR & ASSOCIATES
           11882 GREENVILLE AVE, SUITE 107
           DALLAS, TEXAS 75243

    4.    DR. ROGER BURNS
           FORT WORTH, TEXAS

    5.    DR. PREMA MANJUMATH
           FORT WORTH, TEXAS

    6.    DR. DONNA ABBOT
           DALLAS, TEXAS

    7.    PENELOPE ROSEN- BUCKNER

    8.    DAVID CHANDLER- BUCKNER

    9.    DR. CHRISTINA REED-
           PRICE, PROCTOR & ASSOCIATES

STATE'S NINTH AMENDED WITNESS LIST - PAGE 13

1865

11882 GREENVILLE AVE, SUITE 107
DALLAS, TEXAS 75243
10.   DR. DAVID SELF
FLINT, TEXAS

## M. TEXAS DEPARTMENT OF CORRECTIONS

1.    A.P. MERILLAT
2.    BRAD LIVINGSTON
3.    VANESSA JONES
4.    OFF. L QUICK
5.    OFF. JAMES JOHNSON
6.    OFF. W.D. JOCK
7.    OFF. D. KIDD
8.    OFF. M. WILLARD
9.    OFF. HOLMAN
10.   RACHEL E WILLIAMS
11.   OFF. C. SHIRAH
12.   OFF. H. YARBROUGH
13.   OFF. KAREN HENRY
14.   OFF. HAROLD JOHNSON
15.   OFF. A. HOLMAN
16.   E. GARZA
17.   R. GRANT
17.   OFF. PETERS
18.   OFF. L. WOFFORD
19.   OFF. JERRY ROGERS
20.   OFF. WINSTON YOUNG
21.   OFF. E. CLEMMONS
22.   SGT F. GUITIERREZ S.T.G.O.
23.   OFF. BILLY CORNELL
24.   OFF. I. BONNOR
25.   OFF. JUDY HUGHES
26.   OFF. W. CLIFFORD
27.   OFF. B. THOMPSON
28.   OFF. DT CREASON
29.   OFF. M. BARNETT
30.   OFF. C. WILLET
31.   OFF. A GOBER
32.   OFF. CATHERTON
33.   STEVEN ROGERS
34.   OFF. STERLIDO EDWARDS
35.   OFF. G COUCH
36.   OFF. D HOUSE
37.   OFF. M BENNETT

STATE'S NINTH AMENDED WITNESS LIST - PAGE 14

1866

38.    INMATE EROS BROWN
39.    INMATE JOHN O'DELL
40.    INMATE WILLIE JENKINS
41.    INMATE STEVEN MUSKOWITZ
42.    EMIL GARZA
43.    ROBERT GRANT
44.    SGT. F. GUTIERREZ
45.    SHARON DEFFERENT
46.    B. SCROGGINS
47.    J. WELDON
48.    OFF. GIPSON

N. **RECORDS CUSTODIANS**
1.    HAWK SECURITY
      BENBROOK, TEXAS
2.    RENEE CANTON
      CASH AMERICA PAWN SHOPS
      2900 N. MAIN STREET
      FORT WORTH, TEXAS
2.    ANDREA COTTRELL
      CASH AMERICA PAWN SHOPS
      FORT WORTH, TEXAS
4.    JOHN TILLEY
      NORTHSIDE PAWN SHOP
      2609 N. MAIN STREET
      FORT WORTH, TEXAS
5.    RECORDS CUSTODIAN
      A-I PAWN & JEWELRY
      4201 HEMPHILL ST. 1420 W BERRY
      FORT WORTH, TEXAS
6.    RECORDS CUSTODIAN
      MOTEL 6
      3271 I-35W
      FORT WORTH, TEXAS 76106
7.    RECORDS CUSTODIAN
      FORT WORTH FIRE DEPARTMENT
      FORT WORTH, TEXAS
8.    RECORDS CUSTODIAN
      MEDSTAR
      FORT WORTH, TEXAS

O. **TEXAS RANGERS**
1.    SGT. DON STONER
2.    LT. CRAYTON MCGEE

STATE'S NINTH AMENDED WITNESS LIST - PAGE 15

1867

P. **JOHN PETER SMITH**
- 1. DR. W. CRAWFORD
- 2. LISA TEMPLE, RN.
- 3. JUDY THOMAS
- 4. DR. RAJESH RAMESH GANDHI
- 5. DR.M RICHARDSON
- 6. DR. POWELL KINNEY
- 7. DR. SHERRY RUTH KONDZIELA
- 8. DR. RJ WEDDEN
- 9. AMANDA TICE, RN
- 10. JANA PALMER, RN
- 11. DR. JOSHUA PRATT
- 12. DR. VERONICA WILLSON
- 13. DR. CHARLOTTE WILLIAMS
- 14. DR. DANIEL ZIEGLER
- 15. DEBRA STUART, RN
- 16. ALISA BILBREY, CST
- 17. ERIC THOMPSON, RN
- 18. S. GRIS WELL, RN

Q. **METRO PCS**
- 1. RANDALL THOMPSON

R. **COLLEYVILLE POLICE DEPARTMENT**
- 1. DET. KEVIN WALLING

S. **TDC PAROLE**
- 1. CHRISTINA PROPES
- 2. TIM LANGFORD
- 3. MICHELLE KREGER
- 4. BOB PURCELL
   DALLAS, TEXAS

T. **MAGISTRATES/JUDGES**
- 1. THE HONORABLE SCOTT WISCH
   JUDGE, 372ND DISTRICT COURT
   TARRANT COUNTY, TEXAS
- 2. THE HONORABLE EVERETT YOUNG
   JUDGE, 297TH DISTRICT COURT
   TARRANT COUNTY, TEXAS

U. **TARRANT COUNTY JAIL**
- 1. STACI TURNER- RECORDS CUSTODIAN
- 2. SGT. BLACK

STATE'S NINTH AMENDED WITNESS LIST - PAGE 16

1868

3.   DEP. YANDELL
4.   DEP. RG ALMENDAREZ
5.   SGT. DUNHAM
6.   DEP. J PAULEY
7.   DEP. LAMBETH
8.   DEP. C BREWER
9.   SGT. R REYES
10.  DEP. POTTS
11.  OFF. R CURTIS
12.  OFF. SIFUENTES
13.  SGT. T BROWNING
14.  DEP. R HART
15.  DEP.J LHELM
16.  DEP. PIERSON
17.  DEP. G PARRAMORE
18.  LT. J RUCKER
19.  JAMES BLASZAK
20.  M. COX
21.  E. BOWMAN
22.  T. NOEL
23.  E. GARZA
24.  D. SCOTT
25.  R. WARD
26.  E. GRACIA
27.  R. CASAREN
28.  MR CUDE
29.  E. HERRIAGE
30.  P. BURKETT
31.  C. WILLIAMS
32.  CPL. RENDER
33.  DEP MUHAMMAD
34.  B. POCHE
35.  DEP DAVIS
36.  DEP SALAS
37.  W. TAYLOR
38.  B. NASH
39.  SGT PILKINGTON
40.  OFF C MERCHANT
41.  DEP I A LOPEZ
42.  DEP MJ TAYLOR
43.  DEP ESTRADA

1869

V. **JUVENILE PROBATION**
1. PO SALINAS
2. PO WHEAT
3. PO CASTOREN
4. PO B HAMPTON
5. PO CHARLES VERMERSCH
6. PO PAUL BROCK WAY
7. PO GUSTAFSON
8. PO LEANNA JUDD

W. **CHILD PROTECTIVE SERVICES**
1. HEIDI SCHMIDT
2. PENELOPE ROSEN
3. ROBIN WELCH
4. JACKIE CUANZZO
5. LAURA FLORES
6. SANDY MCGUIRE

X. **TEXAS HEALTH SOUTH**
1. DR. STEVEN RUSH

Y. **NEUROLOGIST**
1. DR. JORGE ROMERO

Z. **TARRANT COUNTY**
1. MARK PORTER
2. ERNEST VAN DER LEEST

AA. **FORT WORTH MEDSTAR**
1. E. EARL HAUSS, R.N.
2. RUBEN CISNEROS
3. CORY WILLIAMSON

BB. **FORT WORTH FIRE DEPARTMENT**
1. GABRIELA YANES
2. LT. CHRISTOPHER A. OWENS
3. MICHAEL W. WEATHERWOOD

1870

Respectfully submitted,


MARTIN M. STRAHAN
ASSISTANT DISTRICT ATTORNEY
JOHNSON COUNTY, TEXAS
PHONE (817) 556-6800
FAX (817) 556-6814
204 S. BUFFALO AVE., SUITE 209
CLEBURNE, TEXAS  76031
STATE BAR NO. 00797765


## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been sent by hand delivery to Michael Heiskell, Johnson, Vaughn & Heiskell, 5601 Bridge Street, Suite 220, Fort Worth, Texas 76102, fax (817)496-1102 and to Greg Westfall, Attorney at Law, 1400 W. Abram Street, Arlington, Texas 76013, fax (817) 274-9724 on this the __to__ day of __February__, 2012.


MARTIN M. STRAHAN
ASSISTANT DISTRICT

1871

CAUSE NO. F45059

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 413TH DISTRICT COURT |
| VS. | § | OF |
| MARK ANTHONY SOLIZ | § | JOHNSON COUNTY, TEXAS |

### STATE'S SIXTH AMENDED NOTICE OF INTENT TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the State of Texas, in the above numbered and styled cause and under TEX.

CODE CRIM. PRO. art. 37.071, 37.07(3)(g),  CRIM. EVID. 404(B) and 609, presents this notice of

the State's intent to introduce evidence of extraneous matters.

### I.  Prior Juvenile Convictions

1.      On or about September 23, 1992, the Defendant committed the offense of Burglary of a Habitation in Tarrant County, Texas.  Said offense was filed in Cause Number 50608-J in the 323rd District Court of Tarrant County, Texas and later plead to the lesser included offense of Theft.

2.      On or about November 17, 1992, the Defendant was adjudicated and found to have engaged in the delinquent conduct of Theft in the 323rd District Court of Tarrant County, Texas in Cause Number 50608-J.

3.      On or about August 9, 1993 the Defendant's probation in Cause Number 50608-J in the 323rd District Court of Tarrant County, Texas was extended for one year until November 25, 1994.  Two other pending cases were dismissed in agreement for Defendant agreeing to have is probation extend for one year.

4.      On or about August 18, 1997, the Defendant Mark Anthony Soliz was placed on probation for the offense of Theft $1500-$20,000 in County Court at Law Number Three in Cause No. 321-70298-97 in Smith County, Texas.

### II.  Unadjudicated Juvenile Criminal Offenses

1.      On or about February 22, 1992, the Defendant committed the offense of Burglary of a

STATE'S SIXTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 1

1872

Coin-Operated Machine in Tarrant County, Texas.

2.      On or about July 16, 1992, the Defendant committed the offense of Attempted Burglary of a Motor Vehicle in Tarrant County, Texas.

3.      On or about October 20, 1992, the Defendant committed the offense of Burglary of a Habitation in Tarrant County, Texas. Restitution for the stolen property for the burglary was $4,388.72 with the victims being Karen and Howard McMurtrey. Items stolen in the burglary included a TV, VCR, jewelry and firearms. The firearms included a handgun, rifle and shotgun.

4.      On or about July 30, 1993, the Defendant committed the offense of Criminal Mischief $200 to $750 in Tarrant County, Texas.

5.      On or about July 31, 1993, the Defendant committed the offense of Criminal Mischief $20 to $200 in Tarrant County, Texas.

6.      On or about January 31, 1994, the Defendant committed the offense of Burglary of a Building in Tarrant County, Texas.

7.      On or about January 1, 1996, the Defendant committed the felony offense of aggravated assault with a deadly weapon by pulling a knife on his parole officer in Collin County, Texas.

### III.  Prior Juvenile Bad Acts

1.      On or about 1987 to 1990, in Tarrant County, Texas, the Defendant set multiple fires including, grass, trash, garbage cans and the upstairs of his aunt's home, Sharon Rangel, between the ages of 5 and 8.

2.      On or about 1991, in Tarrant County, Texas, the Defendant used cocaine, marijuana, alcohol and sniffed paint at the age of 9.

3.      On or about 1991, in Tarrant County, Texas, the Defendant possessed a loaded firearm in the waistband of his pants while drinking a bottle of Seagram's whiskey at the age of 9.

4.      On or about August 31, 1992, the Defendant was admitted voluntarily by his mother, Donna Soliz and treated at Tarrant County Psychiatric Center Children's Unit and Trinity Springs Pavilion in John Peter Smith Hospital for stealing cars, dealing and selling drugs, fighting, drinking heavily, sniffing paint, smoking marijuana, and carrying guns in Tarrant County, Texas.

5.      On or about November 18, 1992, while at the Tarrant County Juvenile Detention Center, the Defendant was put in isolation for hitting a peer in the face with a towel in Tarrant County, Texas.

6.      On or about August 2, 1993, in Tarrant County, Texas, the Defendant stole cigarettes from

1873

multiple convenience stores.

7.      On or about August 2, 1993, in Tarrant County, Texas, the Defendant was ordered detained in the Juvenile Court of Tarrant County, Texas for engaging in delinquent conduct/conduct indicating a need for supervision.

8.      On or about August 4, 1993, in the Tarrant County Juvenile Detention Center, the Defendant was observed using profanity and pushing a table during breakfast in Tarrant County, Texas.

9.      On or about August 9, 1993, in Tarrant County, Texas, the Defendant was ordered detained in Cause No. 50608-J in the Juvenile Court of Tarrant County, Texas for engaging in delinquent conduct/conduct indicating a need for supervision.

10.     Prior to August 10, 1993, the Defendant was truant from school on multiple occasions in Tarrant County, Texas.

11.     On or about August 10, 1993, in Tarrant County, Texas, as part of his Tarrant County Juvenile Probation intake, the Defendant was given a psychological/psychiatric exam with a DSM III diagnosis of: Axis I Conduct Disorder, Cultural Familial Delinquency, Substance Abuse by History, Attention Deficit Disorder, Residual, Axis II mixed developmental disabilities, reading, spelling, and arithmetic. These findings were determined to be chronic and severe. Defendant was prescribed Ritalin.

12.     On or about August 10, 1993, in Tarrant County, Texas, as part of his Tarrant County Juvenile Probation intake, the Defendant stated that he hated his aunt, Sharon Rangel, and his principal because they confront his negative behavior.

13.     On or about August 10, 1993, in Tarrant County, Texas, as part of his Tarrant County Juvenile Probation intake, the Defendant admitted that he had committed the offense of Burglary of a Habitation and stealing a TV, VCR, jewelry and guns.

14.     On or about August 10, 1993, in Tarrant County, Texas, as part of his Tarrant County Juvenile Probation intake, the Defendant admitted that he had committed the offense of Criminal Mischief by shooting a bb gun at passing cars and a building. Defendant stated he committed this offense because he was bored.

15.     On or about August 10, 1993, in Tarrant County, Texas, as part of his Tarrant County Juvenile Probation intake, the Defendant admitted that he committed the offense of Burglary of a Building by breaking into classrooms as school and ransacking the rooms and stealing walkie-talkies and personal items from the teacher.

16.     On or about August 10, 1993, in Tarrant County, Texas, as part of his Tarrant County Juvenile Probation intake, the Defendant admitted that he was a member of the street gangs 4 X 3

1874

Crips and the Latin Kings.

17.    On or about October 1993, in Tarrant County, Texas, the Defendant was seen at the Santa Fe Counseling Day Program for behavioral problems but did not follow directions or attend groups resulting in a failure of treatment.

18.    On or about November 17, 1993, in Tarrant County, Texas, the Defendant was ordered detained in Cause No. 50608-J in the Juvenile Court of Tarrant County, Texas for engaging in delinquent conduct/conduct indicating a need for supervision.

19.    On or about January 31, 1994, at the Tarrant County Juvenile Detention Center, Officer B. Harper observed an "S" tattoo on Defendant's left thumb in Tarrant County, Texas.

20.    On or about February 2, 1994, the Defendant was put in isolation at the Tarrant County Juvenile Detention Center for putting a piece of paper in his door lock in Tarrant County, Texas.

21.    On or about February 9, 1994, in Tarrant County, Texas, the Defendant was court ordered to placement at Buckner's Children's Home in Dallas, Texas for counseling and treatment for his delinquent behaviors and drug abuse education.

22.    On or about March 16, 1994, in Dallas County, Texas, the Defendant made gang signs while at church and pretended to sell crack cocaine while at school. The Defendant admitted that he was selling road salt and saying it was crack cocaine.

23.    On or about March 19, 1994, the Defendant admitted to David Chandler to acting out sexually with other male students at Buckner's Children's Home in Dallas County, Texas.

24.    On or about April 4, 1994, the Defendant broke a window out of anger at Buckner's Children's Home in Dallas County, Texas.

25.    On or about April 4, 1994, the Defendant stole $10 from his teacher's purse at Edna Rowe Elementary School in Dallas County, Texas.

26.    On or about May 25, 1994, the Defendant was observed making gang signs at a meal at Buckner's Children's Home in Dallas County, Texas.

27.    On June 24, 1994, in Dallas County, Texas, the Defendant was put on shut-down and most of his privileges were taken away for constantly fighting authority at Buckner Children's Home.

28.    On or about August 29, 1994, in Dallas County, Texas, the Defendant committed the offense of Aggravated Sexual Assault of a Child by penetrating the anus and mouth of two boys while at Buckner Children's Home. Defendant admitted to these offenses to David Chandler.

STATE'S SIXTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 4

29.     On or about September 15, 1994, in Dallas County, Texas, the Defendant ran away from Buckner Children's Home because he was told by the staff to do chores.

30.     On or about September 19, 1994, the Defendant was given five days of detention at the Edna Rowe Elementary School for fighting and defying the Principle in Dallas County, Texas.

31.     On or about October 17, 1994, the Defendant assault a peer at Buckner's Children's Home in Dallas County, Texas by pushing the peer to the floor causing him to hit his head.

32.     On or about October 17, 1995, the Defendant admitted to Phillip Brunkmeyer at Buckner's Children's Home in Dallas County, Texas that he had lied on October 16, 1995 when he said he was suicidal.

33.     On or about November 26, 1994, the Defendant admitted to smoking marijuana while on Thanksgiving pass from the Buckner's Children's home in Dallas County, Texas.

34.     On or about November 26, 1994, the Defendant was known to associate with a school gang in Dallas County, Texas known as "The Crew" at Edna Rowe Elementary School.

35.     On or about December 6, 1994, the Defendant's poor grades while attending Edna Rowe Elementary School in Dallas County, Texas were attributed by the teacher to his failure to pay attention, sleeping in class and refusal to do his work.

36.     On or about December 7, 1994, the Defendant was involved in a fight while attending Edna Rowe Elementary School in Dallas County, Texas and was suspended from school for two days.

37.     On or about December 12, 1994, the Defendant was involved in a fight while attending Edna Rowe Elementary School in Dallas County, Texas.

38.     On or about December, 1994, the Defendant's report card was withheld from him while attending Edna Rowe Elementary School in Dallas County, Texas for owing money ofr a school-sponsored selling of Christmas candy. The child care staff at Buckner's Children's Home collected money from Defendant's weekly allowance to pay the money back.

39.     On or about January 7, 1995, the Defendant was physically restrained by a staff member at Buckner's Children's Home for physical aggression in Dallas County, Texas.

40.     On or about January 7, 1995, the Defendant assaulted a peer at Buckner's Children's Home in Dallas County, Texas by hitting the peer in the head with Defendant's shoe.

41.     On or about January 7, 1995, the Defendant assaulted a staff member, Dwight Hayes, at Buckner's Children's Home in Dallas County, Texas by hitting Dwight Hayes in the head with Defendant's shoe. Defendant had to be physically restrained.

STATE'S SIXTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 5

42.    On or about January 26, 1995, in Dallas County, Texas, the Defendant admitted to stealing a jar of coins while living at Buckner Children's Home.

43.    On or about February 28, 1995, the Defendant committed the offense of Indecency with a Child by grabbing a female student's crotch while attending Edna Rowe Elementary School in Dallas County, Texas. Defendant also grabbed the female student's rear end. This was witnessed by a teacher. Defendant claimed the teacher was lying about the incident.

44.    On or about March 6, 1995, the Defendant assaulted a peer at Buckner's Children's Home in Dallas County, Texas by hitting the peer in the head with Defendant's fists.

45.    On or about March 23, 1995, the Defendant assaulted staff member Cedric Darden at Buckner's Children's Home and had to be physically restrained in Dallas County, Texas.

46.    On or about March 23, 1995, the Defendant assaulted a peer at Buckner's Children's Home in Dallas County, Texas by hitting the peer in the head with Defendant's fists.

47.    On or about March 27, 1995, the Defendant had to be physically restrained while trying to run away from Buckner's Children's School in Dallas County, Texas.

48.    On or about March 27, 1995, the Defendant attempted to pierce his own ear in violation of rules at Buckner's Children's Home in Dallas County, Texas.

49.    On or about March 28, 1995, the Defendant threw a shoe in his room and broke a window at Buckner's Children's Home and had to be physically restrained in Dallas County, Texas.

50.    On or about March 30, 1995, in Dallas County, Texas, the Defendant admitted to his probation officer that he had previously lied about being suicidal and trying to commit suicide by overdosing on Prozac pills while living at Buckner's Children's Home.

51.    On or about April 18, 1995, the Defendant assaulted staff member Cedric Darden at Buckner's Children's Home and had to be physically restrained in Dallas County, Texas.

52.    On or about April 19, 1995, the Defendant assaulted staff member Sorenson at Buckner's Children's Home and had to be physically restrained in Dallas County, Texas.

53.    On or about April 20, 1995, the Defendant attempted to assault a staff member at Buckner's Children's Home in Dallas County, Texas. Defendant used profanity toward the staff member and had to be physically restrained.

54.    On or about April 20, 1995, the Defendant became physically aggressive toward Wanda Jimenez and was destroying toys and kicking plants in Dallas County, Texas. Defendant had to be

STATE'S SIXTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 6

physically restrained.

55.     On or about April 20, 1995, the Defendant was asked to leave class for not following directions and attempted to escape from staff members at Buckner's Children's School in Dallas County, Texas.  Defendant had to be physically restrained.

56.     On or about April 20, 1995, the Defendant was relocated to the Buckner's Children's Home Residential Treatment Center due to his need for a more restrictive environment in Dallas County, Texas.

57.     On or about May 12, 1995, in Dallas County, Texas, the Defendant assaulted his juvenile roommate by choking him until he lost consciousness while living at Buckner Children's Home.

58.     On or about May 20, 1995, the Defendant attempted to assault a female staff member, Wanda Jimenez, at Buckner's Children's Home by trying to kick her in Dallas County, Texas.  Defendant had to be physically restrained.

59.     On or about July 31, 1995, in Dallas County, Texas, the Defendant stopped up a toilet by shooting rubber bands down it while living at Buckner Children's Home.

60.     On or about August 21, 1995, in Dallas County, Texas, the Defendant committed the offense of Aggravated Sexual Assault of a Child by anally penetrating his two 10-12 year old roommates with his male sexual organ while living at Buckner Children's Home.

61.     On or about November 9, 1995, in Dallas County, Texas, the Defendant committed the offenses of Aggravated Sexual Assault of a Child, and Indecency with a Child while at Buckner Children's Home in Dallas County, Texas.  The victim was approximately 8 years of age at the time of the offense.

62.     On or about January 19, 1999, in Johnson County, Texas, the Defendant brought a knife to school while attending Keene High School and was sent to the ABLE program.

### IV.  Prior Adult Convictions

1.     On or about July 30, 1999, the Defendant Mark Anthony Soliz pled guilty and was convicted of Unauthorized Use of Vehicle in Cause No. F33475, 18th District Court of Johnson County, Texas and was placed on 5 years probation.

2.     On or about February 11, 2000, the Defendant Mark Anthony Soliz was placed on deferred adjudication for the offense of Theft $1,500 to $20,000 in the 396th District Court of Tarrant County, Texas in Cause No. 0755170D.

1878

3.      On or about May 31, 2000, the Defendant Mark Anthony Soliz was finally convicted of Theft $1500-$20000 in the 396th District Court of Tarrant County, Texas in Cause No. 0755170D after his probation was revoked for committing a new offense of Theft $1500-$20000 in Tarrant County, Texas.

4.      On or about May 31, 2000, the Defendant Mark Anthony Soliz was convicted of Theft $1500-$20000 in the 396th District Court of Tarrant County, Texas in Cause No. 0765674D.

5.      On or about September 18, 2001, the probated sentence in Cause No. F33475 in the 18th District Court of Johnson County, Texas was revoked and Mark Anthony Soliz was sentenced to 2 years state jail subject to shock for failure to report, failure to pay fees and failure to complete community service.

6.      On or about March 30, 2004, the Defendant Mark Anthony Soliz was convicted of Evading Arrest or Detention using Vehicle and sentenced to One Year in State jail In the Criminal District Court Number Two of Tarrant County, Texas in Cause No. 089411A.

7.      On or about March 30, 2004, the Defendant Mark Anthony Soliz was convicted of Theft <$1500 with Two Prior Convictions and sentenced to One Year in State Jail in the Criminal District Court Number Two of Tarrant County, Texas in Cause No. 0894107A.

8.      On or about April 1, 2004, the Defendant Mark Anthony Soliz was convicted of Burglary of a Vehicle in Cause No. 0893970 in the County Criminal Court Number Ten of Tarrant County, Texas.

9.      On or about November 19, 2004, the Defendant Mark Anthony Soliz was convicted of Theft $50-$500 in Cause No. 0955841 in the County Criminal Court Number Four of Tarrant County, Texas.

10.     On or about July 29, 2005, the Defendant Mark Anthony Soliz was convicted of Criminal Trespass in Cause No. 0976064W in 396th District Court of Tarrant County, Texas.

11.     On or about August 3, 2005, the Defendant Mark Anthony Soliz was convicted of Unlawful Restraint in Cause No. 0986121 in the County Criminal Court Number Nine of Tarrant County, Texas.

12.     On or about November 9, 2005, the Defendant Mark Anthony Soliz was convicted of Theft $1500-$20000 in Cause No. 0991801D in the Criminal District Number Four of Tarrant County, Texas.

13.     On or about March 15, 2006, the Defendant Mark Anthony Soliz was convicted of Theft $1500-$20000 in Cause No. 1012291W in the Criminal District Court Number Four of Tarrant County, Texas.

STATE'S SIXTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 8

14.     On or about December 14, 2006, the Defendant Mark Anthony Soliz was convicted of Theft $1500-$20000 in Cause No. 1047319W in the 214th District Court of Tarrant County, Texas. The defendant admitted having done it "Just for the hell of it."

15.     On or about April 7, 2010, the Defendant Mark Anthony Soliz was convicted of Possession of Prohibited Weapon in Cause No. 1195009 in Tarrant County, Texas.

## V.  Unadjudicated Capital Murder

1.     On or about June 29, 2010, the Defendant Mark Anthony Soliz did commit the offense of Capital Murder by intentionally causing the death of Ruben Martinez by shooting him with a firearm in the course of committing or attempting to commit the offense of robbery.

## VI.  Unadjudicated Adult Criminal Offenses

1.     On or about June 22, 2010, the Defendant Mark Anthony Soliz did commit the offenses of Burglary of a Habitation and Theft in Tarrant County, Texas. The victim was Vincent Circelli.

2.     On or about June 24, 2010, the Defendant Mark Anthony Soliz did commit the offense of Robbery using a firearm in Tarrant County, Texas. The victim was Justin Morris. The Defendant admitted to this offense in a written and recorded statement in Tarrant County, Texas, to Det. T. Boetcher on or about June 30, 2010. The Defendant took money and a debit card from the victim.

3.     On or about June 24, 2010, the Defendant Mark Anthony Soliz did commit the offense of Aggravated Assault by shooting Luis Luna with a firearm in Tarrant County, Texas. The Defendant admitted to this offense in a written and recorded statement in Tarrant County, Texas, to Det. T. Boetcher on or about June 30, 2010.

4.     On or about June 24, 2010, the Defendant Mark Anthony Soliz did commit the offense of Robbery while using a firearm in Tarrant County, Texas. The victim was Felipe Contreras.

5.     On or about June 24, 2010, the Defendant Mark Anthony Soliz did commit the offense of Robbery while using a firearm in Tarrant County, Texas. The victim was Sammy Abu-Lughod. The Defendant took money, a cell phone and a green 2005 Dodge Stratus (Texas license plate #GB006). The Defendant admitted to this offense in a written and recorded statement in Tarrant County, Texas, to Det. T. Boetcher on or about June 30, 2010.

6.     On or about June 28, 2010, the Defendant Mark Anthony Soliz did commit the offense of robbery and did use a firearm in Tarrant County, Texas. The victims were Jorge Tamayo and Maximino Chavez-Soto. The Defendant admitted to this offense in a written and recorded statement in Tarrant County, Texas, to Det. T. Boetcher on or about June 30, 2010.

1880

7.    On or about June 29, 2010, the Defendant Mark Anthony Soliz did possess in Tarrant County, Texas, a Hi-Point 9mm handgun with serial #P1400875 which was part of the property owned by Vincent Circelli and taken from his house on June 22, 2010.

8.    On or about June 29, 2010, the Defendant Mark Anthony Soliz did shoot a firearm at Juan Ramirez in Tarrant County, Texas.

9.    On or about June 29, 2010, the Defendant Mark Anthony Soliz did shoot a firearm and cause bodily injury to Enrique Samaniego in Tarrant County, Texas.

10.    On or about June 29, 2010, the Defendant Mark Anthony Soliz did shoot a firearm at Kenny Dodgin in Tarrant County, Texas.

11.    On or about March 21, 2010, in Tarrant County, Texas, the Defendant Mark Anthony Soliz committed the felony offense of Burglary of a Habitation or Building with the address being 11100 Hawkins Home Blvd., Benbrook, Texas.

12.    On or about June 29, 2010, in Tarrant County, Texas, the Defendant Mark Anthony Soliz committed the felony offense of Burglary of a Habitation with the address being 9944 Wandering Way, Benbrook, Texas with the victims being Walter Luther Watson and Darlene Watson.

13.    On or about June 29, 2010, in Tarrant County, Texas, the Defendant Mark Anthony Soliz committed the felony offense of Burglary of a Habitation or Building with the address being 11100 Hawkins Home Blvd., Benbrook, Texas with the victim being Marcy Girton.

14.    On or about June 29, 2010, in Tarrant County, Texas, the Defendant Mark Anthony Soliz committed the felony offense of Burglary of a Habitation with Joan Trew as the victim in Benbrook, Texas.

15.    On or about June 29, 2010, in Tarrant County, Texas, the Defendant Mark Anthony Soliz asked Arturo Gonzales if he could hide the stolen Dodge Stratus from Sammy Abu-Lughod and the stolen Toyota Tundra from Nancy Weatherly on the side of Arturo's mother's house in an effort to conceal them thereby tampering with evidence.

16.    On or about June 29, 2010, in Tarrant County, Texas, the Defendant Mark Anthony Soliz pawned/sold items taken from the home of Nancy Weatherly at multiple pawn shops in Tarrant County, Texas.

17.    On or about June 24 through June 29, 2010, in Tarrant County, Texas, the Defendant Mark Anthony Soliz sold, pawned, and traded multiple items from the unadjudicated criminal offenses listed above.

STATE'S SIXTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 10

18.     On or about June 29, 2010, the Defendant Mark Anthony Soliz did evade arrest using a vehicle in Tarrant County, Texas.  The Defendant was arrested after attempting to flee in a stolen 2005 Dodge Stratus (Texas license plate #GB006) belonging to Sammy Abu-Lughod.  He was in possession of a stolen 9 mm firearm belonging to Vincent Circelli.  The Defendant did also possess methamphetamine.

19.     On or about June 29, 2010, in Tarrant County, Texas, the Defendant Mark Anthony Soliz was placed under arrest for Evading Arrest using a vehicle, Theft $1500-$20000, Unlawfully Carrying a Weapon and Possession of a Controlled Substance.

20.     On or about June, 2010, in Tarrant County, Texas, the Defendant Mark Anthony Soliz committed the felony offense of Aggravated Assault with a Deadly Weapon with the victim being Michael Woods.

## VII.  Unadjudicated Adult Bad Acts

1.     On or about May 1, 2010 to June 29, 2010, the Defendant Mark Anthony Soliz did possess and sniff glue in Tarrant and Johnson County, Texas on multiple occasions.

2.     On or about dates unknown, in multiple counties in Texas, the Defendant Mark Anthony Soliz gained, used, and was known by the street/gang name of "Kilo".

3.     On or about January 15, 2008 to the present, the Defendant Mark Anthony Soliz was/is associated with the prison gang known as the Texas Syndicate.

4.     On or about May 1, 2010 to June 29, 2010, the Defendant Mark Anthony Soliz did possess and use methamphetamine in Tarrant and Johnson County, Texas on multiple occasions.

5.     On or about June 29, 2010, in Tarrant County, Texas, the Defendant Mark Anthony Soliz had sexual relations with Elizabeth Estrada.

6.     On or about June 29, 2010, in Tarrant County, Texas, the Defendant Mark Anthony Soliz traded stolen merchandise from the home and vehicle of Nancy Weatherly for illicit drugs.

7.     On or about June 29, 2010, in Tarrant County, Texas, the Defendant Mark Anthony Soliz asked Arturo Gonzales for more 9mm ammunition and to take him to get more 9mm ammunition.

## VIII.  TDC Disciplinary Violations

1.     On or about May 27, 2004, in Walker County, Texas, the Defendant Mark Anthony Soliz was confirmed by the TDC Security Threat Group to be a member of security threat group/prison gang the Texas Syndicate using a gang related tattoo and prison "kites" or letters. Defendant has a "T" and an "S" tattooed onto his fingers. Defendant admitted that he was "picked up" by his uncle when

STATE'S SIXTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 11

he was 16. This information is contained in the business records from TDC filed and forwarded to defense counsel on September 21, 2011.

2.     That State hereby gives notice of all information and bad acts or crimes contained in the business records from TDC filed and forwarded to defense counsel on September 21, 2011.

3.     While incarcerated in the Hutchins State Jail Facility, Defendant was classified as a confirmed member of the Texas Syndicate, which is deemed a Security Threat Group by the Texas Department of Criminal Justice.

4.     On or about March 7, 2007, while incarcerated at TDC, the Defendant was designated at the highest possible risk level under the TDC classification for inmates.

5.     On or about October 1st, 2007, while incarcerated in the Texas Department of Criminal Justice, Defendant did engage in sexual misconduct by exposing his penis with the intent to gratify his sexual desire by masturbating his penis through the shower slot. When questioned regarding these events, Defendant stated "fuck that bitch." This act was also in violation of prison rules.

6.     On or about September 29th, 2008, while incarcerated in the Texas Department of Criminal Justice, Defendant intentionally and knowingly destroyed property belonging to the State of Texas, specifically: two sheets, two jumpers and one towel. This act was also in violation of prison rules.

7.     On or about March 2nd, 2008, while incarcerated in the Texas Department of Criminal Justice, Defendant did intentionally or knowingly assault an officer without a weapon by kicking at Officer Johnson as he was attempting to close a food slot. Defendant further stated to Officer Johnson that he would take care of him with his "bitchy ass" and called him a "whore." This act was also in violation of prison rules.

8.     On or about May 26th, 2008, while incarcerated in the Texas Department of Criminal Justice, Defendant intentionally or knowingly caused bodily injury to Eric Brown, by throwing hot water in his face. When questioned regarding the events of May 26th, 2008, Defendant stated that he wanted to kill Inmate Brown. This act was also in violation of prison rules.

9.     On or about December 9th, 2008, while incarcerated in the Texas Department of Criminal Justice, Defendant engaged in sexual misconduct by exposing his penis with the intent to gratify his sexual desire and masturbated in public. This act was also in violation of prison rules.

10.     On or about December 11th, 2008, while incarcerated in the Texas Department of Criminal Justice, Defendant engaged in sexual misconduct by exposing his penis with the intent to gratify his sexual desire and masturbated in public. When ordered to stop, he continued to masturbate. In so doing, he disobeyed a direct order. This act was also in violation of prison

STATE'S SIXTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 12

rules.

11.     On or about January 2nd, 2009, while incarcerated in the Texas Department of Criminal Justice, Defendant caused a disruption while in the shower when he refused to return a hand restraint; He disobeyed the order of M. Willard and violated prison rules.

12.     On or about April 28th, 2009, while incarcerated in the Texas Department of Criminal Justice, Defendant engaged in sexual misconduct when he exposed his penis to Officer Holman with the intent to gratify his sexual desire and masturbated in public. This act was also in violation of prison rules.

13.     On or about June 5th, 2009, while incarcerated in the Texas Department of Criminal Justice, Defendant engaged in sexual misconduct when he exposed his penis with the intent to gratify his sexual desire and masturbated in public. This act was also in violation of prison rules.

14.     On or about June 22, 2000, while incarcerated in the Texas Department of Criminal Justice, admitted being a member of the church of Satanism.

15.     On or about June 22, 2000, while incarcerated in the Texas Department of Criminal Justice, Defendant admitted that he engaged in ritualistic activities in the Satanism night church.

16.     On or about July 9th, 2009, while incarcerated in the Texas Department of Criminal Justice, officer Shirah was in the process of removing handcuffs from Defendant. After one cuff was removed, Defendant "jacked it from the officer saying that he wanted rank." When reinforcements arrived, Defendant had damaged the handcuffs to the point that they would no longer function properly. This act was also in violation of prison rules.

17.     On or about July 10, 2000, while incarcerated in the Texas Department of Criminal Justice, Defendant was found to be in possession of tattooing paraphernalia. This act was also in violation of prison rules.

18.     On or about July 20, 2000, while incarcerated in the Texas Department of Criminal Justice, Defendant intentionally or knowingly caused bodily injury to Steven Muskowitz by striking him with his hand. This act was also in violation of prison rules.

19.     On or about July 21st, 2000, while incarcerated in the Texas Department of Criminal Justice, Defendant was found in an unauthorized area in violation of Code 27. This act was also in violation of prison rules.

20.     On or about August 25, 2000, while incarcerated in the Texas Department of Criminal Justice, Defendant intentionally or knowingly caused bodily injury to Dan Hill by striking him with his hand. This act was also in violation of prison rules.

STATE'S SIXTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 13

21.     On or about August 27, 2000, while incarcerated in the Texas Department of Criminal Justice, Defendant intentionally or knowingly caused bodily injury to an Officer/ Guard Creason by causing a gate to strike the Officer/Guard. This act was also in violation of prison rules.

22.     On or about October 3rd, 2000, while incarcerated in the Texas Department of Criminal Justice, Defendant was found in an unauthorized area in violation of Code 27-A. This act was also in violation of prison rules.

23.     On or about October 3rd, 2000, while attending class at the Texas Department of Criminal Justice, Defendant violated school rules by sleeping in class.

24.     On or about October 11th, 2000, while attending class at the Texas Department of Criminal Justice, Defendant violated school rules by sleeping in class. This act was also in violation of prison rules.

25.     On or about October 12th, 2000, while attending class at the Texas Department of Criminal Justice, Defendant violated school rules by sleeping in class, arguing with the teacher and was subsequently removed from class. This act was also in violation of prison rules.

26.     On or about October 22, 2000, while incarcerated in the Texas Department of Criminal Justice, Defendant did intentionally or knowingly cause bodily injury to John O'Dell by striking him with a shoe. This act was also in violation of prison rules.

27.     On or about October 16th, 2000, while attending class at the Texas Department of Criminal Justice, Defendant violated school rules by sleeping in class. This act was also in violation of prison rules.

28.     On or about November 21, 2000, while incarcerated in the Texas Department of Criminal Justice, Defendant did intentionally or knowingly cause bodily injury to Willie Jenkins, by striking him with his hand. This act was also in violation of prison rules.

## IX.  Tarrant County Jail Disciplinary Violations

1.     The Defendant has multiple tattoos – including a marijuana leaf, the word "Kilo," and multiple gang related tattoos, including but not limited to T over S to indicated membership in the prison gang the Texas Syndicate.

2.     On or about 6/26/03, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted being an active member of the Texas Syndicate, a prison gang to Deputy C. Brewer, TCSO;

STATE'S SIXTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 14

3.     On or about 6/26/03, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted drinking a 6 pack of beer once a weekend since the age of 15 to Deputy C. Brewer, TCSO;

4.     On or about 6/26/03, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted using drugs once a week for an undisclosed period of time to Deputy C. Brewer, TCSO;

5.     On or about 6/26/03, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to being a member of a street gang for 3 years and that his "street name" was "Kilo," to Deputy C. Brewer, TCSO;

6.     On or about 6/26/03, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted being arrested for Unauthorized Use of a Motor Vehicle to Deputy Brewer, TCSO;

7.     On or about 6/26/03, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted serving prison time from 2000-2003 for Unauthorized Use of a Motor Vehicle and Assaulting a Family Member to Deputy C. Brewer, TCSO;

8.     On or about 6/26/03, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted having been handled for burglary of a vehicle, theft 1500 with two priors, and evading arrest to Deputy C. Brewer, TCSO;

9.     On or about 7/05/03, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant refused to rack down, in violation of jail regulations;

10.    On or about 7/16/03, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant refused to rack down, in violation of jail regulations;

11.    On or about 12/04/03, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant intimidated and bullied fellow inmates, in violation of jail regulations;

12.    On or about 12/20/03, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant repeatedly stole from fellow inmates, including inmates: Cecil McBraum, Richard Grayson, Anselmo Castro, in violation of jail regulations;

STATE'S SIXTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 15

13.     On or about 1/02/04, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant caused problems by threatening all of the anglo inmates housed in the same pod because of his gang affiliation with the Texas Syndicate, in violation of jail regulations;

14.     On or about 1/03/04, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant refused to rack down, in violation of jail regulations;

15.     On or about 2/25/04, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant made veiled threats to inmate Glenn Stark, because of Soliz's gang affiliation, in violation of jail regulations;

16.     On or about 3/01/04, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant was involved in a fight with two other inmates, in violation of jail regulations;

17.     On or about 5/7/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant had to be rehoused due to causing problems with fellow Hispanic inmates due to his gang membership;

18.     On or about 5/7/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant was overheard saying that he "wanted to kill someone." He was also found to be organizing a gang fight, and was rehoused as a result;

19.     On or about 7/19/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant disobeyed an order from Deputy P. Burkett and resisted Deputy Burkett and Lt. Herriage's efforts to gain Soliz's compliance, in violation of jail regulations;

20.     On or about 6/05/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant threatened to "whip fellow Inmate Arevalo's ass." The defendant was rehoused as a result;

21.     On or about 9/2/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the Defendant admitted to Deputy Hart that he had been a member of Texas Syndicate since 1999 and that he joined while in TCSO custody;

22.     On or about 9/02/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to Deputy R. Hart that he drank a quart-quart ½ of alcohol weekly;

STATE'S SIXTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 16

23.     On or about 9/02/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to Deputy R. Hart that he used cocaine and marijuana daily for an undisclosed period of time;

24.     On or about 9/02/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to Deputy R. Hart that he was arrested out of Dallas in 1997 for Unauthorized Use of a Motor Vehicle as a juvenile;

25.     On or about 9/02/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to Deputy R. Hart that he had been incarcerated 5 times before 9/02/05;

26.     On or about 9/02/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to Deputy R. Hart that he had been incarcerated in state jail for Unauthorized Use of a Motor Vehicle;

27.     On or about 9/02/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to Deputy R. Hart that he was a member of the Texas Syndicate;

28.     On or about 5/4/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to Deputy Helm that he was a member of Texas Syndicate;

29.     On or about 5/04/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to Deputy Helm that he consumed 4-5 beers twice a week since the age of 13;

30.     On or about 5/04/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to Deputy Helm that he admitted using cocaine, marijuana, and ice for an undisclosed period of time;

31.     On or about 5/04/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to Deputy Helm that he was first arrested as a juvenile in Fort Worth in 1991;

32.     On or about 5/04/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to Deputy Helm that he had gone to the Texas Department of Criminal Justice for Burglary of a Vehicle in 2004;

STATE'S SIXTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 17

33.   On or about 5/07/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant stated that he wanted to kill someone and attempted to organize a gang fight in his pod;

34.   On or about 9/21/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant was seen hitting Inmate Luis Saldivar with his hand, in violation of jail regulations;

35.   On or about 2/24/06, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to being an active member of the Texas Syndicate;

36.   On or about 3/08/06, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant was found in possession of tattooing paraphernalia, in violation of jail regulations;

37.   On or about 3/14/06, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant refused to obey pod rules, pod officers orders and refused to rack down, in violation of jail regulations. He refused to return to his cell when ordered by Deputy MR Cude;

38.   On or about 3/19/06, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant disobeyed a directive by Deputy Muhammad when he refused to give up his bottom bunk and remove his property for a medically disabled inmate, in violation of jail regulations. He further stated in a threatening manner to the deputy and fellow inmates that "something bad was going to happen;"

39.   On or about 3/19/06, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant repeatedly refused to obey a direct order by Deputy Davis to step away from the window, provide his identification, nor would he wear his uniform, in violation of jail regulations;

40.   On or about 4/02/10, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to being a member of the Texas Syndicate, a prison gang;

41.   On or about 4/24/10, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant caused problems in the tank in which he was housed by attempting to control/run the tank, in violation of jail regulations;

STATE'S SIXTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 18

1889

42.    On or about 4/08/10, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant was involved in a fight with fellow inmate David Toney, in violation of jail regulations;

43.    On or about 5/21/10, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant refused to obey an order when he refused to remove a blanket and towel from his face and stated "fuck that shit- I am going home tomorrow anyway. I don't give a damn about that shit," in violation of jail regulations;

44.    On or about 8/06/10, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant was found in possession of contraband, an unauthorized photo of a hand sign;

## X.  Johnson County Jail Disciplinary Violations

1.    On or about April 6, 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did possess contraband, damage property, use or possess tobacco products and possess a weapon, namely, a thin piece of sharpened metal, four pills, a pouch of bugler and stuffing from his mattress in the Johnson County Law Enforcement Center. Defendant admitted his guilt at the jail and signed an admission form in the presence of Lt. David Boggess.

2.    On or about April 24, 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did create a disturbance by flooding his cell and hitting the cell door window. Defendant admitted his guilt to David Turner at the Johnson County Law Enforcement Center by writing, "I did it, man." Defendant resisted officers attempting to restrain him and cursed at them. This incident was witnessed by Ronnie McGowan and other corrections officers. This incident was captured on video which has been provided to defense counsel.

3.    On or about July 10, 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did damage property by removing parts and knocking a telephone over at the Johnson County Law Enforcement Center. Defendant said he was not guilty of doing this at the jail. On this date, Defendant also attempted to flood his cell with water by sticking an unknown object down the toilet which was witnessed by Jose Arriola and other corrections officers. Defendant did admit in writing to R. McCowan that he was guilty of flooding his cell. Photos and video were taken of the acts at the time and have been provided to defense counsel,

4.    On or about July 10, 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did assault a corrections

STATE'S SIXTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 19

1890

officer, namely Officer Raleigh, by throwing hot coffee on him. On this date, Defendant called Officer Raleigh names and cursed at him. Officer Raleigh believes that the substance thrown on him may have been urine as well as coffee. Officer Raleigh believes the assault was in retaliation for Raleigh not allowing Defendant to use the telephone after hours in May of 2011 where Defendant threatened and actually did flood his cell with water. Defendant signed a written admission but stated he did not know the officer was below him when he threw the coffee.

5.      On or about July 22, 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did possess contraband, namely two pills in a bottle with no label in the Johnson County Law Enforcement Center. Defendant signed an admission of guilt in the presence of Sgt. Sample. Defendant stated that it was his Ibuprofen.

6.      On or about August 23, 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did escape or attempt a felony escape by manipulating and freeing his hand from his handcuffs while in visitation. This act was witnessed by Dr. Natalie Brown, Corporal Dana Kinnard and Warden Janicek of the Johnson County Law Enforcement Center. Defendant signed and admission of guilt in the presence of Corporal Arriola.

7.      On or about August 23, 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did touch his own genitals and masturbate in the presence of a female meeting with him in a witness room. Said acts were witnessed by Corporal Dana Kinnard of LaSalle Corporation.

8.      On or about multiple occasions in 2010 and 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did touch his own genitals and masturbate and expose himself in the presence of multiple female guards and inmates.

9.      On or about August 24, 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did cause a disturbance by shouting and cursing at Corporal Steven Parish and Corrections Officer Jason Pugh and flooding his cell with water. Defendant refused to allow himself to be restrained and Lt. David Boggess administered OC Spray into Defendant's cell to get him to comply. This incident was captured on video which has been provided to defense counsel.

10.     On or about August 29, 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did possess contraband, damage property, create a disturbance and refuse to follow orders by possessing an altered radio, breaking his cell light, making noise to incite other inmates and refusing orders while officers attempted to handcuff him at the Johnson County Law Enforcement Center. Defendant signed an admission of guilt in the presence of Corporal Kinnard.

STATE'S SIXTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 20

11.     On or about November 18, 2010, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did hit his cell door repeatedly with a cup, flooding his cell and covering the window of his cell door with cardboard. Defendant was given multiple warnings to comply with officers and was eventually OC sprayed by Lt. David Boggess. After Defendant finally complied with officer's orders, he was decontaminated and taken to the violent cell in the Johnson County Law Enforcement Center. This incident was captured on video which has been provided to defense counsel.

12.     On or about June 6, 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did flood his cell with water causing the water to be turned off by officers in the Johnson County Law Enforcement Center. Defendant was screaming and banging the walls of his cell.

13.     On or about October 18, 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz, on numerous occasions, did attempt to escape from mechanical restraints. Blue Box restraints were purchased by the Johnson County Law Enforcement Center specifically for use with the Defendant as he has attempted on numerous occasions to escape from his restraints.

14.     On or about October 18, 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz, attempted to pull his hands through the food port of his cell while Sgt. Laurie Gunter was attempting to secure his hands in handcuffs. Sgt. Gunter's hand was caught against the outside of the door causing her pain. Sgt. Gunter told the Defendant to stop and that he was hurting her and he just looked at her and said she was not going to tighten the cuffs anymore.

15.     On or about January 3, 2012, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did possess contraband, by possessing an a broken piece of plastic sharpened to a point, an altered battery attached to a string, and an extra blanket.

16.     On or about January 6, 2012, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did possess contraband, by possessing an a pen and an altered battery attached to a string.

17.     On or about January 19, 2012, the defendant, during jury selection in his capital murder case, in Johnson County, Texas, refused to remove his tie and belt in the holding cell at the Guinn Justice Center, a security violation. Defendant's belt and tie were taken from him by the Sheriff's Department for safety purposes. Defendant's tie was exchanged for a clip-on tie.

18.     On or about January 19, 2012, the defendant, during jury selection in his capital murder case, at the Guinn Justice Center in Johnson County, Texas, used wet toilet paper to cover the camera in

STATE'S SIXTH AMENDED NOTICE OF INTENT
<u>TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS</u> – PAGE 21

his holding cell and refused to dress out for transport back to the jail. Defendant failed to comply with verbal instructions of the Sheriff's Office. When Marshall Whitlock of the Sheriff's Office told Defendant they were coming in to use force, Defendant replied "C'mon." Defendant resisted being restrained and was finally overpowered by the Sheriff's Office.

## XI. Statements and Admissions

1.      On or about June 22, 2000, while incarcerated in the Texas Department of Criminal Justice, admitted being a member of the church of Satanism.

2.      On or about June 22, 2000, while incarcerated in the Texas Department of Criminal Justice, Defendant admitted that he engaged in ritualistic activities in the Satanism night church.

3.      On or about January 23, 2007, during his intake back into TDC in Cause Number 1047319W, the Defendant, Mark Anthony Soliz claimed/admitted to have been arrested 18 times resulting in one commitment to the Dallas County Juvenile Detention Center for Unauthorized Use of a Motor Vehicle and Evading Arrest, one commitment to the Collin County Juvenile Detention Center for Aggravated Assault with a Deadly Weapon, one commitment to the Smith County Juvenile Detention Center for Theft $1,500 to $20,000, one commitment to the Harrison County Juvenile Detention Center for Burglary of a Vehicle, three days in the Tarrant County Jail for Theft $1,500 to $20,000, thirty days and one hundred days in the Tarrant County Jail for Burglary of a Vehicle, one hundred eighty days in the Tarrant County Jail for Criminal Trespass, sixty days and ninety days in the Tarrant County Jail for Unauthorized Use of a Motor Vehicle and Evading Arrest, ninety-two days in the Tarrant County Jail for Unauthorized Use of a Motor Vehicle and as a State Jail detainee for Theft $1,500 to $20,000.

4.      On or about January 23, 2007, during his intake back into TDC in Cause Number 1047319W, the Defendant, Mark Anthony Soliz claimed/admitted he completed a treatment center in Fort Worth where he was confined for six months.

5.      On or about January 23, 2007, during his intake back into TDC in Cause Number 1047319W, the Defendant, Mark Anthony Soliz claimed/admitted that he used the alias names Mark Anthony Saenz, Kilo Soliz, and Kilo and was confirmed as a member of the Texas Syndicate effective June 10, 2004.

6.      On or about January 23, 2007, during his intake back into TDC in Cause Number 1047319W, the Defendant, Mark Anthony Soliz claimed/admitted when asked why he committed the offense in Cause No. 1047319W on December 6, 2006, Defendant said "Just mess up."

7.      On or about January 23, 2007, during his intake back into TDC in Cause Number 1047319W, the Defendant, Mark Anthony Soliz claimed/admitted he was court-ordered to attend and complete Choices Treatment Center on an inpatient basis for narcotics treatment. Defendant

STATE'S SIXTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 22

admitted that after 60 days, he escaped from the treatment center in 1998 without successful completion of the program.

8.     On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he inhaled powder cocaine twice per month from the age of 17 to 24 in Johnson, Smith, Collin, Tarrant, Harris, Dallas and other counties in Texas.

9.     On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he smoked crack cocaine daily for one year at the age of 23 in multiple counties in Texas.

10.    On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he smoked marijuana three times per week from the age of 14 to 24 in multiple counties in Texas.

11.    On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he inhaled heroin at 18 years of age in multiple counties in Texas.

12.    On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he smoked methamphetamines on the weekends when he was 22 to 23 years of age in multiple counties in Texas.

13.    On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he used inhalants on and off from the age of 14 to 24 in multiple counties in Texas.

14.    On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he was court-ordered to participate in drug treatment at 15 years of age and left unsuccessfully after one month.

15.    On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he sold marijuana, cocaine, and methamphetamine from the age of 16 to 23 and made about $100 per day in multiple counties in Texas.

16.    On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he was under the influence of carburetor cleaner during his commission of the theft of a vehicle case in Cause No. 1047319W in the 214th District Court of Tarrant County, Texas with offense date of December 6, 2006. Defendant further admitted that he committed this offense "Just for the hell of it."

STATE'S SIXTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 23

17.     On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford.and Michelle Kreger that he consumed beer daily from the ages of 16 to 23 consuming 2 quarts per day in multiple counties in Texas.

18.     On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he consumed a fifth of whiskey a few times per year from the ages of 22 to 23 in multiple counties in Texas.

19.     On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he was an alcoholic.

20.     On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he stole routinely as a means of support in multiple counties in Texas.

21.     On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he was an active member of the Texas syndicate.

22.     On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he Defendant did not voluntarily take part in any self-help academic, vocational or character development while confined at the Texas Department of Criminal Justice, Institutional Divison.

23.     The State gives notice of written and recorded statements given by Mark Anthony Soliz to Fort Worth Detectives Boetcher and Payne in Tarrant County, Texas on or about June 30, 2010. Copies have been provided to counsel for Mark Anthony Soliz.

24.     The State gives notice of statements made by Mark Anthony Soliz to Elizabeth Estrada in Tarrant County, Texas as shown in recorded interview of Elizabeth Estrada which has been provided to counsel.

25.     The State gives notice of statements made by Mark Anthony Soliz to Rosie Medina in Tarrant County, Texas as shown in recorded interview of Rosie Medina which has been provided to counsel.

26.     On or about June 29, 2010, the Defendant Mark Anthony Soliz made statements to Arturo Gonzales in Tarrant County, Texas.  He asked if he could park his car, a Dodge Stratus, behind another car in order to hide it. He asked if he could get 9mm bullets because he needed some. He asked where he could purchase marihuana.

STATE'S SIXTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 24

On or about June 29, 2010, the Defendant Mark Anthony Soliz told Sgt. Dena with the Fort Worth Police Department that "He could not go back to prison" when Dena was attempting to arrest him in Fort Worth, Tarrant County, Texas.

27.     On or about June 23, 2010, the Defendant Mark Anthony Soliz told Ramon Morales in Tarrant County, Texas, that he did not want to sell a pistol that Mark Anthony Soliz had because he had plans to use it.

28.     On or about September 24, 2010, in Tarrant County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant made multiple comments and admissions against his penal interest which were captured on video/audio by Johnson County Deputy Sheriff Jay Kniffen. The State of Texas has previously provided a copy of said statements to the attorneys for Defendant. The State hereby gives notice to the Defense of the entire contents of video/audio dvd capturing the statements of Defendant.

29.     On or about September 24, 2010, in Tarrant County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant made several sexual comments to passing by women including comments on women's "ass" and "titties". The Defendant whistled at passing by women.

30.     On or about September 24, 2010, in Tarrant County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant stated that the State couldn't put him at the crime scene and that all he and Jose Ramos had to was "play dumb" to the State's "shit".

31.     On or about September 24, 2010, in Tarrant County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant stated the if anything were to happen, the boy that tried to pawn the "straps" or guns, the State would get him on a capital murder case, also.

32.     On or about September 24, 2010, in Tarrant County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant stated that "we got two (capital murder cases) because he (Ruben Martinez) died, and everything." The Defendant also referred to capital murder victim Ruben Martinez as a "motherfucker".

33.     On or about September 24, 2010, in Tarrant County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant comments about different girls he is talking to and trying to bond himself out of jail with help from his grandmother. Defendant also talks about helping to bond out Jose Ramos.

34.     On or about September 24, 2010, in Tarrant County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant comments about

STATE'S SIXTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 25

making a $600,000 bond and hiring Johnny Cochran to defendant him because he "needs a damn good attorney."

35.    On or about September 24, 2010, in Tarrant County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant stated that he was going to be watching for a snitch in his case.

36.    On or about September 24, 2010, in Tarrant County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant comments about having sex with another girl while he had a girlfriend and then commented about lying to his girlfriend about the girl he had sex with.  Defendant repeatedly referred to both girls as "bitches".

37.    On or about September 24, 2010, in Tarrant County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant comments about there being cable television and Playstation 3 in some jails.

38.    On or about September 24, 2010, in Tarrant County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant refers to Johnson County Jail Officers as "redneck mother fuckers."  Defendant stated that if you respect the guards, they will let you get away with some things.

39.    On or about September 24, 2010, in Johnson County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant stated that capital murder victim Nancy Weatherly was "probably a lesbian."

40.    On or about September 24, 2010, in Johnson County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant stated that he let Rosie Medina use the car (stolen Dodge Stratus).  Defendant stated that he was "sucking on her titties" and jumped in the shower and started "fucking the shit out of her" and "shit I fuck that pussy."  Defendant referred to Rosie Medina as a "freak" and a "bitch".

41.    On or about September 24, 2010, in Johnson County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant stated that he met this one chick named Sicila Garza who was "bad as a mother fucker" and that he licked it clean "like a mother fucker, man".

42.    On or about dates unknown, in 2010-2011, in Johnson County, Texas, the Defendant, Mark Anthony Soliz wrote a letter to Co-Defendant, Jose Ramos, that stated: "Joe! Say Homeboy, we can beat that case in Fort Worth It just that, them law was trying to tell me that you was saying I did. I haven't even talk to them. In they was telling me how it want down, Do you remember what we talk about, That you pull my arm & da gun want off, They got da gun but no Evidence to show that that was da murder gun, that shot him.  That case here, my attorney show me my statement, That said I shot that lady.  But I didn't say it like that.  I wasn't saying it to tell them it was me, I was saying it to

STATE'S SIXTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 26

get it over with, so I can go back to my holding cell.  There some stuff I don't remember saying, There going to try to hit me hard on this case here, If you do end up getting this case beat, It cause I'm trying to get this statement pull cause it say that I did it.  If I don't then Im fuck but if I do then we're good.  Get back at me!  Kilo"

43.     On or about dates unknown, in 2010-2011, in Johnson County, Texas, the Defendant, Mark Anthony Soliz wrote a letter to Co-Defendant, Jose Ramos, that stated: "(Kilo Joe) Greeting Homeboy!  Check this.  Let get thing understood, I don't know why you're here, cause I took da blame on of them cases, they just got to find me (guilty)(feel me) I never said your name to them laws, if your attorney look at my statement it only say or look like I did it all by my self.  On da cool Im making my attorney fight for me, since they say he good.  I just don't want you to take da stand. Right, I do know da truth a lot of people mad at me!  My girl, family & friends.  They think these people going to make you take da stand or make you bump head with me.  I must keeping it real with you, as for calling you mother, I didn't!  On da Hood,=nor=side=  So what Kristine talking about & Samantha wrote me a 5 page letter front and back  Don't know if Kristine going to come throu with that money, ask her what happen to that money!  Get back at me!  let me know Kilo.G  what up  Att: who had do Jewelry?  They want me to step back from you!?"

44.     On or about dates unknown, in 2010-2011, in Johnson County, Texas, the Defendant, Mark Anthony Soliz wrote a letter to Co-Defendant, Jose Ramos, that stated: Jose, say vato, I cut ties with you, Do your own time like you been doing, Just got word on you, You know what up.  Don't have to let you know, I been a fu da ho tyme  You good you know that, peep game, it will follow u,  Im out!  K.G."

Respectfully submitted,

_____

MARTIN M. STRAHAN
ASSISTANT DISTRICT ATTORNEY
JOHNSON COUNTY, TEXAS
PHONE:  (817) 556-6800
FAX:      (817) 556-6814
CLEBURNE, TEXAS  76031
STATE BAR NO. 00797765

1898

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been sent by hand delivery to Michael Heiskell, Johnson, Vaughn & Heiskell, 5601 Bridge Street, Suite 220, Fort Worth, Texas 76102, fax (817) 496-1102 and to Greg Westfall, Attorney at Law, 121400 W. Abram Street, Arlington, Texas 76013, fax (817) 274-9724 on this the _____ day of _____, 2012.

MARTIN M. STRAHAN
ASSISTANT DISTRICT ATTORNEY

STATE'S SIXTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 28

1899

CAUSE NO. F45059

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 413TH DISTRICT COURT |
| VS. | § | OF |
| MARK ANTHONY SOLIZ | § | JOHNSON COUNTY, TEXAS |

### STATE'S THIRD AMENDED EXPERT WITNESS LIST

1. Dr. S. Bao
   Tarrant County Medical Examiner
   200 Feliks Gwozdz Pl.
   Fort Worth, Texas 76104

2. Kelly Belcher
   Tarrant County Medical Examiner
   200 Feliks Gwozdz Pl.
   Fort Worth, Texas 76104

3. Det. Blansit
   Mansfield Police Department
   1200 E. Broad St.
   Mansfield, Texas 76063

4. Christina Capt
   UNT Center for Human Identification
   3500 Camp Bowie Blvd.
   Fort Worth, Texas 76107

5. Max Courtney
   Mansfield Police Department
   1200 E. Broad St.
   Mansfield, Texas 76063

6. Dr. Crawford
   John Peter Smith Hospital
   Fort Worth, Texas

7. Thomas Ekis
   Fort Worth Police Department
   350 W. Belknap St.
   Fort Worth, Texas 76102



STATE'S THIRD AMENDED EXPERT WITNESS LIST – PAGE 1

8.  Lannie Emanuel
    Integrated Forensic Labs
    901 Clinic Drive, Ste. D110
    Euless, Texas 76039

9.  Lt. Mike Gaudet
    Johnson County Sheriff's Office
    1102 E. Kilpatrick
    Cleburne, Texas  76031

10. Allison Heard
    DPS Crime Laboratory
    Garland, Texas

11. Pat Huston
    Tarrant County Probation/Community Supervision
    Fort Worth, Texas

12. Trisha Kacer
    DPS Crime Laboratory
    Garland, Texas

13. Dr. Marc Krouse
    Tarrant County Medical Examiner
    200 Feliks Gwozdz Pl.
    Fort Worth, Texas  76104

14. John Laseter, Ph.D.
    11625 Custer Road
    #110-242
    Frisco, Texas  75035

15. Sundaye Lopez
    Fort Worth Police Department Crime Lab
    350 W. Belknap St.
    Fort Worth, Texas  76102

16. Michael Mayer
    Tarrant County Medical Examiner
    200 Feliks Gwozdz Pl.
    Fort Worth, Texas  76104

17. A.P. Merillat
    Huntsville, Texas

STATE'S THIRD AMENDED EXPERT WITNESS LIST – PAGE 2

1901

18.     Amber Moss
        DPS Crime Laboratory
        Garland, Texas

19.     Jennifer Nollkamper
        Fort Worth Police Department Crime Lab
        350 W. Belknap St.
        Fort Worth, Texas 76102

20.     Dr. N. Peerwani
        Tarrant County Medical Examiner
        200 Feliks Gwozdz Pl.
        Fort Worth, Texas 76104

21.     Farah Plopper
        UNT Center for Human Identification
        3500 Camp Bowie Blvd.
        Fort Worth, Texas 76107

22.     Dr. J. Randall Price
        Price, Proctor & Associates
        11882 Greenville Ave., Suite 107
        Dallas, Texas 75243

23.     Dr. Timothy J. Proctor
        Price, Proctor & Associates
        11882 Greenville Ave., Suite 107
        Dallas, Texas 75243

24.     Dr. Stephen Rush, M.D.
        Texas Health Fort Worth
        Fort Worth, Texas

25.     Dr. Gary Sisler
        Tarrant County Medical Examiner
        200 Feliks Gwozdz Pl.
        Fort Worth, Texas 76104

26.     Paul Slocum
        Integrated Forensic Labs
        901 Clinic Drive, Ste. D110
        Euless, Texas 76039

27.     Randall Thompson
        2250 Lakeside Blvd.

STATE'S THIRD AMENDED EXPERT WITNESS LIST – PAGE 3

1902

Richardson, Texas 75082

28.   Lisa Temple, R.N.
      John Peter Smith Hospital
      Fort Worth, Texas

29.   Carolyn Van Winkle
      Tarrant County Medical Examiner
      200 Feliks Gwozdz Pl.
      Fort Worth, Texas  76104

30.   Bill Walker
      Tarrant County Medical Examiner
      200 Feliks Gwozdz Pl.
      Fort Worth, Texas  76104

31.   Dr. Lloyd White
      Tarrant County Medical Examiner
      200 Feliks Gwozdz Pl.
      Fort Worth, Texas  76104

32.   Off. J.G. Wilson
      Fort Worth Police Department
      350 W. Belknap St.
      Fort Worth, Texas  76102

33.   Mark Porter
      Burleson, Texas

34.   Ernest Van Der Leest
      Fort Worth, Texas

35.   E. Earl Hauss, R.N.
      Fort Worth, Texas

36.   Ruben Cisneros
      Fort Worth, Texas

37.   Cory Williamson
      Fort Worth, Texas

38.   David Mowery
      Fort Worth, Texas

39.   David Glenn

STATE'S THIRD AMENDED EXPERT WITNESS LIST – PAGE 4

Fort Worth, Texas

40.   Craig Maples
      Fort Worth, Texas

Respectfully submitted,

_____
MARTIN M. STRAHAN
ASSISTANT DISTRICT ATTORNEY
JOHNSON COUNTY, TEXAS (817) 556-6800
204 S. BUFFALO AVE., SUITE 209
CLEBURNE, TEXAS  76031
STATE BAR NO. 00797765

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been sent by facsimile transmission to Michael Heiskell, Johnson, Vaughn & Heiskell, 5601 Bridge Street, Suite 220, Fort Worth, Texas 76102, fax (817) 496-1102 and to Greg Westfall, Attorney at Law, 1400 W. Abram Street, Arlington, Texas 76013, fax (817) 274-9724 on this the ___7___ day of February, 2012.

_____
MARTIN M. STRAHAN
ASSISTANT DISTRICT ATTORNEY

<u>STATE'S THIRD AMENDED EXPERT WITNESS LIST</u> – PAGE 5

1904

CAUSE NO. F45059

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 413th DISTRICT COURT |
| | § | |
| VS. | § | OF |
| | § | |
| MARK ANTHONY SOLIZ | § | JOHNSON COUNTY, TEXAS |

## STATE'S TENTH AMENDED WITNESS LIST

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW the State of Texas represented by her Criminal District Attorney of Tarrant County, Texas, and files this **STATE'S SEVENTH AMENDED WITNESS LIST**. All address and phone numbers not specifically listed below are contained in the State's file that is been made available to the attorney of record for the Defendant.

A. **FORT WORTH POLICE DEPARTMENT**
350 W. BELKNAP ST.
FORT WORTH, TEXAS 76102

1.  OFF. J ABRAMS
2.  OFF. J ALANIZ
3.  OFF. A ALLCON
4.  OFF. ALLEN
5.  OFF ANDREWS
6.  OFF. L AVERY
7.  OFF. R BALLARD
8.  SGT. R. BATES
9.  DET. T BOETCHER
10. OFF. JG BRADFORD
11. OFF. D BRUCE
12. OFF. B BRUMLEY
13. OFF. BUNNY BUTH
14. OFF BLUNK
15. OFF. A CARDWELL
16. OFF. CAVETT
17. DET. J CEDILLO
18. OFF. ERIC CHARLES
19. OFF. ROBERT COSTA



STATE'S TENTH AMENDED WITNESS LIST - PAGE 1

1905

20.   OFF. JR COX
21.   OFF TJ CRABILL
22.   OFF. B DAVIS
23.   SGT. DENA
24.   OFF BRIANNE DIBLEY
25.   OFF. F DISSINGER
26.   OFF TC DUNN
27.   THOMAS EKIS
28.   SGT. ELGIN
29.   OFF. MANUEL ELIZARRARAZ
30.   OFF JA FARAH
31.   OFF. W FIGUEROA
32.   OFF JC FRIAS
33.   DET. HL GIBBS
34.   OFF. J GIPSON
35.   OFF. RD GILFOUR
36.   OFF. GD GILLIAM
37.   OFF. G. GUTIERREZ
38.   OFF. D. HALMAGEAN
39.   OFF RUSSELL HAYDEN
40.   OFF. EV HERNANDEZ
41.   OFF. M. HERNANDEZ
42.   OFF JG HOLMAN
43.   OFF. J HOPPER
44.   OFF. S HOWZE
45.   OFF. HYDEN
46.   OFF. P HYDER
47.   OFF SA IKER
48.   SGT. B JAMISON
49.   OFF. AM JAY
50.   OFF.J JOHNSON
51.   OFF. C JONES
52.   OFF. K JUDD
53.   OFF KEADLE
54.   OFF SARAH KEENAN
55.   OFF. KERRY KIMBALL
56.   OFF. LARRY LANCE
57.   OFF. G LARA
58.   DET. T LAWRENCE
59.   OFF JL LAWSON
60.   OFF. T LEE
61.   SUNDAYE LOPEZ
62.   OFF. G MEDRANO
63.   OFF. MORRISON

STATE'S TENTH AMENDED WITNESS LIST - PAGE 2

64. JENNIFER NOLLKAMPER
65. DET. OCHOA
66. DET. D PAINE
67. OFF. E PATE
68. DET. S PHILLIPS
69. OFF. RJ PRESNEY
70. OFF. A PRICE
71. OFF. M RAMIREZ
72. DET. B RANDOLPH
73. DET. EB RAYNSFORD
74. SGT REYNOLDS
75. DET. JT RHODEN
76. OFF DK RHONE
77. OFF. M RIDDLE
78. OFF. K ROBERTSON
79. OFF WT ROBINSON
80. OFF. D LEWIS
81. H. GONZALEZ-PINEDA- 911 OPERATOR
82. MANDY RIDDLE-FW POLICE COMMUNICATIONS
83. OFF. LE ELGIN
84. OFF. RG BROTHERTON
85. OFF. EVERETT
86. OFF. DORSEY
87. J. SALAZAR
88. OFF. W. SHOW
89. OFF JM SIMMS
90. CAPT. SKIDMORE
91. OFF. A STAGGS
92. DET JD STANFORD
93. DET. JG STEELE
94. OFF. D SULLIVAN
95. OFF JD TATE
96. OFF JC TAPIA
97. OFF. R THOMPSON
98. OFF. J THORNTON
99. OFF. R TOWNS
100. DET. L TRACY
101. OFF. D UKLE
102. DET. J VARNON
103. OFF. T VOA
104. OFF. D WASHINGTON
105. OFF. WEBB
106. OFF. CHRIS WELLS
107. OFF. JG WILSON

STATE'S TENTH AMENDED WITNESS LIST - PAGE 3

1907

108. DET CE WISE
109. OFF. DARRYL W. WOODY
110. OFF. K MCMURTREY
111. OFF. SHEERAN
112. OFF. GOSSETT
113. OFF. OWINGS
114. OFF. TIGRETT
115. OFF. LA SCHERERN
116. DET. K. SULLIVAN
117. OFF WT WATKINS
118. CAMI WIMBERLEY
119. OFF. TYLER
120. STEPHANIE POTTER
121. LAURA MARTINEZ
122. CAROLINE FRALIA

B. **CIVILIANS**

1. SAMEER ABDEL-JABER
   FORT WORTH, TEXAS
2. SAMMY ABU-LUGHOD
   FORT WORTH, TEXAS
3. RON ALLEY
   FORT WORTH, TEXAS
4. NARCISO AMADOR
   FORT WORTH, TEXAS
5. JAMES EDWARD ANDREWS
   FORT WORTH, TEXAS
6. JESSICA BALDERAS
   GODLEY, TEXAS
7. JESUS BELTRAN
   FORT WORTH, TEXAS
8. BRIAN BROWN
   BURLESON, TEXAS
9. DR. NATALIE BROWN
   FORT WORTH, TEXAS
10. RODNEY BROWN
    FORT WORTH, TEXAS
11. MAXIMINO CHAVEZ-SOTO
    FORT WORTH, TEXAS
12. V. CIRCELLI
    FORT WORTH, TEXAS
13. CHELSEA CIRCELLI
    FORT WORTH, TEXAS
14. BRENDA COFER

STATE'S TENTH AMENDED WITNESS LIST - PAGE 4

1908

GODLEY, TEXAS
15.   FELIPE CONTRERAS
      FORT WORTH, TEXAS
16.   SAMUEL COX
      FORT WORTH, TEXAS
17.   CHRISTOPHER DAVILA
      GRANBURY, TEXAS
18.   BEN DAVIS
      GODLEY, TEXAS
19.   KILA DAVIS
      GODLEY, TEXAS
20.   CLAYTON DAVIS
      GODLEY, TEXAS
21.   BARRY DICKEY
      MANSFIELD, TEXAS
22.   KENNY DODGIN
      WATAUGA, TEXAS
23.   ARNOLDO DOMINGUEZ
      FORT WORTH, TEXAS
24.   FERNANDO DOMINGUEZ
      FORT WORTH, TEXAS
25.   MIGUEL DOMINGUEZ
      FORT WORTH, TEXAS
26.   EDDIE DURAN
      FORT WORTH, TEXAS
27.   ELIZABETH ESTRADA
      TARRANT COUNTY JAIL
28.   A. EVANS
      FORT WORTH, TEXAS
29.   CHADLEY FOSTER
      FORT WORTH, TEXAS
30.   MARCY GIRTON
      1300 ROSEWOOD DRIVE
      COLUMBIA, SOUTH CAROLINA
31.   ARTURO GONZALES
      TARRANT COUNTY JAIL
32.   JOSE GONZALES
      FORT WORTH, TEXAS
33.   STEPHANIE GRAY
      BENBROOK, TEXAS
34.   VIVIANA GONZALES
      FORT WORTH, TEXAS
36.   NABIL HILO
      FORT WORTH, TEXAS

1909

37. DONATELLO HINKLE
    FORT WORTH, TEXAS
38. JOHN HINKLE
    FORT WORTH, TEXAS
39. JL HINOJOSA
    FORT WORTH, TEXAS
40. BARNEY B HOLLAND
    FORT WORTH, TEXAS
41. LACY HUNSUCKLE
    FORT WORTH, TEXAS
42. JEFFEREY T. KNOESEL
    FORT WORTH, TEXAS
43. RYAN LAMB
    FORT WORTH, TEXAS
44. NH LASEMAN
    CLEBURNE, TEXAS
45. LISA LEWIS
    FORT WORTH, TEXAS
46. WHITNEY LEWIS
    FORT WORTH, TEXAS
47. JAIMES LUCIANO
    FORT WORTH, TEXAS
48. JESUS LUNA
    FORT WORTH, TEXAS
49. LUIS LUNA
    FORT WORTH, TEXAS
50. THERESA MACHADO
    FORT WORTH, TEXAS
51. M. MAHARAZAN
    FORT WORTH, TEXAS
52. RICKY MALONE
    FORT WORTH, TEXAS
53. JERRY MARTIN
    BENBROOK, TEXAS
54. DIEGO MARTINEZ
    FORT WORTH, TEXAS
55. L. MARTINEZ
    FORT WORTH, TEXAS
56. YOLANDA MARTINEZ
    FORT WORTH, TEXAS
57. DOUGLAS MATA
    FORT WORTH, TEXAS
58. ROSIE MEDINA
    TARRANT COUNTY JAIL

STATE'S TENTH AMENDED WITNESS LIST - PAGE 6

1910

59. RAMON MORALES
    FORT WORTH, TEXAS
60. JUSTIN MORRIS
    FORT WORTH, TEXAS
61. OLGA NAREZ
    FORT WORTH, TEXAS
62. ANDREAS NAVA
    FORT WORTH, TEXAS
63. MATHEW NAVARRO
    FORT WORTH
64. WALEED OBAID
    FORT WORTH, TEXAS
65. ERICA LEE ODONNELL
    FORT WORTH, TEXAS
66. DANIEL ORDONEZ
    FORT WORTH, TEXAS
67. MIRIAM OLIVAREZ
    DURANT, OK
68. PATRICIA PARSONS
    FORT WORTH, TEXAS
69. ROXANE PEREZ
    FORT WORTH, TEXAS
70. JUAN RAMIREZ
    FORT WORTH, TEXAS
71. MARIA RAMIREZ
    FORT WORTH, TEXAS
72. BRIANNA RAMIREZ
    FORT WORTH, TEXAS
73. MICHAEL RAMIREZ
    FORT WORTH, TEXAS
74. JAQUALINE RAMIREZ
    FORT WORTH, TEXAS
75. VERONICA RAMIREZ
    FORT WORTH, TEXAS
76. JOSE RAMOS
    TARRANT COUNTY JAIL
77. VINCE RANGEL
    FORT WORTH, TEXAS
78. MIRTHA REYES
    DALLAS, TEXAS
79. CATHY RICHARDSON
    TARRANT COUNTY JAIL
80. MARIA RIVERA
    FORT WORTH, TEXAS

STATE'S TENTH AMENDED WITNESS LIST - PAGE 7

1911

81. RICK RODEN
    GODLEY, TEXAS
82. TARA RODEN
    GODLEY, TEXAS
83. JUANA SALAS
    FORT WORTH, TEXAS
84. ENRIQUE SAMANIEGO
    FORT WORTH, TEXAS
85. JESSE SANCHEZ
    FORT WORTH, TEXAS
86. ELVIA SILVA
    FORT WORTH, TEXAS
87. JOSHUA SOLIS
    FORT WORTH, TEXAS
88. JORGE TAMAYO
    FORT WORTH, TEXAS
89. JOAN TREW
    FORT WORTH, TEXAS
90. JAMIE VESSELL
    FORT WORTH, TEXAS
91. LETICIA VILLEGAS
    FORT WORTH, TEXAS
92. DARLENE WATSON
    BENBROOK, TEXAS
93. WALTER LUTHER WATSON
    BENBROOK, TEXAS
94. GLORIA SERRANO
    FORT WORTH, TEXAS
95. MIKE ORTEGA
    FORT WORTH, TEXAS
96. SANTOS RANGEL
    FORT WORTH, TEXAS
97. SAMANTHA ESTRADA
    FORT WORTH, TEXAS
98. PAUL CONTRERAS
    FORT WORTH, TEXAS
99. EDDIE CONTRERAS
    FORT WORTH, TEXAS
100. DONNA SUE SOLIZ
    FORT WORTH, TEXAS
101. ARNOLD ZAMORA
    FORT WORTH, TEXAS
102. JUAN RAMIREZ
    FORT WORTH, TEXAS

STATE'S TENTH AMENDED WITNESS LIST - PAGE 8

1912

103. VERONICA GARCIA
     FORT WORTH, TEXAS
104. BRIANNA RAMIREZ
     FORT WORTH, TEXAS
105. MICHAEL RAMIREZ
     FORT WORTH, TEXAS
106. MIRTHA REYES
     FORT WORTH, TEXAS
107. TAMMY RAMOS
     FORT WORTH, TEXAS
108. MONICA RAMOS
     FORT WORTH, TEXAS
109. TERESA RAMOS
     FORT WORTH, TEXAS
110. CLAYTON SMITH
     GODLEY, TEXAS
101. MARY SMITH
     GODLEY, TEXAS
102. SHARON SOLIZ-RANGEL
     FORT WORTH, TEXAS
103. BRIAN MATTHEW BROWN
     FORT WORTH, TEXAS
104. RILEY HAMPTON DAVIS
     GODLEY, TEXAS
105. RHETT HARRISON DAVIS
     GODLEY, TEXAS
106. ELLGIO CONTRERRAS
     KEENE, TEXAS
107. MARY GALUS
     FORT WORTH, TEXAS
108. RUBEN CISNEROS
     FORT WORTH, TEXAS
109. KAREN MCMURTREY
     FORT WORTH, TEXAS
110. HOWARD MCMURTREY
     FORT WORTH, TEXAS
111. GENE TURNEY
     FORT WORTH, TEXAS
112. RAUL SAENZ
     FORT WORTH, TEXAS
113. MIKE ORTEGA
     FORT WORTH, TEXAS
114. CATHERINE POLOMA
     FORT WORTH, TEXAS

STATE'S TENTH AMENDED WITNESS LIST - PAGE 9

1913

115. ANIL BHANTANA
     FORT WORTH, TEXAS
116. DANIEL ORDONEZ
     FORT WORTH, TEXAS
117. ROBERT VARGAS
     FORT WORTH, TEXAS
118. MR. MEEHAN
     FORT WORTH, TEXAS
119. BEATRIZ MEEHAN
     FORT WORTH, TEXAS
120. SYDNEY NAVARRO
     FORT WORTH, TEXAS
121. MARK PORTER
     FORT WORTH, TEXAS
122. ERNEST VAN DER LEEST
     FORT WORTH, TEXAS
123. PAM WALKER BROWN
     FORT WORTH, TEXAS
124. MICHAEL WOODS
     FORT WORTH, TEXAS

C. **JOHNSON COUNTY LAW ENFORCEMENT CENTER**
   CLEBURNE, TEXAS
1.  JOSE ARRIOLA
2.  LT. DAVID BOGGESS
3.  LT. BOUTWELL
4.  ALLEN CARDENA
5.  ARNOLD GRIFFIN
6.  MICHAEL GOOD
7.  SGT. LAURIE GUNTER
8.  SHAWN HERNANDEZ
9.  EUGENE HINDS
10. WARDEN JANICEK
11. CHIEF JOHNSON
12. TRAVIS JONES
13. MAJ. J. KELSEY
14. CHASE KINMAN
15. DANA KINNARD
16. RONNIE MCCOWAN
17. SGT. J. MEEKS
18. SGT. MOLINA
19. STEVEN PARRISH
20. CHRISTIAN PASCHAL
21. SHELLY PRESTON

STATE'S TENTH AMENDED WITNESS LIST - PAGE 10

1914

22. GINGER PROCTOR
23. JASON PUGH
24. TIMOTHY PUTMAN
25. CORRECTIONS OFF. JUSTIN RALEIGH
26. JAMES RENFRO
27. RENEE SAMPLE
28. DAVID TURNER
29. JESSE TURNER
30. WILSON WIMBERLY
31. OFFICER PIERCE

D. <u>JOHNSON COUNTY SHERIFF'S OFFICE</u>
1102 E. KILPATRICK
CLEBURNE, TEXAS 76031
1. SGT R BATES
2. DET. BENNETT
3. DET. D. BLANKENSHIP
4. DEP. L CORWIN
5. DET.T DALTON
6. DEP. FORD
7. CPT. T. FULLER
8. LT. MIKE GAUDET
9. DET. A GILREATH
10. TINA HODNETT
11. DEP. HOGAN
12. LT. T JONES
13. DEP. W. KETCHUM
14. DET. J KNIFFEN
15. DEP.K LINK
16. DEP. M POOLE
17. DEP. M POWELL
18. PAULA REID
19. LAURIE STOVALL
20. DEP.TRUITT
21. JW WALDRAN
22. DET. K WRENN
23. DET. L YOCHAM
24. SHERIFF BOB ALFORD

E. <u>TARRANT COUNTY MEDICAL EXAMINER'S OFFICE</u>
200 FELIKS GWOZDZ PL.
FORT WORTH, TEXAS 76104
1. DR. S. BAO

<u>STATE'S TENTH AMENDED WITNESS LIST - PAGE 11</u>

1915

2. KELLY BELCHER
3. P. ELRASHID
4. DR. MARC KROUSE
5. MICHAEL MAYER
6. DR. N. PEERWANI
7. M. POLLARD
8. ESTHER GUTIERREZ
9. DR. GARY SISLER
10. T. SWAN
11. MARK THOMPSON
12. CAROLYN VAN WINKLE
13. BILL WALKER
14. DR. LLOYD WHITE
15. ESTHER GUTIERREZ
16. PAT EDDINGS
17. DUSTY PYLE

F. **MANSFIELD POLICE DEPARTMENT**
1200 E. BROAD ST.
MANSFIELD, TEXAS 76063
1. DET. BLANSIT
2. MAX COURTNEY
3. R. DENNING
4. R. HASH
5. M. MALCOLM
6. B. MOORE

G. **BENBROOK POLICE DEPARTMENT**
1. OFF. D BYRD
2. DET. LEE
3. DET. J LEWELLEN
4. LT. D MARTIN
5. OFF. T MILLER
6. C. MONTGOMERY
7. DET. C ROSS
8. OFF. D WALLACE

H. **UNT**
UNT CENTER FOR HUMAN IDENTIFICATION
3500 CAMP BOWIE BLVD.
FORT WORTH, TEXAS 76107
1 CHRISTINA CAPT
2. FARAH PLOPPER
3. JENNIFER URBINA

STATE'S TENTH AMENDED WITNESS LIST - PAGE 12

1916

4.  RUTH R DUNAHOO
5.  ANNETTA MILLER
6.  KELLY NELSON

I. **INTEGRATED FORENSIC LABS**
901 CLINIC DRIVE, STE. D110
EULESS, TEXAS 76039
1.  LANNY EMMANUEL
2.  PAUL SLOCUM

J. **DPS CRIME LABORATORY**
GARLAND, TEXAS
1.  ALLISON HEARD
2.  TRISHA KACER
3.  AMBER MOSS

K. **TARRANT COUNTY COMMUNITY SUPERVISION**
1.  PAT HUSTON
2.  LEANNA JUDD
3.  R. SALINAS
4.  DAVIS CHANDLER

L. **MENTAL HEALTH PROFESSIONALS**
1.  JOHN LASETER, PHD
11625 CUSTER ROAD #110-242
FRISCO, TEXAS 76102
2.  DR. J RANDALL PRICE
PRICE, PROCTOR & ASSOCIATES
11882 GREENVILLE AVE, SUITE 107
DALLAS, TEXAS 75243
3   DR.TIMOTHY PROCTOR
PRICE, PROCTOR & ASSOCIATES
11882 GREENVILLE AVE, SUITE 107
DALLAS, TEXAS 75243
4.  DR. ROGER BURNS
FORT WORTH, TEXAS
5.  DR. PREMA MANJUMATH
FORT WORTH, TEXAS
6.  DR. DONNA ABBOT
DALLAS, TEXAS
7.  PENELOPE ROSEN- BUCKNER
8.  DAVID CHANDLER- BUCKNER
9.  DR. CHRISTINA REED-
PRICE, PROCTOR & ASSOCIATES

STATE'S TENTH AMENDED WITNESS LIST - PAGE 13

1917

11882 GREENVILLE AVE, SUITE 107
DALLAS, TEXAS 75243
10.    DR. DAVID SELF
FLINT, TEXAS

## M. **TEXAS DEPARTMENT OF CORRECTIONS**

1.    A.P. MERILLAT
2.    BRAD LIVINGSTON
3.    VANESSA JONES
4.    OFF. L QUICK
5.    OFF. JAMES JOHNSON
6.    OFF. W.D. JOCK
7.    OFF. D. KIDD
8.    OFF. M. WILLARD
9.    OFF. HOLMAN
10.    RACHEL E WILLIAMS
11.    OFF. C. SHIRAH
12.    OFF. H. YARBROUGH
13.    OFF. KAREN HENRY
14.    OFF. HAROLD JOHNSON
15.    OFF. A. HOLMAN
16.    E. GARZA
17.    R. GRANT
17.    OFF. PETERS
18.    OFF. L. WOFFORD
19.    OFF. JERRY ROGERS
20.    OFF. WINSTON YOUNG
21.    OFF. E. CLEMMONS
22.    SGT F. GUITIERREZ S.T.G.O.
23.    OFF. BILLY CORNELL
24.    OFF. I. BONNOR
25.    OFF. JUDY HUGHES
26.    OFF. W. CLIFFORD
27.    OFF. B. THOMPSON
28.    OFF. DT CREASON
29.    OFF. M. BARNETT
30.    OFF. C. WILLET
31.    OFF. A GOBER
32.    OFF. CATHERTON
33.    STEVEN ROGERS
34.    OFF. STERLIDO EDWARDS
35.    OFF. G COUCH
36.    OFF. D HOUSE
37.    OFF. M BENNETT

38. INMATE EROS BROWN
39. INMATE JOHN O'DELL
40. INMATE WILLIE JENKINS
41. INMATE STEVEN MUSKOWITZ
42. EMIL GARZA
43. ROBERT GRANT
44. SGT. F. GUTIERREZ
45. SHARON DEFFERENT
46. B. SCROGGINS
47. J. WELDON
48. OFF. GIPSON

## N. RECORDS CUSTODIANS

1. HAWK SECURITY
   BENBROOK, TEXAS
2. RENEE CANTON
   CASH AMERICA PAWN SHOPS
   2900 N. MAIN STREET
   FORT WORTH, TEXAS
2. ANDREA COTTRELL
   CASH AMERICA PAWN SHOPS
   FORT WORTH, TEXAS
4. JOHN TILLEY
   NORTHSIDE PAWN SHOP
   2609 N. MAIN STREET
   FORT WORTH, TEXAS
5. RECORDS CUSTODIAN
   A-I PAWN & JEWELRY
   4201 HEMPHILL ST. 1420 W BERRY
   FORT WORTH, TEXAS
6. RECORDS CUSTODIAN
   MOTEL 6
   3271 I-35 W
   FORT WORTH, TEXAS 76106
7. RECORDS CUSTODIAN
   FORT WORTH FIRE DEPARTMENT
   FORT WORTH, TEXAS
8. RECORDS CUSTODIAN
   MEDSTAR
   FORT WORTH, TEXAS
9. CHAD CARR
   RECORDS CUSTODIAN
   FORT WORTH, TEXAS

1919

O. **TEXAS RANGERS**
1. SGT. DON STONER
2. LT. CRAYTON MCGEE

P. **JOHN PETER SMITH**
1. DR. W. CRAWFORD
2. LISA TEMPLE, RN.
3. JUDY THOMAS
4. DR. RAJESH RAMESH GANDHI
5. DR.M RICHARDSON
6. DR. POWELL KINNEY
7. DR. SHERRY RUTH KONDZIELA
8. DR. RJ WEDDEN
9. AMANDA TICE, RN
10. JANA PALMER, RN
11. DR. JOSHUA PRATT
12. DR. VERONICA WILLSON
13. DR. CHARLOTTE WILLIAMS
14. DR. DANIEL ZIEGLER
15. DEBRA STUART, RN
16. ALISA BILBREY, CST
17. ERIC THOMPSON, RN
18. S. GRIS WELL, RN

Q. **METRO PCS**
1. RANDALL THOMPSON

R. **COLLEYVILLE POLICE DEPARTMENT**
1. DET. KEVIN WALLING

S. **TDC PAROLE**
1. CHRISTINA PROPES
2. TIM LANGFORD
3. MICHELLE KREGER
4. BOB PURCELL
DALLAS, TEXAS

T. **MAGISTRATES/JUDGES**
1. THE HONORABLE SCOTT WISCH
JUDGE, 372ND DISTRICT COURT
TARRANT COUNTY, TEXAS
2. THE HONORABLE EVERETT YOUNG
JUDGE, 297TH DISTRICT COURT
TARRANT COUNTY, TEXAS

1920

U. **TARRANT COUNTY JAIL**

1. STACI TURNER- RECORDS CUSTODIAN
2. SGT. BLACK
3. DEP. YANDELL
4. DEP. RG ALMENDAREZ
5. SGT. DUNHAM
6. DEP. J PAULEY
7. DEP. LAMBETH
8. DEP. C BREWER
9. SGT. R REYES
10. DEP. POTTS
11. OFF. R CURTIS
12. OFF. SIFUENTES
13. SGT. T BROWNING
14. DEP. R HART
15. DEP.J LHELM
16. DEP. PIERSON
17. DEP. G PARRAMORE
18. LT. J RUCKER
19. JAMES BLASZAK
20. M. COX
21. E. BOWMAN
22. T. NOEL
23. E. GARZA
24. D. SCOTT
25. R. WARD
26. E. GRACIA
27. R. CASAREN
28. MR CUDE
29. E. HERRIAGE
30. P. BURKETT
31. C. WILLIAMS
32. CPL. RENDER
33. DEP MUHAMMAD
34. B. POCHE
35. DEP DAVIS
36. DEP SALAS
37. W. TAYLOR
38. B. NASH
39. SGT PILKINGTON
40. OFF C MERCHANT

STATE'S TENTH AMENDED WITNESS LIST - PAGE 17

41.   DEP I A LOPEZ
42.   DEP MJ TAYLOR
43.   DEP ESTRADA

V. **JUVENILE PROBATION**
1.   PO SALINAS
2.   PO WHEAT
3.   PO CASTOREN
4.   PO B HAMPTON
5.   PO CHARLES VERMERSCH
6.   PO PAUL BROCK WAY
7.   PO GUSTAFSON
8.   PO LEANNA JUDD

W. **CHILD PROTECTIVE SERVICES**
1.   HEIDI SCHMIDT
2.   PENELOPE ROSEN
3.   ROBIN WELCH
4.   JACKIE CUANZZO
5.   LAURA FLORES
6.   SANDY MCGUIRE

X. **TEXAS HEALTH SOUTH**
1.   DR. STEVEN RUSH

Y. **NEUROLOGIST**
1.   DR. JORGE ROMERO

Z. **TARRANT COUNTY**
1.   MARK PORTER
2.   ERNEST VAN DER LEEST

AA. **FORT WORTH MEDSTAR**
1.   E. EARL HAUSS, R.N.
2.   RUBEN CISNEROS
3.   CORY WILLIAMSON

BB. **FORT WORTH FIRE DEPARTMENT**
1.   GABRIELA YANES
2.   LT. CHRISTOPHER A. OWENS
3.   MICHAEL W. WEATHERWOOD

STATE'S TENTH AMENDED WITNESS LIST - PAGE 18

1922

Respectfully submitted,

MARTIN M. STRAHAN
ASSISTANT DISTRICT ATTORNEY
JOHNSON COUNTY, TEXAS
PHONE (817) 556-6800
FAX (817) 556-6814
204 S. BUFFALO AVE., SUITE 209
CLEBURNE, TEXAS 76031
STATE BAR NO. 00797765


## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been sent by hand delivery to Michael Heiskell, Johnson, Vaughn & Heiskell, 5601 Bridge Street, Suite 220, Fort Worth, Texas 76102, fax (817)496-1102 and to Greg Westfall, Attorney at Law, 1400 W. Abram Street, Arlington, Texas 76013, fax (817) 274-9724 on this the ____ day of _____, 2012.

MARTIN M. STRAHAN
ASSISTANT DISTRICT

STATE'S TENTH AMENDED WITNESS LIST - PAGE 19

1923

CAUSE NO. F45059

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 413th DISTRICT COURT |
| | § | |
| VS. | § | OF |
| | § | |
| MARK ANTHONY SOLIZ | § | JOHNSON COUNTY, TEXAS |

### STATE'S ELEVENTH AMENDED WITNESS LIST

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW the State of Texas represented by her Criminal District Attorney of Tarrant County, Texas, and files this **STATE'S ELEVENTH AMENDED WITNESS LIST**. All address and phone numbers not specifically listed below are contained in the State's file that is been made available to the attorney of record for the Defendant.

A. **FORT WORTH POLICE DEPARTMENT**
350 W. BELKNAP ST.
FORT WORTH, TEXAS 76102
1.    OFF. J ABRAMS
2.    OFF. J ALANIZ
3.    OFF. A ALLCON
4.    OFF. ALLEN
5.    OFF ANDREWS
6.    OFF. L AVERY
7.    OFF. R BALLARD
8.    SGT. R. BATES
9.    DET. T BOETCHER
10.   OFF. JG BRADFORD
11.   OFF. D BRUCE
12.   OFF. B BRUMLEY
13.   OFF. BUNNY BUTH
14.   OFF BLUNK
15.   OFF. A CARDWELL
16.   OFF. CAVETT
17.   DET. J CEDILLO
18.   OFF. ERIC CHARLES
19.   OFF. ROBERT COSTA

FILED
JOHNSON COUNTY
2012 FEB 15 AM 10: 54
DAVID R. LLOYD
DISTRICT CLERK
BY

1924

20.  OFF. JR COX
21.  OFF TJ CRABILL
22.  OFF. B DAVIS
23.  SGT. DENA
24.  OFF BRIANNE DIBLEY
25.  OFF. F DISSINGER
26.  OFF TC DUNN
27.  THOMAS EKIS
28.  SGT. ELGIN
29.  OFF. MANUEL ELIZARRARAZ
30.  OFF JA FARAH
31.  OFF. W FIGUEROA
32.  OFF JC FRIAS
33.  DET. HL GIBBS
34.  OFF. J GIPSON
35.  OFF. RD GILFOUR
36.  OFF. GD GILLIAM
37.  OFF. G. GUTIERREZ
38.  OFF. D. HALMAGEAN
39.  OFF RUSSELL HAYDEN
40.  OFF. EV HERNANDEZ
41.  OFF. M. HERNANDEZ
42.  OFF JG HOLMAN
43.  OFF. J HOPPER
44.  OFF. S HOWZE
45.  OFF. HYDEN
46.  OFF. P HYDER
47.  OFF SA IKER
48.  SGT. B JAMISON
49.  OFF. AM JAY
50.  OFF.J JOHNSON
51.  OFF. C JONES
52.  OFF. K JUDD
53.  OFF KEADLE
54.  OFF SARAH KEENAN
55.  OFF. KERRY KIMBALL
56.  OFF. LARRY LANCE
57.  OFF. G LARA
58.  DET. T LAWRENCE
59.  OFF JL LAWSON
60.  OFF. T LEE
61.  SUNDAYE LOPEZ
62.  OFF. G MEDRANO
63.  OFF. MORRISON

STATE'S ELEVENTH AMENDED WITNESS LIST - PAGE 2

1925

64.     JENNIFER NOLLKAMPER
65.     DET.OCHOA
66.     DET. D PAINE
67.     OFF. E PATE
68.     DET. S PHILLIPS
69.     OFF. RJ PRESNEY
70.     OFF. A PRICE
71.     OFF. M RAMIREZ
72.     DET. B RANDOLPH
73.     DET. EB RAYNSFORD
74.     SGT REYNOLDS
75.     DET. JT RHODEN
76.     OFF DK RHONE
77.     OFF. M RIDDLE
78.     OFF. K ROBERTSON
79.     OFF WT ROBINSON
80.     OFF. D LEWIS
81.     H. GONZALEZ-PINEDA- 911 OPERATOR
82.     MANDY RIDDLE-FW POLICE COMMUNICATIONS
83.     OFF. LE ELGIN
84.     OFF. RG BROTHERTON
85.     OFF. EVERETT
86.     OFF. DORSEY
87.     J. SALAZAR
88.     OFF. W. SHOW
89.     OFF JM SIMMS
90.     CAPT. SKIDMORE
91.     OFF. A STAGGS
92.     DET JD STANFORD
93.     DET. JG STEELE
94.     OFF. D SULLIVAN
95.     OFF JD TATE
96.     OFF JC TAPIA
97.     OFF. R THOMPSON
98.     OFF. J THORNTON
99.     OFF. R TOWNS
100.    DET. L TRACY
101.    OFF. D UKLE
102.    DET. J VARNON
103.    OFF. T VOA
104.    OFF. D WASHINGTON
105.    OFF. WEBB
106.    OFF. CHRIS WELLS
107.    OFF. JG WILSON

STATE'S ELEVENTH AMENDED WITNESS LIST - PAGE 3

108.   DET CE WISE
109.   OFF. DARRYL W.WOODY
110.   OFF. K MCMURTREY
111.   OFF. SHEERAN
112.   OFF. GOSSETT
113.   OFF. OWINGS
114.   OFF. TIGRETT
115.   OFF. LA SCHERERN
116.   DET. K. SULLIVAN
117.   OFF WT WATKINS
118.   CAMI WIMBERLEY
119.   OFF. TYLER
120.   STEPHANIE POTTER
121.   LAURA MARTINEZ
122.   CAROLINE FRALIA
123.   ARNETTA BELL

B. **CIVILIANS**

1.   SAMEER ABDEL-JABER
     FORT WORTH, TEXAS
2.   SAMMY ABU-LUGHOD
     FORT WORTH, TEXAS
3.   RON ALLEY
     FORT WORTH, TEXAS
4.   NARCISO AMADOR
     FORT WORTH, TEXAS
5.   JAMES EDWARD ANDREWS
     FORT WORTH, TEXAS
6.   JESSICA BALDERAS
     GODLEY, TEXAS
7.   JESUS BELTRAN
     FORT WORTH, TEXAS
8    BRIAN BROWN
     BURLESON, TEXAS
9.   DR. NATALIE BROWN
     FORT WORTH, TEXAS
10.  RODNEY BROWN
     FORT WORTH, TEXAS
11.  MAXIMINO CHAVEZ-SOTO
     FORT WORTH, TEXAS
12.  V. CIRCELLI
     FORT WORTH,TEXAS
13.  CHELSEA CIRCELLI
     FORT WORTH, TEXAS

STATE'S ELEVENTH AMENDED WITNESS LIST - PAGE 4

1927

14. BRENDA COFER
    GODLEY, TEXAS
15. FELIPE CONTRERAS
    FORT WORTH, TEXAS
16. SAMUEL COX
    FORT WORTH, TEXAS
17. CHRISTOPHER DAVILA
    GRANBURY, TEXAS
18. BEN DAVIS
    GODLEY, TEXAS
19. KILA DAVIS
    GODLEY, TEXAS
20. CLAYTON DAVIS
    GODLEY, TEXAS
21. BARRY DICKEY
    MANSFIELD, TEXAS
22. KENNY DODGIN
    WATAUGA, TEXAS
23. ARNOLDO DOMINGUEZ
    FORT WORTH, TEXAS
24. FERNANDO DOMINGUEZ
    FORT WORTH, TEXAS
25. MIGUEL DOMINGUEZ
    FORT WORTH, TEXAS
26. EDDIE DURAN
    FORT WORTH, TEXAS
27. ELIZABETH ESTRADA
    TARRANT COUNTY JAIL
28. A. EVANS
    FORT WORTH, TEXAS
29. CHADLEY FOSTER
    FORT WORTH, TEXAS
30. MARCY GIRTON
    1300 ROSEWOOD DRIVE
    COLUMBIA, SOUTH CAROLINA
31. ARTURO GONZALES
    TARRANT COUNTY JAIL
32. JOSE GONZALES
    FORT WORTH, TEXAS
33. STEPHANIE GRAY
    BENBROOK, TEXAS
34. VIVIANA GONZALES
    FORT WORTH, TEXAS
36. NABIL HILO

STATE'S ELEVENTH AMENDED WITNESS LIST - PAGE 5

1928

FORT WORTH, TEXAS
37. DONATELLO HINKLE
FORT WORTH, TEXAS
38. JOHN HINKLE
FORT WORTH, TEXAS
39. JL HINOJOSA
FORT WORTH, TEXAS
40. BARNEY B HOLLAND
FORT WORTH, TEXAS
41. LACY HUNSUCKLE
FORT WORTH, TEXAS
42. JEFFEREY T. KNOESEL
FORT WORTH, TEXAS
43. RYAN LAMB
FORT WORTH, TEXAS
44. NH LASEMAN
CLEBURNE, TEXAS
45. LISA LEWIS
FORT WORTH, TEXAS
46. WHITNEY LEWIS
FORT WORTH, TEXAS
47. JAIMES LUCIANO
FORT WORTH, TEXAS
48. JESUS LUNA
FORT WORTH, TEXAS
49. LUIS LUNA
FORT WORTH, TEXAS
50. THERESA MACHADO
FORT WORTH, TEXAS
51. M. MAHARAZAN
FORT WORTH, TEXAS
52. RICKY MALONE
FORT WORTH, TEXAS
53. JERRY MARTIN
BENBROOK, TEXAS
54. DIEGO MARTINEZ
FORT WORTH, TEXAS
55. L. MARTINEZ
FORT WORTH, TEXAS
56. YOLANDA MARTINEZ
FORT WORTH, TEXAS
57. DOUGLAS MATA
FORT WORTH, TEXAS
58. ROSIE MEDINA

STATE'S ELEVENTH AMENDED WITNESS LIST - PAGE 6

TARRANT COUNTY JAIL
59. RAMON MORALES
FORT WORTH, TEXAS
60. JUSTIN MORRIS
FORT WORTH, TEXAS
61. OLGA NAREZ
FORT WORTH, TEXAS
62. ANDREAS NAVA
FORT WORTH, TEXAS
63. MATHEW NAVARRO
FORT WORTH
64. WALEED OBAID
FORT WORTH, TEXAS
65. ERICA LEE ODONNELL
FORT WORTH, TEXAS
66. DANIEL ORDONEZ
FORT WORTH, TEXAS
67. MIRIAM OLIVAREZ
DURANT, OK
68. PATRICIA PARSONS
FORT WORTH, TEXAS
69. ROXANE PEREZ
FORT WORTH, TEXAS
70. JUAN RAMIREZ
FORT WORTH, TEXAS
71. MARIA RAMIREZ
FORT WORTH, TEXAS
72. BRIANNA RAMIREZ
FORT WORTH, TEXAS
73. MICHAEL RAMIREZ
FORT WORTH, TEXAS
74. JAQUALINE RAMIREZ
FORT WORTH, TEXAS
75. VERONICA RAMIREZ
FORT WORTH, TEXAS
76. JOSE RAMOS
TARRANT COUNTY JAIL
77. VINCE RANGEL
FORT WORTH, TEXAS
78. MIRTHA REYES
DALLAS, TEXAS
79. CATHY RICHARDSON
TARRANT COUNTY JAIL
80. MARIA RIVERA

STATE'S ELEVENTH AMENDED WITNESS LIST - PAGE 7

1930

FORT WORTH, TEXAS
81. RICK RODEN
GODLEY, TEXAS
82. TARA RODEN
GODLEY, TEXAS
83. JUANA SALAS
FORT WORTH, TEXAS
84. ENRIQUE SAMANIEGO
FORT WORTH, TEXAS
85. JESSE SANCHEZ
FORT WORTH, TEXAS
86. ELVIA SILVA
FORT WORTH, TEXAS
87. JOSHUA SOLIS
FORT WORTH, TEXAS
88. JORGE TAMAYO
FORT WORTH, TEXAS
89. JOAN TREW
FORT WORTH, TEXAS
90. JAMIE VESSELL
FORT WORTH, TEXAS
91. LETICIA VILLEGAS
FORT WORTH, TEXAS
92. DARLENE WATSON
BENBROOK, TEXAS
93. WALTER LUTHER WATSON
BENBROOK, TEXAS
94. GLORIA SERRANO
FORT WORTH, TEXAS
95. MIKE ORTEGA
FORT WORTH, TEXAS
96. SANTOS RANGEL
FORT WORTH, TEXAS
97. SAMANTHA ESTRADA
FORT WORTH, TEXAS
98. PAUL CONTRERAS
FORT WORTH, TEXAS
99. EDDIE CONTRERAS
FORT WORTH, TEXAS
100. DONNA SUE SOLIZ
FORT WORTH, TEXAS
101. ARNOLD ZAMORA
FORT WORTH, TEXAS
102. JUAN RAMIREZ

STATE'S ELEVENTH AMENDED WITNESS LIST - PAGE 8

1931

FORT WORTH, TEXAS

103. VERONICA GARCIA
FORT WORTH, TEXAS

104. BRIANNA RAMIREZ
FORT WORTH, TEXAS

105. MICHAEL RAMIREZ
FORT WORTH, TEXAS

106. MIRTHA REYES
FORT WORTH, TEXAS

107. TAMMY RAMOS
FORT WORTH, TEXAS

108. MONICA RAMOS
FORT WORTH, TEXAS

109. TERESA RAMOS
FORT WORTH, TEXAS

110. CLAYTON SMITH
GODLEY, TEXAS

101. MARY SMITH
GODLEY, TEXAS

102. SHARON SOLIZ-RANGEL
FORT WORTH, TEXAS

103. BRIAN MATTHEW BROWN
FORT WORTH, TEXAS

104. RILEY HAMPTON DAVIS
GODLEY, TEXAS

105. RHETT HARRISON DAVIS
GODLEY, TEXAS

106. ELLGIO CONTRERRAS
KEENE, TEXAS

107. MARY GALUS
FORT WORTH, TEXAS

108. RUBEN CISNEROS
FORT WORTH, TEXAS

109. KAREN MCMURTREY
FORT WORTH, TEXAS

110. HOWARD MCMURTREY
FORT WORTH, TEXAS

111. GENE TURNEY
FORT WORTH, TEXAS

112. RAUL SAENZ
FORT WORTH, TEXAS

113. MIKE ORTEGA
FORT WORTH, TEXAS

114. CATHERINE POLOMA

STATE'S ELEVENTH AMENDED WITNESS LIST - PAGE 9

1932

FORT WORTH, TEXAS
115.   ANIL BHANTANA
       FORT WORTH, TEXAS
116.   DANIEL ORDONEZ
       FORT WORTH, TEXAS
117.   ROBERT VARGAS
       FORT WORTH, TEXAS
118.   MR. MEEHAN
       FORT WORTH, TEXAS
119.   BEATRIZ MEEHAN
       FORT WORTH, TEXAS
120.   SYDNEY NAVARRO
       FORT WORTH, TEXAS
121.   MARK PORTER
       FORT WORTH, TEXAS
122.   ERNEST VAN DER LEEST
       FORT WORTH, TEXAS
123.   PAM WALKER BROWN
       FORT WORTH, TEXAS
124.   MICHAEL WOODS
       FORT WORTH, TEXAS
125.   RICHARD WOOD
       FORT WORTH, TEXAS

C. **JOHNSON COUNTY LAW ENFORCEMENT CENTER**
   CLEBURNE, TEXAS
       1.    JOSE ARRIOLA
       2.    LT. DAVID BOGGESS
       3.    LT. BOUTWELL
       4.    ALLEN CARDENA
       5.    ARNOLD GRIFFIN
       6.    MICHAEL GOOD
       7.    SGT. LAURIE GUNTER
       8.    SHAWN HERNANDEZ
       9.    EUGENE HINDS
       10.   WARDEN JANICEK
       11.   CHIEF JOHNSON
       12.   TRAVIS JONES
       13.   MAJ. J. KELSEY
       14.   CHASE KINMAN
       15.   DANA KINNARD
       16.   RONNIE MCCOWAN
       17.   SGT. J. MEEKS
       18.   SGT. MOLINA

STATE'S ELEVENTH AMENDED WITNESS LIST - PAGE 10

1933

19.    STEVEN PARRISH
20.    CHRISTIAN PASCHAL
21.    SHELLY PRESTON
22.    GINGER PROCTOR
23.    JASON PUGH
24.    TIMOTHY PUTMAN
25.    CORRECTIONS OFF. JUSTIN RALEIGH
26.    JAMES RENFRO
27.    RENEE SAMPLE
28.    DAVID TURNER
29.    JESSE TURNER
30.    WILSON WIMBERLY
31.    OFFICER PIERCE

D. **JOHNSON COUNTY SHERIFF'S OFFICE**
1102 E. KILPATRICK
CLEBURNE, TEXAS 76031

1.    SGT R BATES
2.    DET. BENNETT
3.    DET. D. BLANKENSHIP
4.    DEP. L CORWIN
5.    DET.T DALTON
6.    DEP. FORD
7.    CPT. T. FULLER
8.    LT. MIKE GAUDET
9.    DET. A GILREATH
10.    TINA HODNETT
11.    DEP. HOGAN
12.    LT. T JONES
13.    DEP. W. KETCHUM
14.    DET. J KNIFFEN
15.    DEP.K LINK
16.    DEP. M POOLE
17.    DEP. M POWELL
18.    PAULA REID
19.    LAURIE STOVALL
20.    DEP.TRUITT
21.    JW WALDRAN
22.    DET. K WRENN
23.    DET. L YOCHAM
24.    SHERIFF BOB ALFORD

STATE'S ELEVENTH AMENDED WITNESS LIST - PAGE 11

1934

E. **TARRANT COUNTY MEDICAL EXAMINER'S OFFICE**
200 FELIKS GWOZDZ PL.
FORT WORTH, TEXAS 76104
1. DR. S. BAO
2. KELLY BELCHER
3. P. ELRASHID
4. DR. MARC KROUSE
5. MICHAEL MAYER
6. DR. N. PEERWANI
7. M. POLLARD
8. ESTHER GUTIERREZ
9. DR. GARY SISLER
10. T. SWAN
11. MARK THOMPSON
12. CAROLYN VAN WINKLE
13. BILL WALKER
14. DR. LLOYD WHITE
15. ESTHER GUTIERREZ
16. PAT EDDINGS
17. DUSTY PYLE

F. **MANSFIELD POLICE DEPARTMENT**
1200 E. BROAD ST.
MANSFIELD, TEXAS 76063
1. DET. BLANSIT
2. MAX COURTNEY
3. R. DENNING
4. R. HASH
5. M. MALCOLM
6. B. MOORE

G. **BENBROOK POLICE DEPARTMENT**
1. OFF. D BYRD
2. DET. LEE
3. DET. J LEWELLEN
4. LT. D MARTIN
5. OFF. T MILLER
6. C. MONTGOMERY
7. DET. C ROSS
8. OFF. D WALLACE

H. **UNT**
UNT CENTER FOR HUMAN IDENTIFICATION
3500 CAMP BOWIE BLVD.

STATE'S ELEVENTH AMENDED WITNESS LIST - PAGE 12

1935

FORT WORTH, TEXAS 76107

1.    CHRISTINA CAPT
2.    FARAH PLOPPER
3.    JENNIFER URBINA
4.    RUTH R DUNAHOO
5.    ANNETTA MILLER
6.    KELLY NELSON

I. **INTEGRATED FORENSIC LABS**
901 CLINIC DRIVE, STE. D110
EULESS, TEXAS 76039

1.    LANNY EMMANUEL
2.    PAUL SLOCUM

J. **DPS CRIME LABORATORY**
GARLAND, TEXAS

1.    ALLISON HEARD
2.    TRISHA KACER
3.    AMBER MOSS

K. **TARRANT COUNTY COMMUNITY SUPERVISION**

1.    PAT HUSTON
2.    LEANNA JUDD
3.    R. SALINAS
4.    DAVIS CHANDLER

L. **MENTAL HEALTH PROFESSIONALS**

1.    JOHN LASETER, PHD
        11625 CUSTER ROAD #110-242
        FRISCO, TEXAS 76102
2.    DR. J RANDALL PRICE
        PRICE, PROCTOR & ASSOCIATES
        11882 GREENVILLE AVE, SUITE 107
        DALLAS, TEXAS 75243
3    DR.TIMOTHY PROCTOR
        PRICE, PROCTOR & ASSOCIATES
        11882 GREENVILLE AVE, SUITE 107
        DALLAS, TEXAS 75243
4.    DR. ROGER BURNS
        FORT WORTH, TEXAS
5.    DR. PREMA MANJUMATH
        FORT WORTH, TEXAS
6.    DR. DONNA ABBOT
        DALLAS, TEXAS

1936

7.   PENELOPE ROSEN- BUCKNER
8.   DAVID CHANDLER- BUCKNER
9.   DR. CHRISTINA REED-
     PRICE, PROCTOR & ASSOCIATES
     11882 GREENVILLE AVE, SUITE 107
     DALLAS, TEXAS 75243
10.  DR. DAVID SELF
     FLINT, TEXAS

## M. TEXAS DEPARTMENT OF CORRECTIONS

1.   A.P. MERILLAT
2.   BRAD LIVINGSTON
3.   VANESSA JONES
4.   OFF. L QUICK
5.   OFF. JAMES JOHNSON
6.   OFF. W.D. JOCK
7.   OFF. D. KIDD
8.   OFF. M. WILLARD
9.   OFF. HOLMAN
10.  RACHEL E WILLIAMS
11.  OFF. C. SHIRAH
12.  OFF. H. YARBROUGH
13.  OFF. KAREN HENRY
14.  OFF. HAROLD JOHNSON
15.  OFF. A. HOLMAN
16.  E. GARZA
17.  R. GRANT
17.  OFF. PETERS
18.  OFF. L. WOFFORD
19.  OFF. JERRY ROGERS
20.  OFF. WINSTON YOUNG
21.  OFF. E. CLEMMONS
22.  SGT F. GUITIERREZ S.T.G.O.
23.  OFF. BILLY CORNELL
24.  OFF. I. BONNOR
25.  OFF. JUDY HUGHES
26.  OFF. W. CLIFFORD
27.  OFF. B. THOMPSON
28.  OFF. DT CREASON
29.  OFF. M. BARNETT
30.  OFF. C. WILLET
31.  OFF. A GOBER
32.  OFF. CATHERTON
33.  STEVEN ROGERS

STATE'S ELEVENTH AMENDED WITNESS LIST - PAGE 14

1937

34.  OFF. STERLIDO EDWARDS
35.  OFF. G COUCH
36.  OFF. D HOUSE
37.  OFF. M BENNETT
38.  INMATE EROS BROWN
39.  INMATE JOHN O'DELL
40.  INMATE WILLIE JENKINS
41.  INMATE STEVEN MUSKOWITZ
42.  EMIL GARZA
43.  ROBERT GRANT
44.  SGT. F. GUTIERREZ
45.  SHARON DEFFERENT
46.  B. SCROGGINS
47.  J. WELDON
48.  OFF. GIPSON

N. **RECORDS CUSTODIANS**

1.  HAWK SECURITY
    BENBROOK, TEXAS
2.  RENEE CANTON
    CASH AMERICA PAWN SHOPS
    2900 N. MAIN STREET
    FORT WORTH, TEXAS
2.  ANDREA COTTRELL
    CASH AMERICA PAWN SHOPS
    FORT WORTH, TEXAS
4.  JOHN TILLEY
    NORTHSIDE PAWN SHOP
    2609 N. MAIN STREET
    FORT WORTH, TEXAS
5.  RECORDS CUSTODIAN
    A-1 PAWN & JEWELRY
    4201 HEMPHILL ST. 1420 W BERRY
    FORT WORTH, TEXAS
6.  RECORDS CUSTODIAN
    MOTEL 6
    3271 I-35W
    FORT WORTH, TEXAS 76106
7.  RECORDS CUSTODIAN
    FORT WORTH FIRE DEPARTMENT
    FORT WORTH, TEXAS
8.  RECORDS CUSTODIAN
    MEDSTAR
    FORT WORTH, TEXAS

1938

9.  CHAD CARR
    RECORDS CUSTODIAN
    FORT WORTH, TEXAS

O. **TEXAS RANGERS**
1.  SGT. DON STONER
2.  LT. CRAYTON MCGEE

P. **JOHN PETER SMITH**
1.  DR. W. CRAWFORD
2.  LISA TEMPLE, RN.
3.  JUDY THOMAS
4.  DR. RAJESH RAMESH GANDHI
5.  DR.M RICHARDSON
6.  DR. POWELL KINNEY
7.  DR. SHERRY RUTH KONDZIELA
8.  DR. RJ WEDDEN
9.  AMANDA TICE, RN
10. JANA PALMER, RN
11. DR. JOSHUA PRATT
12. DR. VERONICA WILLSON
13. DR. CHARLOTTE WILLIAMS
14. DR. DANIEL ZIEGLER
15. DEBRA STUART, RN
16. ALISA BILBREY, CST
17. ERIC THOMPSON, RN
18. S. GRIS WELL, RN

Q. **METRO PCS**
1.  RANDALL THOMPSON

R. **COLLEYVILLE POLICE DEPARTMENT**
1.  DET. KEVIN WALLING

S. **TDC PAROLE**
1.  CHRISTINA PROPES
2.  TIM LANGFORD
3.  MICHELLE KREGER
4.  BOB PURCELL
    DALLAS, TEXAS

T. **MAGISTRATES/JUDGES**
1.  THE HONORABLE SCOTT WISCH
    JUDGE, 372ND DISTRICT COURT

STATE'S ELEVENTH AMENDED WITNESS LIST - PAGE 16

TARRANT COUNTY, TEXAS
2.    THE HONORABLE EVERETT YOUNG
JUDGE, 297TH DISTRICT COURT
TARRANT COUNTY, TEXAS

## U. TARRANT COUNTY JAIL

1. STACI TURNER- RECORDS CUSTODIAN
2. SGT. BLACK
3. DEP. YANDELL
4. DEP. RG ALMENDAREZ
5. SGT. DUNHAM
6. DEP. J PAULEY
7. DEP. LAMBETH
8. DEP. C BREWER
9. SGT. R REYES
10. DEP. POTTS
11. OFF. R CURTIS
12. OFF. SIFUENTES
13. SGT. T BROWNING
14. DEP. R HART
15. DEP.J LHELM
16. DEP. PIERSON
17. DEP. G PARRAMORE
18. LT. J RUCKER
19. JAMES BLASZAK
20. M. COX
21. E. BOWMAN
22. T. NOEL
23. E. GARZA
24. D. SCOTT
25. R. WARD
26. E. GRACIA
27. R. CASAREN
28. MR CUDE
29. E. HERRIAGE
30. P. BURKETT
31. C. WILLIAMS
32. CPL. RENDER
33. DEP MUHAMMAD
34. B. POCHE
35. DEP DAVIS
36. DEP SALAS
37. W. TAYLOR

STATE'S ELEVENTH AMENDED WITNESS LIST - PAGE 17

38. B. NASH
39. SGT PILKINGTON
40. OFF C MERCHANT
41. DEP I A LOPEZ
42. DEP MJ TAYLOR
43. DEP ESTRADA

V. **JUVENILE PROBATION**
1. PO SALINAS
2. PO WHEAT
3. PO CASTOREN
4. PO B HAMPTON
5. PO CHARLES VERMERSCH
6. PO PAUL BROCK WAY
7. PO GUSTAFSON
8. PO LEANNA JUDD

W. **CHILD PROTECTIVE SERVICES**
1. HEIDI SCHMIDT
2. PENELOPE ROSEN
3. ROBIN WELCH
4. JACKIE CUANZZO
5. LAURA FLORES
6. SANDY MCGUIRE

X. **TEXAS HEALTH SOUTH**
1. DR. STEVEN RUSH

Y. **NEUROLOGIST**
1. DR. JORGE ROMERO

Z. **TARRANT COUNTY**
1. MARK PORTER
2. ERNEST VAN DER LEEST
3. DANNY MCCORMICK

AA. **FORT WORTH MEDSTAR**
1. E. EARL HAUSS, R.N.
2. RUBEN CISNEROS
3. CORY WILLIAMSON

BB. **FORT WORTH FIRE DEPARTMENT**
1. GABRIELA YANES
2. LT. CHRISTOPHER A. OWENS

STATE'S ELEVENTH AMENDED WITNESS LIST - PAGE 18

3.    MICHAEL W. WEATHERWOOD

Respectfully submitted,

MARTIN M. STRAHAN
ASSISTANT DISTRICT ATTORNEY
JOHNSON COUNTY, TEXAS
PHONE (817) 556-6800
FAX (817) 556-6814
204 S. BUFFALO AVE., SUITE 209
CLEBURNE, TEXAS  76031
STATE BAR NO. 00797765

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been sent by hand delivery to Michael Heiskell, Johnson, Vaughn & Heiskell, 5601 Bridge Street, Suite 220, Fort Worth, Texas 76102, fax (817)496-1102 and to Greg Westfall, Attorney at Law, 1400 W. Abram Street, Arlington, Texas 76013, fax (817) 274-9724 on this the 15th day of February, 2012.

MARTIN M. STRAHAN
ASSISTANT DISTRICT

STATE'S ELEVENTH AMENDED WITNESS LIST - PAGE 19

CAUSE NO. F45059

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 413ᵗʰ DISTRICT COURT |
| | § | |
| VS. | § | OF |
| | § | |
| MARK ANTHONY SOLIZ | § | JOHNSON COUNTY, TEXAS |

## STATE'S TWELFTH AMENDED WITNESS LIST

### TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the State of Texas represented by her Criminal District Attorney of Johnson County, Texas, and files this **STATE'S TWELFTH AMENDED WITNESS LIST**. All address and phone numbers not specifically listed below are contained in the State's file that is been made available to the attorney of record for the Defendant.

A. **FORT WORTH POLICE DEPARTMENT**
350 W. BELKNAP ST.
FORT WORTH, TEXAS 76102

1.   OFF. J ABRAMS
2.   OFF. J ALANIZ
3.   OFF. A ALLCON
4.   OFF. ALLEN
5.   OFF ANDREWS
6.   OFF. L AVERY
7.   OFF. R BALLARD
8.   SGT. R. BATES
9.   DET. T BOETCHER
10.  OFF. JG BRADFORD
11.  OFF. D BRUCE
12.  OFF. B BRUMLEY
13.  OFF. BUNNY BUTH
14.  OFF BLUNK
15.  OFF. A CARDWELL
16.  OFF. CAVETT
17.  DET. J CEDILLO
18.  OFF. ERIC CHARLES
19.  OFF. ROBERT COSTA



STATE'S TWELFTH AMENDED WITNESS LIST - PAGE 1

1943

20. OFF. JR COX
21. OFF TJ CRABILL
22. OFF. B DAVIS
23. SGT. DENA
24. OFF BRIANNE DIBLEY
25. OFF. F DISSINGER
26. OFF TC DUNN
27. THOMAS EKIS
28. SGT. ELGIN
29. OFF. MANUEL ELIZARRARAZ
30. OFF JA FARAH
31. OFF. W FIGUEROA
32. OFF JC FRIAS
33. DET. HL GIBBS
34. OFF. J GIPSON
35. OFF. RD GILFOUR
36. OFF. GD GILLIAM
37. OFF. G. GUTIERREZ
38. OFF. D. HALMAGEAN
39. OFF RUSSELL HAYDEN
40. OFF. EV HERNANDEZ
41. OFF. M. HERNANDEZ
42. OFF JG HOLMAN
43. OFF. J HOPPER
44. OFF. S HOWZE
45. OFF. HYDEN
46. OFF. P HYDER
47. OFF SA IKER
48. SGT. B JAMISON
49. OFF. AM JAY
50. OFF.J JOHNSON
51. OFF. C JONES
52. OFF. K JUDD
53. OFF KEADLE
54. OFF SARAH KEENAN
55. OFF. KERRY KIMBALL
56. OFF. LARRY LANCE
57. OFF. G LARA
58. DET. T LAWRENCE
59. OFF JL LAWSON
60. OFF. T LEE
61. SUNDAYE LOPEZ
62. OFF. G MEDRANO
63. OFF. MORRISON

STATE'S TWELFTH AMENDED WITNESS LIST - PAGE 2

64.     JENNIFER NOLLKAMPER
65.     DET. OCHOA
66.     DET. D PAINE
67.     OFF. E PATE
68.     DET. S PHILLIPS
69.     OFF. RJ PRESNEY
70.     OFF. A PRICE
71.     OFF. M RAMIREZ
72.     DET. B RANDOLPH
73.     DET. EB RAYNSFORD
74.     SGT REYNOLDS
75.     DET. JT RHODEN
76.     OFF DK RHONE
77.     OFF. M RIDDLE
78.     OFF. K ROBERTSON
79.     OFF WT ROBINSON
80.     OFF. D LEWIS
81.     H. GONZALEZ-PINEDA- 911 OPERATOR
82.     MANDY RIDDLE-FW POLICE COMMUNICATIONS
83.     OFF. LE ELGIN
84.     OFF. RG BROTHERTON
85.     OFF. EVERETT
86.     OFF. DORSEY
87.     J. SALAZAR
88.     OFF. W. SHOW
89.     OFF JM SIMMS
90.     CAPT. SKIDMORE
91.     OFF. A STAGGS
92.     DET JD STANFORD
93.     DET. JG STEELE
94.     OFF. D SULLIVAN
95.     OFF JD TATE
96.     OFF JC TAPIA
97.     OFF. R THOMPSON
98.     OFF. J THORNTON
99.     OFF. R TOWNS
100.    DET. L TRACY
101.    OFF. D UKLE
102.    DET. J VARNON
103.    OFF. T VOA
104.    OFF. D WASHINGTON
105.    OFF. WEBB
106.    OFF. CHRIS WELLS
107.    OFF. JG WILSON

STATE'S TWELFTH AMENDED WITNESS LIST - PAGE 3

1945

108.    DET CE WISE
109.    OFF. DARRYL W.WOODY
110.    OFF. K MCMURTREY
111.    OFF. SHEERAN
112.    OFF. GOSSETT
113.    OFF. OWINGS
114.    OFF. TIGRETT
115.    OFF. LA SCHERERN
116.    DET. K. SULLIVAN
117.    OFF WT WATKINS
118.    CAMI WIMBERLEY
119.    OFF. TYLER
120.    STEPHANIE POTTER
121.    LAURA MARTINEZ
122.    CAROLINE FRALIA
123.    ARNETTA BELL
124.    ERNEST TAMAYO
125.    OFFICER EIKER
126.    R. CANTU
127.    T.A. CURTIS

B. **CIVILIANS**

1.    SAMEER ABDEL-JABER
      FORT WORTH, TEXAS
2.    SAMMY ABU-LUGHOD
      FORT WORTII, TEXAS
3.    RON ALLEY
      FORT WORTH, TEXAS
4.    NARCISO AMADOR
      FORT WORTH, TEXAS
5.    JAMES EDWARD ANDREWS
      FORT WORTH, TEXAS
6.    JESSICA BALDERAS
      GODLEY, TEXAS
7.    JESUS BELTRAN
      FORT WORTH, TEXAS
8     BRIAN BROWN
      BURLESON, TEXAS
9.    DR. NATALIE BROWN
      FORT WORTH, TEXAS
10.   RODNEY BROWN
      FORT WORTH, TEXAS
11.   MAXIMINO CHAVEZ-SOTO
      FORT WORTH, TEXAS

STATE'S TWELFTH AMENDED WITNESS LIST - PAGE 4

12.   V. CIRCELLI
      FORT WORTH, TEXAS
13.   CHELSEA CIRCELLI
      FORT WORTH, TEXAS
14.   BRENDA COFER
      GODLEY, TEXAS
15.   FELIPE CONTRERAS
      FORT WORTH, TEXAS
16.   SAMUEL COX
      FORT WORTH, TEXAS
17.   CHRISTOPHER DAVILA
      GRANBURY, TEXAS
18.   BEN DAVIS
      GODLEY, TEXAS
19.   KILA DAVIS
      GODLEY, TEXAS
20.   CLAYTON DAVIS
      GODLEY, TEXAS
21.   BARRY DICKEY
      MANSFIELD, TEXAS
22.   KENNY DODGIN
      WATAUGA, TEXAS
23.   ARNOLDO DOMINGUEZ
      FORT WORTH, TEXAS
24.   FERNANDO DOMINGUEZ
      FORT WORTH, TEXAS
25.   MIGUEL DOMINGUEZ
      FORT WORTH, TEXAS
26.   EDDIE DURAN
      FORT WORTH, TEXAS
27.   ELIZABETH ESTRADA
      TARRANT COUNTY JAIL
28.   A. EVANS
      FORT WORTH, TEXAS
29.   CHADLEY FOSTER
      FORT WORTH, TEXAS
30.   MARCY GIRTON
      1300 ROSEWOOD DRIVE
      COLUMBIA, SOUTH CAROLINA
31.   ARTURO GONZALES
      TARRANT COUNTY JAIL
32.   JOSE GONZALES
      FORT WORTH, TEXAS
33.   STEPHANIE GRAY

STATE'S TWELFTH AMENDED WITNESS LIST - PAGE 5

1947

BENBROOK, TEXAS
34. VIVIANA GONZALES
FORT WORTH, TEXAS
36. NABIL HILO
FORT WORTH, TEXAS
37. DONATELLO HINKLE
FORT WORTH, TEXAS
38. JOHN HINKLE
FORT WORTH, TEXAS
39. JL HINOJOSA
FORT WORTH, TEXAS
40. BARNEY B HOLLAND
FORT WORTH, TEXAS
41. LACY HUNSUCKLE
FORT WORTH, TEXAS
42. JEFFEREY T. KNOESEL
FORT WORTH, TEXAS
43. RYAN LAMB
FORT WORTH, TEXAS
44. NH LASEMAN
CLEBURNE, TEXAS
45. LISA LEWIS
FORT WORTH, TEXAS
46. WHITNEY LEWIS
FORT WORTH, TEXAS
47. JAIMES LUCIANO
FORT WORTH, TEXAS
48. JESUS LUNA
FORT WORTH, TEXAS
49. LUIS LUNA
FORT WORTH, TEXAS
50. THERESA MACHADO
FORT WORTH, TEXAS
51. M. MAHARAZAN
FORT WORTH, TEXAS
52. RICKY MALONE
FORT WORTH, TEXAS
53. JERRY MARTIN
BENBROOK, TEXAS
54. DIEGO MARTINEZ
FORT WORTH, TEXAS
55. L. MARTINEZ
FORT WORTH, TEXAS
56. YOLANDA MARTINEZ

STATE'S TWELFTH AMENDED WITNESS LIST - PAGE 6

1948

FORT WORTH, TEXAS
57. DOUGLAS MATA
FORT WORTH, TEXAS
58. ROSIE MEDINA
TARRANT COUNTY JAIL
59. RAMON MORALES
FORT WORTH, TEXAS
60. JUSTIN MORRIS
FORT WORTH, TEXAS
61. OLGA NAREZ
FORT WORTH, TEXAS
62. ANDREAS NAVA
FORT WORTH, TEXAS
63. MATHEW NAVARRO
FORT WORTH
64. WALEED OBAID
FORT WORTH, TEXAS
65. ERICA LEE ODONNELL
FORT WORTH, TEXAS
66. DANIEL ORDONEZ
FORT WORTH, TEXAS
67. MIRIAM OLIVAREZ
DURANT, OK
68. PATRICIA PARSONS
FORT WORTH, TEXAS
69. ROXANE PEREZ
FORT WORTH, TEXAS
70. JUAN RAMIREZ
FORT WORTH, TEXAS
71. MARIA RAMIREZ
FORT WORTH, TEXAS
72. BRIANNA RAMIREZ
FORT WORTH, TEXAS
73. MICHAEL RAMIREZ
FORT WORTH, TEXAS
74. JAQUALINE RAMIREZ
FORT WORTH, TEXAS
75. VERONICA RAMIREZ
FORT WORTH, TEXAS
76. JOSE RAMOS
TARRANT COUNTY JAIL
77. VINCE RANGEL
FORT WORTH, TEXAS
78. MIRTHA REYES

STATE'S TWELFTH AMENDED WITNESS LIST - PAGE 7

1949

DALLAS, TEXAS
79. CATHY RICHARDSON
TARRANT COUNTY JAIL
80. MARIA RIVERA
FORT WORTH, TEXAS
81. RICK RODEN
GODLEY, TEXAS
82. TARA RODEN
GODLEY, TEXAS
83. JUANA SALAS
FORT WORTH, TEXAS
84. ENRIQUE SAMANIEGO
FORT WORTH, TEXAS
85. JESSE SANCHEZ
FORT WORTH, TEXAS
86. ELVIA SILVA
FORT WORTH, TEXAS
87. JOSHUA SOLIS
FORT WORTH, TEXAS
88. JORGE TAMAYO
FORT WORTH, TEXAS
89. JOAN TREW
FORT WORTH, TEXAS
90. JAMIE VESSELL
FORT WORTH, TEXAS
91. LETICIA VILLEGAS
FORT WORTH, TEXAS
92. DARLENE WATSON
BENBROOK, TEXAS
93. WALTER LUTHER WATSON
BENBROOK, TEXAS
94. GLORIA SERRANO
FORT WORTH, TEXAS
95. MIKE ORTEGA
FORT WORTH, TEXAS
96. SANTOS RANGEL
FORT WORTH, TEXAS
97. SAMANTHA ESTRADA
FORT WORTH, TEXAS
98. PAUL CONTRERAS
FORT WORTH, TEXAS
99. EDDIE CONTRERAS
FORT WORTH, TEXAS
100. DONNA SUE SOLIZ

STATE'S TWELFTH AMENDED WITNESS LIST - PAGE 8

FORT WORTH, TEXAS
101. ARNOLD ZAMORA
FORT WORTH, TEXAS
102. JUAN RAMIREZ
FORT WORTH, TEXAS
103. VERONICA GARCIA
FORT WORTH, TEXAS
104. BRIANNA RAMIREZ
FORT WORTH, TEXAS
105. MICHAEL RAMIREZ
FORT WORTH, TEXAS
106. MIRTHA REYES
FORT WORTH, TEXAS
107. TAMMY RAMOS
FORT WORTH, TEXAS
108. MONICA RAMOS
FORT WORTH, TEXAS
109. TERESA RAMOS
FORT WORTH, TEXAS
110. CLAYTON SMITH
GODLEY,TEXAS
101. MARY SMITH
GODLEY, TEXAS
102. SHARON SOLIZ-RANGEL
FORT WORTH, TEXAS
103. BRIAN MATTHEW BROWN
FORT WORTH, TEXAS
104. RILEY HAMPTON DAVIS
GODLEY, TEXAS
105. RHETT HARRISON DAVIS
GODLEY, TEXAS
106. ELLGIO CONTRERRAS
KEENE, TEXAS
107. MARY GALUS
FORT WORTH, TEXAS
108. RUBEN CISNEROS
FORT WORTH, TEXAS
109. KAREN MCMURTREY
FORT WORTH, TEXAS
110. HOWARD MCMURTREY
FORT WORTH, TEXAS
111. GENE TURNEY
FORT WORTH, TEXAS
112. RAUL SAENZ

STATE'S TWELFTH AMENDED WITNESS LIST - PAGE 9

          FORT WORTH, TEXAS
113.   MIKE ORTEGA
          FORT WORTH, TEXAS
114.   CATHERINE POLOMA
          FORT WORTH, TEXAS
115.   ANIL BHANTANA
          FORT WORTH, TEXAS
116.   DANIEL ORDONEZ
          FORT WORTH, TEXAS
117.   ROBERT VARGAS
          FORT WORTH, TEXAS
118.   MR. MEEHAN
          FORT WORTH, TEXAS
119.   BEATRIZ MEEHAN
          FORT WORTH, TEXAS
120.   SYDNEY NAVARRO
          FORT WORTH, TEXAS
121.   MARK PORTER
          FORT WORTH, TEXAS
122.   ERNEST VAN DER LEEST
          FORT WORTH, TEXAS
123.   PAM WALKER BROWN
          FORT WORTH, TEXAS
124.   MICHAEL WOODS
          FORT WORTH, TEXAS
125.   RICHARD WOOD
          FORT WORTH, TEXAS
126.   THERESA MACHADO
          FORT WORTH, TEXAS
127.   CHRIS MALONE
          FORT WORTH, TEXAS

C. **JOHNSON COUNTY LAW ENFORCEMENT CENTER**
CLEBURNE, TEXAS

1.    JOSE ARRIOLA
2.    LT. DAVID BOGGESS
3.    LT. BOUTWELL
4.    ALLEN CARDENA
5.    ARNOLD GRIFFIN
6.    MICHAEL GOOD
7.    SGT. LAURIE GUNTER
8.    SHAWN HERNANDEZ
9.    EUGENE HINDS
10.   WARDEN JANICEK

STATE'S TWELFTH AMENDED WITNESS LIST - PAGE 10

11. CHIEF JOHNSON
12. TRAVIS JONES
13. MAJ. J. KELSEY
14. CHASE KINMAN
15. DANA KINNARD
16. RONNIE MCCOWAN
17. SGT. J. MEEKS
18. SGT. MOLINA
19. STEVEN PARRISH
20. CHRISTIAN PASCHAL
21. SHELLY PRESTON
22. GINGER PROCTOR
23. JASON PUGH
24. TIMOTHY PUTMAN
25. CORRECTIONS OFF. JUSTIN RALEIGH
26. JAMES RENFRO
27. RENEE SAMPLE
28. DAVID TURNER
29. JESSE TURNER
30. WILSON WIMBERLY
31. OFFICER PIERCE

D. **JOHNSON COUNTY SHERIFF'S OFFICE**
1102 E. KILPATRICK
CLEBURNE, TEXAS 76031
1. SGT R BATES
2. DET. BENNETT
3. DET. D. BLANKENSHIP
4. DEP. L CORWIN
5. DET.T DALTON
6. DEP. FORD
7. CPT. T. FULLER
8. LT. MIKE GAUDET
9. DET. A GILREATH
10. TINA HODNETT
11. DEP. HOGAN
12. LT. T JONES
13. DEP. W. KETCHUM
14. DET. J KNIFFEN
15. DEP.K LINK
16. DEP. M POOLE
17. DEP. M POWELL
18. PAULA REID
19. LAURIE STOVALL

STATE'S TWELFTH AMENDED WITNESS LIST - PAGE 11

20. DEP. TRUITT
21. JW WALDRAN
22. DET. K WRENN
23. DET. L YOCHAM
24. SHERIFF BOB ALFORD

E. **TARRANT COUNTY MEDICAL EXAMINER'S OFFICE**
   200 FELIKS GWOZDZ PL.
   FORT WORTH, TEXAS 76104
   1. DR. S. BAO
   2. KELLY BELCHER
   3. P. ELRASHID
   4. DR. MARC KROUSE
   5. MICHAEL MAYER
   6. DR. N. PEERWANI
   7. M. POLLARD
   8. ESTHER GUTIERREZ
   9. DR. GARY SISLER
   10. T. SWAN
   11. MARK THOMPSON
   12. CAROLYN VAN WINKLE
   13. BILL WALKER
   14. DR. LLOYD WHITE
   15. ESTHER GUTIERREZ
   16. PAT EDDINGS
   17. DUSTY PYLE

F. **MANSFIELD POLICE DEPARTMENT**
   1200 E. BROAD ST.
   MANSFIELD, TEXAS 76063
   1. DET. BLANSIT
   2. MAX COURTNEY
   3. R. DENNING
   4. R. HASH
   5. M. MALCOLM
   6. B. MOORE

G. **BENBROOK POLICE DEPARTMENT**
   1. OFF. D BYRD
   2. DET. LEE
   3. DET. J LEWELLEN
   4. LT. D MARTIN

STATE'S TWELFTH AMENDED WITNESS LIST - PAGE 12

1954

5.     OFF. T MILLER
6.     C. MONTGOMERY
7.     DET. C ROSS
8.     OFF. D WALLACE

## H. UNT
UNT CENTER FOR HUMAN IDENTIFICATION
3500 CAMP BOWIE BLVD.
FORT WORTH, TEXAS 76107

1.     CHRISTINA CAPT
2.     FARAH PLOPPER
3.     JENNIFER URBINA
4.     RUTH R DUNAHOO
5.     ANNETTA MILLER
6.     KELLY NELSON

## I. INTEGRATED FORENSIC LABS
901 CLINIC DRIVE, STE. D110
EULESS, TEXAS 76039

1.     LANNY EMMANUEL
2.     PAUL SLOCUM

## J. DPS CRIME LABORATORY
GARLAND, TEXAS

1.     ALLISON HEARD
2.     TRISHA KACER
3.     AMBER MOSS

## K. TARRANT COUNTY COMMUNITY SUPERVISION
1.     PAT HUSTON
2.     LEANNA JUDD
3.     R. SALINAS
4.     DAVIS CHANDLER

## L. MENTAL HEALTH PROFESSIONALS
1.     JOHN LASETER, PHD
       11625 CUSTER ROAD #110-242
       FRISCO, TEXAS 76102
2.     DR. J RANDALL PRICE
       PRICE, PROCTOR & ASSOCIATES
       11882 GREENVILLE AVE, SUITE 107
       DALLAS, TEXAS 75243
3     DR. TIMOTHY PROCTOR
       PRICE, PROCTOR & ASSOCIATES

STATE'S TWELFTH AMENDED WITNESS LIST - PAGE 13

       11882 GREENVILLE AVE, SUITE 107
       DALLAS, TEXAS 75243
4.    DR. ROGER BURNS
       FORT WORTH, TEXAS
5.    DR. PREMA MANJUMATH
       FORT WORTH, TEXAS
6.    DR. DONNA ABBOT
       DALLAS, TEXAS
7.    PENELOPE ROSEN- BUCKNER
8.    DAVID CHANDLER- BUCKNER
9.    DR. CHRISTINA REED-
       PRICE, PROCTOR & ASSOCIATES
       11882 GREENVILLE AVE, SUITE 107
       DALLAS, TEXAS 75243
10.   DR. DAVID SELF
       FLINT, TEXAS

M. **TEXAS DEPARTMENT OF CORRECTIONS**
   1.    A.P. MERILLAT
   2.    BRAD LIVINGSTON
   3.    VANESSA JONES
   4.    OFF. L QUICK
   5.    OFF. JAMES JOHNSON
   6.    OFF. W.D. JOCK
   7.    OFF. D. KIDD
   8.    OFF. M. WILLARD
   9.    OFF. HOLMAN
  10.   RACHEL E WILLIAMS
  11.   OFF. C. SHIRAH
  12.   OFF. H. YARBROUGH
  13.   OFF. KAREN HENRY
  14.   OFF. HAROLD JOHNSON
  15.   OFF. A. HOLMAN
  16.   E. GARZA
  17.   R. GRANT
  17.   OFF. PETERS
  18.   OFF. L. WOFFORD
  19.   OFF. JERRY ROGERS
  20.   OFF. WINSTON YOUNG
  21.   OFF. E. CLEMMONS
  22.   SGT F. GUITIERREZ S.T.G.O.
  23.   OFF. BILLY CORNELL
  24.   OFF. I. BONNOR
  25.   OFF. JUDY HUGHES

<u>STATE'S TWELFTH AMENDED WITNESS LIST - PAGE 14</u>

1956

26.  OFF. W. CLIFFORD
27.  OFF. B. THOMPSON
28.  OFF. DT CREASON
29.  OFF. M. BARNETT
30.  OFF. C. WILLET
31.  OFF. A GOBER
32.  OFF. CATHERTON
33.  STEVEN ROGERS
34.  OFF. STERLIDO EDWARDS
35.  OFF. G COUCH
36.  OFF. D HOUSE
37.  OFF. M BENNETT
38.  INMATE EROS BROWN
39.  INMATE JOHN O'DELL
40.  INMATE WILLIE JENKINS
41.  INMATE STEVEN MUSKOWITZ
42.  EMIL GARZA
43.  ROBERT GRANT
44.  SGT. F. GUTIERREZ
45.  SHARON DEFFERENT
46.  B. SCROGGINS
47.  J. WELDON
48.  OFF. GIPSON

## N. RECORDS CUSTODIANS

1.  HAWK SECURITY
    BENBROOK, TEXAS
2.  RENEE CANTON
    CASH AMERICA PAWN SHOPS
    2900 N. MAIN STREET
    FORT WORTH, TEXAS
2.  ANDREA COTTRELL
    CASH AMERICA PAWN SHOPS
    FORT WORTH, TEXAS
4.  JOHN TILLEY
    NORTHSIDE PAWN SHOP
    2609 N. MAIN STREET
    FORT WORTH, TEXAS
5.  RECORDS CUSTODIAN
    A-I PAWN & JEWELRY
    4201 HEMPHILL ST. 1420 W BERRY
    FORT WORTH, TEXAS
6.  RECORDS CUSTODIAN
    MOTEL 6

STATE'S TWELFTH AMENDED WITNESS LIST - PAGE 15

3271 I-35W
FORT WORTH, TEXAS 76106
7. RECORDS CUSTODIAN
FORT WORTH FIRE DEPARTMENT
FORT WORTH, TEXAS
8. RECORDS CUSTODIAN
MEDSTAR
FORT WORTH, TEXAS
9. CHAD CARR
RECORDS CUSTODIAN
FORT WORTH, TEXAS

O. **TEXAS RANGERS**
1. SGT. DON STONER
2. LT. CRAYTON MCGEE

P. **JOHN PETER SMITH**
1. DR. W. CRAWFORD
2. LISA TEMPLE, RN.
3. JUDY THOMAS
4. DR. RAJESH RAMESH GANDHI
5. DR.M RICHARDSON
6. DR. POWELL KINNEY
7. DR. SHERRY RUTH KONDZIELA
8. DR. RJ WEDDEN
9. AMANDA TICE, RN
10. JANA PALMER, RN
11. DR. JOSHUA PRATT
12. DR. VERONICA WILLSON
13. DR. CHARLOTTE WILLIAMS
14. DR. DANIEL ZIEGLER
15. DEBRA STUART, RN
16. ALISA BILBREY, CST
17. ERIC THOMPSON, RN
18. S. GRISWELL, RN

Q. **METRO PCS**
1. RANDALL THOMPSON

R. **COLLEYVILLE POLICE DEPARTMENT**
1. DET. KEVIN WALLING

S. **TDC PAROLE**
1. CHRISTINA PROPES

**STATE'S TWELFTH AMENDED WITNESS LIST - PAGE 16**

2.    TIM LANGFORD
3.    MICHELLE KREGER
4.    BOB PURCELL
      DALLAS, TEXAS

## T. MAGISTRATES/JUDGES
1.    THE HONORABLE SCOTT WISCH
      JUDGE, 372ND DISTRICT COURT
      TARRANT COUNTY, TEXAS
2.    THE HONORABLE EVERETT YOUNG
      JUDGE, 297TH DISTRICT COURT
      TARRANT COUNTY, TEXAS

## U. TARRANT COUNTY JAIL
1.    STACI TURNER- RECORDS CUSTODIAN
2.    SGT. BLACK
3.    DEP. YANDELL
4.    DEP. RG ALMENDAREZ
5.    SGT. DUNHAM
6.    DEP. J PAULEY
7.    DEP. LAMBETH
8.    DEP. C BREWER
9.    SGT. R REYES
10.    DEP. POTTS
11.    OFF. R CURTIS
12.    OFF. SIFUENTES
13.    SGT. T BROWNING
14.    DEP. R HART
15.    DEP.J LHELM
16.    DEP. PIERSON
17.    DEP. G PARRAMORE
18.    LT. J RUCKER
19.    JAMES BLASZAK
20.    M. COX
21.    E. BOWMAN
22.    T. NOEL
23.    E. GARZA
24.    D. SCOTT
25.    R. WARD
26.    E. GRACIA
27.    R. CASAREN
28.    MR CUDE
29.    E. HERRIAGE

STATE'S TWELFTH AMENDED WITNESS LIST - PAGE 17

1959

30.   P. BURKETT
31.   C. WILLIAMS
32.   CPL. RENDER
33.   DEP MUHAMMAD
34.   B. POCHE
35.   DEP DAVIS
36.   DEP SALAS
37.   W. TAYLOR
38.   B. NASH
39.   SGT PILKINGTON
40.   OFF C MERCHANT
41.   DEP I A LOPEZ
42.   DEP MJ TAYLOR
43.   DEP ESTRADA

V. **JUVENILE PROBATION**
1.   PO SALINAS
2.   PO WHEAT
3.   PO CASTOREN
4.   PO B HAMPTON
5.   PO CHARLES VERMERSCH
6.   PO PAUL BROCK WAY
7.   PO GUSTAFSON
8.   PO LEANNA JUDD

W. **CHILD PROTECTIVE SERVICES**
1.   HEIDI SCHMIDT
2.   PENELOPE ROSEN
3.   ROBIN WELCH
4.   JACKIE CUANZZO
5.   LAURA FLORES
6.   SANDY MCGUIRE

X. **TEXAS HEALTH SOUTH**
1.   DR. STEVEN RUSH

Y. **NEUROLOGIST**
1.   DR. JORGE ROMERO

Z. **TARRANT COUNTY**
1.   MARK PORTER
2.   ERNEST VAN DER LEEST
3.   DANNY MCCORMICK

STATE'S TWELFTH AMENDED WITNESS LIST - PAGE 18

1960

AA. **FORT WORTH MEDSTAR**
    1.     E. EARL HAUSS, R.N.
    2.     RUBEN CISNEROS
    3.     CORY WILLIAMSON

BB. **FORT WORTH FIRE DEPARTMENT**
    1.     GABRIELA YANES
    2.     LT. CHRISTOPHER A. OWENS
    3.     MICHAEL W. WEATHERWOOD

Respectfully submitted,

DALE HANNA
DISTRICT ATTORNEY
JOHNSON COUNTY, TEXAS
PHONE (817) 556-6800
FAX (817) 556-6814
204 S. BUFFALO AVE., SUITE 209
CLEBURNE, TEXAS 76031
STATE BAR NO. 08918500

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been sent by hand delivery to Michael Heiskell, Johnson, Vaughn & Heiskell, 5601 Bridge Street, Suite 220, Fort Worth, Texas 76102, fax (817)496-1102 and to Greg Westfall, Attorney at Law, 1400 W. Abram Street, Arlington, Texas 76013, fax (817) 274-9724 on this the 22ⁿᵈ day of _February_, 2012.

DALE HANNA
DISTRICT ATTORNEY

STATE'S TWELFTH AMENDED WITNESS LIST - PAGE 19

1961

CAUSE NO.  F45059

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 413TH DISTRICT COURT |
| VS. | § | OF |
| MARK ANTHONY SOLIZ | § | JOHNSON COUNTY, TEXAS |

### STATE'S SEVENTH AMENDED NOTICE OF INTENT TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the State of Texas, in the above numbered and styled cause and under TEX.

CODE CRIM. PRO. art. 37.071, 37.07(3)(g),  CRIM. EVID. 404(B) and 609, presents this notice of

the State's intent to introduce evidence of extraneous matters.

## I.  Prior Juvenile Convictions

1.     On or about September 23, 1992, the Defendant committed the offense of Burglary of a Habitation in Tarrant County, Texas.  Said offense was filed in Cause Number 50608-J in the 323rd District Court of Tarrant County, Texas and later plead to the lesser included offense of Theft.

2.     On or about November 17, 1992, the Defendant was adjudicated and found to have engaged in the delinquent conduct of Theft in the 323rd District Court of Tarrant County, Texas in Cause Number 50608-J.

3.     On or about August 9, 1993 the Defendant's probation in Cause Number 50608-J in the 323rd District Court of Tarrant County, Texas was extended for one year until November 25, 1994.  Two other pending cases were dismissed in agreement for Defendant agreeing to have is probation extend for one year.

4.     On or about August 18, 1997, the Defendant Mark Anthony Soliz was placed on probation for the offense of Theft $1500-$20,000 in County Court at Law Number Three in Cause No. 321-70298-97 in Smith County, Texas.

## II.  Unadjudicated Juvenile Criminal Offenses

1.     On or about February 22, 1992, the Defendant committed the offense of Burglary of a Coin-Operated Machine in Tarrant County, Texas.

STATE'S SEVENTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 1

2.      On or about July 16, 1992, the Defendant committed the offense of Attempted Burglary of a Motor Vehicle in Tarrant County, Texas.

3.      On or about October 20, 1992, the Defendant committed the offense of Burglary of a Habitation in Tarrant County, Texas.  Restitution for the stolen property for the burglary was $4,388.72 with the victims being Karen and Howard McMurtrey.  Items stolen in the burglary included a TV, VCR, jewelry and firearms.  The firearms included a handgun, rifle and shotgun.

4.      On or about July 30, 1993, the Defendant committed the offense of Criminal Mischief $200 to $750 in Tarrant County, Texas.

5.      On or about July 31, 1993, the Defendant committed the offense of Criminal Mischief $20 to $200 in Tarrant County, Texas.

6.      On or about January 31, 1994, the Defendant committed the offense of Burglary of a Building in Tarrant County, Texas.

7.      On or about January 1, 1996, the Defendant committed the felony offense of aggravated assault with a deadly weapon by pulling a knife on his parole officer in Collin County, Texas.

### III.  Prior Juvenile Bad Acts

1.      On or about 1987 to 1990, in Tarrant County, Texas, the Defendant set multiple fires including, grass, trash, garbage cans and the upstairs of his aunt's home, Sharon Rangel, between the ages of 5 and 8.

2.      On or about 1991, in Tarrant County, Texas, the Defendant used cocaine, marijuana, alcohol and sniffed paint at the age of 9.

3.      On or about 1991, in Tarrant County, Texas, the Defendant possessed a loaded firearm in the waistband of his pants while drinking a bottle of Seagram's whiskey at the age of 9.

4.      On or about August 31, 1992, the Defendant was admitted voluntarily by his mother, Donna Soliz and treated at Tarrant County Psychiatric Center Children's Unit and Trinity Springs Pavilion in John Peter Smith Hospital for stealing cars, dealing and selling drugs, fighting, drinking heavily, sniffing paint, smoking marijuana, and carrying guns in Tarrant County, Texas.

5.      On or about November 18, 1992, while at the Tarrant County Juvenile Detention Center, the Defendant was put in isolation for hitting a peer in the face with a towel in Tarrant County, Texas.

6.      On or about August 2, 1993, in Tarrant County, Texas, the Defendant stole cigarettes from multiple convenience stores.

STATE'S SEVENTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 2

7.     On or about August 2, 1993, in Tarrant County, Texas, the Defendant was ordered detained in the Juvenile Court of Tarrant County, Texas for engaging in delinquent conduct/conduct indicating a need for supervision.

8.     On or about August 4, 1993, in the Tarrant County Juvenile Detention Center, the Defendant was observed using profanity and pushing a table during breakfast in Tarrant County, Texas.

9.     On or about August 9, 1993, in Tarrant County, Texas, the Defendant was ordered detained in Cause No. 50608-J in the Juvenile Court of Tarrant County, Texas for engaging in delinquent conduct/conduct indicating a need for supervision.

10.    Prior to August 10, 1993, the Defendant was truant from school on multiple occasions in Tarrant County, Texas.

11.    On or about August 10, 1993, in Tarrant County, Texas, as part of his Tarrant County Juvenile Probation intake, the Defendant was given a psychological/psychiatric exam with a DSM III diagnosis of: Axis I Conduct Disorder, Cultural Familial Delinquency, Substance Abuse by History, Attention Deficit Disorder, Residual, Axis II mixed developmental disabilities, reading, spelling, and arithmetic. These findings were determined to be chronic and severe. Defendant was prescribed Ritalin.

12.    On or about August 10, 1993, in Tarrant County, Texas, as part of his Tarrant County Juvenile Probation intake, the Defendant stated that he hated his aunt, Sharon Rangel, and his principal because they confront his negative behavior.

13.    On or about August 10, 1993, in Tarrant County, Texas, as part of his Tarrant County Juvenile Probation intake, the Defendant admitted that he had committed the offense of Burglary of a Habitation and stealing a TV, VCR, jewelry and guns.

14.    On or about August 10, 1993, in Tarrant County, Texas, as part of his Tarrant County Juvenile Probation intake, the Defendant admitted that he had committed the offense of Criminal Mischief by shooting a bb gun at passing cars and a building. Defendant stated he committed this offense because he was bored.

15.    On or about August 10, 1993, in Tarrant County, Texas, as part of his Tarrant County Juvenile Probation intake, the Defendant admitted that he committed the offense of Burglary of a Building by breaking into classrooms as school and ransacking the rooms and stealing walkie-talkies and personal items from the teacher.

16.    On or about August 10, 1993, in Tarrant County, Texas, as part of his Tarrant County Juvenile Probation intake, the Defendant admitted that he was a member of the street gangs 4 X 3 Crips and the Latin Kings.

STATE'S SEVENTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 3

17.     On or about October 1993, in Tarrant County, Texas, the Defendant was seen at the Santa Fe Counseling Day Program for behavioral problems but did not follow directions or attend groups resulting in a failure of treatment.

18.     On or about November 17, 1993, in Tarrant County, Texas, the Defendant was ordered detained in Cause No. 50608-J in the Juvenile Court of Tarrant County, Texas for engaging in delinquent conduct/conduct indicating a need for supervision.

19.     On or about January 31, 1994, at the Tarrant County Juvenile Detention Center, Officer B. Harper observed an "S" tattoo on Defendant's left thumb in Tarrant County, Texas.

20.     On or about February 2, 1994, the Defendant was put in isolation at the Tarrant County Juvenile Detention Center for putting a piece of paper in his door lock in Tarrant County, Texas.

21.     On or about February 9, 1994, in Tarrant County, Texas, the Defendant was court ordered to placement at Buckner's Children's Home in Dallas, Texas for counseling and treatment for his delinquent behaviors and drug abuse education.

22.     On or about March 16, 1994, in Dallas County, Texas, the Defendant made gang signs while at church and pretended to sell crack cocaine while at school.  The Defendant admitted that he was selling road salt and saying it was crack cocaine.

23.     On or about March 19, 1994, the Defendant admitted to David Chandler to acting out sexually with other male students at Buckner's Children's Home in Dallas County, Texas.

24.     On or about April 4, 1994, the Defendant broke a window out of anger at Buckner's Children's Home in Dallas County, Texas.

25.     On or about April 4, 1994, the Defendant stole $10 from his teacher's purse at Edna Rowe Elementary School in Dallas County, Texas.

26.     On or about May 25, 1994, the Defendant was observed making gang signs at a meal at Buckner's Children's Home in Dallas County, Texas.

27.     On June 24, 1994, in Dallas County, Texas, the Defendant was put on shut-down and most of his privileges were taken away for constantly fighting authority at Buckner Children's Home.

28.     On or about August 29, 1994, in Dallas County, Texas, the Defendant committed the offense of Aggravated Sexual Assault of a Child by penetrating the anus and mouth of two boys while at Buckner Children's Home.  Defendant admitted to these offenses to David Chandler.

STATE'S SEVENTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 4

29.     On or about September 15, 1994, in Dallas County, Texas, the Defendant ran away from Buckner Children's Home because he was told by the staff to do chores.

30.     On or about September 19, 1994, the Defendant was given five days of detention at the Edna Rowe Elementary School for fighting and defying the Principle in Dallas County, Texas.

31.     On or about October 17, 1994, the Defendant assault a peer at Buckner's Children's Home in Dallas County, Texas by pushing the peer to the floor causing him to hit his head.

32.     On or about October 17, 1995, the Defendant admitted to Phillip Brunkmeyer at Buckner's Children's Home in Dallas County, Texas that he had lied on October 16, 1995 when he said he was suicidal.

33.     On or about November 26, 1994, the Defendant admitted to smoking marijuana while on Thanksgiving pass from the Buckner's Children's home in Dallas County, Texas.

34.     On or about November 26, 1994, the Defendant was known to associate with a school gang in Dallas County, Texas known as "The Crew" at Edna Rowe Elementary School.

35.     On or about December 6, 1994, the Defendant's poor grades while attending Edna Rowe Elementary School in Dallas County, Texas were attributed by the teacher to his failure to pay attention, sleeping in class and refusal to do his work.

36.     On or about December 7, 1994, the Defendant was involved in a fight while attending Edna Rowe Elementary School in Dallas County, Texas and was suspended from school for two days.

37.     On or about December 12, 1994, the Defendant was involved in a fight while attending Edna Rowe Elementary School in Dallas County, Texas.

38.     On or about December, 1994, the Defendant's report card was withheld from him while attending Edna Rowe Elementary School in Dallas County, Texas for owing money ofr a school-sponsored selling of Christmas candy. The child care staff at Buckner's Children's Home collected money from Defendant's weekly allowance to pay the money back.

39.     On or about January 7, 1995, the Defendant was physically restrained by a staff member at Buckner's Children's Home for physical aggression in Dallas County, Texas.

40.     On or about January 7, 1995, the Defendant assaulted a peer at Buckner's Children's Home in Dallas County, Texas by hitting the peer in the head with Defendant's shoe.

41.     On or about January 7, 1995, the Defendant assaulted a staff member, Dwight Hayes, at Buckner's Children's Home in Dallas County, Texas by hitting Dwight Hayes in the head with Defendant's shoe. Defendant had to be physically restrained.

STATE'S SEVENTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 5

42.     On or about January 26, 1995, in Dallas County, Texas, the Defendant admitted to stealing a jar of coins while living at Buckner Children's Home.

43.     On or about February 28, 1995, the Defendant committed the offense of Indecency with a Child by grabbing a female student's crotch while attending Edna Rowe Elementary School in Dallas County, Texas.   Defendant also grabbed the female student's rear end.   This was witnessed by a teacher.   Defendant claimed the teacher was lying about the incident.

44.     On or about March 6, 1995, the Defendant assaulted a peer at Buckner's Children's Home in Dallas County, Texas by hitting the peer in the head with Defendant's fists.

45.     On or about March 23, 1995, the Defendant assaulted staff member Cedric Darden at Buckner's Children's Home and had to be physically restrained in Dallas County, Texas.

46.     On or about March 23, 1995, the Defendant assaulted a peer at Buckner's Children's Home in Dallas County, Texas by hitting the peer in the head with Defendant's fists.

47.     On or about March 27, 1995, the Defendant had to be physically restrained while trying to run away from Buckner's Children's School in Dallas County, Texas.

48.     On or about March 27, 1995, the Defendant attempted to pierce his own ear in violation of rules at Buckner's Children's Home in Dallas County, Texas.

49.     On or about March 28, 1995, the Defendant threw a shoe in his room and broke a window at Buckner's Children's Home and had to be physically restrained in Dallas County, Texas.

50.     On or about March 30, 1995, in Dallas County, Texas, the Defendant admitted to his probation officer that he had previously lied about being suicidal and trying to commit suicide by overdosing on Prozac pills while living at Buckner's Children's Home.

51.     On or about April 18, 1995, the Defendant assaulted staff member Cedric Darden at Buckner's Children's Home and had to be physically restrained in Dallas County, Texas.

52.     On or about April 19, 1995, the Defendant assaulted staff member Sorenson at Buckner's Children's Home and had to be physically restrained in Dallas County, Texas.

53.     On or about April 20, 1995, the Defendant attempted to assault a staff member at Buckner's Children's Home in Dallas County, Texas.   Defendant used profanity toward the staff member and had to be physically restrained.

STATE'S SEVENTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 6

54.    On or about April 20, 1995, the Defendant became physically aggressive toward Wanda Jimenez and was destroying toys and kicking plants in Dallas County, Texas. Defendant had to be physically restrained.

55.    On or about April 20, 1995, the Defendant was asked to leave class for not following directions and attempted to escape from staff members at Buckner's Children's School in Dallas County, Texas. Defendant had to be physically restrained.

56.    On or about April 20, 1995, the Defendant was relocated to the Buckner's Children's Home Residential Treatment Center due to his need for a more restrictive environment in Dallas County, Texas.

57.    On or about May 12, 1995, in Dallas County, Texas, the Defendant assaulted his juvenile roommate by choking him until he lost consciousness while living at Buckner Children's Home.

58.    On or about May 20, 1995, the Defendant attempted to assault a female staff member, Wanda Jimenez, at Buckner's Children's Home by trying to kick her in Dallas County, Texas. Defendant had to be physically restrained.

59.    On or about July 31, 1995, in Dallas County, Texas, the Defendant stopped up a toilet by shooting rubber bands down it while living at Buckner Children's Home.

60.    On or about August 21, 1995, in Dallas County, Texas, the Defendant committed the offense of Aggravated Sexual Assault of a Child by anally penetrating his two 10-12 year old roommates with his male sexual organ while living at Buckner Children's Home.

61.    On or about November 9, 1995, in Dallas County, Texas, the Defendant committed the offenses of Aggravated Sexual Assault of a Child, and Indecency with a Child while at Buckner Children's Home in Dallas County, Texas. The victim was approximately 8 years of age at the time of the offense.

62.    On or about January 19, 1999, in Johnson County, Texas, the Defendant brought a knife to school while attending Keene High School and was sent to the ABLE program.

### IV. Prior Adult Convictions

1.    On or about July 30, 1999, the Defendant Mark Anthony Soliz pled guilty and was convicted of Unauthorized Use of Vehicle in Cause No. F33475, 18th District Court of Johnson County, Texas and was placed on 5 years probation.

2.    On or about February 11, 2000, the Defendant Mark Anthony Soliz was placed on deferred adjudication for the offense of Theft $1,500 to $20,000 in the 396th District Court of Tarrant County, Texas in Cause No. 0755170D.

STATE'S SEVENTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 7

3.      On or about May 31, 2000, the Defendant Mark Anthony Soliz was finally convicted of Theft $1500-$20000 in the 396th District Court of Tarrant County, Texas in Cause No. 0755170D after his probation was revoked for committing a new offense of Theft $1500-$20000 in Tarrant County, Texas.

4.      On or about May 31, 2000, the Defendant Mark Anthony Soliz was convicted of Theft $1500-$20000 in the 396th District Court of Tarrant County, Texas in Cause No. 0765674D.

5.      On or about September 18, 2001, the probated sentence in Cause No. F33475 in the 18th District Court of Johnson County, Texas was revoked and Mark Anthony Soliz was sentenced to 2 years state jail subject to shock for failure to report, failure to pay fees and failure to complete community service.

6.      On or about March 30, 2004, the Defendant Mark Anthony Soliz was convicted of Evading Arrest or Detention using Vehicle and sentenced to One Year in State jail In the Criminal District Court Number Two of Tarrant County, Texas in Cause No. 089411A.

7.      On or about March 30, 2004, the Defendant Mark Anthony Soliz was convicted of Theft <$1500 with Two Prior Convictions and sentenced to One Year in State Jail in the Criminal District Court Number Two of Tarrant County, Texas in Cause No. 0894107A.

8.      On or about April 1, 2004, the Defendant Mark Anthony Soliz was convicted of Burglary of a Vehicle in Cause No. 0893970 in the County Criminal Court Number Ten of Tarrant County, Texas.

9.      On or about November 19, 2004, the Defendant Mark Anthony Soliz was convicted of Theft $50-$500 in Cause No. 0955841 in the County Criminal Court Number Four of Tarrant County, Texas.

10.     On or about July 29, 2005, the Defendant Mark Anthony Soliz was convicted of Criminal Trespass in Cause No. 0976064W in 396th District Court of Tarrant County, Texas.

11.     On or about August 3, 2005, the Defendant Mark Anthony Soliz was convicted of Unlawful Restraint in Cause No. 0986121 in the County Criminal Court Number Nine of Tarrant County, Texas.

12.     On or about November 9, 2005, the Defendant Mark Anthony Soliz was convicted of Theft $1500-$20000 in Cause No. 0991801D in the Criminal District Number Four of Tarrant County, Texas.

13.     On or about March 15, 2006, the Defendant Mark Anthony Soliz was convicted of Theft $1500-$20000 in Cause No. 1012291W in the Criminal District Court Number Four of Tarrant County, Texas.

STATE'S SEVENTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 8

14.     On or about December 14, 2006, the Defendant Mark Anthony Soliz was convicted of Theft $1500-$20000 in Cause No. 1047319W in the 213th District Court of Tarrant County, Texas. The defendant admitted having done it "Just for the hell of it."

15.     On or about April 7, 2010, the Defendant Mark Anthony Soliz was convicted of Possession of Prohibited Weapon in Cause No. 1195009 in Tarrant County, Texas.

### V.  Unadjudicated Capital Murder

1.     On or about June 29, 2010, the Defendant Mark Anthony Soliz did commit the offense of Capital Murder by intentionally causing the death of Ruben Martinez by shooting him with a firearm in the course of committing or attempting to commit the offense of robbery.

### VI.  Unadjudicated Adult Criminal Offenses

1.     On or about June 22, 2010, the Defendant Mark Anthony Soliz did commit the offenses of Burglary of a Habitation and Theft in Tarrant County, Texas. The victim was Vincent Circelli.

2.     On or about June 24, 2010, the Defendant Mark Anthony Soliz did commit the offense of Robbery using a firearm in Tarrant County, Texas. The victim was Justin Morris. The Defendant admitted to this offense in a written and recorded statement in Tarrant County, Texas, to Det. T. Boetcher on or about June 30, 2010. The Defendant took money and a debit card from the victim.

3.     On or about June 24, 2010, the Defendant Mark Anthony Soliz did commit the offense of Aggravated Assault by shooting Luis Luna with a firearm in Tarrant County, Texas. The Defendant admitted to this offense in a written and recorded statement in Tarrant County, Texas, to Det. T. Boetcher on or about June 30, 2010.

4.     On or about June 24, 2010, the Defendant Mark Anthony Soliz did commit the offense of Robbery while using a firearm in Tarrant County, Texas. The victim was Felipe Contreras.

5.     On or about June 24, 2010, the Defendant Mark Anthony Soliz did commit the offense of Robbery while using a firearm in Tarrant County, Texas. The victim was Sammy Abu-Lughod. The Defendant took money, a cell phone and a green 2005 Dodge Stratus (Texas license plate #GB006). The Defendant admitted to this offense in a written and recorded statement in Tarrant County, Texas, to Det. T. Boetcher on or about June 30, 2010.

6.     On or about June 28, 2010, the Defendant Mark Anthony Soliz did commit the offense of robbery and did use a firearm in Tarrant County, Texas. The victims were Jorge Tamayo and Maximino Chavez-Soto. The Defendant admitted to this offense in a written and recorded statement in Tarrant County, Texas, to Det. T. Boetcher on or about June 30, 2010.

1970

7.    On or about June 29, 2010, the Defendant Mark Anthony Soliz did possess in Tarrant County, Texas, a Hi-Point 9mm handgun with serial #P1400875 which was part of the property owned by Vincent Circelli and taken from his house on June 22, 2010.

8.    On or about June 29, 2010, the Defendant Mark Anthony Soliz did shoot a firearm at Juan Ramirez in Tarrant County, Texas.

9.    On or about June 29, 2010, the Defendant Mark Anthony Soliz did shoot a firearm and cause bodily injury to Enrique Samaniego in Tarrant County, Texas.

10.    On or about June 29, 2010, the Defendant Mark Anthony Soliz did shoot a firearm at Kenny Dodgin in Tarrant County, Texas.

11.    On or about March 21, 2010, in Tarrant County, Texas, the Defendant Mark Anthony Soliz committed the felony offense of Burglary of a Habitation or Building with the address being 11100 Hawkins Home Blvd., Benbrook, Texas.

12.    On or about June 29, 2010, in Tarrant County, Texas, the Defendant Mark Anthony Soliz committed the felony offense of Burglary of a Habitation with the address being 9944 Wandering Way, Benbrook, Texas with the victims being Walter Luther Watson and Darlene Watson.

13.    On or about June 29, 2010, in Tarrant County, Texas, the Defendant Mark Anthony Soliz committed the felony offense of Burglary of a Habitation or Building with the address being 11100 Hawkins Home Blvd., Benbrook, Texas with the victim being Marcy Girton.

14.    On or about June 29, 2010, in Tarrant County, Texas, the Defendant Mark Anthony Soliz committed the felony offense of Burglary of a Habitation with Joan Trew as the victim in Benbrook, Texas.

15.    On or about June 29, 2010, in Tarrant County, Texas, the Defendant Mark Anthony Soliz asked Arturo Gonzales if he could hide the stolen Dodge Stratus from Sammy Abu-Lughod and the stolen Toyota Tundra from Nancy Weatherly on the side of Arturo's mother's house in an effort to conceal them thereby tampering with evidence.

16.    On or about June 29, 2010, in Tarrant County, Texas, the Defendant Mark Anthony Soliz pawned/sold items taken from the home of Nancy Weatherly at multiple pawn shops in Tarrant County, Texas.

17.    On or about June 24 through June 29, 2010, in Tarrant County, Texas, the Defendant Mark Anthony Soliz sold, pawned, and traded multiple items from the unadjudicated criminal offenses listed above.

1971

18.    On or about June 29, 2010, the Defendant Mark Anthony Soliz did evade arrest using a vehicle in Tarrant County, Texas.  The Defendant was arrested after attempting to flee in a stolen 2005 Dodge Stratus (Texas license plate #GB006) belonging to Sammy Abu-Lughod.  He was in possession of a stolen 9 mm firearm belonging to Vincent Circelli.  The Defendant did also possess methamphetamine.

19.    On or about June 29, 2010, in Tarrant County, Texas, the Defendant Mark Anthony Soliz was placed under arrest for Evading Arrest using a vehicle, Theft $1500-$20000, Unlawfully Carrying a Weapon and Possession of a Controlled Substance.

20.    On or about June, 2010, in Tarrant County, Texas, the Defendant Mark Anthony Soliz committed the felony offense of Aggravated Assault with a Deadly Weapon with the victim being Michael Woods.

21.    On or about June 29, 2010, in Tarrant County, Texas, the Defendant Mark Anthony Soliz threatened to kill Jamie Vessels.

22.    On or about June 19, 2003, in Tarrant County, Texas, the Defendant Mark Anthony Soliz committed multiple burglaries of motor vehicles and gave a confession to the police .

### VII.  Unadjudicated Adult Bad Acts

1.    On or about May 1, 2010 to June 29, 2010, the Defendant Mark Anthony Soliz did possess and sniff glue in Tarrant and Johnson County, Texas on multiple occasions.

2.    On or about dates unknown, in multiple counties in Texas, the Defendant Mark Anthony Soliz gained, used, and was known by the street/gang name of "Kilo".

3.    On or about January 15, 2008 to the present, the Defendant Mark Anthony Soliz was/is associated with the prison gang known as the Texas Syndicate.

4.    On or about May 1, 2010 to June 29, 2010, the Defendant Mark Anthony Soliz did possess and use methamphetamine in Tarrant and Johnson County, Texas on multiple occasions.

5.    On or about June 29, 2010, in Tarrant County, Texas, the Defendant Mark Anthony Soliz had sexual relations with Elizabeth Estrada.

6.    On or about June 29, 2010, in Tarrant County, Texas, the Defendant Mark Anthony Soliz traded stolen merchandise from the home and vehicle of Nancy Weatherly for illicit drugs.

7.    On or about June 29, 2010, in Tarrant County, Texas, the Defendant Mark Anthony Soliz asked Arturo Gonzales for more 9mm ammunition and to take him to get more 9mm ammunition.

1972

## VIII.  TDC Disciplinary Violations

1.      On or about May 27, 2004, in Walker County, Texas, the Defendant Mark Anthony Soliz was confirmed by the TDC Security Threat Group to be a member of security threat group/prison gang the Texas Syndicate using a gang related tattoo and prison "kites" or letters.  Defendant has a "T" and an "S" tattooed onto his fingers.  Defendant admitted that he was "picked up" by his uncle when he was 16.  This information is contained in the business records from TDC filed and forwarded to defense counsel on September 21, 2011.

2.      That State hereby gives notice of all information and bad acts or crimes contained in the business records from TDC filed and forwarded to defense counsel on September 21, 2011.

3.      While incarcerated in the Hutchins State Jail Facility, Defendant was classified as a confirmed member of the Texas Syndicate, which is deemed a Security Threat Group by the Texas Department of Criminal Justice.

4.      On or about March 7, 2007, while incarcerated at TDC, the Defendant was designated at the highest possible risk level under the TDC classification for inmates.

5.      On or about October 1st, 2007, while incarcerated in the Texas Department of Criminal Justice, Defendant did engage in sexual misconduct by exposing his penis with the intent to gratify his sexual desire by masturbating his penis through the shower slot.  When questioned regarding these events, Defendant stated "fuck that bitch." This act was also in violation of prison rules.

6.      On or about September 29th, 2008, while incarcerated in the Texas Department of Criminal Justice, Defendant intentionally and knowingly destroyed property belonging to the State of Texas, specifically: two sheets, two jumpers and one towel.  This act was also in violation of prison rules.

7.      On or about March 2nd, 2008, while incarcerated in the Texas Department of Criminal Justice, Defendant did intentionally or knowingly assault an officer without a weapon by kicking at Officer Johnson as he was attempting to close a food slot.  Defendant further stated to Officer Johnson that he would take care of him with his "bitchy ass" and called him a "whore." This act was also in violation of prison rules.

8.      On or about May 26th, 2008, while incarcerated in the Texas Department of Criminal Justice, Defendant intentionally or knowingly caused bodily injury to Eric Brown, by throwing hot water in his face.  When questioned regarding the events of May 26th, 2008, Defendant stated that he wanted to kill Inmate Brown.  This act was also in violation of prison rules.

9.      On or about December 9th, 2008, while incarcerated in the Texas Department of Criminal Justice, Defendant engaged in sexual misconduct by exposing his penis with the intent to gratify his sexual desire and masturbated in public.  This act was also in violation of prison rules.

1973

10.     On or about December 11th, 2008, while incarcerated in the Texas Department of Criminal Justice, Defendant engaged in sexual misconduct by exposing his penis with the intent to gratify his sexual desire and masturbated in public. When ordered to stop, he continued to masturbate. In so doing, he disobeyed a direct order. This act was also in violation of prison rules.

11.     On or about January 2nd, 2009, while incarcerated in the Texas Department of Criminal Justice, Defendant caused a disruption while in the shower when he refused to return a hand restraint; He disobeyed the order of M. Willard and violated prison rules.

12.     On or about April 28th, 2009, while incarcerated in the Texas Department of Criminal Justice, Defendant engaged in sexual misconduct when he exposed his penis to Officer Holman with the intent to gratify his sexual desire and masturbated in public. This act was also in violation of prison rules.

13.     On or about June 5th, 2009, while incarcerated in the Texas Department of Criminal Justice, Defendant engaged in sexual misconduct when he exposed his penis with the intent to gratify his sexual desire and masturbated in public. This act was also in violation of prison rules.

14.     On or about June 22, 2000, while incarcerated in the Texas Department of Criminal Justice, admitted being a member of the church of Satanism.

15.     On or about June 22, 2000, while incarcerated in the Texas Department of Criminal Justice, Defendant admitted that he engaged in ritualistic activities in the Satanism night church.

16.     On or about July 9th, 2009, while incarcerated in the Texas Department of Criminal Justice, officer Shirah was in the process of removing handcuffs from Defendant. After one cuff was removed, Defendant "jacked it from the officer saying that he wanted rank." When reinforcements arrived, Defendant had damaged the handcuffs to the point that they would no longer function properly. This act was also in violation of prison rules.

17.     On or about July 10, 2000, while incarcerated in the Texas Department of Criminal Justice, Defendant was found to be in possession of tattooing paraphernalia. This act was also in violation of prison rules.

18.     On or about July 20, 2000, while incarcerated in the Texas Department of Criminal Justice, Defendant intentionally or knowingly caused bodily injury to Steven Muskowitz by striking him with his hand. This act was also in violation of prison rules.

19.     On or about July 21st, 2000, while incarcerated in the Texas Department of Criminal Justice, Defendant was found in an unauthorized area in violation of Code 27. This act was also in violation of prison rules.

STATE'S SEVENTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 13

20.    On or about August 25, 2000, while incarcerated in the Texas Department of Criminal Justice, Defendant intentionally or knowingly caused bodily injury to Dan Hill by striking him with his hand. This act was also in violation of prison rules.

21.    On or about August 27, 2000, while incarcerated in the Texas Department of Criminal Justice, Defendant intentionally or knowingly caused bodily injury to an Officer/ Guard Creason by causing a gate to strike the Officer/Guard. This act was also in violation of prison rules.

22.    On or about October 3rd, 2000, while incarcerated in the Texas Department of Criminal Justice, Defendant was found in an unauthorized area in violation of Code 27-A. This act was also in violation of prison rules.

23.    On or about October 3rd, 2000, while attending class at the Texas Department of Criminal Justice, Defendant violated school rules by sleeping in class.

24.    On or about October 11th, 2000, while attending class at the Texas Department of Criminal Justice, Defendant violated school rules by sleeping in class. This act was also in violation of prison rules.

25.    On or about October 12th, 2000, while attending class at the Texas Department of Criminal Justice, Defendant violated school rules by sleeping in class, arguing with the teacher and was subsequently removed from class. This act was also in violation of prison rules.

26.    On or about October 22, 2000, while incarcerated in the Texas Department of Criminal Justice, Defendant did intentionally or knowingly cause bodily injury to John O'Dell by striking him with a shoe. This act was also in violation of prison rules.

27.    On or about October 16th, 2000, while attending class at the Texas Department of Criminal Justice, Defendant violated school rules by sleeping in class. This act was also in violation of prison rules.

28.    On or about November 21, 2000, while incarcerated in the Texas Department of Criminal Justice, Defendant did intentionally or knowingly cause bodily injury to Willie Jenkins, by striking him with his hand. This act was also in violation of prison rules.

## IX.  Tarrant County Jail Disciplinary Violations

1.    The Defendant has multiple tattoos – including a marijuana leaf, the word "Kilo," and multiple gang related tattoos, including but not limited to T over S to indicated membership in the prison gang the Texas Syndicate.

STATE'S SEVENTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 14

2.     On or about 6/26/03, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted being an active member of the Texas Syndicate, a prison gang to Deputy C. Brewer, TCSO;

3.     On or about 6/26/03, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted drinking a 6 pack of beer once a weekend since the age of 15 to Deputy C. Brewer, TCSO;

4.     On or about 6/26/03, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted using drugs once a week for an undisclosed period of time to Deputy C. Brewer, TCSO;

5.     On or about 6/26/03, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to being a member of a street gang for 3 years and that his "street name" was "Kilo," to Deputy C. Brewer, TCSO;

6.     On or about 6/26/03, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted being arrested for Unauthorized Use of a Motor Vehicle to Deputy Brewer, TCSO;

7.     On or about 6/26/03, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted serving prison time from 2000-2003 for Unauthorized Use of a Motor Vehicle and Assaulting a Family Member to Deputy C. Brewer, TCSO;

8.     On or about 6/26/03, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted having been handled for burglary of a vehicle, theft 1500 with two priors, and evading arrest to  Deputy C. Brewer, TCSO;

9.     On or about 7/05/03, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant refused to rack down, in violation of jail regulations;

10.    On or about 7/16/03, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant refused to rack down, in violation of jail regulations;

11.    On or about 12/04/03, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant intimidated and bullied fellow inmates, in violation of jail regulations;

STATE'S SEVENTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 15

12.     On or about 12/20/03, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant repeatedly stole from fellow inmates, including inmates: Cecil McBraum, Richard Grayson, Anselmo Castro, in violation of jail regulations;

13.     On or about 1/02/04, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant caused problems by threatening all of the anglo inmates housed in the same pod because of his gang affiliation with the Texas Syndicate, in violation of jail regulations;

14.     On or about 1/03/04, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant refused to rack down, in violation of jail regulations;

15.     On or about 2/25/04, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant made veiled threats to inmate Glenn Stark, because of Soliz's gang affiliation, in violation of jail regulations;

16.     On or about 3/01/04, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant was involved in a fight with two other inmates, in violation of jail regulations;

17.     On or about 5/7/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant had to be rehoused due to causing problems with fellow Hispanic inmates due to his gang membership;

18.     On or about 5/7/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant was overheard saying that he "wanted to kill someone." He was also found to be organizing a gang fight, and was rehoused as a result;

19.     On or about 7/19/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant disobeyed an order from Deputy P. Burkett and resisted Deputy Burkett and Lt. Herriage's efforts to gain Soliz's compliance, in violation of jail regulations;

20.     On or about 6/05/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant threatened to "whip fellow Inmate Arevalo's ass." The defendant was rehoused as a result;

21.     On or about 9/2/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the Defendant admitted to Deputy Hart that he had been a member of Texas Syndicate since 1999 and that he joined while in TCSO custody;

STATE'S SEVENTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 16

22.    On or about 9/02/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to Deputy R. Hart that he drank a quart-quart ½ of alcohol weekly;

23.    On or about 9/02/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to Deputy R. Hart that he used cocaine and marijuana daily for an undisclosed period of time;

24.    On or about 9/02/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to Deputy R. Hart that he was arrested out of Dallas in 1997 for Unauthorized Use of a Motor Vehicle as a juvenile;

25.    On or about 9/02/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to Deputy R. Hart that he had been incarcerated 5 times before 9/02/05;

26.    On or about 9/02/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to Deputy R. Hart that he had been incarcerated in state jail for Unauthorized Use of a Motor Vehicle;

27.    On or about 9/02/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to Deputy R. Hart that he was a member of the Texas Syndicate;

28.    On or about 5/4/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to Deputy Helm that he was a member of Texas Syndicate;

29.    On or about 5/04/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to Deputy Helm that he consumed 4-5 beers twice a week since the age of 13;

30.    On or about 5/04/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to Deputy Helm that he admitted using cocaine, marijuana, and ice for an undisclosed period of time;

31.    On or about 5/04/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to Deputy Helm that he was first arrested as a juvenile in Fort Worth in 1991;

32.    On or about 5/04/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to Deputy Helm that he had gone to the Texas Department of Criminal Justice for Burglary of a Vehicle in 2004;

STATE'S SEVENTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 17

33. On or about 5/07/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant stated that he wanted to kill someone and attempted to organize a gang fight in his pod;

34. On or about 9/21/05, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant was seen hitting Inmate Luis Saldivar with his hand, in violation of jail regulations;

35. On or about 2/24/06, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to being an active member of the Texas Syndicate;

36. On or about 3/08/06, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant was found in possession of tattooing paraphernalia, in violation of jail regulations;

37. On or about 3/14/06, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant refused to obey pod rules, pod officers orders and refused to rack down, in violation of jail regulations. He refused to return to his cell when ordered by Deputy MR Cude;

38. On or about 3/19/06, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant disobeyed a directive by Deputy Muhammad when he refused to give up his bottom bunk and remove his property for a medically disabled inmate, in violation of jail regulations. He further stated in a threatening manner to the deputy and fellow inmates that "something bad was going to happen;"

39. On or about 3/19/06, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant repeatedly refused to obey a direct order by Deputy Davis to step away from the window, provide his identification, nor would he wear his uniform, in violation of jail regulations;

40. On or about 4/02/10, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant admitted to being a member of the Texas Syndicate, a prison gang;

41. On or about 4/24/10, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant caused problems in the tank in which he was housed by attempting to control/run the tank, in violation of jail regulations;

42. On or about 4/08/10, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant was involved in a fight with fellow inmate David Toney, in violation of jail regulations;

STATE'S SEVENTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 18

43.     On or about 5/21/10, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant refused to obey an order when he refused to remove a blanket and towel from his face and stated "fuck that shit- I am going home tomorrow anyway. I don't give a damn about that shit," in violation of jail regulations;

44.     On or about 8/06/10, while incarcerated in the Tarrant County Jail, Tarrant County, Texas, the defendant was found in possession of contraband, an unauthorized photo of a hand sign;

## X.  Johnson County Jail Disciplinary Violations

1.     On or about April 6, 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did possess contraband, damage property, use or possess tobacco products and possess a weapon, namely, a thin piece of sharpened metal, four pills, a pouch of bugler and stuffing from his mattress in the Johnson County Law Enforcement Center. Defendant admitted his guilt at the jail and signed an admission form in the presence of Lt. David Boggess.

2.     On or about April 24, 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did create a disturbance by flooding his cell and hitting the cell door window. Defendant admitted his guilt to David Turner at the Johnson County Law Enforcement Center by writing, "I did it, man." Defendant resisted officers attempting to restrain him and cursed at them. This incident was witnessed by Ronnie McGowan and other corrections officers. This incident was captured on video which has been provided to defense counsel.

3.     On or about July 10, 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did damage property by removing parts and knocking a telephone over at the Johnson County Law Enforcement Center. Defendant said he was not guilty of doing this at the jail. On this date, Defendant also attempted to flood his cell with water by sticking an unknown object down the toilet which was witnessed by Jose Arriola and other corrections officers. Defendant did admit in writing to R. McCowan that he was guilty of flooding his cell. Photos and video were taken of the acts at the time and have been provided to defense counsel,

4.     On or about July 10, 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did assault a corrections officer, namely Officer Raleigh, by throwing hot coffee on him. On this date, Defendant called Officer Raleigh names and cursed at him. Officer Raleigh believes that the substance thrown on him may have been urine as well as coffee. Officer Raleigh believes the assault was in retaliation for Raleigh not allowing Defendant to use the telephone after hours in May of 2011 where Defendant

1980

threatened and actually did flood his cell with water. Defendant signed a written admission but stated he did not know the officer was below him when he threw the coffee.

5.     On or about July 22, 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did possess contraband, namely two pills in a bottle with no label in the Johnson County Law Enforcement Center. Defendant signed an admission of guilt in the presence of Sgt. Sample. Defendant stated that it was his Ibuprofen.

6.     On or about August 23, 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did escape or attempt a felony escape by manipulating and freeing his hand from his handcuffs while in visitation. This act was witnessed by Dr. Natalie Brown, Corporal Dana Kinnard and Warden Janicek of the Johnson County Law Enforcement Center. Defendant signed and admission of guilt in the presence of Corporal Arriola.

7.     On or about August 23, 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did touch his own genitals and masturbate in the presence of a female meeting with him in a witness room. Said acts were witnessed by Corporal Dana Kinnard of LaSalle Corporation.

8.     On or about multiple occasions in 2010 and 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did touch his own genitals and masturbate and expose himself in the presence of multiple female guards and inmates.

9.     On or about August 24, 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did cause a disturbance by shouting and cursing at Corporal Steven Parish and Corrections Officer Jason Pugh and flooding his cell with water. Defendant refused to allow himself to be restrained and Lt. David Boggess administered OC Spray into Defendant's cell to get him to comply. This incident was captured on video which has been provided to defense counsel.

10.    On or about August 29, 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did possess contraband, damage property, create a disturbance and refuse to follow orders by possessing an altered radio, breaking his cell light, making noise to incite other inmates and refusing orders while officers attempted to handcuff him at the Johnson County Law Enforcement Center. Defendant signed an admission of guilt in the presence of Corporal Kinnard.

11.    On or about November 18, 2010, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did hit his cell door repeatedly with a cup, flooding his cell and covering the window of his cell door with cardboard.

STATE'S SEVENTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 20

Defendant was given multiple warnings to comply with officers and was eventually OC sprayed by Lt. David Boggess. After Defendant finally complied with officer's orders, he was decontaminated and taken to the violent cell in the Johnson County Law Enforcement Center. This incident was captured on video which has been provided to defense counsel.

12.     On or about June 6, 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did flood his cell with water causing the water to be turned off by officers in the Johnson County Law Enforcement Center. Defendant was screaming and banging the walls of his cell.

13.     On or about October 18, 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz, on numerous occasions, did attempt to escape from mechanical restraints. Blue Box restraints were purchased by the Johnson County Law Enforcement Center specifically for use with the Defendant as he has attempted on numerous occasions to escape from his restraints.

14.     On or about October 18, 2011, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz, attempted to pull his hands through the food port of his cell while Sgt. Laurie Gunter was attempting to secure his hands in handcuffs. Sgt. Gunter's hand was caught against the outside of the door causing her pain. Sgt. Gunter told the Defendant to stop and that he was hurting her and he just looked at her and said she was not going to tighten the cuffs anymore.

15.     On or about January 3, 2012, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did possess contraband, by possessing an a broken piece of plastic sharpened to a point, an altered battery attached to a string, and an extra blanket.

16.     On or about January 6, 2012, in Johnson County, Texas, while incarcerated at the Johnson County Law Enforcement Center, the Defendant Mark Anthony Soliz did possess contraband, by possessing an a pen and an altered battery attached to a string.

17.     On or about January 19, 2012, the defendant, during jury selection in his capital murder case, in Johnson County, Texas, refused to remove his tie and belt in the holding cell at the Guinn Justice Center, a security violation. Defendant's belt and tie were taken from him by the Sheriff's Department for safety purposes. Defendant's tie was exchanged for a clip-on tie.

18.     On or about January 19, 2012, the defendant, during jury selection in his capital murder case, at the Guinn Justice Center in Johnson County, Texas, used wet toilet paper to cover the camera in his holding cell and refused to dress out for transport back to the jail. Defendant failed to comply with verbal instructions of the Sheriff's Office. When Marshall Whitlock of the Sheriff's Office told Defendant they were coming in to use force, Defendant replied "C'mon." Defendant resisted being restrained and was finally overpowered by the Sheriff's Office.

STATE'S SEVENTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 21

## XI. Statements and Admissions

1.    On or about June 22, 2000, while incarcerated in the Texas Department of Criminal Justice, admitted being a member of the church of Satanism.

2.    On or about June 22, 2000, while incarcerated in the Texas Department of Criminal Justice, Defendant admitted that he engaged in ritualistic activities in the Satanism night church.

3.    On or about January 23, 2007, during his intake back into TDC in Cause Number 1047319W, the Defendant, Mark Anthony Soliz claimed/admitted to have been arrested 18 times resulting in one commitment to the Dallas County Juvenile Detention Center for Unauthorized Use of a Motor Vehicle and Evading Arrest, one commitment to the Collin County Juvenile Detention Center for Aggravated Assault with a Deadly Weapon, one commitment to the Smith County Juvenile Detention Center for Theft $1,500 to $20,000, one commitment to the Harrison County Juvenile Detention Center for Burglary of a Vehicle, three days in the Tarrant County Jail for Theft $1,500 to $20,000, thirty days and one hundred days in the Tarrant County Jail for Burglary of a Vehicle, one hundred eighty days in the Tarrant County Jail for Criminal Trespass, sixty days and ninety days in the Tarrant County Jail for Unauthorized Use of a Motor Vehicle and Evading Arrest, ninety-two days in the Tarrant County Jail for Unauthorized Use of a Motor Vehicle and as a State Jail detainee for Theft $1,500 to $20,000.

4.    On or about January 23, 2007, during his intake back into TDC in Cause Number 1047319W, the Defendant, Mark Anthony Soliz claimed/admitted he completed a treatment center in Fort Worth where he was confined for six months.

5.    On or about January 23, 2007, during his intake back into TDC in Cause Number 1047319W, the Defendant, Mark Anthony Soliz claimed/admitted that he used the alias names Mark Anthony Saenz, Kilo Soliz, and Kilo and was confirmed as a member of the Texas Syndicate effective June 10, 2004.

6.    On or about January 23, 2007, during his intake back into TDC in Cause Number 1047319W, the Defendant, Mark Anthony Soliz claimed/admitted when asked why he committed the offense in Cause No. 1047319W on December 6, 2006, Defendant said "Just mess up."

7.    On or about January 23, 2007, during his intake back into TDC in Cause Number 1047319W, the Defendant, Mark Anthony Soliz claimed/admitted he was court-ordered to attend and complete Choices Treatment Center on an inpatient basis for narcotics treatment. Defendant admitted that after 60 days, he escaped from the treatment center in 1998 without successful completion of the program.

8.    On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he inhaled powder cocaine twice

STATE'S SEVENTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 22

per month from the age of 17 to 24 in Johnson, Smith, Collin, Tarrant, Harris, Dallas and other counties in Texas.

9.      On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he smoked crack cocaine daily for one year at the age of 23 in multiple counties in Texas.

10.      On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he smoked marijuana three times per week from the age of 14 to 24 in multiple counties in Texas.

11.      On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he inhaled heroin at 18 years of age in multiple counties in Texas.

12.      On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he smoked methamphetamines on the weekends when he was 22 to 23 years of age in multiple counties in Texas.

13.      On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he used inhalants on and off from the age of 14 to 24 in multiple counties in Texas.

14.      On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he was court-ordered to participate in drug treatment at 15 years of age and left unsuccessfully after one month.

15.      On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he sold marijuana, cocaine, and methamphetamine from the age of 16 to 23 and made about $100 per day in multiple counties in Texas.

16.      On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he was under the influence of carburetor cleaner during his commission of the theft of a vehicle case in Cause No. 1047319W in the 214th District Court of Tarrant County, Texas with offense date of December 6, 2006. Defendant further admitted that he committed this offense "Just for the hell of it."

17.      On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he consumed beer daily from the ages of 16 to 23 consuming 2 quarts per day in multiple counties in Texas.

STATE'S SEVENTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 23

1984

18.     On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he consumed a fifth of whiskey a few times per year from the ages of 22 to 23 in multiple counties in Texas.

19.     On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he was an alcoholic.

20.     On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he stole routinely as a means of support in multiple counties in Texas.

21.     On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he was an active member of the Texas syndicate.

22.     On or about April 9, 2007, in Anderson County, Texas, the Defendant, Mark Anthony Soliz, admitted to Parole Officers Jim Langford and Michelle Kreger that he Defendant did not voluntarily take part in any self-help academic, vocational or character development while confined at the Texas Department of Criminal Justice, Institutional Divison.

23.     The State gives notice of written and recorded statements given by Mark Anthony Soliz to Fort Worth Detectives Boetcher and Payne in Tarrant County, Texas on or about June 30, 2010. Copies have been provided to counsel for Mark Anthony Soliz.

24.     The State gives notice of statements made by Mark Anthony Soliz to Elizabeth Estrada in Tarrant County, Texas as shown in recorded interview of Elizabeth Estrada which has been provided to counsel.

25.     The State gives notice of statements made by Mark Anthony Soliz to Rosie Medina in Tarrant County, Texas as shown in recorded interview of Rosie Medina which has been provided to counsel.

26.     On or about June 29, 2010, the Defendant Mark Anthony Soliz made statements to Arturo Gonzales in Tarrant County, Texas.  He asked if he could park his car, a Dodge Stratus, behind another car in order to hide it.  He asked if he could get 9mm bullets because he needed some.  He asked where he could purchase marihuana.

27.     On or about June 29, 2010, the Defendant Mark Anthony Soliz told Sgt. Dena with the Fort Worth Police Department that "He could not go back to prison" when Dena was attempting to arrest him in Fort Worth, Tarrant County, Texas.

STATE'S SEVENTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 24

1985

28.    On or about June 23, 2010, the Defendant Mark Anthony Soliz told Ramon Morales in Tarrant County, Texas, that he did not want to sell a pistol that Mark Anthony Soliz had because he had plans to use it.

29.    On or about September 24, 2010, in Tarrant County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant made multiple comments and admissions against his penal interest which were captured on video/audio by Johnson County Deputy Sheriff Jay Kniffen.  The State of Texas has previously provided a copy of said statements to the attorneys for Defendant.  The State hereby gives notice to the Defense of the entire contents of video/audio dvd capturing the statements of Defendant.

30.    On or about September 24, 2010, in Tarrant County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant made several sexual comments to passing by women including comments on women's "ass" and "titties".  The Defendant whistled at passing by women.

31.    On or about September 24, 2010, in Tarrant County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant stated that the State couldn't put him at the crime scene and that all he and Jose Ramos had to was "play dumb" to the State's "shit".

32.    On or about September 24, 2010, in Tarrant County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant stated the if anything were to happen, the boy that tried to pawn the "straps" or guns, the State would get him on a capital murder case, also.

33.    On or about September 24, 2010, in Tarrant County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant stated that "we got two (capital murder cases) because he (Ruben Martinez) died, and everything."  The Defendant also referred to capital murder victim Ruben Martinez as a "motherfucker".

34.    On or about September 24, 2010, in Tarrant County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant comments about different girls he is talking to and trying to bond himself out of jail with help from his grandmother. Defendant also talks about helping to bond out Jose Ramos.

35.    On or about September 24, 2010, in Tarrant County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant comments about making a $600,000 bond and hiring Johnny Cochran to defendant him because he "needs a damn good attorney."

STATE'S SEVENTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 25

36.     On or about September 24, 2010, in Tarrant County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant stated that he was going to be watching for a snitch in his case.

37.     On or about September 24, 2010, in Tarrant County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant comments about having sex with another girl while he had a girlfriend and then commented about lying to his girlfriend about the girl he had sex with. Defendant repeatedly referred to both girls as "bitches".

38.     On or about September 24, 2010, in Tarrant County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant comments about there being cable television and Playstation 3 in some jails.

39.     On or about September 24, 2010, in Tarrant County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant refers to Johnson County Jail Officers as "redneck mother fuckers." Defendant stated that if you respect the guards, they will let you get away with some things.

40.     On or about September 24, 2010, in Johnson County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant stated that capital murder victim Nancy Weatherly was "probably a lesbian."

41.     On or about September 24, 2010, in Johnson County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant stated that he let Rosie Medina use the car (stolen Dodge Stratus). Defendant stated that he was "sucking on her titties" and jumped in the shower and started "fucking the shit out of her" and "shit I fuck that pussy." Defendant referred to Rosie Medina as a "freak" and a "bitch".

42.     On or about September 24, 2010, in Johnson County, Texas, while being transported from the Tarrant County Jail to the Johnson County Law Enforcement Center, the Defendant stated that he met this one chick named Sicila Garza who was "bad as a mother fucker" and that he licked it clean "like a mother fucker, man".

43.     On or about dates unknown, in 2010-2011, in Johnson County, Texas, the Defendant, Mark Anthony Soliz wrote a letter to Co-Defendant, Jose Ramos, that stated: "Joe! Say Homeboy, we can beat that case in Fort Worth It just that, them law was trying to tell me that you was saying I did. I haven't even talk to them. In they was telling me how it want down, Do you remember what we talk about, That you pull my arm & da gun want off, They got da gun but no Evidence to show that that was da murder gun, that shot him. That case here, my attorney show me my statement, That said I shot that lady. But I didn't say it like that. I wasn't saying it to tell them it was me, I was saying it to get it over with, so I can go back to my holding cell. There some stuff I don't remember saying, There going to try to hit me hard on this case here, If you do end up getting this case beat, It cause

I'm trying to get this statement pull cause it say that I did it. If I don't then Im fuck but if I do then we're good. Get back at me! Kilo"

44.    On or about dates unknown, in 2010-2011, in Johnson County, Texas, the Defendant, Mark Anthony Soliz wrote a letter to Co-Defendant, Jose Ramos, that stated: "(Kilo Joe) Greeting Homeboy! Check this. Let get thing understood, I don't know why you're here, cause I took da blame on of them cases, they just got to find me (guilty)(feel me) I never said your name to them laws, if your attorney look at my statement it only say or look like I did it all by my self. On da cool Im making my attorney fight for me, since they say he good. I just don't want you to take da stand. Right, I do know da truth a lot of people mad at me! My girl, family & friends. They think these people going to make you take da stand or make you bump head with me. I must keeping it real with you, as for calling you mother, I didn't! On da Hood,=nor=side= So what Kristine talking about & Samantha wrote me a 5 page letter front and back Don't know if Kristine going to come throu with that money, ask her what happen to that money! Get back at me! let me know Kilo.G what up Att: who had do Jewelry? They want me to step back from you!?"

45.    On or about dates unknown, in 2010-2011, in Johnson County, Texas, the Defendant, Mark Anthony Soliz wrote a letter to Co-Defendant, Jose Ramos, that stated: Jose, say vato, I cut ties with you, Do your own time like you been doing, Just got word on you, You know what up. Don't have to let you know, I been a fu da ho tyme  You good you know that, peep game, it will follow u, Im out! K.G."

46.    On or about February 13, 2012, Defendant wrote a letter to a dismissed juror in his Capital Murder case. A copy of said letter has been provided to the attorneys for the defendant.

47.    On or about February 13, 2012, the Defendant wrote a letter to Prissy Guerrero asking her if she felt like "kicken some one azz for me." Defendant signed the letter "Kilo Gangster". A copy of said letter has been provided to the attorneys for the defendant.

Respectfully submitted,

DALE HANNA
DISTRICT ATTORNEY
JOHNSON COUNTY, TEXAS
PHONE: (817) 556-6800
FAX:    (817) 556-6814
CLEBURNE, TEXAS  76031
STATE BAR NO. 08918500

1988

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been sent by hand delivery to Michael Heiskell, Johnson, Vaughn & Heiskell, 5601 Bridge Street, Suite 220, Fort Worth, Texas 76102, fax (817) 496-1102 and to Greg Westfall, Attorney at Law, 121400 W. Abram Street, Arlington, Texas 76013, fax (817) 274-9724 on this the 22nd day of _____, 2012.

DALE HANNA
DISTRICT ATTORNEY

STATE'S SEVENTH AMENDED NOTICE OF INTENT
TO INTRODUCE EVIDENCE OF EXTRANEOUS MATTERS – PAGE 28

1989



CAUSE NO. F-45059

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 413TH JUDICIAL |
| | § | |
| VS. | § | DISTRICT COURT OF |
| | § | |
| MARK ANTHONY SOLIZ | § | JOHNSON COUNTY, TEXAS |

**FILED**
A.M. 2:59 PM
FEB 2 3 2012
DAVID R. LLOYD
District Clerk, Johnson County, Texas
DEPUTY

## DEFENDANT'S MOTION FOR A ONE MONTH CONTINUANCE OF TRIAL

### TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Mark A. Soliz, the Defendant, by and through undersigned counsel and moves this honorable court to grant a one month continuance of the trial in this case from the current date of Monday, February 27, 2012 to Monday, March 26, 2012, and would show as follows:

### I.
### ONGOING DISCOVERY

Discovery being provided in this matter is continuing as this is being written including, but not limited to, three (3) new DVD's received via mail this date from the State, six (6) CDs and one (1) DVD hand delivered to defense counsel by the State; a Seventh Amended Notice of Extraneous Matters and the State's Twelfth Amended Witness List received on Wednesday, February 21, 2012.

Finally, the prosecution just notified defense counsel, this date, of a previously unknown video/audiotape of co-defendant, Jose Ramos' interview by polygrapher, Richard Woods. Neither prosecution nor defense counsel have received this video as of this writing. Said review of same will likely lead to an exploration into the need to conduct further investigation and to possibly retain additional experts.

1990

In addition to the fact that somehow we are only now finding out that a surreptious recording was made of co-defendant Ramos' polygraph, there has been in this case a steady pattern of late-produced discovery up to this very day, when counsel for the defense was provided 10 CD-Rs and DVDs, as well as two (2) incident reports. Obviously, all this material must be reviewed. It is unknown at this time what additional investigations may be required as a result of this review. As previously stated, we do not even have this new video of Ramos yet.

This is an unprecedented death penalty case (litigating two (2) capital murders among multiple other offenses, including four (4) other shootings), and each shred of evidence must be reviewed thoroughly and compared to other evidence in existence in order for counsel to render effective assistance under the Sixth Amendment. We have just finished five (5) weeks of jury selection, where the fundamental work of preparing the case would be difficult even without the steady stream of new discovery. We cannot be truly ready to try this case beginning in three days, given we do not even have the new video right now.

We therefore request a month's continuance of the trial date. Perhaps by then, the State's investigation will have concluded and all discovery would have been transferred. That will also give us time to render effective assistance to our client by allowing us the time to mount a defense to the new material.

## II.

This continuance is not sought for delay, but to insure that justice is done.

WHEREFORE PREMISES CONSIDERED, Defendant by and through undersigned counsel prays that the Court grant a one month continuance in this matter.

Respectfully submitted,

Michael P. Heiskell
State Bar No. 09383700
**JOHNSON, VAUGHN & HEISKELL**
5601 Bridge Street, Suite 220
Fort Worth, TX 76112
Telephone: (817) 457-2999
Facsimile: (817) 496-1102

Greg Westfall
State Bar No. 00788646
**HILL GILSTRAP, P.C.**
1400 W. Abram
Arlington, Texas 76013
Telephone: (817) 276-4931
Facsimile: (817) 861-4685

**ATTORNEYS FOR DEFENDANT**

SUBSCRIBED AND SWORN to before me on this the 23rd day of February 2012.

Notary Public, State of Texas

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State via first class mail/ hand-delivery of a copy of same this the 23m day of February, 2012.

Michael P. Heiskell

CRYSTAL IRENE JONES
MY COMMISSION EXPIRES
September 28, 2013

1992

CAUSE NO. F-45059

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 413TH JUDICIAL |
| | § | |
| VS. | § | DISTRICT COURT OF |
| | § | |
| MARK ANTHONY SOLIZ | § | JOHNSON COUNTY, TEXAS |

## O R D E R

BE IT REMEMBERED  that on the _____ day of _____2012,

came to be considered the above Defendant's Motion for a One Month Continuance of the Trial.

After due consideration of the motion, it is the opinion of the court that defendant's motion is

hereby:


_____GRANTED


_____ DENIED


_____
Hon. William C. Bosworth
Judge, 413th Judicial District Court

1993

CAUSE NO. F-45059

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 413TH JUDICIAL |
| | § | |
| VS. | § | DISTRICT COURT OF |
| | § | |
| MARK ANTHONY SOLIZ | § | JOHNSON COUNTY, TEXAS |

## DEFENDANT'S MOTION TO CAUSE THE STATE
## TO PROVIDE AN ITEMIZED LIST OF ALL RESOURCES
## EXPENDED IN PROSECUTING THIS DEATH PENALTY CASE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Mark A. Soliz, the Defendant, by and through undersigned counsel and moves for an order requiring the State of Texas to produce a list of all resources it has expended in prosecuting this death penalty case and would show as follows:

### I.

The State of Texas has filed several different versions of the list of witnesses it may call at trial. This list includes over 400 names. In addition, the State has been represented throughout jury selection by four prosecuting attorneys. It is known that the State of Texas has at least one investigator working on this case full-time on behalf of the Tarrant County District Attorney's office. Further, the State of Texas has no doubt consumed a considerable about of the time of the Johnson County Sheriff's Department through a sizeable security detail and in finding and marshaling evidence for trial. The State has consumed a considerable amount of the Tarrant County Medical Examiner's time in additional testing which has continued to be conducted perhaps to this very time. The Tarrant County Medical Examiner is no doubt spending hours and hours marshaling evidence and doing other things to assist the State to prepare for this trial. The Mansfield Police Department must be devoting a fair amount of time getting ready to present its part of this case on behalf of the State at trial and is perhaps doing

1994

additional analysis and testing as well. The Fort Worth Police Department is no doubt assisting in the continuing investigation and its crime lab is probably conducting more analysis as this motion is being drafted or at least preparing to present the analysis it has already conducted. There is also at least one private lab working on behalf of the State. The Texas Department of Criminal Justice is also preparing to come testify on behalf of the State and has conducted some investigation on the State's behalf. All of these things are no doubt just a representative sample of the resources expended on behalf of the State of Texas for the prosecution of this case. This list does not even include the amount of time spent by private experts on behalf of the state (with the exception of the aforementioned lab).

Throughout jury selection, juror after juror disclosed in their questionnaires the belief that it is cheaper for the taxpayers to put a person on death row rather than giving him a life without parole sentence. Not only is this demonstrably untrue, but to allow the jury charged with the decision of whether to impose the death penalty to labor under such a delusion would be a violation of the defendant's right to a fair trial and due process under the Sixth and Fifth Amendments to the United States Constitution, respectively.

## II.

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Washington v. Texas*, 388 U.S. 14, 19 (1967).

> The Due Process Clause does not allow the execution of a person "on the basis of information which he had no opportunity to deny or explain." In this case, the jury reasonably may have believed that petitioner could be released on parole if he were not executed. To the extent this misunderstanding pervaded the jury's deliberations, it had the effect of creating a false choice between sentencing petitioner to death and sentencing

1995

· him to a limited period of incarceration.

*Simmons v. South Carolina*, 512 U.S. 154, 161 (1994) (quoting *Gardner v. Florida,* 430 U.S. 349, 362 (1977)).

The juror questionnaires are a part of the record in this cause and we specifically reference them in connection with this motion.  Many of the juror questionnaires contain statements alluding to it being cheaper to impose the death penalty than for a person to stay in prison for life.  In fact, one of the jurors currently seated said as much during voir dire.

This belief is misplaced.  In fact, the research shows that it is much less expensive for a person to stay in prison for life than to receive a death sentence and be executed. (*See, e.g.*, "Smart on Crime: Reconsidering the Death Penalty in a Time of Economic Crisis," Death Penalty Information Center, attached hereto as Exhibit 1).  Because the majority of jury no doubt believes otherwise, it is safe to assume that this issue will arise during deliberations and even if it does not, this misconception will play a part in several of the jurors' decision-making process.  This misunderstanding creates the same "false choice" that the misunderstanding about the effect of the parole law did in Simmons.  Thus, for the same reason, to disallow such testimony in this case would violate the defendant's Fifth Amendment right to due process and his Sixth Amendment right to a fair trial, as well as the Eighth Amendment prohibition against cruel and unusual punishment.

## III.

In order to give effect to these rights, the defendant must be able to discover the extent of the resources that the State is expending to prosecute and try this case.  Thus, we request the State to be compelled to provide a list of all resources it is expending in this connection.  This information needs to be communicated to the jury.

1996

In the alternative, Defendant requests wide latitude during cross-examination of the State's witnesses to discover for the jury the approximate amount of resources expended by all witnesses and the agencies with which they work.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that this motion will be granted.

Respectfully submitted,

Michael P. Heiskell
State Bar No. 09383700
**JOHNSON, VAUGHN & HEISKELL**
5601 Bridge Street, Suite 220
Fort Worth, TX 76112
Telephone: (817) 457-2999
Facsimile: (817) 496-1102

Greg Westfall
State Bar No. 00788646
**HILL GILSTRAP, P.C.**
1400 W. Abram
Arlington, Texas 76013
Telephone: (817) 276-4931
Facsimile: (817) 861-4685

**ATTORNEYS FOR DEFENDANT**

1997

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State via first class mail/ hand-delivery of a copy of same this the ____ day of _____, 20__.

Michael P. Heiskel

1998

# Smart on Crime:
## Reconsidering the Death Penalty in a Time of Economic Crisis

### National Poll of Police Chiefs Puts Capital Punishment at Bottom of Law Enforcement Priorities

#### A Report from the Death Penalty Information Center

DEFENDANT'S
EXHIBIT

1999

DP4.indd   1

# Smart on Crime:
## Reconsidering the Death Penalty
## in a Time of Economic Crisis

**National Poll of Police Chiefs Puts Capital Punishment
at Bottom of Law Enforcement Priorities**

A Report from the Death Penalty Information Center
by Richard C. Dieter, Executive Director

Washington, DC
October 2009

*www.deathpenaltyinfo.org*

RECONSIDERING THE DEATH PENALTY IN A TIME OF ECONOMIC CRISIS

# Table of Contents

| | |
|---|---|
| Executive Summary | 6 |
| Introduction | 8 |
| The Views of Law Enforcement – Police Chiefs Poll | 9 |
| The Crisis Facing State Criminal Justice Systems | 12 |
| How much does the death penalty cost? | 14 |
| Can the Costs of the Death Penalty Be Reduced? | 18 |
| Why Does the Death Penalty Cost So Much? | 20 |
| What is Society Receiving in Return? | 22 |
| Conclusion | 23 |
| References | 24 |

5

RECONSIDERING THE DEATH PENALTY IN A TIME OF ECONOMIC CRISIS

## Executive Summary

"Smart on Crime" is a new report from the Death Penalty Information Center that explores the prospect of saving states hundreds of millions of dollars by ending the death penalty. The report also serves to release a national poll of police chiefs in which they rank the death penalty at the bottom of their priorities for achieving a safer society.

The death penalty in the U.S. is an enormously expensive and wasteful program with no clear benefits. All of the studies on the cost of capital punishment conclude it is much more expensive than a system with life sentences as the maximum penalty. In a time of painful budget cutbacks, states are pouring money into a system that results in a declining number of death sentences and executions that are almost exclusively carried out in just one area of the country. As many states face further deficits, it is an appropriate time to consider whether maintaining the costly death penalty system is being smart on crime.

The nation's police chiefs rank the death penalty last in their priorities for effective crime reduction. The officers do not believe the death penalty acts as a deterrent to murder, and they rate it as one of most inefficient uses of taxpayer dollars in fighting crime. Criminologists concur that the death penalty does not effectively reduce the number of murders.

Around the country, death sentences have declined 60% since 2000 and executions have declined almost as much. Yet maintaining a system with 3,300 people on death row and supporting new prosecutions for death sentences that likely will never be carried out is becoming increasingly expensive and harder to justify. The money spent to preserve this falling system could be directed to effective programs that make society safer.

California is spending an estimated $137 million per year on the death penalty and has not had an execution in three and a half years. Florida is spending approximately $51 million per year on the death penalty, amounting to a cost of $24 million for each execution it carries out. A recent study in Maryland found that the bill for the death penalty over a twenty-year period that produced five executions will be $186 million. Other states like New York and New Jersey spent well over $100 million on a system that produced no executions. Both recently abandoned the practice. This kind of wasteful expenditure makes little sense. The death penalty may serve some politicians as a rhetorical scare tactic, but it is not a wise use of scarce criminal justice funding.

In 2009, eleven state legislatures considered bills to end capital punishment and its high costs were part of these debates. New Mexico abolished the death penalty and the Connecticut legislature passed an abolition bill before the governor vetoed it. One house of the legislatures in Montana and Colorado voted to end the death penalty, and the Colorado bill would have directed the cost savings to solving cold cases. As the economic crisis continues, the trend of states reexamining the death penalty in light of its costs is expected to continue.

The report that follows analyzes the costs of the death penalty as measured in various state studies. It examines why the death penalty is so expensive and why it may be impossible to cut those costs without endangering fundamental rights. The report looks closely at the opinions of law enforcement experts and finds little support for continuing to spend enormous sums on an ineffective program when so many other areas of need are being short changed. Many states are looking at the death penalty in a new light because of the economic crisis, realizing that being smart on crime means investing in programs that really work.

6

2004

# Smart on Crime:
## Reconsidering the Death Penalty in a Time of Economic Crisis

**National Poll of Police Chiefs Puts Capital Punishment
at Bottom of Law Enforcement Priorities**



*[W]e must move beyond the narrow parameters that have constrained our nation's debate about criminal justice policy over the last several decades. There is no doubt that we must be "tough on crime." But we must also commit ourselves to being "smart on crime."*

-Attorney General Eric Holder[1]



*Give a law enforcement professional like me that $250 million, and I'll show you how to reduce crime. The death penalty isn't anywhere on my list.*

-Police Chief James Abbott,
West Orange, NJ[2]

photo by John Goodman



*Local jurisdictions are likely to lose a significant amount of state funding this year because of the severe financial crisis. This funding helps cities and counties provide essential services in the areas of public safety, emergency services, and health and children's services. Without it, our communities will no doubt suffer dire consequences.*

*At the same time, we continue to waste hundreds of millions on the state's dysfunctional death penalty. If we replaced the death penalty with a sentence of permanent imprisonment, the state would save more than $125 million each year. We haven't had an execution in California for three years. Are we any less safe as a result? I don't think so.*

-Police Chief Ray Samuels, Newark, CA[3]

7

2005

RECONSIDERING THE DEATH PENALTY IN A TIME OF ECONOMIC CRISIS

# Introduction

For many states the impact of the economic recession is likely to be felt for years to come. The unemployment rate may surpass 10%, and 2009 will probably be worse than 2008 in state income and in demands for services. [4] Most states are facing new budget shortfalls in the coming fiscal year, and further cuts in state spending are inevitable. [5]

Not surprisingly, the criminal justice system is feeling the consequences of this downturn along with other sectors of the economy. Police departments are cutting back, state employees are being furloughed, trials are being delayed as courts and public defenders run out of money, and prisoners are being released early. The justice system was already overburdened—now it is being pushed to the breaking point.

In every sector of the economy governments are trying to eliminate wasteful programs while preserving essential services. This report examines one reasonable step that could save hundreds of millions of dollars in the criminal justice system: **end the enormously expensive and wasteful death penalty that is draining state budgets.** Every cost study in the U.S. shows that the death penalty is far more expensive than a system where the maximum penalty is life in prison. The following evidence shows that many in the law enforcement community believe that replacing the death penalty with life without parole would actually advance the fundamental goals of the criminal justice system. The report also explains why the death penalty is so expensive and estimates the costs to the nation for retaining it.

The judgment that the death penalty is the last place that scarce criminal justice dollars should go is supported by a growing number of law enforcement officials and backed by a **national poll of police chiefs** that is being released in this report. The poll reveals that the death penalty is at the bottom of the chiefs' list when it comes to wise spending to fight crime.

The problem is not simply the high cost of capital punishment in a time of economic crisis. Indeed, some states like New York and New Jersey

took action to end the financial drain caused by the death penalty even before the current downturn.

The death penalty has been a bloated government program for many decades. The death penalty is not just expensive, it is wasteful. In most places the money is being spent even as the core measures of the system—death sentences and executions—have declined precipitously.[6] It is as if a car manufacturer was keeping all of its factories and showrooms open even though it was producing only a handful of cars that hardly anyone was buying.

This is an appropriate time to examine the death penalty as a pragmatic issue—to ask, Is it working? Is it functioning as envisioned, and is it benefiting society? Whether any societal gain is derived from the death penalty will be discussed more below. But even at the most basic level of executions the death penalty is dysfunctional. In most states there were no executions last year and none on the horizon. Almost all recent executions have been in just one region of the country—the south—and most of those have been in one state—Texas.[7] The death penalty without executions is a very expensive form of life without parole.



*I no longer believe that you can fix the death penalty. I learned that the death penalty throws millions of dollars down the drain--money that I could be putting directly to work fighting crime every day--while dragging victims' families through a long and torturous process that only exacerbates their pain. . . Give a law enforcement professional like me that $250 million, and I'll show you how to reduce crime. The death penalty isn't anywhere on my list.[i]*

-Police Chief James Abbott (NJ)

8

2006

RECONSIDERING THE DEATH PENALTY IN A TIME OF ECONOMIC CRISIS

## The Views of Law Enforcement

Police Chief James Abbott of West Orange, New Jersey, quoted above, served on a legislative commission that reviewed that state's death penalty. The commission eventually overwhelmingly recommended abolition of the death penalty. Chief Abbott is part of a growing number of law enforcement officials who have concluded that there are much smarter ways to reduce crime than wasting money on the death penalty. A newly released **national poll of police chiefs** shows a high degree of skepticism about the death penalty and a strong desire to spend limited funds more productively elsewhere.

## Police Chiefs Poll

The poll was commissioned by the Death Penalty Information Center and conducted by R.T. Strategies of Washington, D.C., surveying a national sample of 500 randomly selected police chiefs in the United States.[8]

The police chiefs had the opportunity to identify what they believe is most effective in fighting crime. As leaders in law enforcement, they were asked where the death penalty fit in their priorities. The poll found:

• When asked to name one area as "most important for reducing violent crime," greater use of the death penalty ranked **last** among the police chiefs, with only 1% listing it as the best way to reduce violence. Instead, increasing the number of police officers, reducing drug abuse, and creating a better economy and more jobs all ranked much higher than the death penalty.[9]

• The death penalty was considered the **least efficient** use of taxpayers' money. Police chiefs ranked expanded training for police officers, community policing, programs to control drug and alcohol abuse, and neighborhood watch programs as more cost-effective ways to use taxpayers' money.[10]



**What Interferes with Effective Law Enforcement?**

| | Percent Ranking Item as One of Top Two or Three |
|---|---|
| Lack of law enforcement resource | 20 |
| Drug/Alcohol Abuse | 20 |
| Family problems/child abuse | 14 |
| Lack of programs for mentally ill | 12 |
| Crowded courts | 7 |
| Ineffective prosecution | 6 |
| Too many guns | 5 |
| Gangs | 3 |
| Insufficient use of the death penalty | 2 |

9

2007

RECONSIDERING THE DEATH PENALTY IN A TIME OF ECONOMIC CRISIS



**Police Chiefs' Views**

| Statement | Accurate | Inaccurate |
|---|---|---|
| Politicians support the death penalty as a symbolic way to show they are tough on crime | 69 | 24 |
| Death penalty cases are hard to close and take up a lot of police time. | 61 | 32 |
| Debates about the death penalty distract Congress and state legislatures from focusing on real solutions to crime problems. | 50 | 42 |
| The death penalty significantly reduces the number of homicides | 37 | 48 |
| The death penalty is one of the most important law enforcement tools | 31 | 66 |
| Murderers think about the range of possible punishments before committing homicides | 24 | 69 |

Accurate / Innacurate — Percent Finding Statement Accurate/Innacurate

• The police chiefs did not believe that criminals generally consider the consequences of their actions when engaged in violence. Fifty-seven percent (57%) said the death penalty does little to prevent violent crimes because **perpetrators rarely consider the consequences** when engaged in violence.[11]

• Although the police chiefs did not oppose the death penalty in principle, **less than half (47%)** supported it compared to a sentence of life imprisonment without parole combined with mandatory restitution by the defendant to the victim.[12]

• Barely a quarter of the police chiefs polled believed expanding the death penalty, which they viewed as slow and cumbersome, would alleviate crime.[13]

• Of various statements about the death penalty, the one with which the police chiefs most identified was: "Philosophically, I support the death penalty, but I don't think it is an effective law enforcement tool in practie."

The police chiefs rejected any suggestion that insufficient use of the death penalty interfered with their work. When asked about obstacles to effective law enforcement, the police chiefs ranked insufficient use of the death penalty last in a list of nine issues, with only 2% saying it was one of their top concerns.[15] Even in the south, only 3% of the police chiefs chose greater use of the death penalty as one of their top priorities. Instead, chiefs throughout the country identified lack of law enforcement resources, drug and alcohol abuse, family problems, and the lack of secure treatment for the mentally ill as their top problems.

10

2008

RECONSIDERING THE DEATH PENALTY IN A TIME OF ECONOMIC CRISIS

The primary purpose of the criminal justice system is to make society safer. All aspects of this system—apprehending offenders, trials, and punishment—have costs. Cutbacks in any part of the criminal justice system can potentially result in a less safe society. Choices have to be made. The death penalty is the most expensive part of the system on a per-offender basis. Millions are spent seeking to achieve a single death sentence that, even if imposed is unlikely to be carried out. Thus money that the police desperately need for more effective law enforcement is wasted on the death penalty. It should be high on the list of programs to cut.



### Police Chiefs Agree Death Penalty Does Not Work as a Deterrent

"The death penalty does little to prevent violent crimes because perpetrators rarely consider the consequences when engaged in violence."

4%

Disagree

Agree

39%

▨ Strongly or Somewhat Disagree

▨ Strongly or Somewhat Agree

Not sure

*The reality is that the death penalty is not, and never has been, a deterrent. Prison safety depends on proper staffing, equipment, resources and training. Certainly the money spent on trying to put someone to death for over 20 years could find better use in addressing those practical needs of our correctional system. . . . [T]the best way to protect our correctional professionals is to recognize the need for a well-trained staff, for the commitment of adequate resources to operate the institutions safely, and for innovative management incentives that serve to reduce the opportunity for prison violence.[ii]*

- John Connor, Chief Special Prosecutor in Montana for 21 years,
  prosecuting five prison-homicide cases

11

2009

RECONSIDERING THE DEATH PENALTY IN A TIME OF ECONOMIC CRISIS

## Police Reject Deterrence Theory

A significant reason why police chiefs do not favor use of the death penalty is that they do not believe it deters murders. Only 37% of those polled believed the death penalty significantly reduces the number of homicides.[16] Fifty-seven percent (57%) agreed: "The death penalty does little to prevent violent crimes because perpetrators rarely consider the consequences when engaged in violence."[17] Only 24% of the respondents believe murderers think about the range of possible punishments before committing homicides.[18]

## Criminologists Concur

The leading criminologists in the country agree with the police chiefs about deterrence. A recent survey showed that 88% of the country's top criminologists do not believe the death penalty acts as a deterrent to homicide.[19]

Eighty-seven percent (87%) believe abolition of the death penalty would have no significant effect on murder rates. The authors concluded:

> Our survey indicates that the vast majority of the world's top criminologists believe that the empirical research has revealed the deterrence hypothesis for a myth ... [T]he consensus among criminologists is that the death penalty does not add any significant deterrent effect above that of long-term imprisonment.[20]

Over many years, deterrence studies have been inconclusive, with most experts concluding that the relative rarity of executions and their concentration in a few states renders national conclusions about a deterrent effect to the death penalty unreliable.[21] If the goal is to deter homicides, the police chiefs have pointed to many ways of achieving it far more effectively than the death penalty.



*With California facing its most severe fiscal crisis in recent memory -- with draconian cuts about to be imposed from Sacramento that will affect every resident of the state -- it would be crazy not to consider the fact that it will add as much as $1 billion over the next five years simply to keep the death penalty on the books.* [iii]

- Former California Attorney General John Van de Kamp

## The Crisis Facing State Criminal Justice Systems

On the state and federal level, efforts are being made to eliminate government programs that do not work and to address deficits through layoffs, shorter hours for governmental services, and higher fees. But so far the death penalty has largely escaped the budgetary scalpel. Capital punishment uses enormous resources on a few cases, with little to show for it. This was the principal reason Colorado's legislature came within one vote this year of passing a bill to abolish the death penalty and use the money saved to deal with unsolved cases, as victims' families had requested.[22]

The same states that are spending millions of dollars on the death penalty are facing severe cutbacks in other justice areas. Courts are open less, trials are delayed, and even police are being furloughed.

• In Florida, the courts have lost 10% of their funding, with another cut expected, as home foreclosures accelerated.[23]

• Philadelphia is leaving 200 police positions unfilled.[24]

• Police in Atlanta had a 10% pay cut through a furlough of 4 hours per week, even as the region experienced an increase in crime.[25]

12

2010

RECONSIDERING THE DEATH PENALTY IN A TIME OF ECONOMIC CRISIS

• In New Hampshire, civil and criminal jury trials were halted for a month to save money; in one county, 77 criminal trials were delayed for up to six months.[26]

• Public defenders in Kentucky, Tennessee, and Florida are overburdened with caseloads of 400 felonies a year, even though national standards set a limit of 150.[27]

• Legal service organizations that provide help to indigent clients in civil matters depend on income from interest rates that are tied to the Federal Reserve's benchmark interest rate. When that rate fell nearly to zero, many legal service organizations were forced to cut staff 20%, just when their services were most needed.[28]

• The legal service agency in East Texas where thousands of people lost their homes in Hurricane Ike in 2008 experienced a budget drop from $16 million to $4 million.[29]

• A recent poll by the Police Executive Research Forum found that 39% of responding police departments said their operating budgets were being cut because of the economy, and 43% said the faltering economy had affected their ability to deliver services.[30]

Clearly, eliminating the death penalty cannot solve all of these problems, but the savings would be significant. Where studies have been done, the excess expenditures *per year* for the death penalty typically are close to $10 million per state.[31] If a new police officer (or teacher, or ambulance driver) is paid $40,000 per year, this death penalty money could be used to fund 250 additional workers in each state to secure a better community.



*[W]hat of the tremendous cost of pursuing capital punishment? . . . [If] we were to replace the death penalty with life without parole, that $22.4 million could pay for 500 additional police officers or provide drug treatment for 10,000 of our addicted neighbors. Unlike the death penalty, these are investments that save lives and prevent violent crime. If we knew we could spare a member of our family from becoming a victim of violent crime by making this policy change, would we do it?*[iv]

-Governor Martin O'Malley of Maryland

## Costs Affect Capital Cases

The costs of capital punishment have forced some states into a crisis in administering the death penalty itself:

• In New Mexico, the state Supreme Court held that more resources had to be made available for indigent defendants facing capital punishment. The legislature declined and adjourned for the year. A trial judge then ruled that the state could not pursue the death penalty in a particular case. The attorney general's office concurred, halting the capital prosecution.[32] The state abolished the death penalty in 2009, with costs as a factor.[33]

• In Georgia, pursuing the death penalty in the Brian Nichols' case cost the state over $2 million in defense costs, and probably more for the prosecution. It resulted in a verdict of life imprisonment. There was no question of Nichols' guilt, but *seeking* the death penalty proved enormously expensive. The case has resulted in a crisis in indigent funding across the state. The head of the death penalty unit of the public defender's office resigned because his office could no longer fairly represent its clients. Many cases have ground to a halt.[34]

• In Florida, a budget crisis has led to a cut in funds for state prosecutors. Some prosecutors will be cutting back on use of the death penalty and perhaps other prosecutions. Florida State Attorney

13

2011

Harry Shorstein recently explained how available funds affect the administration of justice: "There will be cases that can't be tried. . . . We are strained to the breaking point. . . . Instead of seeking the death penalty, maybe we'll seek something else."[35]

In 2009, eleven state legislatures (Colorado, Connecticut, Illinois, Kansas, Maryland, Montana, Nebraska, New Hampshire, New Mexico, Texas, and Washington) considered bills to abolish the death penalty. In many of the debates, cost was an important issue. New Mexico abolished the death penalty. Connecticut voted to abolish it, but the bill was vetoed by the governor. In Colorado and Montana, the abolition bill passed one house of the legislature before being defeated. With the economic crisis continuing, it is likely other states will address this issue.

## How much does the death penalty cost?

There are many ways to approach the question of how much the death penalty costs. One could calculate the cost of each individual step in a death penalty case, such as the investigation, the trial, and the appeals, though this approach focuses only on the distinct minority of cases that go through the whole system. Another approach would be to measure the extra cost to the state of arriving at one death sentence or one execution, a cost that must include the many potential death penalty cases that failed to produce such a result. Finally, one could assess the total extra costs to the state for maintaining the death penalty system instead of a system in which life in prison was the maximum sentence, on a yearly or multi-year basis. In recent years, studies have been conducted not just to determine the bottom line in dollars and cents for this system, but as a way of evaluating whether the death penalty is justified in comparison to other pressing state needs.

There is no national figure for the cost of the death penalty. Every state study is dependent on that state's laws, pay scales, and the extent to which it uses the death penalty. Studies have been conducted by research organizations, public defender offices,

legislative committees, and the media. Researchers have employed different approaches, using different assumptions. However, all of the studies conclude that the death penalty system is far more expensive than an alternative system in which the maximum sentence is life in prison.

The high costs to the state per execution reflect the following reality: For a single death penalty trial, the state may pay $1 million more than for a non-death penalty trial.[36] But only one in every three capital trials may result in a death sentence,[37] so the true cost of that death sentence is $3 million. Further down the road, only one in ten of the death sentences handed down may result in an execution.[38] Hence, the cost to the state to reach that one execution is $30 million. Sums like these are causing officials to rethink the wisdom of such expenditures.

Although arriving at the actual cost of the death penalty in a state is complicated, in some states $30 million per execution is a very conservative estimate:

• In 2008, the California Commission on the Fair Administration of Justice released an exhaustive report on the state's capital punishment system, concluding that it was "dysfunctional" and "broken." The report found that the state was spending $137 million per year on the death penalty. The Commission estimated a comparable system that sentenced the same inmates to a maximum punishment of life without parole would cost only $11.5 million per year.[39] Since the number of executions in California has averaged less than one every two years since the death penalty was reinstated in 1977, the cost for each execution is over $250 million. The state has also indicated it needs another $400 million to construct a new death row.

• In New York and New Jersey, the high costs of capital punishment were one factor in those states' recent decisions to abandon the death penalty. New York spent about $170 million over 9 years and had no executions.[40] New Jersey spent $253 million over a 25-year period and also had no executions.[41] In such states the cost per execution obviously cannot be calculated, but even assuming they eventually

14

RECONSIDERING THE DEATH PENALTY IN A TIME OF ECONOMIC CRISIS

reached one execution every other year, and continued the annual expenditures indicated in their studies, the cost per execution would be in the $20-to-$40 million range.

• In Maryland, where a legislative commission recently recommended abolishing the death penalty, a comprehensive cost study by the Urban Institute estimated the extra costs to taxpayers for death penalty cases prosecuted between 1978 and 1999 to be $186 million.[42] Based on the 5 executions carried out in the state, this translates to a cost of $37 million per execuion.

It is important to emphasize the high costs per execution do not mean that executions themselves are expensive, or that pursuing one execution will cost tens of millions of dollars. Rather, these costs reflect the reality that most capital prosecutions never result in a death sentence, and most death sentences do not result in an execution. The extra expenses begin mounting as soon as counsel are appointed in a potential death penalty case.



*I worked in corrections for 30 years. . . I came to believe that the death penalty should be replaced with life without the possibility of parole. I didn't reach that conclusion because I'm soft on crime. My No. 1 concern is public safety. I wish the public knew how much the death penalty affects their wallets.*

*California spends an additional $117 million each year pursuing the execution of those on death row. Just housing inmates on death row costs an additional $90,000 per prisoner per year above what it would cost to house them with the general prison population.[v]*

-Jeanne Woodford, former Warden of San Quentin

## Death Penalty Costs Increasing

Moreover, the costs per execution are rising. In 1988, the *Miami Herald* estimated that the costs of the death penalty in Florida were $3.2 million per execution, based on the costs and rate of executions at that time.[43] But today there are more people on death row, fewer executions per year, and higher overall costs, all contributing to a significantly higher cost per execution. A recent estimate by the *Palm Beach Post* found a much higher cost per execution: Florida now spends $51 million a year over what it would spend to punish all first-degree murderers with life in prison without parole. Based on the 44 executions Florida carried out from 1976 to 2000, that amounts to a cost of $24 million for each execution, a significant rise from earlier projections.[44]



[T]he death penalty is inefficient and extravagantly expensive. . . . Spending scarce public resources on after-school programs, mental health care, drug and alcohol treatment, education, more crime labs and new technologies, or on hiring more police officers, would truly help create safer communities.[v]

-Norm Stamper, 35-Year-Veteran Police Officer; Chief of Police, Seattle

A similar increase appears in California. In 1988, the *Sacramento Bee* found that the death penalty cost California $90 million annually beyond the ordinary expenses of the justice system, of which $78 million was incurred at the trial level.[45] But the costs have increased sharply since then. According to the *Los Angeles Times* in 2005, maintaining the death penalty system now costs taxpayers more than $114 million a year beyond the cost of simply keeping the convicts locked up for life. This figure does not count the millions more spent on court costs to prosecute capital cases. The *Times* concluded that Californians and federal taxpayers are paying more than **$250 million for *each* execution.**[46]

It is also telling to examine the costs of specific features of the death penalty system, as revealed through state and federal studies:

15

2013

RECONSIDERING THE DEATH PENALTY IN A TIME OF ECONOMIC CRISIS

## Opportunity Costs

Generally, offices involved in the prosecution or defense of criminal cases expand or contract according to the work that must be done. The extra time required by death penalty cases typically has caused the size and budgets of such offices to increase, but not every cost associated with the death penalty appears as a line item in the state budget. Prosecutors, who are not paid by the hour, have been reluctant to divulge the time and related expenses reflecting their part in capital cases. Judges and public defenders are usually salaried employees who will be paid the same amount whether assigned to death penalty cases or other work. But it would be misguided not to include the extra time that pursuing the death penalty takes compared to cases prosecuted without the death penalty in calculating costs.

If it takes 1,000 hours of state-salaried work to arrive at a death sentence and only 100 hours to have the same person sentenced to life without parole, the 900 hours difference is a state asset. If the death penalty is eliminated, the county or the state can decide whether to direct those employee-hours to other work that had been left undone, or choose to keep fewer employees. There is a financial dimension to all aspects of death penalty cases, and proper cost studies take these "opportunity costs" into account.[51]

## The Effect of Plea Bargaining

One asserted refutation that has been offered to the high cost of the death penalty is that the threat of this punishment produces financial savings because defendants are more likely to accept plea bargains, thus avoiding the cost of a trial.[52] However, whatever savings are produced through this ethically questionable practice are overwhelmed by the costs of preparing for a death penalty prosecution even if it never goes to tria.

Some of the most thorough cost analyses conducted over the past 15 years specifically address plea bargaining as an area that could affect the costs of the death penalty, including those in North Carolina,[53] Indiana,[54] Kansas,[55] and California,[56] though

• In Maryland, the 106 cases in which a death sentence was sought but **not** imposed will cost the state $71 million. This extra cost is solely due to the fact that the death penalty was pursued, even though the ultimate outcome was a life or long-term prison sentence.[47]

• The average cost for the **defense** at trial in a federal death case is $620,932, about 8 times that of a non-capital federal murder case.[48]

• In Kansas, the **trial costs** for death cases were about 16 times greater than for non-death cases ($508,000 for death case; $32,000 for non-death case). The appeal costs for death cases were 21 times greater.[49]

• In California, the cost of confining one inmate to death row is $90,000 per year more than the costs of incarcerating the same inmate in a maximum-security prison. Death row inmates require higher security, often in single cells, where meals and other essentials are brought to them daily. This is a very inefficient means of confinement. With California's current death row population of 670, that amounts to over $60 million annually.[50] And a new death row is being planned, at a cost of about $400,000 per inmate.

*It's hard to imagine that any of the 89 Kansas lawmakers who voted in 1994 to revive the death penalty for the "the worst of the worst" criminals anticipated it would still be unused come 2007. Each year sends more men to Kansas' death row, nine in all currently, but the legal challenges to their sentences continue at a glacial pace. Then there is the cost to taxpayers, averaging $1.2 million each by one tally. At some point, given the legal problems and the lack of executions, a death penalty stops making sense for Kansas.[vi]*

-Editorial, (Kansas) Wichita Eagle

2014

some considered it too speculative to measure. These studies nevertheless concluded that the death penalty added significantly to the costs of the criminal justice system.

The dubiousness of any savings from this practice is underscored by a federal death penalty cost study. The Judicial Conference of United States concluded that the average cost of representation in federal death penalty cases *that resulted in plea bargains* was $192,333. The average cost of representation in cases that were eligible for the death penalty but in which the death penalty was not sought was only $55,772.[57] This indicates that *seeking* the death penalty raises costs, even when the case results in a plea bargain. It would be far cheaper to pursue murder cases if the death penalty were never on the table, even taking some non-capital cases to trial, than to threaten the use of the death penalty to induce a plea bargain because the legal costs of preparing for a death penalty case far exceed the costs of a non-death penalty trial.

Moreover, data from some states refute the notion that the death penalty increases the incentive to plea bargain. Prosecutors in New Jersey said that abolition of the death penalty there in 2007 has made no difference in their ability to secure guilty pleas.[58] In Alaska, where plea bargaining was abolished in 1975, a study by the National Institute of Justice found that since the end of plea bargaining, "guilty pleas continued to flow in at nearly undiminished rates. Most defendants pled guilty even when the state offered them nothing in exchange for their cooperation."[59]

In addition, the practice of charging the death penalty for the purpose of obtaining plea bargains is an unethical and unconstitutional interference with a defendant's Sixth Amendment right to trial. It risks convicting innocent defendants who plead guilty solely to avoid the possibility of a death sentence—which has occurred on numerous occasions.[60]

*During my career, which includes 10-plus years as a certified crime scene technician, I have experienced countless violent crime scenes where the perpetrators inflicted horrific injury, pain and suffering on their victims. Of the accused murderers my fellow officers and I have brought to justice, I do not believe any of them was deterred in the least by Nebraska's death penalty.*

*One facet of the issue that is rarely mentioned is the economic cost of capital punishment . . . [these] cases are the most expensive cases by far . . . with a cost as high as $7 million. . . . Removing the death penalty variable from the justice equation should reduce the overall cost.*[vii]

-Jim Davidsaver, 20-Year Police Veteran, Lincoln, Nebraska

## Approximating the National Costs

As noted above, it is not possible to say precisely how much the death penalty costs the nation as a whole. Many states have not even attempted an evaluation of their costs. Of the states where reliable estimates are available, the differing methodologies used, assumptions made, and applicable statutes make generalizations difficult. The cost per execution, for example, is dependent on the number of executions a state has carried out. Cost estimates of $20-$37 million per execution tend to come from states (such as Maryland) that have a fair number of trials, but relatively few executions. A conservative approach would be to use the North Carolina study, which measured actual costs from cases in a state that is sixth in the country in carrying out executions. Their estimate of $2.16 million per execution is probably very understated because the study was conducted in 1993 and costs have increased considerably since then.

Assuming that North Carolina's cost-per-execution is a representative figure, and using the 1,150 executions that have occurred nationally since the death penalty was reinstated in 1976, the country has spent about $2.5 billion beyond the costs that would have been incurred if life in prison was the most severe penalty. (This cost includes cases in which the death penalty was sought—making them more expensive—but no execution occurred.)

2015

RECONSIDERING THE DEATH PENALTY IN A TIME OF ECONOMIC CRISIS

If recent costs per execution measured in Florida and Maryland are more representative of the true costs around the country, then the total bill for the death penalty is likely to be as much as ten times as high, or $25 billion.

Another approach to this same question is to use the extra costs *per death sentence* as the measure for the cost of the death penalty. Again, the North Carolina study may be representative, although conservative. The extra costs attributable to each death sentence were about $300,000. Since 1973, there have been about 7,500 death sentences in the country. Hence, the total net costs for the death penalty have been $2.25 billion, very close to the figure computed from the execution data. Again, data from more recent studies indicate a higher cost per death sentence, implying a much higher national bill for having the death penalty.

## Can the Costs of the Death Penalty Be Reduced?

An understandable reaction to the high costs of the death penalty is to ask whether there are ways it could be made less expensive, such as by 1) curtailing the appeals process, or 2) limiting trial expenses. However, the first interferes with a critical part of the death penalty process and could result in the execution of innocent defendants, and the second could end up costing more than the current system.

Although the appeals process is a tempting target for critics, it actually does not constitute most of the death penalty's costs. In the cost study conducted by Duke University, trial costs in North Carolina made up over 4 times the appeals costs for each death sentence imposed.[61] But cutting back on appeals presents another, more serious problem.

Since 1973, 138 people have been exonerated and freed from death row.[62] In many of these cases, the appeals process was critical in overturning an unfair conviction and allowing a new trial at which the defendant was acquitted. In other cases, even the appeals failed to find evidence of

innocence or a constitutional flaw in the process that led to conviction, but the process at least allowed for the passage of time, during which exonerating DNA evidence was discovered and tested, or the person actually responsible for the crime was identified. The average time between sentencing and exoneration was 9.8 years. If the appeals process were truncated there might not have been time for the mistakes to be found or new evidence to emerge. Most of the innocent people who were sentenced to death would have been executed before they could demonstrate their conviction was a mistake.

The same can be said for attempts to shortchange the defense in capital trials. Good lawyers who are given adequate resources often can uncover the evidence that leads to the acquittal of an innocent defendant.

Good representation and thorough appeals are also necessary for guilty clients. It is impossible to know before the process has run its course who is guilty and who is innocent. In addition, the death penalty is supposed to be given to only the worst offenders. Qualified defense lawyers are needed to ensure that juries have all the information they need to make an informed sentencing decision. In 2003 the American Bar Association issued new guidelines for the appointment and performance of defense counsel in capital cases.[63] These guidelines were intended to establish a national standard of practice, and courts that ignore them risk reversal at a later time.

From a cost perspective, the reasons for providing a full defense are also compelling. In recent years the U.S. Supreme Court has overturned several death penalty cases because of inadequate representation.[64] The thrust of these decisions is that death penalty cases require defense attorneys to investigate every aspect of their client's history in order to prepare an adequate defense on penalty as well as guilt. This implies states should hire experienced attorneys who know how to conduct such investigations, and give them the resources to carry them out. If not, the case may have to be done over, requiring all the expenses of a death penalty trial a second time. Cost studies of the death penalty

2016

indicate that 70% of the expenses occur at the trial level. Two trials greatly increase the cost of the death penalty, especially when the passage of time makes re-trial more difficult. If a new conviction or sentence is handed down, a second appeals process must also be conducted.

 ***Families of Homicide Victims and Missing Persons*** believes the death penalty—as it is practiced in Colorado—is a waste of taxpayers money. It is no deterrent to those who contemplate murder. We propose to eliminate the death penalty and use those funds to investigate our unsolved murders. The most effective deterrent is the certainty of apprehension. Too many people are getting away with murder.[iv]

-Mission Statement, FOHVAMP 2009

## Using the Death Penalty Less

Could states reduce the cost of the death penalty by seeking death sentences less frequently? Fewer trials and appeals, and fewer people on death row, would reduce the overall costs of the death penalty. However, in almost all states the decision whether to seek the death penalty is not centralized but is made by the District Attorney of each county. These prosecutors typically have wide discretion on whether to seek the death penalty. Although it is possible to write more restrictive capital punishment statutes, the tendency has been for states to *expand* their laws to make more crimes eligible for the death penalty.[65] If the murder of a police officer makes a defendant death-eligible, the high-profile murder of a fire fighter or teacher may well result in those crimes becoming death-eligible as well. Once enacted, such expansions are hard to rescind.

Nevertheless, even without changes in the law restricting the types of murder eligible for the death penalty, death sentences have dropped dramatically since 2000. In the 1990s, the annual number of death sentences averaged close to 300, but in recent years the number is down to 115, a 62%

drop. Skeptical juries concerned about innocence[66] and the availability of life without parole sentences have played a part in this decline. The rising costs of the death penalty have caused some prosecutors not to seek the death penalty or to accept plea bargains.[67] The current economic climate could accelerate this trend.

Ironically, a death penalty that is rarely used raises its own concerns. Are the few people chosen for execution really the worst of the worst, or was their sentence just the unfortunate product of ineffective representation or their crime being committed in a high-death penalty county? Do the rationales of deterrence and retribution make sense in a system where only a tiny fraction of eligible criminals in only a few states receive the ultimate punishment?

An article in the *Wall Street Journal* noted that in states where counties are chiefly responsible for prosecuting capital cases, the expenses can put an extraordinary burden on local budgets comparable to that caused by a natural disaster.[68] Katherine Baicker of Dartmouth concluded that capital cases have a "large negative shock" on county budgets, often requiring an increase in taxes. She estimated the extra expenses for counties to be $1.6 billion over a 15-year period.[69]

The net effect of this burden on counties is a widely disparate and highly arbitrary use of the death penalty. "Rich" counties that can afford the high costs of the death penalty may seek this punishment often, while poorer counties may never seek it, settling for life sentences instead. In some areas, this geographical disparity can have racial effects as well, depending on the geographical location of racial minorities within the state. Some counties have approached the brink of bankruptcy because of one death penalty case that had to be repeated two or three times.[70]

19

2017

RECONSIDERING THE DEATH PENALTY IN A TIME OF ECONOMIC CRISIS

## Why Does the Death Penalty Cost So Much?

The principal reason why the death penalty is so expensive can be summed up in one phrase: "death is different."[71] Whenever the government seeks to execute a human being, the legal system is required by a long line of U.S. Supreme Court precedent, buttressed by American Bar Association guidelines, to apply a more methodical and reliable process. The older, less guided form of capital punishment, was struck down as unconstitutional in 1972.[72]

The stakes in death penalty cases have always put more burdens on the state compared to other parts of the criminal justice system. Long before states were required to appoint counsel for indigent defendants in ordinary criminal cases, the appointment of counsel was deemed essential in death penalty cases.[73] Congress required the assignment of two attorneys "learned in the law" in federal capital cases as far back as the First Congress in 1790.[74]

The exposure of so many mistakes in death penalty cases in recent years has shown that the ideal of "heightened due process" in capital cases has often been ignored. It has become clear that a shoddy, less expensive death penalty risks innocent lives. It can also make the punishment of death depend on whether a state is willing to provide adequate representation. The choice today is between a very expensive death penalty and one that risks falling below constitutional standards.

Costs alone may not carry the day in deciding the future of an institution as entrenched as capital punishment. The costs of the death penalty must be compared to other ways of achieving a safer community. The money saved by giving up the death penalty is desperately needed elsewhere: for hiring and training police, solving more crimes, improving forensic labs and timely DNA testing, and crime prevention.

## Stages of a Capital Case

Every stage of a capital case is more time-consuming and expensive than in a typical criminal case. If the defendant is found guilty of a capital crime, an entire separate trial is required, with new witnesses and new evidence, in which the jury must decide whether the penalty should be death or life imprisonment without the possibility of parole. Two attorneys are often appointed for the defense, so that issues of guilt and sentencing can be separately explored. The prosecution has to respond with equal or greater resources since they have the burden of proof.

## Experts Needed

Experts are needed to examine the forensic evidence and to explore the mental health of the defendant. For every expert on one side, the other side needs a rebuttal. In a thoroughly defended case, mitigating and aggravating evidence is compiled and examined. Mitigation experts must probe aspects of the defendant's life from birth to the present. Relatives, co-workers, supervisors, teachers, and doctors are interviewed. The state matches this testimony with evidence of aggravating factors and expert testimony denigrating the defendant's past.

The mental health of the defendant at the time of the crime may become a major issue, with psychiatrists called to testify. If a defendant is mentally retarded, he cannot receive the death penalty, though that determination alone can result in considerable expense. If at any time he was mentally ill, that will be a mitigating factor to be presented to the jury. Most of the preparation for this presentation must be done in advance, whether or not a sentencing trial actually turns out to be necessary. (Of course, in states that are not so thorough, the costs will come later when verdicts are overturned and trials have to be done over.)

20

2018

RECONSIDERING THE DEATH PENALTY IN A TIME OF ECONOMIC CRISIS

## Jury Selection

Jury selection in a capital case can take weeks or even months.[75] Each person's position on the death penalty is explored in detail by the judge, the prosecutor and defense attorney. Such questioning about the eventual punishment of the defendant would not be allowed in a non-death penalty case, and it makes jury selection take much longer in capital cases. Potential jurors must be carefully questioned about their willingness to vote for the death penalty or life imprisonment; any prospective juror who cannot fairly consider both sentencing alternatives is excluded from serving.

Jurors may also be struck for no stated reason. Although race and gender are improper considerations in selecting a jury, they are statistically related to people's views on the death penalty. Hence, jury selection can involve lengthy disputes about whether a particular juror was struck legitimately because of her doubts about the death penalty or unfairly because of her race. With regard to costs, the end result is that jury selection costs much more in capital cases because it takes much longer.

## Appeals

Death penalty trials often conclude with no death sentence. The defendant may be acquitted or sentenced to prison. However, the process of getting to that point is much more expensive because the case was prosecuted as a capital case. If a death sentence is imposed, there are mandatory appeals. Unlike in ordinary criminal cases where the main focus of an appeal is the conviction, capital defendants are entitled to full review of their death sentence as well. A reversal can mean a new sentencing trial with another jury, more witnesses, and another chance that no death sentence will be imposed. Additional appeals may look at constitutional challenges, such as the effectiveness of defense counsel or the withholding of any evidence that should have been turned over before trial. The entire appeal process can take 15 or 20 years before an execution. The average time between sentencing and execution in 2007 was 12.7 years, the longest of any year since the death penalty was reinstated.[76] In 2006, over 400 inmates around the country had been on death row

for 20 years or more, with some cases going back to 1974. Despite the length of this process, however, it is the pre-trial and trial costs that make up the majority of death penalty expenses, not the appeal.

## Time on Death Row

The time that inmates spend on death row also adds to the costs of the death penalty because of the extra security required compared to normal prisons. In California, a legislative commission concluded that it costs the state an *extra* $90,000 for each death row inmate per year compared to the costs of the same inmate housed in general population. With over 670 inmates on death row, that amounts to an additional yearly cost of $60 million solely attributable to the death penalty.[77]

## Expensive Life Sentences

It is important to note that all of these expenses are incurred in the many death penalty cases that never result in an execution. Sentences or convictions can be reversed, defendants may die of natural causes or suicide, governors occasionally grant clemency, and entire statutes can be overturned by the courts. This often means that a life sentence is the end result, but only after a very expensive death penalty process. According to one comprehensive study, 68% of death penalty cases are reversed at some point in the appeals process. When these cases are retried without the defect that led to the reversal, 82% result in a sentence of life or less.[78]

This is an extremely wasteful process. The most prevalent cause for reversal on appeal is the inadequacy of the trial counsel. Frequently, this is the result of courts trying to cut costs by short-changing due process. States that appoint inexperienced lawyers at low fees, or which deny the experts and resources necessary for thorough representation, may end up paying for two trials, with the second one resulting in a life sentence. In most cases a life sentence could have been obtained at the outset of the case for a fraction of the cost. It is the *pursuit* of the death penalty that is so expensive.

2019

RECONSIDERING THE DEATH PENALTY IN A TIME OF ECONOMIC CRISIS

The higher costs of the death penalty process—lengthy trials, complicated appeals with many reversals, the higher security of death row—are unavoidable and likely to increase. Death sentences and executions may continue to decline. The longer the death penalty is retained, the higher the bill will be for nebulous results. At the same time, programs with proven track records in reducing crime and improving society will go unfunded.

## What is Society Receiving in Return?

Costs are only part of a cost-benefit analysis. If the death penalty has no clear and measurable benefits, then its high costs are even less defensible. As discussed above, neither police chiefs, nor criminologists, nor the American public believe that the death penalty serves as a better deterrent to murder than a sentence of life in prison.

The retribution that is imposed in the tiny fraction of cases that result in an execution compared to the number of murders renders this purpose meaningless as well. In reality, executions are rare and depend more on factors such as geography, a state's spending on capital defense, and other arbitrary factors than on the severity of the offense.

Since the death penalty was reinstated in 1976, 41 of the 50 states have had either no executions or an average of less than 1 execution per year.[79] Of the remaining 9 states, only 5 have averaged more than 2 executions per year and only 1 (Texas) averaged more than 3. By contrast, the average number of murders in the U.S. per year during this time was approximately 19,000.[80] Abstract justifications for the death penalty such as retribution and deterrence, which have been widely criticized on other grounds, have little meaning when a punishment is used so rarely and unpredictably.



2020

RECONSIDERING THE DEATH PENALTY IN A TIME OF ECONOMIC CRISIS

## Conclusion

It is doubtful in today's economic climate that any legislature would introduce the death penalty if faced with the reality that each execution would cost taxpayers $25 million, or that the state might spend more than $100 million over several years and produce few or no executions. Surely there are more pressing needs deserving funding, such as retaining police officers, rebuilding roads and bridges, creating jobs, providing health care for children, and keeping libraries open. Yet that is precisely the dilemma that many states with the death penalty now face.

Referring to the costs of the death penalty often evokes a response that money is irrelevant when it comes to justice and a safer society. But the death penalty is not essential to those goals, as the 15 states in the U.S. and the growing majority of countries in the world without the death penalty have demonstrated. Even states with the death penalty rarely use it. Justice can be achieved far more reliably and equitably without the death penalty. There are more efficient ways of making society safer.

*By pursuing life without parole sentences instead of death, resources now spent on the death penalty prosecutions and appeals could be used to investigate unsolved homicides, modernize crime labs, and expand effective violence prevention programs.*[81]

**-Letter signed by 30 law enforcement officials to the California Commission on the Fair Administration of Justice**

The economic crisis that began in 2008 continues, and its impact on states will be felt for years to come. There is no reason the death penalty should be immune from reconsideration, along with other wasteful, expensive programs that no longer make sense. The promised benefits from the death penalty have not materialized. Deterrence is not credible; vengeance in the name of a few victims in a handful of states is both divisive and debilitating. If more states choose to end the death penalty, it will hardly be missed, and the economic savings will be significant. The positive programs that can be funded once this economic burden is lifted will be readily apparent. Such an approach would be smart on crime.

23

2021

RECONSIDERING THE DEATH PENALTY IN A TIME OF ECONOMIC CRISIS

## REFERENCES

[1]. E. Holder, Speech at the American Bar Association Convention, Aug. 3, 2009; available at U.S. Dept. of Justice http://www.usdoj.gov/ag/speeches/2009/ag-speech-090803.htm.

[2]. J. Abbott, "Less money, more pain and injustice," Fort Worth Star-Telegram, January 20, 2008 (op-ed).

[3]. R. Samuels, "Capital Punishment is a costly mistake," Contra Costa Times, Dec. 19, 2008 (op-ed).

[4]. See, e.g., A. Goodnough, "States Turning to Last Resorts in Budget Crisis," N.Y. Times, June 22, 2009, at A1.

[5]. See, e.g., E. McNichol & I. Law, "State Budget Troubles Worsen," Center on Budget and Policy Priorities, Feb. 10, 2009.

[6]. Death sentences have declined 60% since 2000. Executions have also declined. The number of people executed in 2008 was the lowest in 14 years. See Death Penalty Information Center (DPIC), "The Death Penalty in 2008: Year End Report," http://www.deathpenaltyinfo.org/2008YearEnd.pdf.

[7]. See id. (95% of executions in 2008 were in the South).

[8]. RT Strategies, "Omnibus Poll and The Law Enforcement Leadership Poll," Oct. 29-Nov. 14, 2008 [hereinafter, Police Poll]. The margin of error for the poll was +5.1 percent.

[9]. Police Poll, question 3.

[10]. Id. at question 4.

[11]. Id. at question 6c.

[12]. Id. at question 7c.

[13]. Id. at questions 4 and 8.

[14]. Id. at question 9.

[15]. Id. at question 2.

[16]. Id. at question 8.

[17]. Id. at question 6.

[18]. Id. at question 8.

[19]. M. Radelet & T. Lacock, "Do Executions Lower Homicide Rates? The Views of Leading Criminologists," 99 Journal of Criminal Law and Criminology 489 (2009).

[20]. Id. at 504.

[21]. See, e.g., J. Donohue & J. Wolfers, "Uses and Abuses of Empirical Evidence in the Death Penalty Debate," 58 Stanford Law Review 791, 843 (2005) ("Aggregating over all of our estimates, it is entirely unclear even whether the preponderance of evidence suggests that the death penalty causes more or less murder.").

[22]. K. Johnson, "Death Penalty Repeal Fails in Colorado," N.Y. Times, May 5, 2009.

[23]. S. Karnowski, "Poor economy hits courts, hurts programs for poor," Associated Press, Jan. 23, 2009 (Google-hosted news).

[24]. C. Johnson, "Double Blow for Police: Less Cash, More Crime," Washington Post, Feb. 8, 2009, at A3.

[25]. Id.

[26]. T. Baldas, "Cost-cutting hits courts," National Law Journal, Feb. 16, 2009.

[27]. See Karnowski, note 23 above.

[28]. E. Eckholm, "Interest Rate Drop Has Dire Results for Legal Aid," N.Y. Times, Jan. 19, 2009.

[29]. Id.

[30]. K. Bohn, "Police face cuts as economy falters," CNN.com, Oct. 23, 2008.

[31]. See discussion below in text, pp. 12-14.

[32]. Scott Sandlin, "Death Penalty Out in Guard Killing," Albuquerque Journal, April 4, 2008.

[33]. See D. Baker, "NM Gov Reconsiders Death Penalty," Associated Press, February 16, 2009. The governor signed the bill abolishing the death penalty on March 18, 2009.

[34]. Shannon McCaffrey, "Georgia Senate slashes money for public defenders," Macon Telegraph, February 20, 2008; see also N.Y. Times, September 7, 2007.

[35]. Jacksonville Daily Record, September 13, 2007.

[36]. In one of the most recent cost studies, The Urban Institute estimated the additional cost of a death penalty trial in Maryland to be $1.9 million. J. Roman et al., "The Cost of the Death Penalty in Maryland," The Urban Institute (March 2008), at 2.

[37]. In the Maryland study, 56 death sentences were handed down out of 162 cases in which the death penalty was sought. Id. at 3. This does not even account for the many cases in which the death penalty was originally sought, incurring many additional expenses, but then settle without a trial or death sentence being imposed.

[38]. Of the 56 death sentences in Maryland, five have resulted in executions.

[39]. See California Commission on the Fair Administration of Justice, http://www.ccfaj.org/rr-dp-official.html, June 30, 2008 [hereinafter California Commission].

24

2022

RECONSIDERING THE DEATH PENALTY IN A TIME OF ECONOMIC CRISIS

⁴⁰. See, e.g., D. Wise, "Capital Punishment Proves to Be Expensive," New York Law Journal, April 30, 2002, at p.1; see also "Costly Price of Capital Punishment—Case Shows Effort Expended Before the State takes a Life," Albany Times-Union, Sept. 22, 2003 (over $160 million spent in 7 years); N.Y. Times, Feb. 28, 2005 (citing costs of $170 million).

⁴¹. See Newsday, Nov. 21, 2005.

⁴². See J. McMenamin, "Death penalty costs Md. more than life term," Baltimore Sun, March 6, 2008. The study included projected future costs since many of the cases prosecuted during that time are still not complete and are incurring additional expenditures.

⁴³. D. Von Drehle, "Bottom Line: Life in Prison One-sixth as Expensive," Miami Herald, July 10, 1988, at 12A.

⁴⁴. S. V. Date, "The High Price of Killing Killers," Palm Beach Post, Jan. 4, 2000, at 1A.

⁴⁵. S. Maganini, "Closing Death Row Would Save State $90 Million a Year," Sacramento Bee, March 28, 1988, at 1.

⁴⁶. Los Angeles Times, March 6, 2005 (California has now had 13 executions).

⁴⁷. J. McMenamin, see note 42 above.

⁴⁸. Office of Defender Services of the Administrative Office of the U.S. Courts, "Update on Cost, Quality, and Availability of Defense Representation in Federal Death Penalty Cases," June 2008; prepared by Jon Gould and Lisa Greenman.

⁴⁹. Performance Audit Report: Costs Incurred for Death Penalty Cases: A K-GOAL Audit of the Department of Corrections, Kansas (2003).

⁵⁰. California Commission, see note 39 above, at 70.

⁵¹. See, e.g., P. Cook, "The Costs of Processing Murder Cases in North Carolina," Duke University (May 1993). This is one of the most comprehensive cost studies conducted in the country. It included the costs of the extra time spent by prosecutors, judges, and other personnel on death penalty cases and concluded that the death penalty costs North Carolina $2.16 million per execution over the costs of a non-death penalty system imposing a maximum sentence of imprisonment for life.

⁵². See, e.g., K. Scheidegger, "The Death Penalty and Plea Bargaining to Life Sentences," Working paper 09-01, at 13, Criminal Justice Legal Foundation (Feb. 2009) ("repeal of the death penalty would likely result in fewer pleas to life or long sentences, requiring that prosecutors either take more cases to trial at a substantial financial cost or accept bargains to lesser sentences at a substantial cost to public safety.").

⁵³. See P. Cook, note 51 above.

⁵⁴. Indiana Criminal Law Study Commission, January 10, 2002.

⁵⁵. See note 49 above.

⁵⁶. See California Commission, note 39 above.

⁵⁷. See, "Federal Death Penalty Cases: Recommendations Concerning the Cost and Quality of Defense Representation," Judicial Conference of the United States (May 1998). The prosecution costs in death cases were 67% higher than the defense costs, even before including the investigative costs of law enforcement agencies.

⁵⁸. R. Lardini, "A year later, state assesses justice without death penalty," New Jersey Star Ledger, December 15, 2008.

⁵⁹. R. Fine, "Plea Bargaining: An Unnecessary Evil," in Criminal Justice?, Robert Bidinotto, ed. Irving-on-Hudson: Foundation for Economic Education, 1996; cited in "Plea Bargaining: Economic Costs and Benefits," undergraduate paper for The Economics of the Law, Washington University in St. Louis, December 5, 1996: www.dianahsieh.com/undergrad/pb.html.

⁶⁰. See, e.g., P. Hammel, "Pardons granted to five in murder they didn't commit," Omaha World-Herald, January 27, 2009. The defendants who were pardoned had confessed to the crime to escape the threat of the death penalty. "We were all scared of it. They were all threatening us with it," said James Dean, one of the five who was exonerated. Ada Joann Taylor, another defendant, said, "They told me they wanted to make me the first female on death row." Id.

⁶¹. See P. Cook, note 51 above, at p. 97, table 9.1.

⁶². See DPIC, http://www.deathpenaltyinfo.org/innocence-and-death-penalty (visited Aug. 11, 2009).

⁶³. "ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases," 31 Hofstra Law Review 913 (2003) (revised ed.).

⁶⁴. See, e.g., Wiggins v. Smith, 539 U.S. 510 (2003); Rompilla v. Beard, 545 U.S. 374 (2005).

⁶⁵. See J. Krichmeier, "Aggravating and Mitigating Factors: The Paradox of Today's Arbitrary and Mandatory Capital Punishment Scheme," 6 William & Mary Bill of Rights Journal 345, 397 (1998).

⁶⁶. See R. Dieter, "A Crisis of Confidence: Americans' Doubts About the Death Penalty," DPIC (2007).

⁶⁷. See, e.g., T. Coyne, "Indiana Executions at slowest pace in 15 years," Chicago Tribune, June 14, 2009 (citing prosecutors' hesitations due to the high costs of the death penalty).

⁶⁸. R. Gold, "Counties Struggle with High Cost of Prosecuting Death-Penalty Cases," Wall St. Journal, Jan. 9, 2002.

⁶⁹. K. Baicker, "The Budgetary Repercussions of Capital Convictions," National Bureau of Economic Research, Working Paper 8382, July 2001.

⁷⁰. See generally, R. Dieter, "Millions Misspent: What Politicians Don't Say About the High Costs of the Death Penalty," (revised edit., 1994) (available from DPIC).

2023

RECONSIDERING THE DEATH PENALTY IN A TIME OF ECONOMIC CRISIS

[71]. See Gregg v. Georgia, 428 U.S. 153, 188 (1976) ("penalty of death is different in kind from any other punishment").

[72]. See Furman v. Georgia, 408 U.S. 238 (1972).

[73]. Powell v. Alabama, 287 U.S. 45 (1932) (Scottsboro boys' case).

[74]. 1 Stat. 118-19, sec. 29 (1790).

[75]. See, e.g., B. Miller, "D.C. Case Has Court Struggling for a Jury," Washington Post, April 29, 2001, at C1 (after 5 weeks of jury selection in a capital case, jury was still not complete).

[76]. U.S. Dept. of Justice, Bureau of Justice Statistics, "Capital Punishment, 2007 – Statistical Tables," at Table 11 (available at http://www.ojp.usdoj.gov/bjs/pub/html/cp/2007/cp07st.htm).

[77]. California Commission, see note 39 above, at 70.

[78]. See J. Liebman, et al., Capital Attrition: Error Rates in Capital Cases, 1973-1995, 78 Texas Law Review 1839 (2000). The author notes that in an additional 7% of the cases there is not even a conviction after retrial.

[79]. See DPIC, http://www.deathpenaltyinfo.org/executions-united-states, (June 2009).

[80]. See U.S. Dept. of Justice, FBI Yearly Uniform Crime Reports, http://www.fbi.gov/ucr/ucr.htm (2009).

[81]. See Death Penalty Focus Press Release at http://www.deathpenalty.org/article.php?id=212 (March 27, 2008).

## REFERENCES FOR BOXES

i. J. Abbott, "Less money, more pain and injustice," Fort Worth Star-Telegram, January 20, 2008 (op-ed).

ii. J. Connor, "Death Penalty drains justice system resources," Billings Gazette, March 22, 2009 (op-ed).

iii. J. Van de Kamp, "California can't afford the death penalty," Los Angeles Times, June 10, 2009 (op-ed).

iv. M. O'Malley, "Why I Oppose the Death Penalty," Washington Post, February 21, 2007 (op-ed).

v. J. Woodford, "Death Row Realism," Los Angeles Times, October 2, 2008) (op-ed).

vi. N. Stamper, "Death penalty wastes money, while failing to reduce crime," Mercury News, Nov. 19, 2007 (op-ed).

vii. Editorial, Wichita Eagle, Sept. 13, 2007.

viii. J. Davidsaver, (Lincoln) Journal-Star, Mar. 25, 2007 (op-ed).

ix. Families of Homicide Victims and Missing Persons, http://www.unresolvedhomicides.org/about.html (2009).



2024

back cover





The Death Penalty Information Center (DPIC) is a non-profit organization serving the media and the public with analysis and information on issues concerning capital punishment. The Center provides in-depth reports, issues press releases, conducts briefings for journalists, and serves as a resource to those working on this issue. The Center is funded through the generosity of individual donors and foundations, including the Roderick MacArthur Foundation, the Open Society Institute, and the European Union. The contents of this document are the sole responsibility of DPIC and can under no circumstances be regarded as reflecting the position of the European Union or other donors.

www.deathpenaltyinfo.org.

2026

CAUSE NO. F45059

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 413th DISTRICT COURT |
| | § | |
| VS. | § | OF |
| | § | |
| MARK ANTHONY SOLIZ | § | JOHNSON COUNTY, TEXAS |

## STATE'S THIRTEENTH AMENDED WITNESS LIST

**TO THE HONORABLE JUDGE OF SAID COURT:**

   **COMES NOW** the State of Texas represented by her Criminal District Attorney of Tarrant County, Texas, and files this **STATE'S THIRTEENTH AMENDED WITNESS LIST**. All address and phone numbers not specifically listed below are contained in the State's file that is been made available to the attorney of record for the Defendant.

A. **FORT WORTH POLICE DEPARTMENT**
350 W. BELKNAP ST.
FORT WORTH, TEXAS 76102

1.   OFF. J ABRAMS
2.   OFF. J ALANIZ
3.   OFF. A ALLCON
4.   OFF. ALLEN
5.   OFF ANDREWS
6.   OFF. L AVERY
7.   OFF. R BALLARD
8.   SGT. R. BATES
9.   DET. T BOETCHER
10.  OFF. JG BRADFORD
11.  OFF. D BRUCE
12.  OFF. B BRUMLEY
13.  OFF. BUNNY BUTH
14.  OFF BLUNK
15.  OFF. A CARDWELL
16.  OFF. CAVETT
17.  DET. J CEDILLO
18.  OFF. ERIC CHARLES
19.  OFF. ROBERT COSTA



STATE'S THIRTEENTH AMENDED WITNESS LIST - PAGE 1

2027

20.  OFF. JR COX
21.  OFF TJ CRABILL
22.  OFF. B DAVIS
23.  SGT. DENA
24.  OFF BRIANNE DIBLEY
25.  OFF. F DISSINGER
26.  OFF TC DUNN
27.  THOMAS EKIS
28.  SGT. ELGIN
29.  OFF. MANUEL ELIZARRARAZ
30.  OFF JA FARAH
31.  OFF. W FIGUEROA
32.  OFF JC FRIAS
33.  DET. HL GIBBS
34.  OFF. J GIPSON
35.  OFF. RD GILFOUR
36.  OFF. GD GILLIAM
37.  OFF. G. GUTIERREZ
38.  OFF. D. HALMAGEAN
39.  OFF RUSSELL HAYDEN
40.  OFF. EV HERNANDEZ
41.  OFF. M. HERNANDEZ
42.  OFF JG HOLMAN
43.  OFF. J HOPPER
44.  OFF. S HOWZE
45.  OFF. HYDEN
46.  OFF. P HYDER
47.  OFF SA IKER
48.  SGT. B JAMISON
49.  OFF. AM JAY
50.  OFF.J JOHNSON
51.  OFF. C JONES
52.  OFF. K JUDD
53.  OFF KEADLE
54.  OFF SARAH KEENAN
55.  OFF. KERRY KIMBALL
56.  OFF. LARRY LANCE
57.  OFF. G LARA
58.  DET. T LAWRENCE
59.  OFF JL LAWSON
60.  OFF. T LEE
61.  SUNDAYE LOPEZ
62.  OFF. G MEDRANO
63.  OFF. MORRISON

<u>STATE'S THIRTEENTH AMENDED WITNESS LIST - PAGE 2</u>

.2028

64. JENNIFER NOLLKAMPER
65. DET. OCHOA
66. DET. D PAINE
67. OFF. E PATE
68. DET. S PHILLIPS
69. OFF. RJ PRESNEY
70. OFF. A PRICE
71. OFF. M RAMIREZ
72. DET. B RANDOLPH
73. DET. EB RAYNSFORD
74. SGT REYNOLDS
75. DET. JT RHODEN
76. OFF DK RHONE
77. OFF. M RIDDLE
78. OFF. K ROBERTSON
79. OFF WT ROBINSON
80. OFF. D LEWIS
81. H. GONZALEZ-PINEDA- 911 OPERATOR
82. MANDY RIDDLE-FW POLICE COMMUNICATIONS
83. OFF. LE ELGIN
84. OFF. RG BROTHERTON
85. OFF. EVERETT
86. OFF. DORSEY
87. J. SALAZAR
88. OFF. W. SHOW
89. OFF JM SIMMS
90. CAPT. SKIDMORE
91. OFF. A STAGGS
92. DET JD STANFORD
93. DET. JG STEELE
94. OFF. D SULLIVAN
95. OFF JD TATE
96. OFF JC TAPIA
97. OFF. R THOMPSON
98. OFF. J THORNTON
99. OFF. R TOWNS
100. DET. L TRACY
101. OFF. D UKLE
102. DET. J VARNON
103. OFF. T VOA
104. OFF. D WASHINGTON
105. OFF. WEBB
106. OFF. CHRIS WELLS
107. OFF. JG WILSON

STATE'S THIRTEENTH AMENDED WITNESS LIST - PAGE 3

2029

108. DET CE WISE
109. OFF. DARRYL W. WOODY
110. OFF. K MCMURTREY
111. OFF. SHEERAN
112. OFF. GOSSETT
113. OFF. OWINGS
114. OFF. TIGRETT
115. OFF. LA SCHERERN
116. DET. K. SULLIVAN
117. OFF WT WATKINS
118. CAMI WIMBERLEY
119. OFF. TYLER
120. STEPHANIE POTTER
121. LAURA MARTINEZ
122. CAROLINE FRALIA
123. ARNETTA BELL
124. ERNEST TAMAYO
125. OFFICER EIKER
126. R. CANTU
127. T.A. CURTIS

## B. CIVILIANS

1. SAMEER ABDEL-JABER
   FORT WORTH, TEXAS
2. SAMMY ABU-LUGHOD
   FORT WORTH, TEXAS
3. RON ALLEY
   FORT WORTH, TEXAS
4. NARCISO AMADOR
   FORT WORTH, TEXAS
5. JAMES EDWARD ANDREWS
   FORT WORTH, TEXAS
6. JESSICA BALDERAS
   GODLEY, TEXAS
7. JESUS BELTRAN
   FORT WORTH, TEXAS
8. BRIAN BROWN
   BURLESON, TEXAS
9. DR. NATALIE BROWN
   FORT WORTH, TEXAS
10. RODNEY BROWN
    FORT WORTH, TEXAS
11. MAXIMINO CHAVEZ-SOTO
    FORT WORTH, TEXAS

STATE'S THIRTEENTH AMENDED WITNESS LIST - PAGE 4

2030

12. V. CIRCELLI
    FORT WORTH, TEXAS
13. CHELSEA CIRCELLI
    FORT WORTH, TEXAS
14. BRENDA COFER
    GODLEY, TEXAS
15. FELIPE CONTRERAS
    FORT WORTH, TEXAS
16. SAMUEL COX
    FORT WORTH, TEXAS
17. CHRISTOPHER DAVILA
    GRANBURY, TEXAS
18. BEN DAVIS
    GODLEY, TEXAS
19. KILA DAVIS
    GODLEY, TEXAS
20. CLAYTON DAVIS
    GODLEY, TEXAS
21. BARRY DICKEY
    MANSFIELD, TEXAS
22. KENNY DODGIN
    WATAUGA, TEXAS
23. ARNOLDO DOMINGUEZ
    FORT WORTH, TEXAS
24. FERNANDO DOMINGUEZ
    FORT WORTH, TEXAS
25. MIGUEL DOMINGUEZ
    FORT WORTH, TEXAS
26. EDDIE DURAN
    FORT WORTH, TEXAS
27. ELIZABETH ESTRADA
    TARRANT COUNTY JAIL
28. A. EVANS
    FORT WORTH, TEXAS
29. CHADLEY FOSTER
    FORT WORTH, TEXAS
30. MARCY GIRTON
    1300 ROSEWOOD DRIVE
    COLUMBIA, SOUTH CAROLINA
31. ARTURO GONZALES
    TARRANT COUNTY JAIL
32. JOSE GONZALES
    FORT WORTH, TEXAS
33. STEPHANIE GRAY

STATE'S THIRTEENTH AMENDED WITNESS LIST - PAGE 5

          BENBROOK, TEXAS
34.    VIVIANA GONZALES
          FORT WORTH, TEXAS
36.    NABIL HILO
          FORT WORTH, TEXAS
37.    DONATELLO HINKLE
          FORT WORTH, TEXAS
38.    JOHN HINKLE
          FORT WORTH, TEXAS
39.    JL HINOJOSA
          FORT WORTH, TEXAS
40.    BARNEY B HOLLAND
          FORT WORTH, TEXAS
41.    LACY HUNSUCKLE
          FORT WORTH, TEXAS
42.    JEFFEREY T. KNOESEL
          FORT WORTH, TEXAS
43.    RYAN LAMB
          FORT WORTH, TEXAS
44.    NH LASEMAN
          CLEBURNE, TEXAS
45.    LISA LEWIS
          FORT WORTH, TEXAS
46.    WHITNEY LEWIS
          FORT WORTH, TEXAS
47.    JAIMES LUCIANO
          FORT WORTH, TEXAS
48.    JESUS LUNA
          FORT WORTH, TEXAS
49.    LUIS LUNA
          FORT WORTH, TEXAS
50.    THERESA MACHADO
          FORT WORTH, TEXAS
51.    M. MAHARAZAN
          FORT WORTH, TEXAS
52.    RICKY MALONE
          FORT WORTH, TEXAS
53.    JERRY MARTIN
          BENBROOK, TEXAS
54.    DIEGO MARTINEZ
          FORT WORTH, TEXAS
55.    L. MARTINEZ
          FORT WORTH, TEXAS
56.    YOLANDA MARTINEZ

<u>STATE'S THIRTEENTH AMENDED WITNESS LIST - PAGE 6</u>

2032

FORT WORTH, TEXAS

57. DOUGLAS MATA
FORT WORTH, TEXAS

58. ROSIE MEDINA
TARRANT COUNTY JAIL

59. RAMON MORALES
FORT WORTH, TEXAS

60. JUSTIN MORRIS
FORT WORTH, TEXAS

61. OLGA NAREZ
FORT WORTH, TEXAS

62. ANDREAS NAVA
FORT WORTH, TEXAS

63. MATHEW NAVARRO
FORT WORTH

64. WALEED OBAID
FORT WORTH, TEXAS

65. ERICA LEE ODONNELL
FORT WORTH, TEXAS

66. DANIEL ORDONEZ
FORT WORTH, TEXAS

67. MIRIAM OLIVAREZ
DURANT, OK

68. PATRICIA PARSONS
FORT WORTH, TEXAS

69. ROXANE PEREZ
FORT WORTH, TEXAS

70. JUAN RAMIREZ
FORT WORTH, TEXAS

71. MARIA RAMIREZ
FORT WORTH, TEXAS

72. BRIANNA RAMIREZ
FORT WORTH, TEXAS

73. MICHAEL RAMIREZ
FORT WORTH, TEXAS

74. JAQUALINE RAMIREZ
FORT WORTH, TEXAS

75. VERONICA RAMIREZ
FORT WORTH, TEXAS

76. JOSE RAMOS
TARRANT COUNTY JAIL

77. VINCE RANGEL
FORT WORTH, TEXAS

78. MIRTHA REYES

STATE'S THIRTEENTH AMENDED WITNESS LIST - PAGE 7

DALLAS, TEXAS

79.   CATHY RICHARDSON
     TARRANT COUNTY JAIL

80.   MARIA RIVERA
     FORT WORTH, TEXAS

81.   RICK RODEN
     GODLEY, TEXAS

82.   TARA RODEN
     GODLEY, TEXAS

83.   JUANA SALAS
     FORT WORTH, TEXAS

84.   ENRIQUE SAMANIEGO
     FORT WORTH, TEXAS

85.   JESSE SANCHEZ
     FORT WORTH, TEXAS

86.   ELVIA SILVA
     FORT WORTH, TEXAS

87.   JOSHUA SOLIS
     FORT WORTH, TEXAS

88.   JORGE TAMAYO
     FORT WORTH, TEXAS

89.   JOAN TREW
     FORT WORTH, TEXAS

90.   JAMIE VESSELL
     FORT WORTH, TEXAS

91.   LETICIA VILLEGAS
     FORT WORTH, TEXAS

92.   DARLENE WATSON
     BENBROOK, TEXAS

93.   WALTER LUTHER WATSON
     BENBROOK, TEXAS

94.   GLORIA SERRANO
     FORT WORTH, TEXAS

95.   MIKE ORTEGA
     FORT WORTH, TEXAS

96.   SANTOS RANGEL
     FORT WORTH, TEXAS

97.   SAMANTHA ESTRADA
     FORT WORTH, TEXAS

98.   PAUL CONTRERAS
     FORT WORTH, TEXAS

99.   EDDIE CONTRERAS
     FORT WORTH, TEXAS

100.  DONNA SUE SOLIZ

STATE'S THIRTEENTH AMENDED WITNESS LIST - PAGE 8

2034

FORT WORTH, TEXAS
101. ARNOLD ZAMORA
FORT WORTH, TEXAS
102. JUAN RAMIREZ
FORT WORTH, TEXAS
103. VERONICA GARCIA
FORT WORTH, TEXAS
104. BRIANNA RAMIREZ
FORT WORTH, TEXAS
105. MICHAEL RAMIREZ
FORT WORTH, TEXAS
106. MIRTHA REYES
FORT WORTH, TEXAS
107. TAMMY RAMOS
FORT WORTH, TEXAS
108. MONICA RAMOS
FORT WORTH, TEXAS
109. TERESA RAMOS
FORT WORTH, TEXAS
110. CLAYTON SMITH
GODLEY, TEXAS
101. MARY SMITH
GODLEY, TEXAS
102. SHARON SOLIZ-RANGEL
FORT WORTH, TEXAS
103. BRIAN MATTHEW BROWN
FORT WORTH, TEXAS
104. RILEY HAMPTON DAVIS
GODLEY, TEXAS
105. RHETT HARRISON DAVIS
GODLEY, TEXAS
106. ELLGIO CONTRERRAS
KEENE, TEXAS
107. MARY GALUS
FORT WORTH, TEXAS
108. RUBEN CISNEROS
FORT WORTH, TEXAS
109. KAREN MCMURTREY
FORT WORTH, TEXAS
110. HOWARD MCMURTREY
FORT WORTH, TEXAS
111. GENE TURNEY
FORT WORTH, TEXAS
112. RAUL SAENZ

STATE'S THIRTEENTH AMENDED WITNESS LIST - PAGE 9

2035

FORT WORTH, TEXAS
113.   MIKE ORTEGA
FORT WORTH, TEXAS
114.   CATHERINE POLOMA
FORT WORTH, TEXAS
115.   ANIL BHANTANA
FORT WORTH, TEXAS
116.   DANIEL ORDONEZ
FORT WORTH, TEXAS
117.   ROBERT VARGAS
FORT WORTH, TEXAS
118.   MR. MEEHAN
FORT WORTH, TEXAS
119.   BEATRIZ MEEHAN
FORT WORTH, TEXAS
120.   SYDNEY NAVARRO
FORT WORTH, TEXAS
121.   MARK PORTER
FORT WORTH, TEXAS
122.   ERNEST VAN DER LEEST
FORT WORTH, TEXAS
123.   PAM WALKER BROWN
FORT WORTH, TEXAS
124.   MICHAEL WOODS
FORT WORTH, TEXAS
125.   RICHARD WOOD
FORT WORTH, TEXAS
126.   THERESA MACHADO
FORT WORTH, TEXAS
127.   CHRIS MALONE
FORT WORTH, TEXAS

C. **JOHNSON COUNTY LAW ENFORCEMENT CENTER**
CLEBURNE, TEXAS
1.    JOSE ARRIOLA
2.    LT. DAVID BOGGESS
3.    LT. BOUTWELL
4.    ALLEN CARDENA
5.    ARNOLD GRIFFIN
6.    MICHAEL GOOD
7.    SGT. LAURIE GUNTER
8.    SHAWN HERNANDEZ
9.    EUGENE HINDS
10.   WARDEN JANICEK

STATE'S THIRTEENTH AMENDED WITNESS LIST - PAGE 10

11.   CHIEF JOHNSON
12.   TRAVIS JONES
13.   MAJ. J. KELSEY
14.   CHASE KINMAN
15.   DANA KINNARD
16.   RONNIE MCCOWAN
17.   SGT. J. MEEKS
18.   SGT. MOLINA
19.   STEVEN PARRISH
20.   CHRISTIAN PASCHAL
21.   SHELLY PRESTON
22.   GINGER PROCTOR
23.   JASON PUGH
24.   TIMOTHY PUTMAN
25.   CORRECTIONS OFF. JUSTIN RALEIGH
26.   JAMES RENFRO
27.   RENEE SAMPLE
28.   DAVID TURNER
29.   JESSE TURNER
30.   WILSON WIMBERLY
31.   OFFICER PIERCE

D. **JOHNSON COUNTY SHERIFF'S OFFICE**
1102 E. KILPATRICK
CLEBURNE, TEXAS 76031

1.   SGT R BATES
2.   DET. BENNETT
3.   DET. D. BLANKENSHIP
4.   DEP. L CORWIN
5.   DET.T DALTON
6.   DEP. FORD
7.   CPT. T. FULLER
8.   LT. MIKE GAUDET
9.   DET. A GILREATH
10.   TINA HODNETT
11.   DEP. HOGAN
12.   LT. T JONES
13.   DEP. W. KETCHUM
14.   DET. J KNIFFEN
15.   DEP.K LINK
16.   DEP. M POOLE
17.   DEP. M POWELL
18.   PAULA REID
19.   LAURIE STOVALL

STATE'S THIRTEENTH AMENDED WITNESS LIST - PAGE 11

2037

20. DEP. TRUITT
21. JW WALDRAN
22. DET. K WRENN
23. DET. L YOCHAM
24. SHERIFF BOB ALFORD


E. **TARRANT COUNTY MEDICAL EXAMINER'S OFFICE**
   200 FELIKS GWOZDZ PL.
   FORT WORTH, TEXAS 76104
   1. DR. S. BAO
   2. KELLY BELCHER
   3. P. ELRASHID
   4. DR. MARC KROUSE
   5. MICHAEL MAYER
   6. DR. N. PEERWANI
   7. M. POLLARD
   8. ESTHER GUTIERREZ
   9. DR. GARY SISLER
   10. T. SWAN
   11. MARK THOMPSON
   12. CAROLYN VAN WINKLE
   13. BILL WALKER
   14. DR. LLOYD WHITE
   15. ESTHER GUTIERREZ
   16. PAT EDDINGS
   17. DUSTY PYLE

F. **MANSFIELD POLICE DEPARTMENT**
   1200 E. BROAD ST.
   MANSFIELD, TEXAS 76063
   1. DET. BLANSIT
   2. MAX COURTNEY
   3. R. DENNING
   4. R. HASH
   5. M. MALCOLM
   6. B. MOORE

G. **BENBROOK POLICE DEPARTMENT**
   1. OFF. D BYRD
   2. DET. LEE
   3. DET. J LEWELLEN
   4. LT. D MARTIN


<u>STATE'S THIRTEENTH AMENDED WITNESS LIST - PAGE 12</u>

2038

5.  OFF. T MILLER
6.  C. MONTGOMERY
7.  DET. C ROSS
8.  OFF. D WALLACE

H. **UNT**
UNT CENTER FOR HUMAN IDENTIFICATION
3500 CAMP BOWIE BLVD.
FORT WORTH, TEXAS 76107
1.  CHRISTINA CAPT
2.  FARAH PLOPPER
3.  JENNIFER URBINA
4.  RUTH R DUNAHOO
5.  ANNETTA MILLER
6.  KELLY NELSON

I. **INTEGRATED FORENSIC LABS**
901 CLINIC DRIVE, STE. D110
EULESS, TEXAS 76039
1.  LANNY EMMANUEL
2.  PAUL SLOCUM

J. **DPS CRIME LABORATORY**
GARLAND, TEXAS
1.  ALLISON HEARD
2.  TRISHA KACER
3.  AMBER MOSS

K. **TARRANT COUNTY COMMUNITY SUPERVISION**
1.  PAT HUSTON
2.  LEANNA JUDD
3.  R. SALINAS
4.  DAVIS CHANDLER

L. **MENTAL HEALTH PROFESSIONALS**
1.  JOHN LASETER, PHD
11625 CUSTER ROAD #110-242
FRISCO, TEXAS 76102
2.  DR. J RANDALL PRICE
PRICE, PROCTOR & ASSOCIATES
11882 GREENVILLE AVE, SUITE 107
DALLAS, TEXAS 75243
3.  DR. TIMOTHY PROCTOR
PRICE, PROCTOR & ASSOCIATES

STATE'S THIRTEENTH AMENDED WITNESS LIST - PAGE 13

2039

           11882 GREENVILLE AVE, SUITE 107
           DALLAS, TEXAS 75243

4.     DR. ROGER BURNS
           FORT WORTH, TEXAS

5.     DR. PREMA MANJUMATH
           FORT WORTH, TEXAS

6.     DR. DONNA ABBOT
           DALLAS, TEXAS

7.     PENELOPE ROSEN- BUCKNER

8.     DAVID CHANDLER- BUCKNER

9.     DR. CHRISTINA REED-
           PRICE, PROCTOR & ASSOCIATES
           11882 GREENVILLE AVE, SUITE 107
           DALLAS, TEXAS 75243

10.    DR. DAVID SELF
           FLINT, TEXAS

## M. TEXAS DEPARTMENT OF CORRECTIONS

1.     A.P. MERILLAT
2.     BRAD LIVINGSTON
3.     VANESSA JONES
4.     OFF. L QUICK
5.     OFF. JAMES JOHNSON
6.     OFF. W.D. JOCK
7.     OFF. D. KIDD
8.     OFF. M. WILLARD
9.     OFF. HOLMAN
10.    RACHEL E WILLIAMS
11.    OFF. C. SHIRAH
12.    OFF. H. YARBROUGH
13.    OFF. KAREN HENRY
14.    OFF. HAROLD JOHNSON
15.    OFF. A. HOLMAN
16.    E. GARZA
17.    R. GRANT
17.    OFF. PETERS
18.    OFF. L. WOFFORD
19.    OFF. JERRY ROGERS
20.    OFF. WINSTON YOUNG
21.    OFF. E. CLEMMONS
22.    SGT F. GUITIERREZ S.T.G.O.
23.    OFF. BILLY CORNELL
24.    OFF. I. BONNOR
25.    OFF. JUDY HUGHES

STATE'S THIRTEENTH AMENDED WITNESS LIST - PAGE 14

26.   OFF. W. CLIFFORD
27.   OFF. B. THOMPSON
28.   OFF. DT CREASON
29.   OFF. M. BARNETT
30.   OFF. C. WILLET
31.   OFF. A GOBER
32.   OFF. CATHERTON
33.   STEVEN ROGERS
34.   OFF. STERLIDO EDWARDS
35.   OFF. G COUCH
36.   OFF. D HOUSE
37.   OFF. M BENNETT
38.   INMATE EROS BROWN
39.   INMATE JOHN O'DELL
40.   INMATE WILLIE JENKINS
41.   INMATE STEVEN MUSKOWITZ
42.   EMIL GARZA
43.   ROBERT GRANT
44.   SGT. F. GUTIERREZ
45.   SHARON DEFFERENT
46.   B. SCROGGINS
47.   J. WELDON
48.   OFF. GIPSON

## N. RECORDS CUSTODIANS

1.   HAWK SECURITY
     BENBROOK, TEXAS
2.   RENEE CANTON
     CASH AMERICA PAWN SHOPS
     2900 N. MAIN STREET
     FORT WORTH, TEXAS
2.   ANDREA COTTRELL
     CASH AMERICA PAWN SHOPS
     FORT WORTH, TEXAS
4.   JOHN TILLEY
     NORTHSIDE PAWN SHOP
     2609 N. MAIN STREET
     FORT WORTH, TEXAS
5.   RECORDS CUSTODIAN
     A-I PAWN & JEWELRY
     4201 HEMPHILL ST. 1420 W BERRY
     FORT WORTH, TEXAS
6.   RECORDS CUSTODIAN
     MOTEL 6

STATE'S THIRTEENTH AMENDED WITNESS LIST - PAGE 15

            3271 I-35W
            FORT WORTH, TEXAS 76106
    7.      RECORDS CUSTODIAN
            FORT WORTH FIRE DEPARTMENT
            FORT WORTH, TEXAS
    8.      RECORDS CUSTODIAN
            MEDSTAR
            FORT WORTH, TEXAS
    9.      CHAD CARR
            RECORDS CUSTODIAN
            FORT WORTH, TEXAS

O. **TEXAS RANGERS**
    1.      SGT. DON STONER
    2.      LT. CRAYTON MCGEE

P. **JOHN PETER SMITH**
    1.      DR. W. CRAWFORD
    2.      LISA TEMPLE, RN.
    3.      JUDY THOMAS
    4.      DR. RAJESH RAMESH GANDHI
    5.      DR.M RICHARDSON
    6.      DR. POWELL KINNEY
    7.      DR. SHERRY RUTH KONDZIELA
    8.      DR. RJ WEDDEN
    9.      AMANDA TICE, RN
    10.     JANA PALMER, RN
    11.     DR. JOSHUA PRATT
    12.     DR. VERONICA WILLSON
    13.     DR. CHARLOTTE WILLIAMS
    14.     DR. DANIEL ZIEGLER
    15.     DEBRA STUART, RN
    16.     ALISA BILBREY, CST
    17.     ERIC THOMPSON, RN
    18.     S. GRIS WELL, RN

Q. **METRO PCS**
    1.      RANDALL THOMPSON

R. **COLLEYVILLE POLICE DEPARTMENT**
    1.      DET. KEVIN WALLING

S. **TDC PAROLE**
    1.      CHRISTINA PROPES

STATE'S THIRTEENTH AMENDED WITNESS LIST - PAGE 16

2042

    2.     TIM LANGFORD
    3.     MICHELLE KREGER
    4.     BOB PURCELL
           DALLAS, TEXAS

T. **MAGISTRATES/JUDGES**

    1.     THE HONORABLE SCOTT WISCH
           JUDGE, 372ND DISTRICT COURT
           TARRANT COUNTY, TEXAS
    2.     THE HONORABLE EVERETT YOUNG
           JUDGE, 297TH DISTRICT COURT
           TARRANT COUNTY, TEXAS

U. **TARRANT COUNTY JAIL**

    1.     STACI TURNER- RECORDS CUSTODIAN
    2.     SGT. BLACK
    3.     DEP. YANDELL
    4.     DEP. RG ALMENDAREZ
    5.     SGT. DUNHAM
    6.     DEP. J PAULEY
    7.     DEP. LAMBETH
    8.     DEP. C BREWER
    9.     SGT. R REYES
    10.    DEP. POTTS
    11.    OFF. R CURTIS
    12.    OFF. SIFUENTES
    13.    SGT. T BROWNING
    14.    DEP. R HART
    15.    DEP. J LHELM
    16.    DEP. PIERSON
    17.    DEP. G PARRAMORE
    18.    LT. J RUCKER
    19.    JAMES BLASZAK
    20.    M. COX
    21.    E. BOWMAN
    22.    T. NOEL
    23.    E. GARZA
    24.    D. SCOTT
    25.    R. WARD
    26.    E. GRACIA
    27.    R. CASAREN
    28.    MR CUDE
    29.    E. HERRIAGE

2043

30.   P. BURKETT
31.   C. WILLIAMS
32.   CPL. RENDER
33.   DEP MUHAMMAD
34.   B. POCHE
35.   DEP DAVIS
36.   DEP SALAS
37.   W. TAYLOR
38.   B. NASH
39.   SGT PILKINGTON
40.   OFF C MERCHANT
41.   DEP I A LOPEZ
42.   DEP MJ TAYLOR
43.   DEP ESTRADA

## V. JUVENILE PROBATION

1.   PO SALINAS
2.   PO WHEAT
3.   PO CASTOREN
4.   PO B HAMPTON
5.   PO CHARLES VERMERSCH
6.   PO PAUL BROCK WAY
7.   PO GUSTAFSON
8.   PO LEANNA JUDD

## W. CHILD PROTECTIVE SERVICES

1.   HEIDI SCHMIDT
2.   PENELOPE ROSEN
3.   ROBIN WELCH
4.   JACKIE CUANZZO
5.   LAURA FLORES
6.   SANDY MCGUIRE

## X. TEXAS HEALTH SOUTH

1.   DR. STEVEN RUSH

## Y. NEUROLOGIST

1.   DR. JORGE ROMERO

## Z. TARRANT COUNTY

1.   MARK PORTER
2.   ERNEST VAN DER LEEST
3.   DANNY MCCORMICK

STATE'S THIRTEENTH AMENDED WITNESS LIST - PAGE 18

2044

    4.      MATT HARDY

## AA. **FORT WORTH MEDSTAR**
    1.      E. EARL HAUSS, R.N.
    2.      RUBEN CISNEROS
    3.      CORY WILLIAMSON

## BB. **FORT WORTH FIRE DEPARTMENT**
    1.      GABRIELA YANES
    2.      LT. CHRISTOPHER A. OWENS
    3.      MICHAEL W. WEATHERWOOD

Respectfully submitted,

MARTIN M. STRAHAN
ASSISTANT DISTRICT ATTORNEY
JOHNSON COUNTY, TEXAS
PHONE (817) 556-6800
FAX (817) 556-6814
204 S. BUFFALO AVE., SUITE 209
CLEBURNE, TEXAS 76031
STATE BAR NO. 00797765

### CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been sent by hand delivery to Michael Heiskell, Johnson, Vaughn & Heiskell, 5601 Bridge Street, Suite 220, Fort Worth, Texas 76102, fax (817)496-1102 and to Greg Westfall, Attorney at Law, 1400 W. Abram Street, Arlington, Texas 76013, fax (817) 274-9724 on this the 24 day of February, 2012.

MARTIN M. STRAHAN
ASSISTANT DISTRICT

STATE'S THIRTEENTH AMENDED WITNESS LIST - PAGE 19

CAUSE NO. F45059

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | 413TH DISTRICT COURT |
| VS. | § | OF |
| MARK ANTHONY SOLIZ | § | JOHNSON COUNTY, TEXAS |

## STATE'S MOTION IN LIMINE REGARDING PLEA AGREEMENTS

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES the State of Texas, represented by her District Attorney and moves the Court to order the Defendant, lawyers, and witnesses for the Defense in the above-styled and numbered cause not to allude to, refer to, or in any way bring before the jury, whether directly or indirectly without first approaching the bench out of the hearing and presence of the jury and then and there advising the Court on each question, any of the following matters;

1. Inquiry whether or not the witnesses for the State or any parties or co-conspirators have been offered any plea agreements or other consideration in exchange for their testimony in the aforementioned cause until such time as they testify or such inquiries become relevant and admissible.

WHEREFORE, PREMISES CONSIDERED, the State respectfully prays that this motion be in all things granted.

Respectfully submitted,

_____
MARTIN M. STRAHAN
ASSISTANT DISTRICT ATTORNEY
JOHNSON COUNTY, TEXAS (817) 556-6800
204 S. BUFFALO AVE., SUITE 209
CLEBURNE, TEXAS  76031
STATE BAR NO. 00797765

FILED
JOHNSON COUNTY
2012 FEB 27  AM 8:00
DAVID R. LLOYD
DISTRICT CLERK
BY

2046

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been sent by facsimile transmission to Michael Heiskell, Johnson, Vaughn & Heiskell, 5601 Bridge Street, Suite 220, Fort Worth, Texas 76102, fax (817) 496-1102 and to Greg Westfall, Attorney at Law, 1400 W. Abram Street, Arlington, Texas 76013, fax (817) 274-9724 on this the _27th_ day of February, 2012.

MARTIN M. STRAHAN
ASSISTANT DISTRICT ATTORNEY

2047

CAUSE NO. F45059

| THE STATE OF TEXAS | § | 413TH DISTRICT COURT |
|---|---|---|
| VS. | § | OF |
| MARK ANTHONY SOLIZ | § | JOHNSON COUNTY, TEXAS |

## ORDER ON STATE'S MOTION IN LIMINE

On this ____ day of February, 2012, came to be heard the State's Motion in Limine and said motion is hereby **GRANTED/DENIED.**

Signed this _____ day of February, 2012.

_____
**JUDGE PRESIDING**

2048