# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

No. 17-70019

---

United States Court of Appeals
Fifth Circuit

**FILED**

September 18, 2018

Lyle W. Cayce
Clerk

MARK ANTHONY SOLIZ,

      Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

      Respondent - Appellee

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:14-CV-4556

---

Before DENNIS, SOUTHWICK, and HIGGINSON, Circuit Judges.

PER CURIAM:*

    Mark Anthony Soliz was convicted of capital murder and sentenced to death. After his unsuccessful direct appeal and petition for habeas relief to the state court, he filed a federal habeas application that raised 21 claims. The district court denied relief but granted a certificate of appealability for one of

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-70019

the claims.  Soliz also seeks a COA on three additional claims.  We DENY any additional COA and AFFIRM the district court's denial of any relief.


FACTUAL AND PROCEDURAL BACKGROUND

A Texas jury convicted Mark Anthony Soliz of capital murder and sentenced him to death.  The Texas Court of Criminal Appeals unanimously affirmed the judgment on direct appeal and denied habeas corpus relief.  *Soliz v. State*, 432 S.W.3d 895 (Tex. Crim. App. 2014); *Ex parte Soliz*, No. WR-82,429-01 2014 WL 12713257 (Tex. Crim. App. Dec. 17, 2014).

On direct appeal, the Court of Criminal Appeals' opinion summarized the facts surrounding Soliz's conviction.  Soliz does not challenge these determinations of fact, and thus, we presume them to be true.  *See* 28 U.S.C. § 2254(e)(1).  As summarized by that court, the relevant facts are these:

> The instant offense was one of numerous offenses that appellant and his accomplice, Jose Ramos, committed during an eight-day crime spree that ended when appellant and Ramos were arrested.  Most of these offenses were committed in the Fort Worth area, but the instant offense took place in Godley, which is in Johnson County.  This offense was discovered when Ramos mentioned it in response to a Fort Worth police detective's question about another offense that appellant and Ramos had committed.

> Appellant's and Ramos's crime spree began with a June 22, 2010 burglary in which they took several long guns and a Hi-Point 9-millimeter semiautomatic handgun, among other items.  Later that evening, appellant showed the stolen weapons to a potential buyer, Ramon Morales.  Morales wanted to buy all five weapons, but appellant was not willing to part with a rifle and the handgun.  Appellant told Morales that he had plans for them.  Morales bought the three long guns and pawned them the following day.

> On the morning of June 24, 2010, appellant approached a stranger, Justin Morris, in the parking lot of a shopping mall, pointed a gun at him, and demanded his wallet.  Morris complied, and appellant took Morris's wallet and left.  Appellant was later

2

No. 17-70019

videotaped by a convenience-store security camera as he attempted to use Morris's debit card at an ATM.

Later that morning, after witnessing an argument between Luis Luna and a female friend of appellant's, appellant asked his friend if she wanted him to "get [Luna] wet," which was street talk for drawing Luna's blood or killing him. Appellant fired the gun in the direction of Luna's head, but the bullet passed through Luna's ear lobe without seriously injuring him.

That afternoon, appellant and Ramos held Jorge Contreras at gunpoint in a store parking lot while they stole his green Dodge pickup truck. Later that day, appellant approached Sammy Abu-Lughod in a different store parking lot as Abu-Lughod was getting into his green Dodge Stratus. Appellant pointed a black handgun at Abu-Lughod and demanded his wallet, cell phone, and car. After taking Abu-Lughod's personal items, appellant told him to walk away. Abu-Lughod complied while appellant drove away in the Stratus.

Around 2:00 a.m. on June 28, 2010, appellant and Ramos approached four people who were leaving a bar and demanded their money and wallets. The victims complied. After taking their wallets, appellant and Ramos left in the Stratus.

At 3:30 a.m. on June 29, 2010, Ramos and appellant committed a "drive-by" shooting. Ramos drove the car while appellant fired shots into a house where they thought a rival gang member might be staying. At about 5:00 a.m., appellant and Ramos approached Enrique Samaniego as he was walking to his pickup truck to leave for work. Either appellant or Ramos shot Samaniego four or five times in the stomach. Samaniego sustained life-threatening injuries, but he survived.

Around 5:30 a.m., appellant and Ramos approached Ruben Martinez, a delivery truck driver who had just completed a beer delivery at a Texaco gas station, as Martinez was walking back to his truck. Appellant pointed the gun at Martinez and demanded his wallet. Martinez complied, offering his cell phone as well. Disappointed that Martinez's wallet contained only ten dollars,

No. 17-70019

appellant shot him in the neck.   Martinez later died from complications of this injury.

Less than an hour after shooting Martinez, appellant approached Kenny Dodgin as Dodgin was exiting his car in the parking lot of a Lowe's store.  Appellant pointed a gun wrapped in a blue bandanna at Dodgin.  Upon seeing appellant, Dodgin locked his car and ran toward the store.  He heard three gun shots behind him.

Around 7:00 a.m., appellant burglarized two homes in Benbrook, a town southwest of Fort Worth.  Later that morning, appellant and Ramos drove to Weatherly's home and committed the instant offense.

The Fort Worth Police Department's Communications Division received the call when appellant robbed Abu-Lughod of his green Stratus, as well as later calls reporting robberies and shootings involving a green or teal sedan.  A 9-1-1 call-taker supervisor informed detectives that the stolen Stratus might be the green or teal sedan involved in the later offenses.  Detectives subsequently reviewed offense reports and compared notes.  Based on the close physical and temporal proximity of some offenses as well as similarities in the descriptions of the suspect, weapon, vehicle, and modus operandi, they determined that approximately thirteen burglaries, aggravated robberies, and shootings in the Fort Worth area, dating from June 22 to June 29, were likely to be connected.  Because of the escalation of violence in the Samaniego and Martinez offenses, all Fort Worth police officers were instructed to be on the lookout for the stolen Stratus.

Around 10:30 p.m. on June 29, officers in an unmarked vehicle established surveillance on the house of a known gang member, Arturo Gonzales, which was near the last known location of the Stratus.  Eventually they observed the Stratus leaving Gonzales's house, closely following a Jeep Liberty.  The two vehicles appeared to be traveling together.  Officers identified the Stratus by its license plate as the vehicle they were searching for and radioed for a marked patrol unit to initiate a stop. With lights and siren activated, a marked unit began following the Stratus. Instead of stopping, however, the Stratus accelerated and passed

No. 17-70019

the Liberty.  After a brief pursuit, the Stratus crashed into a parked eighteen-wheeler.

Appellant exited through the passenger side window and ran through parking lots and across a freeway before officers stopped and arrested him. The other occupant of the Stratus, Elizabeth Estrada, exited the Stratus and ran behind the eighteen-wheeler, where officers quickly arrested her.  The stolen handgun and the blue bandanna were found inside the Stratus.  Meanwhile, police officers stopped the Liberty for an equipment violation and transported its occupants, including Ramos, to the police station for questioning.

Ramos admitted his participation in some of the offenses and provided useful information about them.  However, when detectives questioned Ramos about the aggravated robbery in which Contreras's green pickup truck had been stolen, Ramos provided information that was inconsistent with the information detectives had already obtained about that offense.  Specifically, Ramos indicated that the offense had ended badly and stated that it did not have to "end that way."  This statement puzzled detectives because no one had been hurt and no shots had been fired during the offense.  Ramos also referred to a female victim rather than a male victim.  After some initial confusion, detectives ascertained that Ramos was describing a previously unknown offense committed in Johnson County.  Ramos indicated that a female victim had been shot during a burglary or robbery and her green Toyota Tundra pickup truck had been stolen.

Ramos provided directions to the stolen Tundra, which detectives found parked about a block from Gonzales's house. Detectives checked the truck's registration and obtained the name and address of its owner, Nancy Weatherly.  They then contacted the Johnson County Sheriff's Office and drove to Weatherly's house.  A sheriff's deputy joined them at the house.  They observed that the gate and garage door were open, and the back door of the house was partially open.  The interior had been ransacked. Weatherly's body was lying in the kitchen area next to a table and chair.  She had been shot once in the back of the head.

No. 17-70019

The investigation of this offense was ongoing when Fort Worth Detectives William "Danny" Paine and Thomas Boetcher began questioning appellant at the police station. The interview was recorded. Boetcher advised appellant of his rights and appellant stated that he understood them. When asked if he was willing to talk about the offenses, appellant answered, "All right." Paine and Boetcher initially questioned appellant about the Fort Worth offenses. Later, as they received information about the Johnson County investigation, they questioned appellant about that offense as well.

Paine and Boetcher also obtained two typed and signed statements from appellant that summarized his oral statement. The first typed statement concerned the Fort Worth offenses. In it, appellant admitted his involvement in the Abu-Lughod, Contreras, Morris, Martinez, Dodgin, and bar patron robberies, as well as the Luna shooting. He also acknowledged that Ramos did not participate in all of these offenses.

Appellant's second typed statement concerned the instant offense. In it, appellant admitted that he and Ramos had driven to Godley, where appellant had threatened Weatherly with a gun and had burglarized her house. Appellant denied shooting Weatherly, stating that after he and Ramos had loaded what they wanted into the Tundra, appellant left the gun inside with Ramos and went outside to start the car. He then heard a shot and saw Ramos walking out of the house. With Ramos driving the Tundra and appellant driving the car, they returned to Fort Worth.

After appellant signed the second typed statement, detectives questioned him further. Appellant wavered about whether he or Ramos was the person who shot Weatherly. Eventually, appellant stated that he would confess to the shooting just to "get this over with," and admitted that he shot Weatherly. He also wrote and initialed a sentence at the end of his second typed statement: "It was me that shot that wom[a]n!!!"

Appellant's statements were not the only evidence that appellant committed the instant offense. Estrada, who was riding in the Stratus with appellant when it crashed, testified that appellant bragged to her about killing an "old lady" in a house in

No. 17-70019

Godley.  Appellant told Estrada that he knocked on the door, and when the lady opened it, he pointed the gun at her.  The lady backed up, and appellant made her sit down.  Appellant told Estrada that he killed one of the lady's horses, which made the lady cry.  She begged for her life and prayed.  When appellant showed the lady that he was stealing her jewelry box, she asked him not to take it because it had been a gift from her mother, who was now deceased.  Appellant then told her to go with her mother and shot her in the head.  He demonstrated for Estrada how he held out the gun and fired.  He laughed about the incident and ridiculed the lady's "country" accent.  He said that later, while taking methamphetamine, he had flashbacks about killing the lady and "seeing her brains go everywhere."

Weatherly's neighbor testified that she passed Weatherly's house around 10:30 a.m. on June 29 and saw a green Stratus parked by the house, facing the road.  The next day, when she watched the news, she recognized the car that had been recovered in Fort Worth as the car she had seen at Weatherly's house.  Further, a law-enforcement officer testified that, while he was transporting appellant and Ramos from Fort Worth to Johnson County for pretrial proceedings, he overheard appellant telling Ramos that all they needed to do was "play dumb," and authorities would "get" the man who pawned the guns (presumably a reference to Morales) on capital murder.

Forensic evidence also connected appellant to the instant offense.  Jennifer Nollkamper, a forensic scientist with the Fort Worth Police Department crime laboratory, determined that the shell casing recovered from Weatherly's home had been fired through the Hi-Point 9-millimeter semi-automatic handgun recovered from the Stratus.  Nollkamper testified that the bullet recovered from Weatherly's home was too damaged for her to state affirmatively that it was fired from the recovered weapon, but she could state affirmatively that it was fired from a Hi-Point 9-millimeter semi-automatic handgun.  Lannie Emanuel, a tool mark and firearm examiner for a private forensic laboratory, agreed with Nollkamper's determination that the shell casing had been fired through the recovered weapon.  Emanuel, however, did not think that the bullet was too damaged for a positive

7

No. 17-70019

comparison.  He testified affirmatively that the bullet recovered from Weatherly's home was fired from the recovered weapon.

William Walker, a fingerprint examiner with the Tarrant County Medical Examiner, positively identified a latent fingerprint on an audiocassette case in Weatherly's spare bedroom as appellant's fingerprint.  A trace analyst from the Tarrant County Medical Examiner's Office identified gunshot residue on appellant's clothing and hands, the interior of the Stratus, and a blue bandanna and towel that were recovered from the Stratus.

*Soliz*, 432 S.W.3d at 896-900 (alterations in original).

Notably, the Court of Criminal Appeals also found that at trial, defense counsel offered Soliz's videotaped statement into evidence "without qualification and for all purposes while cross-examining one of the detectives who interviewed" him.  *Id.* at 903.  The trial court admitted the videotape.  *Id.* Though the statement is often referred to as a confession, on the videotape Soliz blames Ramos for the Weatherly murder.  In a difficult case for the defense, the videotape offered jurors some mitigation evidence.  Soliz's written statements, which the court found to be summaries of the videotaped confession, were later offered by the State and admitted in evidence.  *Id.*

Following his direct appeal and petition for habeas relief to the state court, Soliz applied to the United States District Court for the Northern District of Texas for a writ of habeas corpus under 28 U.S.C. § 2254.  He presented 21 claims.  Soliz had presented all but one of them in state court.  The district court denied relief for each of the claims.  It then granted a certificate of appealability ("COA") only on Claim 20, which generally concerns the trial court's admitting Soliz's videotaped statement into evidence.  Soliz argued that the videotape was inadmissible under *Miranda v. Arizona*, 384 U.S. 436 (1966).  The district court held that the claim was procedurally barred

No. 17-70019

and, alternatively, unmeritorious. The district court's grant of a COA for Claim 20 concerns those two holdings.

Soliz has filed with this court a petition for an additional COA. He contends that reasonable jurists would find debatable the district court's rejection of these three claims: (A) trial counsel rendered ineffective assistance by offering Soliz's videotaped statement into evidence; (B) the Supreme Court's decision in *Atkins v. Virginia*, 536 U.S. 304 (2002) encompasses individuals who suffer from fetal alcohol syndrome disorder; and (C) trial counsel rendered ineffective assistance by failing to object to the admissibility of a letter written by Soliz to a prospective juror. Soliz further argues the district court erred in applying a procedural bar to Claim 20 and maintains that the videotaped statement was inadmissible under *Miranda*.

## DISCUSSION

We first discuss Soliz's request for a COA on the three issues not included within the district court's grant. We then analyze Claim 20 for which the district court did grant a COA.

## I.     *Petition for Additional COA*

Rule 11 of the Rules Governing Section 2254 Cases provides that a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." That request in district court is the prerequisite for requesting a COA from this court under 28 U.S.C. § 2253(c)(1). *Cardenas v. Thaler*, 651 F.3d 442, 445 (5th Cir. 2011). Without a COA, we do not have jurisdiction to consider the merits of an appeal from the denial of habeas relief. *Jackson v. Dretke*, 450 F.3d 614, 616 (5th Cir. 2006). Uncertainties about a COA are resolved in favor of those facing the death penalty. *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000).

No. 17-70019

Neither the district court nor this one should grant a COA absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The showing necessary to satisfy this standard varies according to whether the district court resolved a petitioner's claim on the merits or on procedural grounds. "When the district court denies relief on the petitioner's constitutional claim on the merits, '[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Flores v. Stephens*, 794 F.3d 494, 502 (5th Cir. 2015) (alteration in original) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "Where a petition is dismissed on procedural grounds, the petitioner must also demonstrate 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Fratta v. Davis*, 889 F.3d 225, 228 (5th Cir. 2018) (quoting *Slack*, 529 U.S. at 484).

Regardless of whether the district court's resolution was on a procedural ground or on the merits, we are to decide whether the district court's resolution is "debatable." Our appraisal is conducted with the deference the Antiterrorism and Effective Death Penalty Act ("AEDPA") "mandates federal courts show their state peers." *Prystash v. Davis*, 854 F.3d 830, 835 (5th Cir. 2017). Unless rebutted by the petitioner with clear and convincing evidence, we assume that the state court's determination of facts is correct. 28 U.S.C. § 2254(e)(1). When the state court has considered and rejected the merits of a petitioner's claims, we may grant relief only if the state court judgment "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d).

No. 17-70019

We now consider the three claims for which Soliz seeks a COA by applying these rules.

### A. *Counsel's Offering Confession*

Soliz claims that trial counsel rendered ineffective assistance by offering his videotaped confession into evidence without qualification. He acknowledges this claim is procedurally defaulted because it was not presented in state court, but he argues there is cause to excuse the default under *Martinez v. Ryan*, 566 U.S. 1 (2012). The district court concluded that Soliz had not shown cause because he failed to demonstrate that the underlying ineffective assistance of trial counsel ("IATC") claim had merit and, alternatively, because he had not attempted to show that state habeas counsel was ineffective for not raising the claim. The district court also denied relief on the IATC claim because it was without merit. In summary, the district court found no merit to the claim of deficient attorney performance at trial and thus no merit to the claim of ineffectiveness by habeas counsel in not raising a claim of deficient trial counsel.

In order to establish cause to excuse the procedural default, Soliz must show "(1) that his claim of ineffective assistance of counsel at trial is substantial — *i.e.*, has some merit — and (2) that habeas counsel was ineffective in failing to present those claims in his first state habeas proceeding." *Segundo v. Davis*, 831 F.3d 345, 350 (5th Cir. 2016) (italics added) (quoting *Garza v. Stephens*, 738 F.3d 669, 676 (5th Cir. 2013)). The second requirement, showing that state habeas counsel was ineffective, requires evidence "both that counsel's performance was deficient and that the deficient performance prejudiced the defense." *Wessinger v. Vannoy*, 864 F.3d 387, 391 (5th Cir. 2017). As to ineffective counsel claims generally, the "performance inquiry [is] whether counsel's assistance was reasonable considering all the

No. 17-70019

circumstances." *Id.* (alteration in original) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). We "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689 (1984). As to the prejudice inquiry, "a petitioner must demonstrate that 'there is a reasonable probability that he would have been granted state habeas relief' if not for counsel's deficiency." *Wessinger*, 864 F.3d at 391 (quoting *Newbury v. Stephens*, 756 F.3d 850, 871-72 (5th Cir. 2014)). "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

Thus, a Section 2254 application seeking to excuse procedural default must show counsel was deficient at two different proceedings — both the counsel at the time of the state criminal conviction and then the counsel at the time of state habeas. Soliz argues his habeas counsel[1] deficiently performed because it "should have been obvious" to habeas counsel that trial counsel provided ineffective assistance by offering his videotaped confession into evidence. Besides claiming obviousness, there was not much effort to refute the reasonableness of trial counsel's explanation for introducing the confession, which we discuss next.

What we see from the record is considerable zeal by state habeas counsel, including filing a 141-page state habeas application that raised 18 claims for relief, ten of which were IATC claims. Additionally, it was not unreasonable for habeas counsel to avoid making an IATC claim based on trial counsel's offering the confession into evidence. The record supports that trial counsel offered the confession into evidence in support of the defense's mitigation theory. Throughout trial, counsel attempted to establish that Soliz's mental

---

[1] In his state habeas proceedings, Soliz was represented by the Office of Capital Writs, which is a public defender's office that specializes in post-conviction capital litigation.

No. 17-70019

impairments, drug use, and chaotic upbringing caused him to behave in a way that was irrational and impulsive.   When trial counsel introduced the confession, he contrasted Soliz from "smart criminals" who do not implicate themselves on videotape.  He suggested that "smart criminals," unlike Soliz in the video, invoke their rights, request a lawyer, and do not sign statements. During closing argument, trial counsel reminded the jury that he had introduced the confession and suggested that because of Soliz's mental impairments, the evidence did not support finding him guilty of capital murder; he urged the jury to convict Soliz of the lesser offense of murder.

Regardless of ultimate effectiveness, trial counsel was attempting to show jurors that Soliz was not culpable for capital murder.  The district court analyzed the reasonableness of counsel's actions this way:

> A reasonable argument exists that trial counsel met *Strickland*'s objective standard.  Reasonable counsel could have decided that the chance of success on appeal was slim given the circumstances of the confession and other, strong evidence of guilt. *See Arizona v. Fulminante*, 499 U.S. 279, 296 (1991) (establishing that erroneous admission of confession is harmless if [the] State can establish beyond a reasonable doubt that it did not contribute to the conviction).  By offering the confession rather than waiting for the State to do it, counsel diluted its negative impact and presented himself to the jury as forthright and honest.  In doing so, counsel did not give up his adversarial role, but used the confession to support the mitigation theory, undermine the reliability of the confession, and argue for a murder conviction.
>
> There are "countless ways" to provide effective assistance in any given case.   *Strickland*, 466 U.S. at 689.   "Attorneys representing capital defendants often face daunting challenges in developing strategies, not least because the defendant's guilt is often clear." *Florida v. Nixon*, 543 U.S. 175, 191 (2004).  In such cases, "avoiding execution may be the best and only realistic result possible." *Id.* (internal quotations and brackets omitted).  Such strategic choices, made after a thorough investigation of the law and facts relevant to plausible options, are "virtually unchallengeable." *Strickland*, 466 U.S. at 690.  "Such tactical

No. 17-70019

decisions, made on an informed and reasoned basis, do not fall below *Strickland* standards simply because they do not succeed as planned." *See Jones v. Butler*, 837 F.2d 691, 693-94 (5th Cir. 1988).

Reasonable jurists would not debate the district court's conclusion. We reach that conclusion because of the extensive evidence, including written confessions, forensic evidence, and witness testimony, that independently implicated Soliz. *See Soliz*, 432 S.W.3d at 900–02. Thus, trial counsel's decision to introduce the videotape would not have suggested to a reasonable habeas attorney that by doing so, trial counsel rendered ineffective assistance.

We deny a COA on the claim concerning trial counsel's offering his confession into evidence.

### B. *Fetal Alcohol Syndrome Disorder*

In his direct appeal to the Court of Criminal Appeals, Soliz contended that sentencing him to death is unconstitutional because he has permanent brain damage stemming from partial fetal alcohol syndrome disorder ("FASD"). *Soliz*, 432 S.W.3d at 903. The court rejected the claim, holding that there was not "an emerging national consensus in favor of barring the execution of adult offenders convicted of capital murder who are not mentally retarded but who have permanent brain damage resulting from partial fetal-alcohol syndrome." *Id.*

In his Section 2254 application to the district court, Soliz argued that his death sentence violated his Eighth Amendment right against cruel and unusual punishment. He contended that the Supreme Court's holding that it is unconstitutional to execute a mentally retarded individual should be expanded to make those afflicted with FASD categorically ineligible for the death penalty. *See Atkins*, 536 U.S. at 321.

No. 17-70019

The district court rejected Soliz's claim, concluding that it had no basis upon which to conclude that the state court unreasonably applied clearly established federal law. The court reasoned that Soliz had cited no Supreme Court decision barring the execution of people with FASD. Rather than attempting to show how the state court's rejection of his claim was an unreasonable application of clearly established federal law, Soliz only sought to expand federal law. We agree.

"In assessing whether the district court's rejection of [Soliz's] claims is debatable, we consider them under the deference AEDPA mandates federal courts show their state peers." *Prystash*, 854 F.3d at 835. "A state court's application of clearly established federal law is 'unreasonable' within the meaning of AEDPA when the state court identifies the correct governing legal principle from Supreme Court precedent, but applies that principle to the case in an objectively unreasonable manner." *Nelson v. Quarterman*, 472 F.3d 287, 292 (5th Cir. 2006) (en banc).

The state court's rejection of Soliz's claim that *Atkins* should be expanded to include individuals with FASD "could not have been an unreasonable application of *Atkins* because the Supreme Court has not clearly established the precise boundaries of determining mental retardation." *See Hearn v. Thaler*, 669 F.3d 265, 272 (5th Cir. 2012). "When the Supreme Court refuses to provide a specific rule, 'it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by th[e] Court.'" *Id.* (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).

Because the Supreme Court's "cases give no clear answer to the question presented," the state court did not unreasonably apply clearly established federal law. *Wright v. Van Patten*, 552 U.S. 120, 126 (2008). A COA on this claim is denied.

15

No. 17-70019

*C. Counsel's Failure to Object*

Soliz argues that trial counsel was ineffective for not objecting to a redacted letter[2] under Texas Evidence Rule 403.[3]  The Court of Criminal Appeals rejected the claim, concluding that a Rule 403 objection would have been a "futile act," and under Texas law, "an attorney is not ineffective for failing to do that which amounts to a futile act."  Soliz reasserted the claim in his application in federal district court, which rejected it.  The district court concluded that Soliz had failed to demonstrate that the state court unreasonably applied *Strickland* or that it made a ruling based on an unreasonable determination of the facts.  The court reasoned that because a state court had concluded that an objection to the redacted letter under state law would have been futile, a federal habeas court could not conclude otherwise.

To succeed on the IATC claim, Soliz must show that counsel's failing to object was deficient and that he was prejudiced by the deficiency.  *See Strickland*, 466 U.S. at 687.  "In order to show that counsel was deficient for failing to object," though, "the objection must have merit."  *Ries v. Quarterman*, 522 F.3d 517, 530 (5th Cir. 2008).  We defer to a state court's determination that an objection would have been meritless under state law because "in our

---

[2] Soliz wrote the letter to a prospective juror who was subsequently excused during jury selection.  The State offered the letter during its rebuttal case in the punishment phase of trial to rebut a defense expert who had testified that Soliz had deficits in adaptive and mental functioning.  Trial counsel objected to the letter's admission into evidence because it could have forced counsel to testify on the issue of how Soliz was able to obtain the prospective juror's address.  Trial counsel later agreed, however, to the admission of a redacted portion of the letter.  The redacted letter removed the prospective juror being identified as the letter's addressee.

[3] Texas Evidence Rule 403 provides that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."

No. 17-70019

role as a federal habeas court, we cannot review the correctness of the state habeas court's interpretation of state law." *Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004).

Soliz cannot make a substantial showing under *Strickland* because Soliz's "counsel cannot have rendered ineffective assistance of counsel by failing to make an objection that would have been meritless." *Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007). We deny a COA on this claim.

## II.   *Claim 20*

We now consider Claim 20, the only claim for which the district court granted a COA. In contrast to Soliz's claim that trial counsel rendered ineffective assistance by offering the videotaped confession into evidence, Claim 20 concerns the *trial court's* admission of the confession.[4] The district court denied habeas relief for Claim 20 because it was procedurally defaulted and, alternatively, because it was unmeritorious. We do not consider the merits of Claim 20 here, as we affirm the district court's denial of habeas relief on the basis that Claim 20 is procedurally defaulted.

"[A] federal court may not review federal claims that were procedurally defaulted in state court — that is, claims that the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). "The exhaustion requirement is designed to avoid the 'unseemly' result of a federal court 'upset[ting]' a state court conviction without' first according the state courts an 'opportunity to . . . correct a constitutional

---

[4] Soliz contends the trial court erred in admitting the videotaped confession because it was inadmissible under *Miranda*. Soliz had previously challenged the admission of the evidence in a motion to suppress. The trial court denied the motion following an evidentiary hearing. And as earlier discussed, defense counsel introduced the confession into evidence during cross-examination of an investigating officer.

No. 17-70019

violation.'" *Id.* (alterations in original) (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)).

An adequate state procedural ground must be "firmly established and regularly followed." *Walker v. Martin*, 562 U.S. 307, 316 (2011) (quoting *Beard v. Kindler*, 558 U.S. 53, 60 (2009)). "A state procedural rule operates independently of the merits of the federal claim when a federal court could reverse the state court's disposition of any federal-law issues presented by the petition and, because of the state court's resolution of the state-law issues, the outcome of the case would not change." *Rocha v. Thaler*, 626 F.3d 815, 821 (5th Cir. 2010). Our examination of the procedural bar issue is within the context of what the Court of Criminal Appeals *likely* was doing, as the court was not explicit. We end our analysis with caselaw on how clear the reliance on a procedural bar must be.

In Texas criminal appeals, "the law of invited error estops a party from making an appellate error of an action it induced." *Cary v. State*, 507 S.W.3d 750, 755 (Tex. Crim. App. 2016) (quoting *Prystash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999)). "To hold otherwise would be to permit [the appellant] to take advantage of his own wrong." *Prystash*, 3 S.W.3d at 531. Texas courts have applied the dictates of this broad doctrine to various contexts.[5] One of

---

[5] *See, e.g.*, *Ex parte Pete*, 517 S.W.3d 825, 833 (Tex. Crim. App. 2017) ("A defendant who positively asks the trial court to grant a mistrial that is limited to the punishment phase may not be heard later to complain, after the trial court grants his request, that the limited mistrial compromised his right to have 'the same' jury resolve both phases of his trial.") (emphasis omitted); *Jones v. State*, 119 S.W.3d 766, 784 (Tex. Crim. App. 2003) ("Because appellant requested the discharge as an alternative to mistrial, he is now estopped from complaining about it."); *Livingston v. State*, 739 S.W.2d 311, 341 (Tex. Crim. App. 1987) ("[A] defendant may not request a [jury] charge and when that charge is given as requested, complain on appeal of any error."); *Hawkins v. State*, 628 S.W.2d 71, 75 (Tex. Crim. App. [Panel Op.] 1982) ("At the conclusion of that hearing, appellant stated 'I want her to testify before the jury.' We find that in view of such request, appellant is in no position to complain with regard to the court's failure to enter written findings of fact and conclusions of law with regard to the admissibility of the complainant's in-court identification testimony.").

18

No. 17-70019

the relevant contexts is when an appellant seeks to challenge the admission of evidence that he introduced at trial. As a general rule, "when the defendant offers the same evidence to which he earlier objected, he is not in a position to complain on appeal." *Maynard v. State*, 685 S.W.2d 60, 65 (Tex. Crim. App. 1985).

In short, under Texas law "a party is estopped from seeking appellate relief based on error" "that it invited or caused, even if such error is fundamental." *Woodall v. State*, 336 S.W.3d 634, 644 (Tex. Crim. App. 2011). The Court of Criminal Appeals declined to address the merits of Soliz's claim because it concluded that "[b]y offering his oral statement into evidence, [Soliz] waived error concerning the trial court's ruling on his motion to suppress this statement." *See Soliz*, 432 S.W.3d at 903. Although the court did not explicitly state that it was relying upon the invited-error doctrine, this language supports that it was applying the invited-error doctrine to the specific issue it was presented. Similar language appears in other decisions where that court has seemingly relied upon the invited-error doctrine to prevent an appellant from challenging the admission of evidence that he introduced.[6]

---

[6] *See, e.g., Rogers v. State*, 853 S.W.2d 29, 35 (Tex. Crim. App. 1993) ("[E]rror regarding improperly admitted evidence is waived if that same evidence is brought in later by the defendant or by the State without objection."); *Wilkerson v. State*, 736 S.W.2d 656, 662 (Tex. Crim. App. 1987) ("It is well established that when the defendant offers the same testimony as that objected to . . . he may not complain on appeal."); *Adams v. State*, 685 S.W.2d 661, 669 (Tex. Crim. App. 1985) ("The record reveals that appellant's attorney elicited the statement during questioning of one of the police officers. Appellant introduced the evidence of which she now complains. No error is presented."); *Lamb v. State*, 680 S.W.2d 11, 14 (Tex. Crim. App. 1984) ("The appellant having offered the offending statement, he cannot now on appeal complain that the State relied upon such evidence."); *Cameron v. State*, 530 S.W.2d 841, 843 (Tex. Crim. App. 1975), *overruled on other grounds by Boutwell v. State*, 719 S.W.2d 164 (Tex. Crim. App. 1985) ("In the instant case, appellant admitted his guilt in the robbery in Pecos after first objecting to the admission of any evidence of that offense. . . . Therefore, the appellant is in no position to claim that he was harmed by a ruling of the court."); *Decker v. State*, 717 S.W.2d 903, 905 (Tex. Crim. App. 1983) ("[T]he earlier confession, the giving of which the appellant says tainted the confession offered by the State, was offered in evidence before the jury by the appellant and admitted by the court as defense

No. 17-70019

Our conclusion that the Court of Criminal Appeals was relying on the invited-error doctrine is further supported by the case that it cited in support of its holding that Soliz could not raise his claim on appeal. *See Soliz*, 432 S.W.3d at 903 (citing *Decker v. State*, 717 S.W.2d 903, 908 (Tex. Crim. App. 1986)). The *Decker* case is within a long line of decisions from the Court of Criminal Appeals that recognize an appellant generally may not challenge the admission of evidence that he offered. Notably, the court did not cite any federal law as the basis for its refusal to consider Soliz's claim. *See id.* at 902-03. The court also did not reach the merits of Soliz's claim. *See id.* Hence, "any ambiguity that may have existed in its opinion was only on the question of precisely what state procedural ground the court relied upon in failing to reach the merits of [Soliz's] claim." *See Young v. Herring*, 938 F.2d 543, 550 (5th Cir. 1991) (en banc).

In denying federal habeas relief on Claim 20 because it was procedurally defaulted, the district court noted that it was not clear from the Court of Criminal Appeals' opinion whether the court applied the contemporaneous objection rule or the invited-error doctrine as the basis for its refusal to review the merits of Soliz's claim. Either rule, the court held, was sufficient to preclude federal review.

Soliz contends that the district court erred in concluding that the state court relied upon a procedural bar because the state court never said that it was doing so. According to Soliz, Supreme Court caselaw "requires that application of the state procedural bar must be uncertain if it is to pretermit

---

Exhibit Number One. Therefore, the appellant waived his objection to the admission of the confessions."); *Crawford v. State*, 617 S.W.2d 925, 932 (Tex. Crim. App. 1980) ("[T]he confession was introduced by appellant himself. Any complaints regarding its voluntariness were thereby waived."); *Morales v. State*, 466 S.W.2d 293, 300 (Tex. Crim. App. 1970) ("When appellant's counsel introduced his confession, he waived any complaints that he might have regarding the voluntariness of said confession.").

No. 17-70019

federal review." In support of this contention, Soliz cites a Supreme Court decision holding that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Harris v. Reed,* 489 U.S. 255, 263 (1989).

Following *Harris*, though, the Supreme Court held that the presumption the state court did *not* rely on a state procedural bar absent a clear statement that it was doing so applied only when the decision otherwise "fairly appear[s] to rest primarily on federal law or [is] interwoven with federal law." *Coleman v. Thompson*, 501 U.S. 722, 735 (1991). Applying *Coleman* and *Harris*, we held: "The key is not the clarity of the state court's language, or even whether the state court addressed the merits of the federal claim, but whether the state court may have based its decision on its understanding of federal law." *Young*, 938 F.2d at 553-54. In that case, because the state court decision did "not fairly appear to rest primarily on federal law," we could not reach the merits of the petitioner's federal claim "absent a showing of cause and prejudice." *Id.* at 554.

As already discussed, the record does not support that the state court rested its decision based upon federal law. The state court neither cited nor referred to federal law in rejecting Soliz's claim, nor did it reach the merits of the claim. The state court opinion thus "'fairly appears' to rest primarily on state law." *See Coleman*, 501 U.S. at 740.

We have previously held that "[t]he invited-error doctrine qualifies as a state procedural bar." *Druery v. Thaler*, 647 F.3d 535, 545 (5th Cir. 2011). That doctrine is what the state court seemed to rely upon here. "Because [Soliz] has neither claimed nor shown 'cause' for th[e] default or that a 'miscarriage of justice' would result if the default barred federal habeas relief," federal habeas relief on Soliz's claim is barred. *See Hogue v. Johnson*, 131 F.3d

No. 17-70019

466, 498 (5th Cir. 1997).  The district court committed no error in denying relief for Claim 20.

 We AFFIRM the district court's denial of habeas relief for Claim 20 and DENY a certificate of appealability on any other claim.



**Certified as a true copy and issued as the mandate on Sep 18, 2018**

**Attest:**

**Clerk, U.S. Court of Appeals, Fifth Circuit**

# *United States Court of Appeals*
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE**
**NEW ORLEANS, LA 70130**

September 18, 2018

Ms. Karen S. Mitchell
Northern District of Texas, Dallas
United States District Court
1100 Commerce Street
Earle Cabell Federal Building
Room 1452
Dallas, TX 75242

No. 17-70019    Mark Soliz v. Lorie Davis, Director
USDC No. 3:14-CV-4556

Dear Ms. Mitchell,

Enclosed is a certified copy of an opinion-order entered on
September 18, 2018.  We have closed the case in this court.

Sincerely,

LYLE W. CAYCE, Clerk

By: _____
Nancy F. Dolly, Deputy Clerk
504-310-7683

Enclosure(s)

cc:  Mr. Jefferson David Clendenin
     Mr. Carlo D'Angelo
     Mr. Seth Kretzer